ORIGINAL

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| WARREN BERES, and VICKY BERES, husband and wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) |
| THE UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

```
┌─────────────────────┐
│       FILED         │
│                     │
│   MAR   9 2004      │
│                     │
│   U.S. COURT OF     │
│   FEDERAL CLAIMS    │
└─────────────────────┘
```

No. 03-785-L

by leave of the Judge

Hon. Marian Blank Horn

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFFS' UNDERLYING PROPERTY INTEREST

On April 15, 2003, Plaintiffs filed a Complaint in this court, alleging ownership of certain lands, and claiming that federal action has taken their property. Docket #1. Because, as a matter of law, Plaintiffs do not have a property interest that could have been taken, Defendant respectfully moves for summary judgment in its favor and a dismissal of Plaintiffs' claims. An analysis of the facts and law supporting this motion is provided in its attached Memorandum.

Respectfully Submitted, November 7, 2003,

DAVID W. SPOHR
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section
c/o NOAA Damage Assessment
7600 Sand Point Way NE
Seattle, WA 98115-0070
(206) 526-4603 phone
(206) 526-4603 fax
david.spohr@usdoj.gov

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, and VICKY BERES, husband and wife, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| THE UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) ) |

No. 03-785-L

Hon. Marian Blank Horn

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AS TO PLAINTIFFS' UNDERLYING PROPERTY INTEREST

DAVID W. SPOHR
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section
c/o NOAA Damage Assessment
7600 Sand Point Way NE
Seattle, WA  98115-0070
(206) 526-4603 phone
(206) 526-4603 fax
david.spohr@usdoj.gov

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.     Historical Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    Rails-to-Trails and the Current Controversy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.     The 1875 Act Conveyed an "Easement" to the Railroads; However,
         It Was an Easement with a Reversionary Interest . . . . . . . . . . . . . . . . . . . . . . . . 7

    II.    The United States Retained the "Reversionary Interest" in the
         Railroad Right-of-Way Created under the 1875 Act Even after
         it Patented the Relevant Lands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

         A.    Principles of Statutory Construction Command That the
                Patent to Cowie Did Not Pass the United States'
                Reversionary Interest in the Right-of-Way . . . . . . . . . . . . . . . . . . . . . . . 13

         B.    Congress Repeatedly Demonstrated it Understanding That the
                United States Retained the Reversionary Interest in the 1875
                Act Rights-of-Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.     The 1906 and 1909 Acts; Enforcing the 1875 Act's
                       Forfeiture Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                2.     Congressional Actions from 1920 and 1921 Demand
                       the Same Result . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                3.     The 1922 Act: Disposition of 1875 Act Abandoned
                       Rights-of-Way . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    III.   Not Surprisingly, Given the Above, All but One of the Numerous
         Courts That Have Looked at the Question Presented Here Have
         Decided That There Was a Reversionary Interest and That this
         Interest Is Retained by the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

Albrecht v. United States,
    831 F.2d 196 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Barney v. Burlington N. R.R.,
    490 N.W.2d 726 (S.D. 1992), cert. denied sub nom.., 507 U.S. 914 (1993)   . . . 10, 11, 21

Bell v. New Jersey,
    461 U.S. 773 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Birt v. Surface Transportation Board,
    90 F.3d 580 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Brown v. State of Washington,
    924 P.2d 908 (Wash. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Caldwell v. United States,
    250 U.S. 14 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

California ex rel. State Lands Comm'n v. United States,
    457 U.S. 283 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Citizens for Safe and Legal Trails v. King County, No. 51464-4-I,
    2003 WL 22172793 (Wash. App. Sept. 22, 2003) (unpublished) . . . . . . . . . . . . . . . . . . . 6

City of Aberdeen v. Chicago and North Western Transp. Co.,
    602 F. Supp. 589 (D.S.D. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Great Northern Ry. Co. v. United States,
    315 U.S. 262 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 11, 13-15

Hamilton v. King County, No. 44699-1-L,
    2000 WL 1772525 (Wash. App. Dec. 4, 2000) (unpublished) . . . . . . . . . . . . . . . . . . 6, 22

Hash v. United States,
    CV 99-324-S-MHW (D. Idaho Nov. 27, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Idaho v. Oregon Short Line Railroad Co.,
    617 F. Supp. 207 (D. Idaho 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 11, 19, 20

International Broth. of Teamsters v. United States,
        431 U.S. 324 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

King County v. Beres, No. 51116-5-I,
        2003 WL 21907632 (Wash. App. Aug. 11, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

King County v. Rasmussen,
        299 F.3d 1077 (9th Cir. 2002), cert. denied, 123 S.Ct. 2220 (2003)  . . . . . . . . . . . . . . 5

Leo Sheep Co. v. United States,
        440 U.S. 668 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Marshall v. Chicago & Northwestern Transp. Co.,
        826 F. Supp. 1310  (D. Wyo. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Marshall v. Chicago and Northwestern Transp. Co.,
        31 F.3d 1028 (10th Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21, 22

National Wildlife Federation v. Interstate Commerce Commission.,
        850 F.2d 694 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

New Mexico v. United States Trust Co. of New York,
        172 U.S. 171 (1898) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Northern Pacific Ry. Co. v. Townsend,
        190 U.S. 267 (1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Patterson v. Burlington No. RR Co., No.42615-0-I,
        1999 WL 543824 (Wash. App. July 26, 1999) (unpublished) . . . . . . . . . . . . . . . . . . . . 6

Pettro v. United States,
        47 Fed. Cl. 136 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Preseault v. Interstate Commerce Commission,
        494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Puett v. Western Pacific Railroad Co.,
        752 P.2d 213 (Nev. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Redmond-Issaquah Railroad Preservation Association v. Surface Transportation Board,
        223 F.3d 1057 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Seatrain Shipbuilding Corp. v. Shell Oil Co.,
    444 U.S. 572 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Stringham v. United States,
    239 U.S. 44 (1915) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Union Pacific RR Co.,
    353 U.S. 112 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 21

