IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | **No. 03-785L, as Related to SCHROEDER (No. 04-1456 L), KLEIN (No. 04-1458L), LANE (No. 04-1468L), MANNING (No. 04-1466L), MOREL No. 04-1467L, NELSON (No. 04-1465L), PETERSON (No. 04-1459L), RAY (No. 04-1457L), RITZEN (No. 04-1469L), SPENCER (No. 04-1463L) and COLLINS (No. 04-1472L).**<br><br>Honorable Marian Blank Horn |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

John M. Groen
GROEN STEPHENS & KLINGE, LLP
11100 NE 8th Street, Suite 750
Bellevue, WA 98004
Telephone (425) 453-6206
Fax (425) 453-6224

Cecilia Fex
ACKERSON KAUFFMAN FEX, P.C.
1250 H Street N.W., Ste. 850
Washington, DC 20005
Telephone (202) 833-8833
Fax (202) 833-8831

*Attorneys for Plaintiffs*

Dated this 6th day of November, 2006

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................ 1

I. COLLATERAL ESTOPPEL IS NOT APPLICABLE .......................................... 1

A. The Plaintiffs Here Have Not Previously Litigated the Fee/Easement Issue ....1

B. As To the Rays, Collateral Estoppel Should Be Addressed By Separate Motion.........................................................................................................5

II. THE WASHINGTON SUPREME COURT ACTION DECLINING CERTIFICATION HAS NO BEARING ON THE PRESENT PROCEEDING.... 6

III THE PARTIES IN 1887 INTENDED TO CONVEY A MERE EASEMENT...... 9

A. Ambiguities Must Be Construed Against the Railroad Company .....................9

B. Analysis of the Factors in *Brown v. State* .......................................................10

1. The Context of Brown ............................................................ 10
2. Mere Citation to Conclusions in Ray Is Insufficient ............................ 13

C. Analysis of the Brown Factors.........................................................14

D. Other Considerations Also Show Intent To Convey an Easement ..................22

1. Railroad's Choice Not To Utilize the Warranty Form of Deed............ 22
2. "Right of Way" Was Commonly Understood to Mean Easement........ 22
3. The Thomas Burke Deed ................................................... 24

E. Subsequent Conduct of the Parties ..................................................24

1. Sbedzue deed ..................................................................... 25
2. Tahalthkut deed.................................................................. 27
3. Hilchkanum deed ................................................................ 28

CONCLUSION........................................................................................................ 30

## TABLE OF AUTHORITIES

### Cases

*Banner v. United States*,
238 F.3d 1348, 1354 (2001)........................................................................................ 1

*Brown v. State*,
130 Wn.2d 430 (1996) ........................................................................................ passim

*Eley v. Pizza Hut of America, Inc.*,
500 N.W. 2d 61 (Iowa, 1993) ...................................................................................... 7, 8

*Garcia v. Wilson*,
63 Wash. App. 516 (1991)........................................................................................... 3, 4

*Hanson Industries v. County of Spokane*,
114 Wn. App. 523 (2005) .................................................................... 12, 16, 17, 21

*International Nutrition Company v. Horphag Research, Ltd.*,
220 F.3d 1325, 1329 (Fed. Cir. 2000)............................................................................ 2

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*
156 Wn.2d 253 (2006) .................................................................................................... 8

*King County v. Rasmussen*,
299 F.3d 1077 (9th Cir. 2002) ...................................................................................... 1, 2

*Morsbach v. Thurston County*,
152 Wn.2d 562 (1929) ............................................................................................. 12, 16

*Mother's Restaurant, Inc. v. Mama's Pizza*,
723 F.2d 1566 (Fed. Cir. 1983)...................................................................................... 3

*Mouat v. Seattle, Lake Shore & Eastern Railway Company*,
16 Wash. 84 (1896)...................................................................................... 18, 19, 20, 21

*Munoz v. County of Imperial*,
667 F.2d 811 (9th Cir. 1982) ........................................................................................... 4

*Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*,
60 Wash. 502 (1910)...................................................................................................... 24

*Ray v. King County*,
120 Wn. App. 564 (2004)
....................................................................................................................... 2, 4, 5, 7

*Roeder Co. v. Burlington Northern,*
105 Wn.2d 567 (1986) ........................................................................................ 12, 13

*Uhl v. Ohio River R. Co.*,
51 W. Va. 106, 41 S.E. 340 (1902).................................................................. 22, 23, 24

*Zobrist v. Culp,*
18 Wn. App. 622 (1977) ........................................................................................... 29

**Other Authorities**

47 Am. Jur. 2d Judgments § 596 (May 2006)...................................................................... 3

Washington Appellate Practice Deskbook, Vol. 2, §30.3(1) (1993) ................................. 6

## INTRODUCTION

The stipulated issue for this proceeding is whether certain deeds conveying a "right of way" to the Seattle Lake Shore & Eastern Railway Company granted fee simple title to the company, or a mere easement.

In resolving this issue, the United States does not disagree that under Washington law, this Court will need to make a determination as to the intent of the parties to those deeds. *Brown v. State*, 130 Wn.2d 430, 437 (1996) ("intent of the parties is of paramount importance").

Nor does the government disagree that the determination of intent is a factual question. *Veach v. Culp*, 92 Wn.2d 570, 573 (1979) ("It is a factual question to determine the intent of the parties"). Accordingly, the government has not disputed Plaintiffs' position that the Court will need to make factual findings regarding intent, and then apply the law to determine the legal consequences of that intent.

## ARGUMENT

## I.

## COLLATERAL ESTOPPEL IS NOT APPLICABLE

A. <u>The Plaintiffs Here Have Not Previously Litigated the Fee/Easement Issue</u>

Collateral estoppel, or issue preclusion, bars revisiting issues that have already been litigated "by the **same parties** or their **privies**" on the same cause of action. *Banner v. United States*, 238 F.3d 1348, 1354 (2001) (emphasis added). Except as to one particular party, Gerald and Kathleen Ray, this requirement is not satisfied.