Vieux v. East Bay Regional Park Dist.,
    906 F.2d 1330 (9th Cir. 1990), cert. denied, 498 U.S. 967 (1990) . . . . . . . . . . . . . . . . . 20

Walton v. United States,
    415 F.2d 121 (10th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Watt v. Western Nuclear Inc.,
    462 U.S. 36 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Western Union Teleg. Co. v. Pennsylvania R. Co.,
    195 U.S. 540 (1904) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Whipps Land & Cattle Co. v. Level 3 Communications, LLC,
    658 N.W.2d 258 (Neb. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12, 22

Wilson v. United States,
    917 F.2d 529 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wyoming v. Udall,
    379 F.2d 635 (10th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## STATUTES

16 U.S.C. § 1248(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

23 U.S.C. § 316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

43 U.S.C. § 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

43 U.S.C. § 913 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

43 U.S.C. § 437 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

43 U.S.C. § 912 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

43 U.S.C. § 940 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Act of June 26, 1906, c. 3350, 34 Stat. 482 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Act of Mar. 8, 1922, c. 94, 42 Stat. 414 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Act of May 25, 1920, c. 197, 41 Stat. 621 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Act of Nov. 9, 1921, c. 119, 42 Stat. 212, 216 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Act of May 14, 1898, c. 299, 30 Stat. 409 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

General Railroad Right-of-Way Act of 1875 ("1875 Act"),
    18 Stat. 482, U.S.C. §§ 934-939 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

H.R. Rep. No. 2283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

National Trails System Act Amendments of 1983,
    Pub. L. 98-11, 97 Stat. 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

National Trails System Act,
    Pub. L. 90-543, 82 Stat. 919 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## OTHER AUTHORITIES

40 Cong. Rec. 4615 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Sen. Rep. No. 388, 67th Cong., 2d Sess. (January 6, 1922)

23 Am.Jur.2d Deeds § 230 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, and VICKY BERES, husband and wife,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 03-785-L

Hon. Marian Blank Horn

## DEFENDANT'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT AS TO PLAINTIFFS' UNDERLYING PROPERTY INTEREST

### INTRODUCTION

Plaintiffs allege ownership of certain lands along the eastern shore of Lake Sammamish in King County, Washington, which for over a century served as the right-of-way for several rail companies. Since 1998, these lands have been "railbanked" and controlled for interim trail use pursuant to federal law, an action Plaintiffs claim has taken their property. Docket #1, Compl. at 8. At issue in this briefing is ownership of the reversionary interest in the right-of-way. If Plaintiffs own the reversionary interest, they may be able to proceed with a claim that that interest was taken by federal action. If, on the other hand, the United States retains the reversionary interest, Plaintiffs have no property right on which to base a claim, and their action must be dismissed. Pettro v. United States, 47 Fed. Cl. 136, 144 (2000) ("A takings claim requires a two-step analysis in which a court first determines whether a plaintiff possesses a valid property right affected by governmental action, and then, if the plaintiff does possess a compensable property right, the court decides if the governmental action at issue constituted a taking of that right.").

As discussed below, the United States retained a reversionary interest in the rights-of-way across federal lands when that interest was granted to the Railroad pursuant to the 1875 General Railroad Right-of-Way Act ("1875 Act"). When the federal lands crossed by the right-of-way at issue here were subsequently patented to Plaintiffs' presumed predecessor-in-interest, the United States' reversionary interest was not also conveyed. Neither was the United States' reversionary right subsequently granted to Plaintiffs or their predecessors by any other, later means. Thus, Plaintiffs have no property right on which to base a taking.

This result is commanded by a host of controlling and persuasive statutory language, legal precepts, and caselaw. The 1875 Act created an "easement," but one with a reversionary interest in the United States. Subsequent actions of Congress confirm its intent to create such an interest. Because federal land grants must be strictly construed in favor of the United States, and the 1875 Act contains no clear language allowing conveyance of these reversionary interests in the rights-of-way to subsequent patentees, the Act must be interpreted – under principles of statutory construction – to retain the reversionary interest in the United States, even after the lands were patented. In addition, the purposes of the Act, to construct and maintain a national public transportation system, are served by construing the Act to retain the United States' interest in this system of rights-of-way created from the public's lands. Furthermore, subsequent acts of Congress demonstrate that Congress understood that the United States had retained (post-patent) the reversionary interest in the rights-of-way. Finally, with one limited exception, every court to address the question has concluded that the 1875 Act retained the reversionary interest in the rights-of-way for the United States.

## BACKGROUND

### I.   Historical Background

The material facts affecting the current motion are not in dispute, and are laid out in the

parties' October 1, 2003, Joint Stipulation of Facts.  Docket # 13, Stipulations 1-8.  Between

1887 and 1891, the Seattle, Lake Shore, and Eastern Railroad Company ("the Railroad") took the

necessary steps to establish, pursuant to the General Railroad Right-of-Way Act of 1875 ("1875

Act"), 18 Stat. 482, now codified at U.S.C. §§ 934-939, a railway right-of-way across certain

public lands along the eastern shore of Lake Sammamish in King County, Washington, including

an area known as "Government Lot 4."[1/]  Stips. 1-3.  In 1992, William Cowie received a patent

from the General Land Office for certain lands, including Lot 4.  Stips. 4-5.  Although the United

States could later raise the issue of whether Plaintiffs are the proper successor-in-interest to any

interest in the right-of-way Cowie possessed, see King County v. Beres, No. 51116-5-I, 2003 WL

21907632 at *3 and n.3 (Wash. App. Aug. 11, 2003) (unpublished) (noting "no evidence that [the

Bereses] are Cowie's successors, and their respective deeds specifically exclude the railroad

right-of-way from the property conveyed"), the parties agree, for purposes of this motion, that

Plaintiffs are the proper private party to assert a claim in this matter.  Stips. 6-7.