The landowner party in *King County v. Rasmussen*, 299 F.3d 1077 (9th Cir. 2002) was someone named John Rasmussen. He is **not a party** in any of the consolidated

cases. Nor is there any claim by the United States that John Rasmussen is a privy or agent of the plaintiffs in the cases at bar. It should be clear that the *Rasmussen* case cannot be the basis for preclusion as against any of the plaintiffs in the present cases.

The **sole** plaintiffs in *Ray v. King County,* 120 Wn. App. 564 (2004) were Gerald and Kathleen Ray. They brought a quiet title action against King County. The Rays are also plaintiffs in the present case. Accordingly, the Rays meet the "same party" requirement. However, none of the other plaintiffs in these consolidated cases was a party in the *Ray* case.

Nor are any of the other plaintiffs here a "privy" of Gerald and Kathleen Ray. The concept of privity applies "when one party is a successor in interest to another with respect to particular property." *International Nutrition Company v. Horphag Research, Ltd.*, 220 F.3d 1325, 1329 (Fed. Cir. 2000). They must hold "successive interests in the **same property**." *Id.* (emphasis added). "[T]he parties are in privity only with respect to an adjudication of rights in the property that was transferred." *Id.*

Here, the Rays have not transferred their property to anyone. The other plaintiffs all own different properties. No one here seeks compensation for the same property owned by Gerald and Kathleen Ray. Accordingly, none of the other plaintiffs are in privity with the Rays and issue preclusion therefore cannot apply to them.

The United States asserts that in the Ray's quiet title action, the Rays were the "virtual representatives" of all the other landowners on Lake Sammamish who later filed this action seeking compensation. The facts do not even come close to a "virtual representation" basis for issue preclusion.

> Virtual representation does not arise merely because the two parties raise similar claims and employ the same

> counsel. Virtual representation requires the existence of an express or implied legal relationship in which the parties in the first suit are accountable to nonparties who file a subsequent suit raising identical issues.

47 Am. Jur. 2d Judgments § 596 (May 2006). There are no facts showing that the Rays were the legal representative, or agent, of any other plaintiff in the present action. Indeed, such a claim is simply not true. The Rays acted on their own behalf, seeking to quiet title to their own property.

The United States cites *Mother's Restaurant, Inc. v. Mama's Pizza*, 723 F.2d 1566, 1572 (Fed. Cir. 1983) as support for its virtual representative argument. While that case does apply the virtual representative doctrine, its application here would be a significant extension of the law. *Mother's Restaurant* is dealing with situations where someone is the "agent" of another or there is an issue concerning identification of the real party in interest. As mentioned above, the Rays were not the agent of anyone in bringing their lawsuit. Likewise, the Rays were the real party in interest in bringing their quiet title lawsuit. *Mother's Restaurant* is inapplicable to the facts here.

The United States also cites *Garcia v. Wilson*, 63 Wash. App. 516, 520 (1991) as Washington case law in support for the virtual representative doctrine. Defendant's Memorandum at 24-25. However, a simple review of that case shows that it actually is authority for not applying the virtual representative doctrine in a case such as the one at bar. After recognizing the general existence of the virtual representative doctrine, the Washington appellate court cautioned:

> Of course, such preclusion must be applied cautiously in order to insure that the nonparty is not unjustly deprived of her day in court. Therefore, cases which have utilized the doctrine have developed a number of factors which, in

> essence, insure that the nonparty has had a vicarious day in court.
>
> The primary factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness. … That the evidence and testimony will be identical to that presented in the former adjudication is another important factor.

*Id*. at 520 - 21. In *Garcia*, the nonparty was a passenger in the same car accident as the plaintiff in the first case. The nonparty was a witness at trial. In contrast, the numerous plaintiffs here had no similar involvement in the *Ray* case.

The United States attempts to garner support by pointing out that several of the plaintiffs in the case at bar joined an amici filing urging the Washington Supreme Court to grant review of the *Ray* case. Defendant's Memorandum at 25 n.12. Of course, filing an amicus brief has never been the basis for collateral estoppel. As stated in *Munoz v. County of Imperial*, 667 F.2d 811 (9th Cir. 1982), "Munoz entered as amicus before the California Supreme Court, but the filing of an amicus brief has never been enough to bind a non-party to the result of the proceeding." *Id*. at 816.

While some property owners were aware of and interested in following the outcome of the *Ray* case, and therefore some joined the amici brief, their legal interests were not determined in the quiet title action that only could bind the Rays. The difference between judicial precedent and collateral estoppel was explained in *Litchfield v. Crane*, 123 U.S. 549 (1887).

> The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which the adjudication relied on was had. … Her lands were entirely separate and distinct from those of the actual parties. A decree in favor of or against them and their title was, in no legal sense, a decree in favor or against her. She was indirectly interested in the result, but not directly. As the questions affecting her own title and her own liability for

> taxes were similar to those involved in the suit, the decision could be used as a judicial precedent in a proceeding against her, but not as a judgment binding on her and conclusive as to her rights.

*Id*. at 550.

The same is true here. *Ray v. King County* is certainly used as judicial precedent by the United States, but it is not binding as collateral estoppel as against the other plaintiffs in the cases at bar. Of course, as judicial precedent, the problem with *Ray* is that other judicial precedent in Washington comes to a completely opposite result. More significantly, *Ray* was decided on summary judgment without the factual development regarding the intent of the parties to the 1887 deeds that is being presented here. Accordingly, even the precedential value of *Ray* is minimal to the present case.

In short, applying collateral estoppel to preclude numerous plaintiffs from presenting evidence and argument regarding the intent of the parties in 1887 would result in a great injustice. These plaintiffs, who were not parties to the *Ray* case, have a right to seek redress. They have already presented this Court with significant evidence regarding intent that was not presented by the Rays in their case. The Court should proceed to evaluating that evidence.

B. As To The Rays, Collateral Estoppel Should Be Addressed By Separate Motion

The applicability of collateral estoppel to the Rays should be addressed by separate motion. It is not fair to the numerous other plaintiffs to have their limited briefing space devoted to a procedural issue that is unique to one plaintiff. In a separate motion addressing this issue, the Rays will want to provide the Court with full briefing and argument. However, to do so here would detract from the briefing on behalf of all the other plaintiffs that should be devoted to the merits of the stipulated issue.