There appears to be similarly little dispute about two legal precepts.  First, by virtue of the

1875 Act, the Railroad interest in the right-of-way across Lot 4 was an "easement" and not a fee.

Stip. 8.  Second, by virtue of their later-issued patent, Cowie and his successors-in-interest (here

---

[1/]The original railroad company was the Seattle, Lake Shore & Eastern Railway Company.  This
company was later acquired by the Northern Pacific Railway Company, which in turn became
part of Burlington Northern and Santa Fe Railway Company.  Defendant will, for ease of
reference, simply use "the Railroad" throughout.

Plaintiffs) took title to Lot 4 "subject to" the rights set by the 1875 Act grant. 43 U.S.C. § 437

(Section 4 of the 1875 Act). The crux of this case – the precise nature of that 1875 Act

"easement" and what rights the United States initially retained, what rights were later patented to

William Cowie, and any potential post-patent conveyances – are discussed below in the

Argument section.

## II.     Rails-to-Trails and the Current Controversy

Beginning in the mid-1970s, Congress took a number of steps to deal with the national

problem of shrinking rail trackage by converting unused rights-of-way to recreational trails.

Preseault v. Interstate Commerce Commission, 494 U.S. 1, 5 (1990). Since 1920, almost half of

the country's approximately 270,000 miles of rail lines had gone out of use, and experts

predicted that 3,000 miles would be abandoned every year through the end of the 20th century.

Id. "Confronted with the Hobson's choice of forfeiting a national rail system through piecemeal

abandonment of lines, or forcing railroads to maintain tracks on which they cannot turn a profit,"

Congress enacted the National Trails System Act Amendments of 1983, Pub. L. 98-11, 97 Stat.

48, to the National Trails System Act, Pub. L. 90-543, 82 Stat. 919 (codified, as amended, at 16

U.S.C. § 1241 et seq.) ("Trails Act"). Birt v. Surface Transportation Board, 90 F.3d 580, 582

(D.C. Cir. 1996).

The Trails Act authorizes the ICC (today the Surface Transportation Board or "STB") to

preserve for possible future railroad use rights-of-way not currently in service and to allow

interim use of the land as recreational trails. Section 8(d) provides that a railroad wishing to

cease operations along a particular route may negotiate with a State, municipality, or private

group that is prepared to assume financial and managerial responsibility for the right of way.

4

Preseault, 494 U.S. at 6-7. If the parties reach agreement, the land may be transferred to the trail operator for interim trail use, subject to federally-imposed terms and conditions (including the right of the railroad to reassert control and revive rail service), and the rail line is deemed by statute not to be abandoned. Id. Where railroad rights-of-way are held as common law easements subject to extinguishment under state law if abandoned, section 8(d) may give rise to a taking claim if the interim trail use prevents the interests in the right-of-way from otherwise vesting in the holder of the underlying fee. Id. at 8.

Application of the Trails Act along Lake Sammamish has been "highly contentious." Redmond-Issaquah Railroad Preservation Association v. Surface Transportation Board, 223 F.3d 1057, 1058 (9th Cir. 2000). In 1997, the Railroad concluded that continued operations of the pertinent line were not economically viable. Id. The initial purchase of the right-of-way by the Land Conservancy (a proponent of a recreational trail) was revoked by the STB as an abuse of the process, and future applicants (whether for or against a trail) were warned against repeating such abuses. Id. at 1059-60. Subsequently however, the Redmond-Issaquah Railroad Preservation Association (made up largely of landowners along Lake Sammamish) filed what the STB determined was an "abuse of process" in their attempt to defeat railbanking and interim trail use. Id. at 1058, 1060, 1064. The Ninth Circuit affirmed. Id. at 1064. On September 16, 1998, the STB issued a Notice of Interim Trail Use, which was subsequently effectuated in an agreement for railbanking/interim trail use between the Railroad and the Land Conservancy and, later, between the Land Conservancy and King County. Id. at 1060; Compl. at 6.

Hostilities have continued. See, e.g., King County v. Rasmussen, 299 F.3d 1077, 1089 (9th Cir. 2002) (affirming county's title and rights in right-of-way and dismissal of landowners

civil rights claims, discussing threat of landowner to "arm himself" and prohibition against

landowner interfering with the County's access to the right-of-way by use of force or threats of

force), cert. denied, 123 S. Ct. 2220 (2003). In addition to Rasmussen, there have been a slew of

state and federal cases involving the trail and landowners opposing the trail, including these

Plaintiffs. For those available on Westlaw, see Citizens for Safe and Legal Trails v. King

County, No. 51464-4-I, 2003 WL 22172793 (Wash. App. Sept. 22, 2003) (unpublished); King

County v. Beres, No. 51116-5-I, 2003 WL 21907632 (Wash. App. Aug. 11, 2003) (unpublished);

Hamilton v. King County, No. 44699-1-L, 2000 WL 1772525 (Wash. App. Dec. 4, 2000)

(unpublished); Patterson v. Burlington No. RR Co., No.42615-0-I, 1999 WL 543824 (Wash.

App. July 26, 1999) (unpublished).

In Beres, Plaintiffs here had "repeatedly blocked and trespassed on the right-of-way with

fences ropes, and other personal property," contending as they do here, ownership of the 1875

Act right-of-way through succession from William Cowie. Id. at *1. By stipulated order,

Plaintiffs agreed that they had trespassed on the right-of-way. Id. The court later found Plaintiffs

in contempt of court for continuing to trespass, and still later found Plaintiffs in contempt of

court again for further continuance of the trespass. Id. The court fined and sanctioned Plaintiffs,

dismissed Plaintiffs' challenges, and quieted title in the county. Id. The action did not, however,

answer the precise question that the parties here brief, and the United States does not assert issue

preclusion.