This Court should first decide the fee/easement issue as now presented. If the Court rules in favor of the United States and concludes that the 1887 deeds were intended to convey fee title, there will be no need to address collateral estoppel even as to the Rays. However, if the Court finds that the 1887 deeds conveyed only an easement, the United States should then be permitted to raise its collateral estoppel issue with respect to the Rays. That will allow full briefing on the issue without burdening the other plaintiffs.

## II.

## THE WASHINGTON SUPREME COURT ACTION DECLINING CERTIFICATION HAS NO BEARING ON THE PRESENT PROCEEDING

The United States argues that the denial of certification by the Washington Supreme Court is a "conclusive" determination that the Hilchkanum deed conveyed fee title to the railroad. That assertion is not correct.

The acceptance or denial of certification is discretionary. The state court is not required to accept certification. Washington Appellate Practice Deskbook, Vol. 2, §30.3(1) (1993) ("Neither is the Washington Supreme Court required to accept certification of a question of local law; the Act is permissive rather than mandatory") (*citing In re Elliott*, 74 Wn.2d 600, 610 (1968)).

Since acceptance of a certified question is entirely within the discretion of the state court, the denial of review has no substantive effect. The Court is able to deny review for any reason it wants, and no explanation or other justification is required. The Court can deny certification simply for purposes of controlling its own docket.

Nevertheless, the government seeks persuasive value from language in the Order denying review wherein the state court refers to "existing precedent **such as** *Brown v.*

*State* and *Ray v. King County*." Defendant's memorandum at 26, quoting Order (emphasis added).

In identifying these two cases, the state court did not mention any jump page, or particular issue or analysis that it might be referencing. The citation was general and included the phrase "such as" to indicate that other Washington cases were also applicable.

Plaintiffs note that both of those cases recognize that interpretation of a right of way deed requires a determination of intent. This is particularly emphasized by the Washington Supreme Court decision in *Brown* which identified intent as the "paramount" inquiry. Also, as discussed above and not refuted by the government, Washington law is clear that intent is a question of fact.

Where underlying factual matters have not been fully developed, state courts have declined certification. *See e.g. Eley v. Pizza Hut of America, Inc.*, 500 N.W. 2d 61, 63 (Iowa, 1993) ("Certification, therefore, is not appropriate if disputed facts make questions of law unclear").

With hindsight, your undersigned recognizes that it was probably a mistake to seek certification of the fee/easement issue. Although Plaintiffs attempted to frame the certified question as an issue of law, they acknowledge that factual development must play a role in determining the intent in 1887 of the various homesteaders who signed deeds to the railroad. Perhaps with this underlying factual issue in mind, this Court recognized in advance that the Washington Supreme Court might decline to enter the fray. This Court stated:

> If the Supreme Court of Washington does not grant the request to review, however, this court, which is mindful of,

> but not bound by any of the previous decisions on the issue of fee versus easement discussed in this order, **will undertake its own evaluation of the deeds** under the **seven factors** in *Brown* as well as the broad category of **"other considerations"** …

*Id*. at 14 (emphasis added). This Court obviously recognized that the evaluation of the deeds would necessarily involve a review of numerous factual considerations.

This proceeding to determine the intent of the parties is clearly consistent with Washington law. Unlike the suggestion of the government, the denial of certification is not a reason to avoid the merits of the fee/easement issue. Rather, it is the reason that this proceeding moves forward and includes making factual findings regarding the intent of the parties.

Of course, existing precedent now also includes *Kershaw Sunnyside Ranch v. Yakima Interurban Lines Ass'n*, 156 Wn.2d 253 (2006) which was issued on January 12, 2006, just five weeks after the denial of certification. Plaintiffs have contended that *Kershaw* strongly supports the view that under Washington law, when the granting clause conveys a right of way to a railroad, the term right of way is a limitation on the estate conveyed and will be held to convey only an easement.

On December 5, 2005, when certification was denied, the Washington Supreme Court was obviously aware that it would soon be issuing its decision in *Kershaw*. Although the Court cannot disclose in advance when it will issue a decision, or what the decision will be, it is very likely that the pending *Kershaw* decision was another factor in declining certification. The Court knew it was about to issue another decision on the same topic, so it would not be necessary to take yet another case to address the principles set forth in *Brown* and about to be further discussed in *Kershaw*.

In short, the action declining certification is not a determination on the merits of the issue before this Court. As this Court stated, if the Washington court denies certification, this Court will undertake "its own evaluation" of the fee/easement issue using the *Brown* factors and other relevant considerations. It is to that issue we now turn.

**III.**

**THE PARTIES IN 1887 INTENDED TO CONVEY A MERE EASEMENT**

A. Ambiguities Must Be Construed Against the Railroad Company

In the Plaintiffs' Opening Brief, substantial evidence was set forth showing that the subject deeds in 1887 were drafted by the Seattle Lake Shore & Eastern Railway Company. The railroad company representatives used a pre-printed form with blanks for the insertion of names and legal descriptions for the particular parcel. That is why the granting clauses for all the homesteaders are identical; they all used the same form provided by the railroad representative.

The United States does not dispute the evidence or the conclusions that the evidence supports. Accordingly, Plaintiffs respectfully request that the Court render a finding of fact that the subject deeds were drafted by the railroad company and not by the homesteaders.

Applying the law to this factual finding, the Court should construe any ambiguity in the 1887 deeds against the interest of the railroad company. As set forth in the Plaintiffs' Opening Brief, Washington law holds that ambiguities in railroad deeds are construed against the drafter of the deed. POB at 10 and cites therein.

In this case, the United States must establish through evidence that the term "right of way" was unambiguously used in the granting clause for purposes of conveying fee

simple title. After considering the evidence, if there is any ambiguity as to what the parties intended by the use of the term “right of way” in the granting clause, the Court should find that only an easement was conveyed. Any other conclusion would allow the drafter of the deed, *i.e*. the railroad company, to benefit from its ambiguous language.