## ARGUMENT

Plaintiffs' takings claim must be rejected by this Court because the "reversionary" interest

in rights-of-way in Lot 4 conveyed by the United States to the Railroad in 1891 was retained by

6

the United States. When Plaintiffs' presumed predecessor, William Cowie, was given a patent to Lot 4, he took it only "subject to" the Railroad's "easement" and the United States' reversionary interest. As such, Plaintiffs do not possess a vested property interest in the right-of-way and Plaintiffs' claim that such an interest was taken from them when the 1875 Act lands were railbanked and converted in the interim to trail use under the Trails Act must be dismissed. Instead, the reversionary interest in rights-of-way in Lot 4 conveyed by the United States to the Railroad was retained by the United States when Plaintiffs' presumed predecessor, William Cowie, was given the patent. As such, Plaintiffs do not possess a vested property interest in the right-of-way, and Plaintiffs' claim that such an interest was taken from them when the 1875 Act lands were railbanked and converted to interim trail use under the Trails Act must be dismissed. A review of the history of congressional rail grants, the language and purpose of the 1875 Act, rules of statutory construction, subsequent Congressional enactments, and the overwhelming majority of the courts to consider the question confirms the United States' continuing ownership of the reversionary rights.

I.      **The 1875 Act Conveyed an "Easement" to the Railroads; However, It Was an Easement with a Reversionary Interest**

The history of congressional grants of railroad right-of-ways is detailed in <u>Idaho v. Oregon Short Line Railroad Co.</u>, 617 F. Supp. 207, 210-212 (D. Idaho 1985)("<u>Oregon Short Line</u>"). To summarize briefly, from 1850 to 1871, Congress subsidized railroad construction through large grants of public lands. <u>Id.</u> at 210. These grants were described by the Court as a "'limited fee, made on an implied condition of reverter in the event the company ceased to use or retain the land for the purpose for which it was granted.'" <u>Id.</u> (quoting <u>Northern Pacific Ry. Co.</u>

v. Townsend, 190 U.S. 267 (1903)).  In 1871, Congress discontinued these outright grants of land

to railroads, granting in subsequent acts (including the 1875 Act) what the Court would later

describe as an "easement."  Id. at 211 citing Great Northern Ry. Co. v. United States, 315 U.S.

262, 271 (1942)).  However, because the grant to the railroad included rights greater that those

within the traditional definition of an "easement," definitional problems arose, leading to the

Court's initial determination that the post-1871 grants (including the 1875 Act) granted a

"limited fee" (Stringham v. United States, 239 U.S. 44, 47 (1915), later determination that the

grant was an "easement" (Great Northern), and later clarification that severely undercut the

pre/post-1871 fee/easement dichotomy (United States v. Union Pacific RR Co., 353 U.S. 112,

112-120 (1957)).  Id. at 210-12.[2]

  Thus, the railroad land grant at issue in this case, the 1875 Act, conveyed to the Railroad

what has been deemed – in the context of the disposition of mineral interests in the rights-of-way

– an "easement."  Great Northern, 315 U.S. at 270.  To be sure, if such "easements" granted

under the 1875 Act were mere common law easements, there would not have been any

"reversionary rights" in the right-of-way for the United States to retain.  As explained by the D.C.

Circuit, where "the right-of-way is an easement, the owner of the servient tenement retains title

to the underlying land."  National Wildlife Federation v. Interstate Commerce Commission, 850

F.2d 694, 703 (D.C. Cir. 1988).  In other words, in the common law context, "because an

---

[2]Apparently assuming that the "limited fee" interest described in Townsend conveyed to the
railroad all present interests in the right-of-way, including the mineral interests, Great Northern
distinguished between pre- and post-1871 statutes and characterized the 1875 Act as granting an
"easement" interest rather than a "limited fee" interest.  However, this assumption proved to be
incorrect, as the Court, when later directly faced with the question of rights to subsurface
minerals in rights-of-way granted under a pre-1871, "limited fee" statute, held in Union Pacific
that a pre-1871 statute did *not* convey the subsurface mineral rights to the railroad.

easement is a servitude, rather than an estate in land, it is not strictly accurate to speak of an easement 'reverting'; rather, such interests 'lapse' or are 'extinguished.'" Id. at n.13. Thus, if under the 1875 Act Congress had granted merely a traditional easement to the Railroad, when the land traversed by the easement was patented to Cowie, there would be an argument that there were no "reversionary interests" for the United States (or anyone else) to retain. In such a scenario, Plaintiffs would own a property interest that could be subjected to a takings analysis.

However, as the case law clearly establishes, Congress was free to create a different type of property interest, and it did. So-called "easements" granted for rights-of-way under the federal railroad statutes are unique, statutory interests that have many attributes of a "fee" interest, including the ability to retain a reversionary interest. Indeed, as the law has evolved, it has become clear that there is little practical difference in whether a statutory railroad right-of-way is deemed to convey a "limited fee" interest or an "easement." Both are corporeal, possessory rights in which the United States intended to and did retain a reversionary interest.

Congressional grants of railroad easements across public lands are not like common law easements. Thus, "while the vocabulary of the common law of real property is often imported into the discussion of railroad rights-of-way, where those rights-of-way have been created by federal law, they are entirely creatures of federal statute, and their scope and duration are determined, not by common-law principles, but by the relevant statutory provisions." Whipps Land & Cattle Co. v. Level 3 Communications, LLC, 658 N.W.2d 258, 264 (Neb. 2003). Indeed, "'easements' on public lands are granted by Congress and subject to the intentions and specifications of Congress rather than common law." Brown v. State of Washington, 924 P.2d 908, 917 (Wash. 1996).