Of course, the Plaintiffs believe that the evidence is overwhelming that the parties clearly intended to convey an easement, not fee title. The term “right of way” was well understood to convey such an estate. Accordingly, it should not even be necessary to rely on the rule of construing ambiguities against the drafter.

B. Analysis of the Factors in *Brown v. State*

1. The Context of Brown

Some brief discussion of the context of *Brown v. State* is helpful. First, in *Brown*, the deeds at issue were in the form of Warranty Deeds. *Brown*, 130 Wn.2d at 433 ("the deeds are in **statutory warranty form**") (emphasis added). Of course, this meant that there was a presumption that the deeds conveyed fee simple title.

Second, the granting clause in those deeds expressly conveyed a "strip **of land**, one hundred feet in width." *Id*. at 434 (emphasis added). The second paragraph of the *Brown* deed further confirmed that it was a "strip, belt, or piece **of land**" that was being conveyed. *Id*. (emphasis added).

Third, the deeds expressly stated that fee simple title was being conveyed. The third paragraph of the *Brown* deed clarified: "Hereby **granting and conveying** to said Company, its successors and assigns, a **fee simple title** to said strip of **land** …" *Id*. at 435 (emphasis added). *See also id*. at 440 ("Most of the deeds expressly convey fee simple title to a definite strip of land").

One might think that when a deed expressly states that it conveys fee title, and the deed is in the statutory warranty form, and the deed conveys "land" as contrasted with stating that a "right of way" is conveyed, it would not be difficult to conclude that fee title was transferred. Nevertheless, despite the strength of such a position, the Washington Supreme Court in *Brown* still recognized that a claimant might be able to establish a contrary intent. After recognizing that determining the intent of the parties is of "paramount importance," the Court stated:

> In this case, where the original parties utilized the statutory **warranty form** of deed and the granting clauses convey definite strips of **land**, we must find that the grantors intended to convey fee simple title **unless** additional language in the deeds clearly and expressly limits or qualifies the interest conveyed.

*Brown v. State*, 130 Wn.2d at 437 (emphasis added).

Under these circumstances, it was necessary for the property owners in *Brown* to overcome the presumption of fee title and show that despite using the statutory warranty form, the intent was actually only to convey an easement. It was within this context that the Court set forth the factors for considering whether the presumption of fee title could be overcome.

> In determining whether the property owners have met their burden of showing that the original parties intended to *adapt the statutory form* to grant easements instead of fees simple, we have relied on the following factors: **(1)** whether the deed conveyed a **strip of land**, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; **(2)** whether the deed conveyed a strip of land and limited its use to a specific purpose; **(3)** whether the deed conveyed a **right of way** over a tract of land, rather than a strip thereof; **(4)** whether the deed granted only the privilege of constructing , operating or maintaining a railroad over the land; **(5)** whether the deed contained a

> clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; **(6)** whether the consideration expressed was substantial or nominal; and **(7)** whether the conveyance did or did not contain a habendum clause, and **many other considerations** suggested by the language of the particular deed. In addition to the language of the deed, we will also look at the **circumstances surrounding** the deed's execution and the **subsequent conduct** of the parties.

*Id*. at 438 (emphasis added).

This context is important because under the deeds before this Court, there is no presumption of fee title for the Plaintiffs to overcome. The 1887 deeds here are **not** in warranty form; nor do they expressly state that fee title is conveyed.

> But here, the presumption of a fee interest does not arise. The Hanson Industries grantors *did not* use statutory-form warranty or bargain and sale deeds.

*Hanson Industries v. County of Spokane*, 114 Wn. App. 523, 530 (2005) (italics by the court).

Moreover, *Brown* distinguished the deeds at issue there from the deeds in earlier cases where the term "right of way" was used in the granting clause to describe the interest conveyed. Citing *Morsbach v. Thurston County*, 152 Wn.2d 562, 564 (1929), *Roeder Co. v. Burlington Northern*, 105 Wn.2d 567, 569 (1986), and other cases, the Court stated:

> These cases are consistent with the majority of cases that hold the use of the term "right of way" as a limitation or to specify the purpose of the grant generally creates only an easement.

*Brown*, 130 Wn.2d at 439.

> Unlike *Swan*, *Veach*, and *Roeder*, where "right of way" was used in the granting or habendum clauses to qualify or limit the interest granted, "right of way" in the deeds at issue

> here appears in either the legal description of the property conveyed or in the portion of the deeds describing Milwaukee's obligations with respect to the property.
> …
> **Used in this manner**, "right of way" merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses.

*Id*. at 441-42 (emphasis added). Of course, the 1887 deeds at issue here use the term "right of way" in the granting clause as was done in *Swan*, *Veach* and *Roeder*. Under *Brown* and a long line of Washington precedent, such use is a presumptively strong indication that only a limited interest was conveyed. This conclusion is affirmed in *Kershaw Sunnyside Ranches*.

> Like the cases finding an easement, and unlike the deeds in *Brown*, the word "right of way" is used to establish the purpose of the grant and thus **presumptively** conveys an easement interest.

*156 Wn.2d at 266* (emphasis added). In short, if anything, the deeds at issue here presumptively convey an easement interest. The United States has provided no compelling evidence of any contrary intent to overcome this presumption.

2. <u>Mere Citation to Conclusions in Ray Is Insufficient</u>

The approach of the United States in its brief is to provide a general conclusion about each *Brown* factor and then cite or quote the two-judge majority opinion in *Ray v. King County*. See Defendant's Brief at 29-30. This conclusory approach provides this Court with very little substance.

With respect to the *Ray* majority and dissent, this Court observed:

> Although both opinions [majority and dissent in *Ray*] analyzed the *Brown* factors, due to the nature of those factors and the issues under consideration, a number of **subjective**, **deductive** and **discretionary judgments** were

> involved when applying the *Brown* guidelines to the Hilchkanum deed by both the majority and dissenting judges.