This is especially true for 1875 Act interests. While <u>Great Northern</u> characterized the 1875 Act rights-of-way as "easements," it did not hold that they were akin to common law easements, only that they constituted a property interest that did not convey the subsurface oil and minerals. Congress was within its authority to "pre-empt or override common-law rules regarding easements, reversions, or other traditional real property interests," and thus it need not have "shoe-horned" the 1875 Act "easements" into a traditional common law category. <u>Oregon Short Line</u>, 617 F. Supp. at 212. <u>Puett v. Western Pacific Railroad Co.</u>, 752 P.2d 213, 215-16, 218 (Nev. 1988) ("cases interpreting the 1875 Act demonstrate that the easements granted thereby were not intended to be construed within the traditional definition of an easement").

As the Supreme Court has recognized, 19th century statutes making grants to railroads are "to receive such a construction as will carry out the intent of Congress, however difficult it might be to give full effect to the language used if the grants were by instruments of private conveyance." <u>Leo Sheep Co. v. United States</u>, 440 U.S. 668, 682 (1979) (internal quotations omitted). Subsequent courts have clarified this intention, holding that "[t]he easement granted by Congress [under the 1875 Act] is an easement subject to the intentions and specifications of Congress; it is not a common law easement. Congress wanted to preserve a corridor of public transportation . . . ." <u>Barney v. Burlington N. R.R.</u>, 490 N.W.2d 726, 730 (S.D. 1992), <u>cert. denied sub nom</u>, 507 U.S. 914 (1993). Indeed, the Supreme Court itself has long recognized that a federal grant of a railroad right-of-way "is more than a mere right of passage. It is more than an easement." <u>Western Union Teleg. Co. v. Pennsylvania R. Co.</u>, 195 U.S. 540, 570 (1904). Even "if a railroad's right of way was an easement," it was one "having the attributes of the fee, perpetuity and exclusive use and possession; also the remedies of the fee, and, like it, corporeal,

not incorporeal, property." Id. (internal quotations omitted). The Court concluded, therefore, that a railroad right-of-way "has the substantiality of the fee." Id.; see also New Mexico v. United States Trust Co. of New York, 172 U.S. 171, 184 (1898) (citing cases applying certain fee title principles to railroad easements).

Accordingly, the 1875 Act grants not just an incorporeal use interest in the rights-of-way but rather an interest that is corporeal and possessory – operating essentially as a fee-type interest in the surface – and the traditional rules regarding the passing of the servient estate and precluding a "reversionary interest" need not apply. In fact, a reversionary interest was created. (Of the cases cited above, Oregon Short Line, 617 F. Supp. at 212; Whipps, 658 N.W.2d at 267; and Barney, 490 N.W.2d at 731 directly hold this; section III., below, contains a more thorough discussion of the caselaw.)

Subsequent actions of Congress confirm that it was creating a different sort of "easement," one that had a reversionary right.[3] In 1898, Congress passed an act "Extending the homestead laws and providing for the right of way for railroads in the District of Alaska." See Act of May 14, 1898, c. 299, 30 Stat. 409 (codified at 43 U.S.C. §§ 942-1 to 942-9). The language of the Act pertaining to railroad rights-of-way largely tracks the language of the 1875 Act. Given the identical operative language in the two statutes, including the language relied on in Great Northern to hold that the 1875 Act rights-of-way were "easements," the 1898 Act conveyed and retained equivalent rights. Section 5 of the 1898 Act illustrated Congress' recognition that in granting a railway "easement," a reversionary right nonetheless existed:

---

[3]As discussed below in section II.B.,"[i]t is well settled that subsequent legislation may be considered to assist in the interpretation of prior legislation upon the same subject." Great Northern, 315 U.S. at 277.

11

Congress decreed that upon abandonment the right-of-way "thereupon shall revert to the United States." Id. Thus, Congress understood and intended that the railway "easements" it was granting had reversionary interests, contrary to common law situation where an easement would simply disappear.

To be sure, in the 1878 Act, Congress specified what would be done with these reversionary interest – the Unites States would keep them. The disposition of the 1875's Act reversionary interest is analyzed further below. The importance of the 1898 Act is that it demonstrates that Congress understood that it was creating "easements," but easements that had a reversionary interest. See also Whipps, 658 N.W.2d at 265 ("we similarly conclude that [an 1875 Act right-of-way] when created, was an easement . . . with a reversionary interest in the United States should the right-of-way cease to be used for railroad purposes). Subsequent Congressional actions confirming this and defining the disposition of this reversionary interest are discussed below in section II.B.

## II.   The United States Retained the "Reversionary Interest" in the Railroad Right-of-Way Created under the 1875 Act Even after it Patented the Relevant Lands

The United States retained a reversionary interest in the right-of-way in Lot 4 as of at least 1891. Plaintiffs' Complaint at least tacitly recognize that a "reversionary interest to the right-of-way" exists in Lot 4. Compl. at 8. The crucial question becomes what happened in 1892, when the United States patented Lot 4 to Cowie. See, e.g., Whipps, 658 N.W.2d at 265 ("having concluded that the United States retained an interest in the property subject to the right-of-way, we must now determine what happened to that interest when the United States conveyed [via patent the] property to Whipps' predecessors in title"). It is here where the parties strongly

12

diverge. Plaintiffs claim that it is they who own the "reversionary interest." Compl. at 8.

Certainly, it is theoretically possible that, having initially retained a reversionary interest in the

right-of-way in Lot 4, the Government subsequently patented this interest to Cowie in 1892. A

review of the pertinent law shows that this is not the case.