Order, June 23, 2005 (Certification to State Supreme Court). Plaintiffs agree with this observation. Accordingly, to minimize subjective conclusions, application of the *Brown* factors should be grounded in the actual language of the deeds and in the relevant factual evidence that can be brought forward. With this in mind, Plaintiffs move on to analyze the *Brown* factors.

C. <u>Analysis of the Brown Factors</u>

In addressing these factors, the United States lumps together factors 1 – 3. Defendant's Memorandum at 29.

For the deeds at here, factors (1), (2) and (3) all cut in favor of finding an easement was conveyed by the homesteaders. These factors first look to see whether the granting clause conveys a "strip of land." The idea is that conveyance of a "strip of land" is more indicative of conveyance of fee title since land itself, *i.e.* real estate, is the apparent subject of the conveyance.

If the granting clause uses language that conveys land, the first and second factors then require looking further to see if there is additional language in the deed related to the use or specific purpose for the grant. The existence of such additional language may indicate intent to just convey a right of use, rather than land. Accordingly, the additional language may overcome the phrasing that the conveyance is of land, or real estate.

Applying these factors to the present case, it is readily apparent that unlike the language in the *Brown* deed, the language here does not purport to convey a "strip of land." Rather, the language of the granting clauses for these homesteaders expressly

conveys a "right of way." Indeed, the granting clause does not even mention in any way that it conveys land, or a parcel, or a piece of real estate.

Factor (3) is the most relevant factor of the *Brown* list. This factor considers whether the deed "conveyed a **right of way** over a tract of land, **rather** than a strip thereof." *Brown*, 130 Wn.2d at 438. This factor specifically distinguishes a granting clause that conveys a right of way (like the deeds at bar) from a granting clause that conveys a strip of land (like the *Brown* deed).

Obviously, the homesteaders' deeds here expressly convey a "right of way" and not a "strip of land." This factor therefore strongly cuts toward finding an easement.

Factor (4) also supports finding an easement. This factor recognizes that where a deed grants only the privilege of constructing, maintaining, and operating a railroad, an easement is likely the intent. In our case, the United States asserts (without any analysis whatsoever) that the homesteaders' deeds contain "no language" limiting the use. Defendants Brief at 29.

The government ignores that the consideration for 1887 deeds was the benefit to accrue from the "location, construction and operation" of the railroad. Although stated as consideration for the grant, this language also operates to limit the options of the railroad. For example, the railroad could not accept the deed and then choose to run a stage line through the parcel. A stage line would not have the same benefits as a rail line and therefore would not provide the promised consideration. To have any legal affect as consideration for the agreement, the railroad was obligated to utilize the right of way for locating, constructing and operating a railroad.

Other than carrying out the specifically authorized use of constructing and operating a rail line, the company would have no other right to use the property. For example, no serious argument would ever have been advanced by the railroad that these deeds authorized the company to enter the various properties and start growing hops, or mining coal, or building a house, or establishing a sawmill or shingle company, or setting up a lakefront resort, all within the waterfront right of way. While all of these activities did take place on private property along the waterfront, there is no evidence that any such activities were ever conducted by the railroad. Indeed, if the railroad actually attempted to utilize the right of way as though it owned fee title and started any such activities, there undoubtedly would have been strenuous objections by the homesteaders, and quite likely confrontation with the end of a firearm.

In short, if anything, factor (4) cuts in favor of finding that the intent of the grantors was to limit use to the activity expressly stated; *i.e*. the location, construction and operation of a rail line.

Factor (5) concerns whether the deed contains a clause that if the use should cease, the interest would revert to the grantor. Such a reverter clause is consistent with the grant of an easement. The United States points out that in the deeds at bar, there is no reverter clause.

Of course, it is not necessary that a reverter clause be present in order for a deed to convey an easement. A number of cases have found easements although no reverter clause was present. *See e.g. Hanson Industries*, *Morsbach*, *Veach*.

> A railroad right-of-way deed need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment.

*Hanson Industries*, 114 Wn. App. at 533.

While the presence of a reverter clause is "strong evidence an easement was intended" (*Kershaw*, 156 Wn.2d at 267), the absence of a reverter clause renders the fifth *Brown* factor neutral. As stated in *Kershaw*:

> The 1905 deed does not contain a reverter clause. Thus, this factor is inapplicable in this instance and does not favor one interpretation over the other.

*Kershaw*, 156 Wn.2d at 268.

Factor (6) reviews whether the consideration provided by the railroad was nominal or substantial. The government argues that building a railroad spurred development and that lumber and mining companies sprang up and settlers were brought into the area. The government argues this "growth and industry … is typical of railroads in general." Defendant's Brief at 31. Accordingly, the government argues that the benefit accruing to the grantor landowners was substantial. *Id*.

The problem with the government's analysis is that **every new railroad** brought similar benefits. Certainly the SLS & E. Ry. brought benefits to the region, and perhaps even to individual landowners, but the Washington cases do not look to these general benefits in the analysis of the "nominal" versus "substantial" consideration factor. *See e.g. Kershaw*, 156 Wn.2d at 268 (discussing monetary consideration).

The United States offers no refutation of the evidence presented in Plaintiffs' Opening Brief that no monetary consideration whatsoever was paid to the homesteaders for the right of way. Under the Washington cases, this factor therefore cuts in favor of finding an easement.

But the analysis of the amount of consideration does not end there. To significantly bolster Plaintiffs position on this factor, the Court is also directed to *Mouat v. Seattle, Lake Shore & Eastern Railway Company*, 16 Wash. 84 (1896). As the case name shows, the Respondent there was the now familiar Seattle, Lake Shore & Eastern Railway Company.

*Mouat* involved the interpretation of a deed to the same railroad for its proposed line in Spokane County. Mouat had provided a deed to the company in July, 1888, just one year later than the subject deeds. However, the Mouat deed has some key differences from the right of way deeds here.

Unlike the deeds here, the deed in *Mouat* was a warranty deed. Also, the consideration paid by the railroad company was $1900.00

> The deed was one of general warranty and was made in consideration of the sum of $1,900, to be paid by the railroad company.