A.     Principles of Statutory Construction Command That the Patent to Cowie Did
       Not Pass the United States' Reversionary Interest in the Right-of-Way

It is well-established that "federal land grants are to be construed strictly in favor of the

United States." California ex rel. State Lands Comm'n v. United States, 457 U.S. 283, 288

(1982). In construing public land grants, courts must apply "'the established rule that land grants

are construed favorably to the Government, that nothing passes except what is conveyed in clear

language, and that if there are doubts they are resolved for the Government, not against it.'"

Watt v. Western Nuclear Inc., 462 U.S. 36, 59 (1983) (quoting United States v. Union Pacific

Railroad Co., 353 U.S. 112, 116 (1957)); see also Caldwell v. United States, 250 U.S. 14, 20, 21

(1919). Thus, "[i]n a public grant nothing passes by implication, and unless the grant is explicit

with regard to the property conveyed, a construction will be adopted which favors the sovereign

rather than the grantee." Albrecht v. United States, 831 F.2d 196, 198 (10th Cir. 1987) (citing

Walton v. United States, 415 F.2d 121 (10th Cir. 1969)). See also 23 Am.Jur.2d Deeds § 230

("Artificial rules of construction are not applied to government grants; in particular, the rule that

a deed will be construed favorably to the grantee has no application to such grants. Rather, such

grants must be construed so as to diminish the public rights of the sovereign only so far as is

made necessary by an unavoidable construction."). This canon has been repeatedly applied in

construing 19th century statutes granting railroad rights-of-way, including the 1875 Act at issue

13

here. See, e.g., Great Northern, 315 U.S. at 272.

Simply put, the 1875 Act contains no language that would allow the later conveyance of the reversionary interest in railroad rights-of-way to owners of property traversed by the rights-of-way, no language that would counter the statutory rules and presumptions. Similarly, the 1875 Act's legislative history or purpose does not indicate that Congress intended to irrevocably relinquish the public interest in and control over the rights-of-way by automatically allowing them to devolve to the homesteaders who subsequently settled and obtained patent to the surrounding lands if the railroads later forfeited or abandoned the rights-of-way. The purpose of the 1875 Act was to "permit construction of railroads through the public lands and thus enhance their value and hasten their settlement." Great Northern, 315 U.S. at 272. If anything, the purpose of creating national transportation corridors is furthered by retaining the reversionary interest in the rights-of-way in the United States. This allows the United States to decide – if the rights-of-way are forfeited or abandoned – if they are still needed for transportation purposes or should be conveyed to the owners of the surrounding lands. (See discussion of 43 U.S.C. § 912 below in Section II.B.3.) Certainly nothing in the Act's legislative history or purpose *commands* a contrary result, a command sufficient to offset the cannons of legislative construction favoring the United States, discussed above.

**B.     Congress Repeatedly Demonstrated its Understanding That the United States Retained the Reversionary Interest in the 1875 Act Rights-of-way**

In addition to the 1898 Act discussed above, several other statutes demonstrate Congress's consistent understanding that the United States retained the reversionary interest in 1875 Act rights-of-way even after the relevant lands were patented. "It is well settled that

14

subsequent legislation may be considered to assist in the interpretation of prior legislation upon

the same subject." Great Northern, 315 U.S. at 277.  Courts may also consider subsequent

legislation that clarifies or depends on a particular interpretation of earlier legislation to have

effect.  See Bell v. New Jersey, 461 U.S. 773, 789-90 (1983) (view of later Congress persuasive

in determining meaning of earlier statute); Wilson v. United States, 917 F.2d 529, 535 (Fed. Cir.

1990) (same, applying 1987 statute to determine meaning of 1956 enactment); Seatrain

Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 596 (1980) (giving "significant weight" to

Congress's 1972 statutory expression to determine meaning of 1936 statute when "the precise

intent of the enacting Congress [was] obscure"); International Broth. of Teamsters v. United

States, 431 U.S. 324, 393 (1977) (citing use of 1976 amendments to construe 1946 statute).

Subsequent Congressional enactments also answer (in the negative) the last remaining question,

namely, whether, although the United States' reversionary interest in the right-of-way did not

pass with the initial 1892 patent, Congress subsequently conveyed it sometime between the 1892

patent and of the 1998 date of alleged taking.

        1.     The 1906 and 1909 Acts:  Enforcing the 1875 Act's Forfeiture Provision.

Congress made explicit its understanding that the United States retained the reversionary

interest in 1875 Act rights-of-way in two nearly identical statutes enacted in 1906 and 1909, two

of the statutes the Court relied on in Great Northern in construing the 1875 Act, 315 U.S. at 276.

See Act of June 26, 1906, c. 3350, 34 Stat. 482 and Act of February 25, 1909, c. 191, 35 Stat.

647 (both codified as amended at 43 U.S.C. § 940).  Through these acts, Congress intended to

enforce the forfeiture provision of the 1875 Act by legislatively declaring all existing, unused

rights-of-way on which plats had been filed to be forfeited.  See H.R. Rep. No. 2283, 59th Cong.,

1st Sess. (1906); 40 Cong. Rec. 4615 (1906). Congress's intent, in fact, was (post-forfeiture) to then reconvey the United States' interests to patentees, without the need for piecemeal, additional Congressional action. The act provided that, where a rail line had not been constructed within five years of the grant of an 1875 Act right-of-way, the right-of-way:

> shall be, and hereby is, declared forfeited to the United States * * * and the United States hereby resumes the full title to the lands covered thereby freed and discharged from such easement, and the forfeiture hereby declared shall, without need of further assurance or conveyance, inure to the benefit of any owner or owners of land heretofore conveyed by the United States subject to any such grant of right of way or station grounds . . . .