*Mouat*, 16 Wash. at 87.

The entire deed was not set forth in the published opinion of the Washington Supreme Court. However, the appellate briefs of the parties are published in Washington and the entire deed is found in those volumes. Attached as Exhibit A is a true and correct copy of the Brief of Appellant in *Mouat*. See Briefs, 16 Wash., Vol. 1, pages 1 – 95 (1896). On page 6 of the Brief of Appellant, the Court will see the granting clause, and the balance of the deed, which reads as follows:

> WARRANTY DEED
> Gavin C. Mouat and H. L. Mouat, his wife, of Spokane county, in the Territory of Washington, in **consideration** of **nineteen hundred dollars**, to them in hand paid by the Seattle, Lake Shore and Eastern Railway Company, the receipt whereof is hereby acknowledged, do hereby grant,

> sell, and convey unto said company it successors and assigns forever **the following real estate** in the County of Spokane and Territory of Washington, to wit: A **strip of land** one hundred feet in width, being fifty feet on each side …
> This deed is made subject to the provisions and agreement that said first parties shall have the right to cross to and from the two portions of the northeast quarter section 22 above described and divided by said **strip of land** …
> Together with all their estate, right, title and interest thereon and thereto so that neither they nor any person claiming by, from or under them shall have any claim or demand either in law or equity, against said company appertaining to the same, and the said G.C. Mouat and L.C. Mouat covenant with said company, that they own said premises in **fee simple**, … that he will **warrant and defend the title** to said premises … and this deed is made **subject to the condition** that in case said land shall cease to be used for railroad purposes the same shall revert to first parties their heirs and assigns.

Exhibit A at 6.

There are several significant items to notice about this deed. First, unlike the 1887 deeds, this is a warranty deed. Second, unlike the 1887 deeds, the granting clause here does not state that a right of way is being conveyed. Rather, the deed states that "real estate" in the form of a "strip of land" is conveyed. Moreover, monetary consideration of $1900 was paid for this land. Under the *Brown* factors, this deed would likely be a conveyance of fee simple title.

The *Mouat* deed also contains a reverter clause that is triggered if the land shall cease to be used for railroad purposes. Given the strong language supporting conveyance of fee title, and the complete absence of any reference to the conveyance being one for a right of way, it should not be a surprise that this reverter clause was held to be a condition subsequent.

> It must be held that the deed vested in the railroad company an estate upon a condition subsequent…

*Mouat*, 16 Wash. at 88.

Turning now to the most intriguing part of this analysis, the Court is directed to the attached Exhibit B which is a true and correct copy of the brief filed by the Seattle, Lake Shore & Eastern Railway Company. Most significantly, at page 4 of the Brief, the railroad company expressly distinguishes conveyances of easements where the consideration is the benefit to accrue from construction and operation of the railroad. In contrast, the railroad company points out that the *Mouat* deed was for fee simple title and was supported by substantial consideration of $1900. As stated by the Seattle Lake Shore & Eastern Railway Company:

> The deed set out in the complaint did not convey a **mere easement** over the land described, but conveyed the entire estate of the grantors, and vested in the grantee **fee simple title** to the land itself. It appears from the deed itself, that it was *not made in consideration of benefits to accrue to the grantors by the construction and operation of a railroad* across the land, **but** that it was made for a valuable and adequate consideration, to wit: $1,900.

Exhibit B: Briefs, 16 Wash., Vol. 1, pages 1 – 95 (1896).

In short, the Seattle, Lake Shore & Eastern Railway Company is on record recognizing the distinction between consideration based on the "benefits to accrue to the grantors" and consideration based on paying cash, to wit: $1,900. The former is associated with a "mere easement," whereas the latter is associated with the grant of fee title.

Accordingly, under the facts here, factor (6) of *Brown* is shown to be exceptionally strong evidence of intent to convey a mere easement. By only providing a

consideration of the benefits to accrue from operation of the railroad, even the SLS & E Ry. Co. acknowledged that such consideration is associated with the grant of a mere easement. But to secure fee title, valuable monetary consideration was paid to the grantor. Not surprisingly, where the railroad company clearly was seeking fee title as in *Mouat,* the company used the statutory warranty form of the deed and spelled out that a strip of land, rather than a right of way, was being conveyed.

Factor (7) considers whether there is a habendum clause. Although included on the *Brown* list, this factor has proven to be of little utility in deed analysis. In numerous cases, the presence of a standard habendum clause has not altered the conclusion that the granting clause conveys an easement. As explained in *Hanson Industries*:

> The habendum clause here reads: “To Have and To Hold all and singular the said premises, together with the appurtenances unto the said [railroad company] forever.” But this is the same language found in the *Morsbach* deeds and, there, the court concluded that the grantor’s intent was to convey an easement. The inclusion of a habendum clause does not defeat the intent to convey an easement.

*Hanson Industries,* 114 Wn. App. at 532.

The habendum clause in the 1887 deeds here is virtually identical to that in *Hanson Industries*. It should be noted that the habendum clause does not use the term “fee simple” but is silent as to the type of interest conveyed.

Finally, *Brown v. State* recognizes a broad category of "other considerations" including surrounding circumstances and subsequent conduct of the parties. These other considerations are dealt with elsewhere in this brief. In short, the *Brown* factors strongly support a finding that the deeds here conveyed only an easement.

D. Other Considerations Also Show Intent To Convey an Easement

1. Railroad's Choice Not To Utilize the Warranty Form of Deed

The Plaintiffs' Opening Brief sets forth substantial evidence that the attorney for the railroad, Judge Thomas Burke, was a highly skilled lawyer who was familiar with real estate transactions. This evidence supports the inference that he was well aware of the benefits of using a Warranty Deed. The decision to deviate from that form of deed is additional evidence that the railroad did not intend to secure fee simple title. In its responding brief, the United States does not dispute this evidence or the reasonable inference therefrom.