43 U.S.C. § 940 (emphasis added).

These statutes recognized that upon forfeiture of an 1875 Act "easement," the United States retained the reversionary interest in the right-of-way, even when the land had been "heretofore conveyed" (patented) to private owners. Congress then exercised it prerogative to convey the United States's reversionary right to those owners. Had the United States retained no interest in such patented lands there would have been nothing to convey. And because construction of the Sammamish line had occurred (or at least, by the words of the statue, "progressing in good faith") prior to at least 1906, Section 940 conveyed no interest to Plaintiffs' predecessor.

2.    Congressional Actions from 1920 and 1921 Demand the Same Result

Similarly, Congress expressed its understanding that it exercised continuing control over railroad rights-of-way in a statute enacted in 1920, which authorized all railroad companies granted rights-of-way through the public lands to convey to state or local governments "any portion of such right of way to be used as a public highway or street," provided that the railroad

16

retain 50-feet of the right of way on each side of the track. Act of May 25, 1920, c. 197, 41 Stat. 621 (codified at 43 U.S.C. § 913). Again, in 1921, Congress provided the United States' consent to any railroad to convey rights-of-way granted by the United States to state transportation departments. Act of Nov. 9, 1921, § 16, c. 119, 42 Stat. 212, 216 (codified as amended at 23 U.S.C. § 316). Sections 913 and 316 would be nonsensical if the United States did not have an interest (following a patent) *to* convey. By their terms, neither act conveyed any interest to patentees.

3. The 1922 Act: Disposition of 1875 Act Abandoned Rights-of-Way.

Most importantly, Congress again demonstrated its understanding that the United States retained (post-patent) the reversionary interest in the 1875 Act rights-of-way in its 1922 Railroad Right-of-Way Abandonment Act. See Act of Mar. 8, 1922, c. 94, 42 Stat. 414 (codified at 43 U.S.C. § 912). The 1922 Act was specifically intended to address forfeitures or abandonments of rights-of-way granted under the 1875 Act. See Sen. Rep. No. 388, 67th Cong., 2d Sess. (January 6, 1922), at 1 (referencing section 4 of the 1875 Act "under which most of the rights of way over public lands have been granted") and at 2 (explaining how the statute operates on 1875 Act rights-of-way). The 1922 Act provided that whenever a railroad ceased use and occupancy of a right-of-way granted to it from the federal public lands,

> all right, title, interest, and <u>estate of the United States in said lands</u> shall, except such part thereof as may be embraced in a public highway legally established within one year after the date of said decree or forfeiture or abandonment, be <u>transferred to</u> and vested in <u>any person</u> * * * to whom or <u>to which title</u> of the United States may have been or may be granted, conveying or purporting to convey the whole of the legal subdivision or <u>subdivisions traversed</u> or occupied <u>by such railroad</u> or railroad structures of any kind as aforesaid * * * .

17

43 U.S.C. § 912 (emphasis added).

By enacting this provision to affirmatively transfer the United States' reversionary rights in abandoned 1875 Act rights-of-way to the owners of property traversed by them, Congress once again expressed its understanding that the United States owned the reversionary interest in the rights-of-way, even where the "whole" of the land traversed by the right-of-way (here Lot 4) had been patented. Had the United States retained no interest in the rights-of-way post-patent, no affirmative action by Congress to convey the right to the surrounding landowner would have be required (and similarly, there would have been no federal interest to embrace in a highway). Thus, to conclude that the United States holds no reversionary interest in the 1875 Act rights-of-way would be to read the statute as having no effect on the very rights Congress expressly intended to address, a view courts have almost unanimously rejected. See section III., below.

To be sure, had the alleged abandonment taken place a decade before Plaintiffs allege it did, 1998, Plaintiffs would have received the United States' reversionary interest in the Lot 4 right-of-way. However, in 1988, Congress effectively repealed those portions of Section 912 that allowed the government to relinquish its interest in these rights-of-way to adjacent landowners, requiring that the rights remain in the United States upon their abandonment or forfeiture. 16 U.S.C. § 1248(c).

### III. Not Surprisingly, Given the Above, All but One of the Numerous Courts That Have Looked at the Question Presented Here Have Decided That There Was a Reversionary Interest and That this Interest Is Retained by the United States

Interestingly enough, despite the above law, the first case to decide the question presented here answered the question in the patentees favor. Subsequent caselaw, however, has unanimously rejected (either explicitly or implicitly) that first court's reasoning and outcome. In

18

every other case Defendant is aware of that has addressed the question of whether the United

States retained the reversionary interest in the 1875 Act rights-of-way as against a subsequent

patentee, the courts have concluded that it did.

The first and only case to hold that the United States did not retain an interest in 1875 Act

rights-of-way across subsequently patented land is City of Aberdeen v. Chicago and North

Western Transp. Co., 602 F. Supp. 589 (D.S.D. 1984). City of Aberdeen viewed Great Northern

as commanding a holding that the 1875 Act granted "mere easements" that operated in

accordance with common-law principles. Id. at 593. Starting from the wrong premise – that the

1875 Act created "mere easements" versus the more nuanced reality of federal grants of rights-

of-way detailed above – the court not surprisingly reached the wrong result. Id. The court held

that as a "mere easement," the United States lost all interest as of the date of the patent; thus

Section 912 was inapplicable to 1875 Act grants, and the patentee owned all the interest as of the

date of abandonment. Id. at 639. Tellingly, the pertinent language from the only case City of

Aberdeen cited as support for its analysis, Wyoming v. Udall, 379 F.2d 635, 639 (10th Cir. 1967),

was subsequently rejected by the that circuit in Marshall v. Chicago and Northwestern Transp.

Co., 31 F.3d 1028, 1031 at n.2 (10th Cir. 1994), discussed below.