2. "Right of Way" Was Commonly Understood to Mean Easement

Plaintiffs' Opening brief also sets forth substantial evidence that in 1887, in Seattle, the term "right of way" was in common usage. Moreover, the evidence shows that under its generally understood meaning, a right of way was a right of passage or easement. It would have been a very unusual thing in Seattle in 1887 to use the term right of way and intend to refer to fee simple title.

The United States does not dispute the evidence set forth regarding the common understanding of that term. Again, this evidence supports a finding that by stating that a right of way was conveyed, the parties intended to convey a mere easement.

Case law also supports this conclusion. For example, in *Uhl v. Ohio River R. Co.*, 51 W. Va. 106, 41 S.E. 340 (1902), the deed granted a "**right of way** of the width of fifty feet, … which right of way is hereby granted and conveyed for the construction, building, and use of said company." *Uhl v. Ohio River R. Co.,* 41 S.E. at 341. Regarding this deed language, the West Virginia Supreme Court observed:

> This agreement is not, in a legal point of view, ambiguous. Its very face says that the motive and purpose inspiring it, the occasion for its execution, was the obtaining by the company of a right of passage for a railroad through Uhl's farm, and to accomplish this purpose a "right of way" was granted "in, upon, and through lands of said Uhl." This is the core of the writing, its essence, its grant, and it speaks a purpose to concede simply a right of way, an easement, a passage for a road.

*Id*.

The homesteaders' deeds along Lake Sammamish are no different. In addition to expressly limiting the conveyance to a "right of way," the deeds further specifically recognize the purpose was for "location, construction and operation" of a railroad.

So, why did the railroad, which drafted the deeds, use granting clause language that conveyed a "right of way" if it really intended to receive fee simple absolute? Would not the railroad have written the granting clause with language that would convey "the land" if that is what the railroad actually intended to receive? Likewise, if the railroad wanted fee title and the right to use the land in any way it wanted, why did it provide a consideration to the homesteaders that was based on the specific use of the right of way for "location, construction and operation" of the railroad? The truth, the reality, is that the railroad drafted the granting clause to convey a right of way because that is all it wanted at that time. That is also all that the homesteaders were willing to grant. As was persuasively stated in *Uhl*,

> If the intent were to grant the lands to all intents, why did not the paper do so then by use of the word "land" in connection with the word "grant"? … [W]hy did it not use the word "land" in its essential part? Why did it use the words "right of way"? Take the words "right of way." Prima facie they legally imply only an easement. To give them some other meaning there must be other words so showing.

*Id*. at 341-42.

The Seattle Lake Shore and Eastern Railroad Company desired a deed from the homesteaders for a particular purpose, namely, as a right of way. The deeds contain no language indicative of an intention that an absolute fee title to the land itself should pass to the railroad.

3. The Thomas Burke Deed

Plaintiffs' Opening Brief provided substantial evidence regarding the deed by railroad promoter, Judge Thomas Burke. An extensive analysis shows that the railroad and Burke knew that the granting clause only conveyed an easement. The United States completely ignores this evidence.

Judge Burke's deed to the same railroad has been held to convey an easement, and nothing more. *Pacific Iron Works v. Bryant Lumber & Shingle Mill Co.*, 60 Wash. 502, 505 (1910). The same conclusion is warranted here.

E. Subsequent Conduct of the Parties

With very little explanation, the United States has brought forward the various deeds of the current property owners. The government is apparently suggesting that these deeds do not include the right of way as part of the legal description or current ownership. Those issues are precisely the chain of title issues that the parties have agreed are not part of this proceeding. Assuming that the right of way is a mere easement, the chain of title issues will need to be addressed through subsequently developed evidence and argument.

1. <u>Sbedzue deed</u>

The United States points out that an original homesteader, Bill Sbedzue, conveyed his entire parcel in 1905 to Fisher, including the area traversed by the right of way. The government points out that this conveyance was by Warranty Deed and there was no mention of the previously conveyed right of way.

It is unclear why the government brings this conveyance to the Court's attention. If anything, this subsequent conveyance supports the Plaintiffs. This warranty deed to Fisher shows that Sbedzue believed he still owned fee title in 1905. This also means that Sbedzue must not have thought he conveyed fee title to the railroad in 1887. Any other conclusion would be inconsistent with the use of a warranty deed and its corresponding presumption of conveying fee title to Fisher.

Perhaps more probative of Sbedzue's understanding and intent is his action in 1889. First, the Court is reminded that Bill Sbedzue is one of the grantors to a right of way deed at issue in this case. His right of way deed is transcribed at Exhibit D to the Joint Stipulation of Facts. The property through which the right of way runs is described as Lot 3 and the NE ¼ of SW ¼ Section 32 T. 25 N., R. 6 E.

The Sbedzue property comprised 55 ¾ acres. This is evidenced by the United States land patent to Bill Sbedzue issued in 1883, located at JA 81. Although difficult to read, the property description begins in the seventh line down from the beginning of the text, and reads as follows, "… the lot numbered three and the North East quarter of the South West quarter of Section 32 in township twenty four North of range Six, East of Willamette Meridian in Washington Territory containing fifty five acres and seventy five

hundredths of an acre …" JA 81. This legal description obviously matches the description of the property through which a right of way was granted.

In 1889, Sbedzue entered into an agreement with Daniel J. Reichert. A copy of that agreement is located at JA 83. In that agreement, Sbedzue sold to Reichert all timber suitable for logging that was on his property. The agreement reads in part,

> These articles of agreement made entered into and executed at the city of Seattle, King County, Washington Territory on this 22nd day June 1889, by and between Bill Sbedzue of King County aforesaid party of the first part, and Daniel J. Reichert of the city of Tacoma, Pierce County in said Territory, party of the second part, Witnesseth, That the said party of the first part for and in consideration of the covenants promises and agreements of the party of the second part hereinafter contained, covenants promises and agrees to sell and convey and by these presents does sell and convey and confirm unto said party of the second part his heirs and assigns, and said party of the second part covenants promises and agrees to buy and take all and singular **the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land** situate lying and being in King County, Washington Territory and particularly described as follows, to wit: Lot No. 3 and the NE ¼ of the SW ¼ of Section 32 in Township 25 N of Range 6 East **containing 55 and 75/100 acres** for the sum of $250.00 gold coin of the United States …

JA 83.