Every subsequent case has rejected City of Aberdeen's holding, ruling instead that the

United States retained the reversionary interest in subsequently-patented 1875 Act lands and that

Section 912 (as amended by 16 U.S.C. § 1248(c)) controlled the disposition of the United States'

interest. In Idaho v. Oregon Short Line Railroad Co., 617 F. Supp. 207 (D. Idaho 1985), the

court addressed the same question and ruled diametrically opposed to City of Aberdeen. After

recounting the history of the railroad statutes and caselaw, the court concluded that Congress did

19

not grant just a common law easement, but a special statutory interest that retained the

reversionary rights in the United States. Id. at 210-11. Specifically, the court reasoned that

Congress

> had authority, by virtue of its broad power over interstate
> commerce, to grant such easements subject to its own terms and
> conditions – which were to preserve a corridor of public
> transportation, particularly the railroad transportation in order to
> facility the development of the "Western vastness." Congress
> could pre-empt or override common-law rules regarding
> easements, reversions, or other traditional real property interests.
> In other words, even if the 1875 Act granted only an easement, it
> does not necessarily follow that Congress would or did not intend
> to retain an interest in that easement.

Id. at 212. The court reasoned that Congress, in enacting 43 U.S.C. §§ 912-13 and 23 U.S.C.

§ 316 (see section II.B., above), understood that it had retained the reversionary interest in the

1875 Act rights of way:

> In enacting these statutes, Congress clearly felt that it had some
> retained interest in railroad rights-of-way.  The precise nature of
> that retained interest need not be shoe-horned into any specific
> category cognizable under the rules of real property law. * * *
> Regardless of the precise nature of the interest, Congress clearly
> believed that it had authority over 1875 Act railroad rights-of-way.

Id. at 212. The court refused to "render[] null" these statutes by holding the United States

retained no reversionary interest and thus concluded they apply to 1875 Act rights-of-way. Id. at

213.

The conclusion reached by the court in Oregon Short Line finds unanimous support

among the decisions of other courts that have been presented with this same question.  In 1990,

the Ninth Circuit, albeit in dicta, cited Oregon Short Line with approval in concluding that

"Section 912 applies to grants both before and after 1871." Vieux v. East Bay Regional Park

20

Dist., 906 F.2d 1330, 1335 (9th Cir. 1990).[4]

In 1992, the Supreme Court of South Dakota rejected City of Aberdeen even though it had been issued by the district court of that state. See Barney v. Burlington Northern RR Co., 490 N.W. 2d 726, 729 n.5 (S.D. 1992), cert. denied sub nom, 507 U.S. 914 (1993). Instead, the court read Great Northern as standing "only for the proposition that the underlying landowner – the U.S. Government – owned the mineral rights beneath the right-of-way." Id. at 730 (citing Union Pacific, 353 U.S. 112). Following Vieux and Oregon Short Line, the court concluded that "the United States Government retained a reversionary interest in railroad rights-of-way, including those granted post 1871 and § 912 applies to the right-of-way granted to the Railroad." Id. at 731.

Also in 1992, another district court rejected "Aberdeen's analysis, particularly its understanding of Great Northern upon which the Aberdeen court relied heavily in drawing its legal conclusions." Marshall v. Chicago & Northwestern Transp. Co., 826 F. Supp. 1310, 1313 (D. Wyo. 1992) (noting also that City of Aberdeen dealt with a municipality, and thus involved an exception to the main rule, id. at n.4). The court instead adopted "the [Oregon Short Line] paraphrase and parsing as accurate." Id.

In 1994 the Tenth Circuit affirmed Marshall, and likewise held that the United States held the reversionary interest in 1875 Act rights-of-way and thus section 912 applied. Marshall v. Chicago and Northwestern Transp. Co., 31 F.3d 1028 (10th Cir. 1994). The Circuit considered plaintiffs' argument – that, post-patent, the United States retained no interest in an 1875 Act

---

[4]Some courts refer to Idaho v. Oregon Short Line by the first party, while others have used the later. For consistency sake, this memorandum has used the later throughout.

right-of-way – and rejected it, finding itself in "accord with the result and rationale of

Oregon Short Line" and rejecting plaintiffs' reliance on City of Aberdeen. Id. at 1032 and n. 3.

The Circuit specifically rejected the argument that "Great Northern holds that § 912 does not

apply to any and all grants of rights of way under the Act of 1875." Id. at 1031.

Last and most recently, earlier this year the Nebraska Supreme Court reached a similar

holding. Whipps Land & Cattle Co. v. Level 3 Communications, LLC, 658 N.W.2d 258 (Neb.

2003). Acknowledging the contrary view presented by City of Aberdeen, and after a lengthy

discussion, the court was persuaded by the reasoning of the 9th (Vieux) and 10th (Marshall)

Circuits, and determined that the United States retained all reversionary interests in the 1875 Act

rights-of-way.

Again, in every published case but one, the courts have concluded that the United States,

and not a subsequent patentee, retained the reversionary interest in an 1875 Act right-of-way.[5]

Consistent with these decisions, Defendant asserts that this Court should also hold that the

United States retains the reversionary interest in the lands that were granted to the Railroad under

the 1875 Act.

---

[5]In the two unpublished cases that Defendant is aware of, the courts also held in favor of the
United States retaining a reversionary interest. Hash v. United States, CV 99-324-S-MHW (D.
Idaho Nov. 27, 2001) (no Westlaw cite, but Defendant has previously provided Plaintiffs with a
copy); Hamilton v. King County, No. 44699-1-L, 2000 WL 1772525 (Wash. App. Dec. 4, 2000).

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that summary judgment be entered in its favor.

Respectfully Submitted, November 6, 2003,

DAVID W. SPOHR
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
General Litigation Section
c/o NOAA Damage Assessment
7600 Sand Point Way NE
Seattle, WA  98115-0070
(206) 526-4603 phone
(206) 526-4603 fax
david.spohr@usdoj.gov

23