As can be seen, Sbedzue sold to Reichert all the timber on the entire 55 ¾ acre parcel originally granted to him by the 1883 land patent. Significantly, if Sbedzue had already sold the fee title in 1887 to a 100-foot wide strip of land through his property, he would no longer own the timber standing within that strip of land.

By selling all the timber, this Agreement shows that in 1889, just two years after the granting of a right of way, Sbedzue must have believed that he still owned the fee title to the land. This evidence shows that the 1887 grant was understood, and intended, to

only convey a right of way for the limited purpose of locating and operating a railroad. It left Sbedzue as the owner of the fee title.

2. Tahalthkut deed

The 1887 deed by Louie and Mary Tahalthkut conveyed the right of way through their land described as "Lot 4 and S.E. ¼ of S.W. ¼ " of the Section 32, Township 25 North, Range 6 East, of Willamette Meridian. The railroad actually traversed only through Lot 4, which was the shoreline portion of the homestead. See JA 107 (map)

The United States points out that in 1907 Mary Tahalthkut conveyed the same property, that is, Lot 4 and the SE quarter of the SW quarter of Section 32, T 25 N, R 6 E of W.M. This same parcel through which the right of way was conveyed in 1887 was now conveyed in 1907 "by Warranty Deed to T.N. Tallentire." Defendant's Memorandum at 8. As with Sbedzue's deed to Fisher, the Untied states points out that this warranty deed "is silent with respect to the railroad right of way." *Id.*

The United States makes no argument as to why this subsequent deed supports its position that Tahalthkut intended to convey fee title to the railroad in 1887. Again, this deed would support the opposite conclusion. By conveying the subject property by Warranty Deed, Mary Tahalthkut is warranting that she owns fee title to the subject property. That warranty would not be true if Mary and her husband in 1887 had conveyed fee title to the railroad. Accordingly, this subsequent deed is further evidence that Mary Tahalthkut understood that she still owned fee title to the land, and could sign a warranty deed, despite having previously conveyed a right of way through the property to the railroad. This warranty deed shows that Mary Tahalthkut understood the right of way to be nothing more than an easement through her fee property.

As with Sbedzue, the subsequent conduct of Mary and Louie Tahalthkut in 1889 further corroborates their intent to have only conveyed an easement, and not fee title to their land. The Court is directed to JA 108. This is an agreement between Tahalthkut and the same Daniel J. Reichert.

Reichert worked out the identical deal with Sbedzue's neighbor, Louie Tahalthkut, whose property was immediately to the south. Although difficult to read, the same language is used except the property description is for Thalthkut's parcel, rather than Sbedzue's. In the eleventh line down from the beginning of the text, the Agreement states as follows: "to buy and take all and singular the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land situate lying and being in King County, Washington Territory and particularly described as follows, to wit: Lot 4 and SE ¼ of SW ¼ … "

Just as Sbedzue did, Tahalthkut sold to Reichert all the timber growing on Lot 4 and the SW ¼ of the SW ¼ of Section 32. There was no exclusion for timber growing on the 100-foot wide right of way. As with Sbedzue, this subsequent conduct is consistent with an understanding that Tahalthkut still owned the fee title to that land and therefore could rightfully sell the timber.

3. <u>Hilchkanum deed</u>

Hilchkanum eventually sold portions of his property through subsequent conveyances. Several of the subsequent deeds by Hilchkanum acknowledge that the right of way was previously conveyed to the railroad. All of those deeds refer to the interest of the railroad a “right of way.”

By excluding the right of way from his subsequent conveyances, Hilchkanum was properly informing the purchaser that the right of way easement had been previously

conveyed and that the new owner would remain subject to the right of way easement. This is consistent with Washington law. As ruled in *Zobrist v. Culp*, 18 Wn. App. 622 (1977):

> The conveyance of a fee simple interest with a clause excepting an easement previously deeded to a third party, therefore, conveys to the grantee all the grantor's rights and interests in the land, yet compels the grantee to refrain from acting in a manner inconsistent with the rights of the third party.

*Id.* at 629. In the same manner, Hilchkanum's subsequent conveyances put the purchaser on notice that the right of way passes through the property.

Significantly, Hilchkanum consistently utilizes the term "right of way" in his subsequent conveyances. He further reiterates that the right of way was conveyed "for railroad purposes." JA 32 (deed from Hilchkanum to Chris Nelson). In contrast, none of the subsequent conveyances state that a strip, piece, or parcel of land was previously conveyed. Accordingly, the Hilchkanum subsequent conveyances are consistent with the grant of an easement.

The deed by Hilchkanum to Curley is particularly instructive. JA 31. That deed did not mention the right of way at all, but did purport to convey all of Lot 2 to Curley. Of course, if Hilchkanum granted fee title to the railroad, he could not convey all of Lot 2 to Curley because Hilchkanum would no longer own all of Lot 2. This deed is consistent with an understanding by Hilchkanum that he only conveyed an easement to the railroad in 1887.

## CONCLUSION

The plaintiffs have provided substantial evidence to show that the intent of the parties to the 1887 deeds was to convey a mere easement. Accordingly, Plaintiffs respectfully request that such a finding of fact be rendered. When the Washington law is applied to that finding, the conclusion must be that the deeds at issue conveyed an easement and not fee title.

RESPECTFULLY SUBMITTED this 6th day of November, 2006.

/s/ John M. Groen___
John M. Groen

GROEN STEPHENS & KLINGE, LLP
11100 NE 8th Street, Suite 750
Bellevue, WA 98004
Telephone (425) 453-6206
Fax (425) 453-6224

*Attorneys for Plaintiffs*

/s/ Cecilia Fex___
Cecilia C. Fex

ACKERSON KAUFFMAN FEX, P.C.
1250 H Street N.W., Suite 850
Washington, DC 20005
Telephone (202) 833-8833
Fax (202) 833-8831

*Attorneys for Plaintiffs*