## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **WARREN BERES, et al.,** | ) **No. 03-785L, as Related to SCHROEDER** |
| | ) **(No. 04-1456L), RAY (No. 04-1457L),** |
| **Plaintiffs,** | ) **KLEIN (No. 04-1458L), PETERSON (No.** |
| | ) **04-1459L), SPENCER (No. 04-1463L),** |
| **v.** | ) **NELSON (No. 04-1465L), MANNING (No.** |
| | ) **04-1466L), LANE (No. 04-1468L), and** |
| **THE UNITED STATES OF AMERICA,** | ) **COLLINS (No. 04-1472L).** |
| | ) |
| **Defendant.** | ) **Hon. Marian Blank Horn** |
| | ) |
| | ) |

## DEFENDANT'S SUPPLEMENTAL BRIEF ON COLLATERAL ESTOPPEL, THE *ROOKER-FELDMAN* DOCTRINE, AND RELATED ISSUES

Sue Ellen Wooldridge
Assistant Attorney General
Environment &Natural Resources Division
U.S. Department of Justice

Bruce K. Trauben
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20004-0663
Tel.: (202) 305-0238
Fax: (202) 305-0267

Attorney for Defendant

Of Counsel:

Kelle S. Acock
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C. 20004-0663

**TABLE OF CONTENTS**

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THIS COURT MUST APPLY WASHINGTON STATE LAW ON ISSUE
      PRECLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

III.  THE RAYS AND THEIR CO-PLAINTIFFS ARE BARRED BY
      COLLATERAL ESTOPPEL FROM RELITIGATING THE
      HILCHKANUM DEED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.    Gerald & Kathryn Ray Should Be Collaterally Estopped from
            Relitigating Whether the May 9, 1887 Hilchkanum Deed Conveyed
            Fee Simple Title to the SLS&E . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            1.    The Issue Resolved in *Ray v. King County* – that the
                  Hilchkanum Deed Conveyed Fee Simple Title to the Seattle,
                  Lake Shore and Eastern Railway – Is the Identical Issue in
                  the Instant Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            2.    There Is a Final Judgment on the Merits Concluding that
                  the Hilchkanum Deed Conveyed Fee Simple Interest to
                  the Seattle, Lake Shore and Eastern Railway . . . . . . . . . . . . . . . . . . . . 9

            3.    Both Gerald and Kathryn Ray Were Parties in the Prior
                  Adjudication . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            4.    Applying Collateral Estoppel Will Not Result in an
                  Injustice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      B.    The Co-Plaintiffs Similarly Should Be Collaterally Estopped from
            Relitigating Whether the May 9, 1887 Hilchkanum Deed Conveyed
            Fee Simple Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            1.    The Co-Plaintiffs Are Either in Privity with the Rays, or
                  Were Virtually Represented by the Rays, with Respect to
                  the Hilchkanum Deed, Satisfying the Third Requirement
                  for Collateral Estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                  a.    The Co-Plaintiffs Are in Privity with the Rays . . . . . . . . . . . . . 16

                  b.    At Least Fourteen Co-Plaintiffs Were Virtually
                        Represented by the Rays in the Prior Litigation . . . . . . . . . . . . 18

C.     The U.S. Supreme Court's Decision in *Lance v. Dennis*
       and the *Rooker-Feldman* Doctrine Does Not Apply, Here ................. 24

       1.     *Lance v. Dennis* Does Not Apply ........................... 24

       2.     The *Rooker-Feldman* Doctrine Does Not Apply
              in this Case ............................................. 26

IV.    CONCLUSION ..................................................... 28

# TABLE OF AUTHORITIES

## CASES

Adkins v. Rumsfeld,
    464 F.3d 456 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Ainslie v. Moss,
    191 Wash. 625 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Allen v. McCurry,
    449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Allustiarte v. United States,
    256 F.3d 1349 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

American Pelagic Fishing Co. v. United States,
    379 F.3d 1363 (Fed. Cir. 2004), cert. denied, 125 S. Ct. 2963 (2005) . . . . . . . . . . . . . 2

Arizona v. California,
    460 U.S. 605 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Bacon v. Gardner,
    38 Wash.2d 299 (1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Barr v. Day,
    69 Wash. App. 833 (Wash. Ct. App. 1993),
    aff'd in pertinent part, 124 Wash.2d 318 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

Brown v. Rahman,
    231 Cal. App.3d 1458 (Cal. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Caldera v. Northrop Worldwide Aircraft Services, Inc.,
    192 F.3d 962 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Cauefield v. Fidelity and Cas. Co. of New York,
    378 F.2d 876, 877 (5th Cir.), cert. denied, 389 U.S. 1009 (1967) . . . . . . . . . . . . . . . . 19

Chicago, R.I. & P. Ry. Co. v. Schendel,
    270 U.S. 611 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Conti v. United States,
    291 F.3d 1334 (Fed. Cir. 2002), cert. denied, 537 U.S. 112 (2003) . . . . . . . . . . . . . . . 2

Davani v. Va. Dep't of Transp,
    434 F.3d 712 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

De Roberts v. Stiles,
    24 Wash. 611 (1901) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

District of Columbia Court of Appeals v. Feldman,
    460 U.S. 462 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

Douthitt v. MacCulsky,
    11 Wash. 601 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Dunlap v. Wild,
    22 Wash. App. 583 (Wash. Ct. App. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
    544 U.S. 280 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26, 28

Fala Corp. v. United States,
    53 Fed. Cl. 35 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 6

Garcia v. Wilson,
    63 Wash. App. 516 (Wash. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

GASH Assocs. v. Rosemont,
    995 F.2d 726 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Graybill v. U.S. Postal Service,
    782 F.2d 1567 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Hackler v. Hackler,
    37 Wash. App. 791 (Wash. Ct. App. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hadley v. Maxwell,
    144 Wash.2d 306 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

International Nutrition Co. v. Horphag Research Ltd.,
    220 F.3d 1325 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Isensee v. Austin,
    15 Wash. 352 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Jackson v. Hayakawa,
    605 F.2d 1121 (9th Cir. 1979), cert. denied, 445 U.S. 952 (1980) . . . . . . . . . . . . . . . . 16

Klamath Irrigation Dist. v. United States,
    64 Fed. Cl. 328 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Kremer v. Chemical Construction Corp.,
    456 U.S. 461 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lance v. Davidson,
    379 F.Supp.2d 1117 (D. Colo. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lance v. Dennis,
    126 S. Ct. 1198, 163 L.Ed.2d 1059 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24, 25

Lee v. Ferryman,
    88 Wash. App. 613 (Wash. Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Litchfield v. Crane,
    123 U.S. 549 (1887) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Marrese v. American Academy of Orthopaedic Surgeons,
    470 U.S. 373 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

MGA, Inc. v. General Motors Corp.,
    827 F.2d 729 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Migra v. Warren City Dist. Bd. of Ed.,
    465 U.S. 75 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Parsons Steel, Inc. v. First Alabama Bank,
    474 U.S. 518 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

People ex rel. Salazar v. Davidson,
    79 P.3d 1221 (Colo. 2003) (en banc), cert. denied, 541 U.S. 1093 (2004) . . . . . . . . . 25

Powers v. United States,
    15 Cl. Ct. 702 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

PUD 1 v. Tombari Family Ltd. Partnership,
    117 Wash.2d 803 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Ray v. King County,
    120 Wash. App. 564 (Wash. Ct. App. 2004), review denied,
    152 Wash.2d 1027 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim

Reninger v. Dep't of Corr.,
    134 Wash.2d 437 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 13, 14

Robinson v. Hamed,
    62 Wash. App. 92 (Wash. Ct. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24, 26, 27

Shoemaker v. City of Bremerton,
    109 Wash.2d 504 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

State Oil Co. v. Khan,
    522 US. 3 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Deaconess Medical Center Empire Health Service,
    140 Wash.2d 104 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

United States v. ITT Rayonier, Inc.,
    627 F.2d 996 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16, 17

United Technologies Corp. v. Chromalloy Gas Turbine Corp.,
    189 F.3d 1338 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Watkins v. Siler Logging Co.,
    9 Wash.2d 703 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

World Wide Video of Washington, Inc. v. City of Spokane,
    125 Wash. App. 289 (Wash. Ct. App. 2005), review denied,
    155 Wash.2d 1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

## CONSTITUTIONS

U.S. Const., art. IV, § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES

28 U.S.C. § 1738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   passim
28 U.S.C. § 1257 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**OTHER AUTHORITIES**

Simon Greenleaf, A TREATISE ON THE LAW OF EVIDENCE
    (Little, Brown and Co. 1899) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Louis Truck Renz, THE HISTORY OF THE NORTHERN PACIFIC RAILROAD
    (Ye Galleon Press 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| WARREN BERES, et al., | ) | |
| | ) | **No. 03-785L, as Related to SCHROEDER** |
| | ) | **(No. 04-1456L), RAY (No. 04-1457L),** |
| Plaintiffs, | ) | **KLEIN (No. 04-1458L), PETERSON (No.** |
| | ) | **04-1459L), SPENCER (No. 04-1463L),** |
| v. | ) | **NELSON (No. 04-1465L), MANNING** |
| | ) | **(No. 04-1466L), LANE (No. 04-1468L),** |
| UNITED STATES, | ) | **and COLLINS (No. 04-1472L).** |
| | ) | |
| Defendant. | ) | **Honorable Marian Blank Horn** |
| | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF ON COLLATERAL
ESTOPPEL, THE *ROOKER-FELDMAN* DOCTRINE, AND RELATED ISSUES**

Pursuant to the Court's orders from the bench during oral argument held on November 13

and 14, 2006, and its order of November 20, 2006, Defendant, the United States, hereby submits

its supplemental brief on collateral estoppel, the Rooker-Feldman doctrine, and related issues.[1]

**I.    INTRODUCTION**

The United States contends that it has been conclusively determined that Bill and Mary

Hilchkanum conveyed fee simple title to the Seattle, Lake Shore & Eastern Railway Company

("SLS&E") by a deed dated May 9, 1887.  See Ray v. King County, 120 Wash. App. 564 (Wash.

Ct. App.), review denied, 152 Wash.2d 1027 (2004) (Table).  Ray v. King County may not be

collaterally attacked, here, as this Court does not have reviewing jurisdiction.  See, e.g.,

Allustiarte v. United States, 256 F.3d 1349, 1352 (Fed. Cir. 2001).  The decision in Ray v. King

County that the Hilchkanum deed granted a fee interest to the SLS&E is final and binding on

---

[1] This brief supplants Defendant's brief filed on January 11, 2007, and is being submitted
pursuant to the Court's January 12, 2007 Order requesting further briefing on the Rooker-
Feldman doctrine, which is addressed in Section III.C., infra.

the plaintiffs.  Nevertheless, Plaintiffs in <u>Ray</u>, CFC No. 04-1457L, ask this Court to decide

whether the Hilchkanum deed conveyed fee simple title or an easement to the railroad – the

identical issue decided in <u>Ray v. King County</u>.  In that action, the question of whether the

Hilchkanum deed conveyed fee title or an easement was vigorously litigated.  The determination

that the Hilchkanum deed conveyed a fee interest was necessary to, and indeed was the entire

basis for, the resulting judgment against the Rays, quieting title in King County.  The Rays had a

full and fair opportunity to litigate the issue, and they should be barred from relitigating the issue.

Moreover, under Washington law, the Rays' co-plaintiffs also are barred by collateral

estoppel from relitigating whether the Hilchkanum deed conveyed fee simple title to the SLS&E.

All of the co-plaintiffs are successors in title to the Hilchkanums and, like the Rays, stand in the

Hilchkanums' shoes with respect to the deed at issue.  The co-plaintiffs, therefore, are in privity

with the Rays with the respect the Hilchkanum deed, and they also should be collaterally

estopped from relitigating whether that deed conveyed fee simple title to the railroad.  Finally,

even if privity does not exist as to the co-plaintiffs, collateral estoppel nonetheless applies under

the virtual representation doctrine.

To establish their takings claim, the Plaintiffs bear the burden of showing that they have a

cognizable property interest in the right of way at issue.  <u>See</u> <u>Conti v. United States</u>, 291 F.3d

1334, 1339 (Fed. Cir. 2002), <u>cert. denied</u>, 537 U.S. 112 (2003); <u>American Pelagic Fishing Co. v.

United States</u>, 379 F.3d 1363, 1374 (Fed. Cir. 2004), <u>cert. denied</u>, 125 S. Ct. 2963 (2005).

Because Burlington Northern and Santa Fe Railway Co.,[2] as successor in interest to the SLS&E,

_____

[2] Burlington Northern and Santa Fe Railway Co. ("BN") transferred the right of way to King
County for interim trail use.  <u>See</u> Compl., ¶ 18; <u>see also</u> Def.'s Mem. Supp. Summ. J. at 1.  BN is
the successor in interest to the SLS&E through its acquisition of the Northern Pacific Railroad,
which, in 1898, had acquired the Seattle & International Railway Co., the immediate successor to

owned the right of way in fee simple, the Plaintiffs cannot show that they had a cognizable property interest in the right of way.  Accordingly, because the Hilchkanums conveyed fee simple title in the right of way to the railroad, <u>Ray v. United States</u>, No. 04 -1457L should be dismissed with prejudice.

## II.     THIS COURT MUST APPLY WASHINGTON STATE LAW ON ISSUE PRECLUSION

During oral argument regarding issue preclusion, the Court asked, "why the finality in the State Court [regarding <u>Ray v. King County</u>] translates into finality in the Federal Court on this issue [i.e., collateral estoppel] here." Nov. 13, 2006 Tr. at 12; <u>see also</u> <u>id.</u>  at 17-18 (inquiring how state law precedent "jump[s] over into the Federal Court system").  The Court requested further briefing regarding "how we . . . extrapolate from the state system to a binding impact in this Federal Court." <u>Id.</u> at 40.

The "Full Faith and Credit Clause of the Federal Constitution, as implemented by 28 U.S.C. § 1738, requires that state court judgments be given the same preclusive effect in later federal actions as they would be given under the laws of the state in which the judgments were rendered." <u>Graybill v. U.S. Postal Service</u>, 782 F.2d 1567, 1571 (Fed. Cir. 1986) (<u>citing</u> <u>Marrese v. American Academy of Orthopaedic Surgeons</u>, 470 U.S. 373 (1985); <u>Migra v. Warren City Dist. Bd. of Ed.</u>, 465 U.S. 75 (1984); and <u>Kremer v. Chemical Construction Corp.</u>, 456 U.S. 461 (1982)); <u>see also</u> <u>MGA, Inc. v. General Motors Corp.</u>, 827 F.2d 729, 732 (Fed. Cir. 1987) ("That federal courts are to afford full faith and credit to judgments reached in state court proceedings, <u>see</u> U.S. Const., art. IV, § 1, is clearly expressed in section 1738, paragraph 2 of Title 28 of the

_____

the SLS&E.  <u>See</u>  <u>Ray v. King County</u>, 120 Wash. App. at 569; <u>see also</u> Louis Truck Renz, THE HISTORY OF THE NORTHERN PACIFIC RAILROAD at 195 (Ye Galleon Press 1980) (Ex. 1 to Def.'s Mem. Supp. Summ. J.); JA Ex. 137 at 25668 (History of King County, Washington).

United States Code. . . .").

Federal courts must apply the preclusion law of the state in which the judgment was rendered.  In <u>MGA</u>, MGA sued LaSalle Tool in a circuit court of the State of Michigan for non-payment of royalties due under a license agreement for conveyor machines.  <u>Id.</u> at 731.  After a bench trial, the circuit court held that the accused machines were not covered by the license agreement, and entered final judgment in favor of the defendant.  <u>Id.</u>  The Michigan Court of Appeals affirmed, noting that the trial court implicitly found that the accused machines were not covered by the relevant claims of MGA's patent.  <u>Id.</u>  After the Michigan Supreme Court denied review, MGA brought a patent infringement suit against General Motors and LaSalle Tool.  <u>Id.</u>  The district court granted defendant LaSalle's motion for summary judgment, finding that "the state court judgment precluded relitigation of the issue of whether the accused machines infringed the claims of the patent in suit."  <u>Id.</u>  The United States Court of Appeals for the Federal Circuit affirmed, observing that "[t]he full faith and credit statute does not permit federal courts to employ their own rules of res judicata in determining the effects of state judgments."  <u>MGA</u>, 827 F.2d at 732.  A federal court must "accept the rules chosen by the state in which the judgment is rendered."  <u>Id.</u>  Even where the second court may not agree with the result reached by the state court, to invoke principles of res judicata, "[f]inality, not correctness is the key."  <u>Id.</u> at 733 (<u>citing</u> Restatement (Second) of Judgments §§ 13, 29 (1982)).[3/]  Accordingly, under Michigan preclusion principles, MGA was precluded from relitigating whether the subject

---

[3/] The Federal Circuit also rejected MGA's collateral attack of the state court decision as constitutionally infirm, finding that "MGA's avenue of redress of any legal errors . . . was to appeal, as it did, to each available level in the Michigan court system."  <u>MGA</u>, 827 F.2d at 731-32.  "It is inappropriate to collaterally attack the Michigan judgment in federal district court in an attempt to avoid, defeat or evade the judgment. . . ."  <u>Id.</u> at 732.

machines infringed its patent.  Id. at 733–35.

Following the mandates of the full faith and credit statute, 28 U.S.C. § 1738, other Federal Circuit courts have looked to the preclusion law of the state where judgment was rendered.  In United Technologies Corp., the Federal Circuit found that "Texas law controls the issue of res judicata, as required by the 'full faith and credit' statute."  United Technologies Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1342-43 (Fed. Cir. 1999).  Similarly, in Caldera v. Northrop Worldwide Aircraft Services, Inc., the Federal Circuit held that the Armed Services Board of Contract Appeals committed reversible error by not granting preclusive effect to prior Oklahoma proceedings in which Northrop Worldwide Aircraft Services, Inc.'s fraudulent behavior was actually litigated and was necessary to the final judgment.  192 F.3d 962, 971-72 (Fed. Cir. 1999).  The Caldera court noted that, under 28 U.S.C. § 1738, "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so."  Caldera, 192 F.3d at 971 (quoting Allen v. McCurry, 449 U.S. 90, 96 (1980)) (internal quotation marks omitted).

More recently, the United States Court of Federal Claims granted preclusive effect to a state court judgment regarding the ownership of property in a takings action.  See Fala Corp. v. United States, 53 Fed. Cl. 86 (2002).  In Fala Corp., the plaintiffs alleged a taking of their beach-front property in Virginia Beach, Virginia, after the Army Corps of Engineers erected a seawall and placed dredged spoils and other beach fill material on the property.  Id. at 88; see also Fala Corp. v. United States, 53 Fed. Cl. 35, 36 (2002) (opinion and order denying plaintiffs' motion to amend their complaint).  The plaintiffs in Fala Corp. claimed ownership of the property based upon a receiver's deed that the Norfolk Circuit Court awarded to Fala Corporation's predecessor

in interest in 1995.  Fala Corp., 53 Fed. Cl. at 88.  But that deed was declared null and void in a

prior action.  Id. at 89.  Applying the full faith and credit statute, 28 U.S.C § 1738, the Court of

Federal Claims held that, "[b]ecause the [Virginia state court's] decision is binding on this Court,

the plaintiffs no longer have a valid ownership claim upon which to base a Fifth Amendment

takings suit."  Id.; see also Powers v. United States, 15 Cl. Ct. 702, 705 (1988) (according "full

effect to the outstanding judgment of plaintiff's incompetence by the Fayette, Kentucky Circuit

Court," citing 28 U.S.C. § 1738).

Accordingly, under 28 U.S.C. § 1738, this Court must accord full effect to Ray v. King

County, as would be given under Washington law, regardless of whether the Court agrees or

disagrees with the result reached in that case.  The preclusive effect of Ray v. King County,

therefore, must be determined under Washington state law.

## III.   THE RAYS AND THEIR CO-PLAINTIFFS ARE BARRED BY COLLATERAL ESTOPPEL FROM RELITIGATING THE HILCHKANUM DEED

Collateral estoppel, or issue preclusion, bars relitigation of an issue in a subsequent

proceeding involving the same parties or those in privity with a party to the earlier proceeding.

See Shoemaker v. City of Bremerton, 109 Wash.2d 504, 507 (1987).  On the other hand, res

judicata, or claim preclusion, is intended to prevent relitigation of a cause of action.  Id.

"Collateral estoppel promotes judicial economy and prevents inconvenience, and even

harassment, of parties."  Reninger v. Dep't of Corr., 134 Wash.2d 437, 449 (1998).  Collateral

estoppel promotes principles of repose and finality by preventing endless relitigation of issues

already litigated.  Id.

The Court asked the parties to address separately in supplemental briefing whether (1)

Gerald and Kathryn Ray, lead plaintiffs in Ray v. United States, No. 04-1457L, and (2) the co-

plaintiffs in <u>Ray</u>, No. 04-1457L,[4] are barred by the doctrine of collateral estoppel from

relitigating whether the May 9, 1887 deed from Bill and Mary Hilchkanum to the SLS&E

conveyed fee simple title to the railroad.  <u>See</u> Nov. 13, 2006  Tr. at 39-40.  The Court also asked

the parties to address whether the U.S. Supreme Court's decision in <u>Lance v. Dennis</u>, 126 S. Ct.

1198 (2006) has any bearing on the issue of collateral estoppel now before the Court.  <u>See</u> Nov.

14, 2006  Tr. at 252–53.  Finally, the Court asked the parties to address whether the <u>Rooker</u>-

<u>Feldman</u> doctrine, which is addressed in <u>Lance v. Dennis</u>, applies in this case.  These issues are

addressed, separately, below.

### A. Gerald & Kathryn Ray Should Be Collaterally Estopped from Relitigating Whether the May 9, 1887 Hilchkanum Deed Conveyed Fee Simple Title to the SLS&E

Under Washington state law, plaintiffs Gerald and Kathryn Ray should be collaterally

estopped from relitigating whether the Hilchkanums conveyed fee simple title to the Seattle,

Lake Shore and Eastern Railway by the May 9, 1887 deed at issue.  Collateral estoppel, under

Washington law, bars a plaintiff from relitigating an issue where: (1) the issue in the earlier and

later actions is identical; (2) the earlier action ended in a judgment on the merits; (3) the party

against whom collateral estoppel is asserted was a party, or is in privity with a party, to the earlier

action; and (4) application of collateral estoppel does not work an injustice on the party against

whom the doctrine is to be applied.  <u>Reninger</u>, 134 Wash.2d at 449.  Mutuality is not required –

---

[4] The co-plaintiffs in <u>Ray</u>, No. 04-1457L, are Martin and Carol Chamberlin (husband and wife), Craig and Tammy Owens (husband and wife), Jeffrey and Sandra Sheehan (husband and wife), Steven and Susan Roberts (husband and wife), Frederic and Linda Vicik (husband and wife), Steven and Karin Farrar (husband and wife), Hank and Eden Waggoner (husband and wife), Patrick and Chenoa Haluptzok (husband and wife), Lester and Barbara Peterson (husband and wife), Lauren Jenkins, Terry Pietromonaco, Gary Nelson, and Hans Apel and Pamela Burton (husband and wife).

collateral estoppel can be asserted defensively by a nonparty to the prior adjudication. <u>Dunlap v. Wild</u>, 22 Wash. App. 583, 588 (Wash. Ct. App. 1979). Each of the four elements to apply collateral estoppel is met with respect to the Rays.

> **1.  The Issue Resolved in <u>Ray v. King County</u> – that the Hilchkanum Deed Conveyed Fee Simple Title to the Seattle, Lake Shore and Eastern Railway – Is the Identical Issue in the Instant Action**

Plaintiffs Gerald and Kathryn Ray previously prosecuted a quiet title action against King County, Washington, alleging that King County did not own the fee interest in the railroad right of way, and seeking to quiet title to the fee interest in the right of way in themselves. <u>See</u> <u>Ray v. King County</u>, No. 00-2-14946-8SEA, King County Super. Ct., Rays' Mot. Summ. J. at 1 (July 27, 2001) (submitted as Ex. 16 to United States' Mem. Supp. Mot. Summ. J.); <u>see also</u> <u>Ray v. King County</u>, 120 Wash. App. 564, 568 (Wash. Ct. App. 2004), <u>review denied</u>, 152 Wash.2d 1027 (Table). In the Rays' title quiet action against King County, the question of whether the May 9, 1887 Hilchkanum deed conveyed fee simple title to the SLS&E was at issue. <u>See</u> <u>Ray v. King County</u>. No. 00-2-14946-8SEA, King County Super. Ct., Rays' Mot. Summ. J. at 1-2 (July 27, 2001) (stating that to resolve the quiet title dispute "requires analysis of the original deed, dated May 9, 1887, whereby Bill Hilchkanum conveyed a 'right of way' to the Seattle, Lake Shore and Eastern Railway Company," and identifying the issue as "[w]hat interest was conveyed by Hilchkanum to the railroad?"); <u>see also</u> <u>Ray v. King County</u>, No. 00-2-14946-8SEA, King County Super. Ct., Oral Decision at 7-17 (Aug. 24, 2001) (finding that the railroad took in fee simple and, therefore, King County has the right to quiet title as the railroad's successor in interest) (submitted as Ex. 18 to United States' Mem. Supp. Mot. Summ. J.); <u>Ray v. King County</u>, 120 Wash. App. at 568 (holding "that Bill Hilchkanum and Mary Hilchkanum,

grantors, conveyed fee title by deed dated May 9, 1887 to the Seattle Lake Shore and Eastern

Railway").  That is exactly the same issue now before this Court.  See Oct. 3, 2006 Stipulation of

Issue and Fact at 3, 4 & Ex B (identifying the issue in Ray v. United States, No. 04-1457 as

whether Bill & Mary Hilchkanum "conveyed by deed their fee interest in the railroad right of

way to the Seattle, Lake Shore & Eastern Railway Co. . . .," and referring to the transcription of

the May 9, 1887 Hilchkanum deed provided as Ex. B to the Stipulation).

There can be no genuine dispute that whether the May 9, 1887 Hilchkanum deed

conveyed fee simple title to the railroad–the issue now before this Court–is the same issue that

was before the Washington state courts in Ray v. King County.

> **2.  There Is a Final Judgment on the Merits Concluding that the Hilchkanum Deed Conveyed Fee Simple Interest to the Seattle, Lake Shore and Eastern Railway**

"A grant of summary judgment . . . constitutes a final judgment on the merits and has the

same preclusive effect as a full trial of the issue."  Lee v. Ferryman, 88 Wash. App. 613, 622

(Wash. Ct. App. 1997) (finding that the grant of summary judgment satisfies the "final judgment

on the merits" criterion to apply collateral estoppel).  After finding that the May 9, 1887

Hilchkanum deed conveyed fee simple title to the Railroad, the trial court in Ray v. King County

granted King County's motion for summary judgment, quieted title in King County, and

dismissed the Rays' claims with prejudice.  See Ray v. King County, No. 00-2-14946-8SEA,

King County Super. Ct., Order Summ. J. Quieting Title and Dismissing Pls.' Claims (Aug. 24,

2001) (submitted as Ex. 19 to United States' Mem. Supp. Mot. Summ. J.); see also Ex. 18 to

United States' Mem. Supp. Mot. Summ. J. at 17-18 (Oral Decision).  Accordingly, there is a final

judgment on the merits holding that the May 9, 1887 Hilchkanum deed conveyed fee simple title

to the SLS&E.

The Rays appealed from the trial court's decision.  However, the Court of Appeals of

Washington affirmed the trial court's decision to quiet title in King County, holding that the

Hilchkanum deed conveyed the fee interest in the right of way to the Seattle, Lake Shore and

Eastern Railway.  See Ray v. King County, 120 Wash. App. at 593.  The Washington Supreme

Court denied the Rays' petition for review of the Court of Appeals' decision.  See Ray v. King

County, 152 Wash.2d 1027 (2004) (Table).  There is, therefore, a final judgment on the merits

holding that the May 9, 1887 Hilchkanum deed conveyed fee simple title to the railroad.

### 3.  Both Gerald and Kathryn Ray Were Parties in the Prior Adjudication

Both Gerald and Kathryn Ray were both parties in the state court action, as they are here.

The caption in the state court action named both Gerald L. Ray and Kathryn B. Ray, husband and

wife, as plaintiffs (see Exs. 16, 18 & 19 to Def.'s Mem. Supp. Mot. Summ. J.; see also Ray v.

King County, 120 Wash. App. 564 (2004)), and both are identified as plaintiffs on the Superior

Court Case List (see Ex. 17 to Def.'s Mem. Supp. Mot. Summ. J.).  Gerald and Kathryn Ray are

named plaintiffs in the complaint in this action, Ray v. United States, No. 04-1457L.

Unquestionably, the Rays were parties in the prior state court action, and they are parties here.

### 4.  Applying Collateral Estoppel Will Not Result in an Injustice

"The requirement that collateral estoppel not work an injustice focuses primarily on

whether a prior adjudication offered a full and fair hearing."  Barr v. Day, 69 Wash. App. 833,

843 (Wash. Ct. App. 1993), aff'd in pertinent part, 124 Wash.2d 318 (1994) (citing Robinson v.

Hamed, 62 Wash. App. 92, 100 (Wash. Ct. App. 1991)).  For example, applying collateral

estoppel against the plaintiff was found to be unjust where no evidence was presented at the prior

hearing on the issues raised in the subsequent action.  Id.  Collateral estoppel also may be

inappropriate where the party to be bound by the prior adjudication did not have incentive to

vigorously litigate the issue, such as when there is nothing more at stake than a nominal traffic

fine.  See Hadley v. Maxwell, 144 Wash.2d 306, 312-14 (2001).  Finally, the party asserting that

"the application of collateral estoppel doctrine works an injustice . . . has the burden of proof."

Barr, 69 Wash. App. at 843 (citing PUD 1 v. Tombari Family Ltd. Partnership, 117 Wash.2d

803, 805 (1991)).

Here, the Rays cannot show that they did not have a full and fair opportunity to litigate

the question of whether the May 9, 1887 Hilchkanum deed conveyed fee simple title to the

SLS&E.  In support of their motion for summary judgment on the issue, the Rays submitted six

declarations with attached exhibits.  See Ex.16 to United States' Mem. Supp. Mot. Summ. J. at 2

(Rays' Mot. Summ. J.); see also Jan. 4, 2007 Decl. of John M. Groen ("Groen Decl.").  As the

trial court observed, "all of the evidence that exists appears to have been discovered and

presented by the parties."  Ex. 18 to United States' Mem. Supp. Mot. Summ. J. at 6 (Aug. 24,

2001 Tr. Oral Decision).  Indeed, during oral argument before the trial court, "[n]o party . . .

identified additional evidence which has not yet been submitted to the court or which could be

further and more deeply explored at trial."  Id.  Moreover, summary judgment was appropriate

because, as the trial court noted, "[n]o one is alive to testify about [the] underlying facts."  Id. at

6-7.  Additionally, in the Washington state court proceedings, the Rays were represented by the

same counsel, Mr. Groen, whom the trial commended for his "very able argument."  Id. at 3.  The

Rays, therefore, had an opportunity to fully and fairly litigate the issue in the prior state court

proceedings.  See Robinson v. Hamed, 62 Wash. App. 92, 100 (Wash. Ct. App. 1991) (finding

prior arbitration provided a full and fair hearing where counsel made an opening statement and

closing arguments, introduced exhibits, examined and cross examined witnesses, and submitted a

post-hearing brief).

Washington courts also consider whether the party against whom collateral estoppel is to

be asserted had incentive to vigorously litigate the issue.  For example, in Hadley, the

Washington Supreme Court refused to collaterally estop the defendant from denying that she

committed a traffic violation after she appeared in court without counsel, and paid the fine

assessed without an appeal.  Hadley 144 Wash.2d at 308-09, 314.  Because minor traffic

violations are not criminal offenses, and there was nothing more at stake than a nominal fine, the

Washington Supreme Court found insufficient motivation "for a full and vigorous litigation of

the issue."  Id. at 312-15.

In contrast, the Rays were sufficiently motivated to fully and vigorously litigate whether

the Hilchkanum deed conveyed fee ownership of the right of way to the Seattle, Lake Shore &

Eastern Railway.  First, the Rays brought a quiet title action in King County Superior Court.  See

Ray v. King County, 120 Wash. App. at 570; see also Ex. 20 to United States' Mem. Supp. Mot.

Summ. J. at 3 (Rays' Mem. Direct Rev.) ("This action was filed by Jerry and Kathy Ray as a

quiet title action.").  After the trial court quieted title to the right of way in King County, the Rays

petitioned the Washington Supreme Court for direct review.  See Ex. 20 to United States' Mem.

Supp. Mot. Summ. J.  The Washington Supreme Court, however, transferred the Rays' appeal to

the Washington Court of Appeals (see Ex. 21 to United States' Mem. Supp. Mot. Summ. J.),

which affirmed the trial court's decision to quiet title in King County.  Ray v. King County, 120

Wash. App. at 593.  The Rays then again sought review by the Washington Supreme Court, this

time from the Court of Appeals' decision, but their request for review was denied.  <u>Ray v. King</u>

<u>County</u>, 152 Wash.2d 1027 (Table).  The Rays, therefore, not only had incentive to vigorously

litigate, but actually did vigorously litigate whether the May 9, 1887 Hilchkanum deed conveyed

fee simple title to the railroad.  <u>See</u> <u>Reninger</u>, 134 Wash.2d at 454 (plaintiffs displayed incentive

to vigorously litigate by arguing their case to a hearing examiner, appealing from the examiner's

findings to the State Personnel Appeals Board (PAB), and attempting to appeal the PAB's

findings to the superior court).

　　　　With respect to Gerald and Kathryn Ray, therefore, all four elements for collateral

estoppel are met.  Accordingly, the Court should find that the Rays are barred from relitigating

whether the May 9, 1887 Hilchkanum deed conveyed fee simple title to the railroad.

### B.  The Co-Plaintiffs Similarly Should Be Collaterally Estopped from Relitigating Whether the May 9, 1887 Hilchkanum Deed Conveyed Fee Simple Title

　　　　The co-plaintiffs in <u>Ray v. United States</u> are also successors in title to Bill and Mary

Hilchkanum.  <u>See</u> Compl. ¶ 17 (alleging that Plaintiffs' respective titles were encumbered by an

easement "granted by Plaintiffs' common predecessor in ownership, Bill and Mary Hilchkanum,

by deed dated May 9, 1887").  Accordingly, the co-plaintiffs, like the Rays, can have no greater

interest in their estate than what the Hilchkanums could grant.  <u>See</u> <u>De Roberts v. Stiles</u>, 24

Wash. 611, 618-19 (1901) (successor in title, standing in the shoes of his predecessor, possessed

no greater title than his predecessor had to grant); <u>see also</u> <u>Ainslie v. Moss</u>, 191 Wash. 625, 633

(1937) (appellant devisee has no greater interest in estate than her predecessor).  If the

Hilchkanums conveyed their fee simple interest in the right of way to the railroad by the May 9,

1887 deed, then they could not subsequently convey that same interest to their successors in title

and, through mesne conveyances, to the Rays and their co-plaintiffs.  The co-plaintiffs, thus,

stand equally with the Rays with respect to the Hilchkanums' conveyance of the right of way to the SLS&E.

The co-plaintiffs argue, however, that they should not be bound to the results of Ray v. King County, even if that decision is binding upon the Rays.  See Nov. 13, 2006 Tr. at 30, 33 (recognizing that, with respect to collateral estoppel, the Rays as parties to the prior proceeding have a more difficult argument, and that the more pertinent issue is whether the other 23 co-plaintiffs should be estopped).  Effectively they argue that, even though they and the Rays are all successors in title to the Hilchkanums, the May 9, 1887 Hilchkanum deed conveyed only an easement to the railroad as far as they are concerned.  They thus are urging this Court to reach inconsistent results with respect to the same legal instrument.  Such a result would not only be illogical, but also would run counter to consistency principles which, as the Supreme Court has observed, "are at their acme in cases involving property and contract rights."  Klamath Irrigation Dist. v. United States, 64 Fed. Cl. 328, 335-36 (2005) (quoting State Oil Co. v. Khan, 522 U.S. 3, 20 (1997)) (internal quotation marks omitted); see also Arizona v. California, 460 U.S. 605, 620 (1983) ("Our reports are replete with reaffirmations that questions affecting titles to land, once decided, should no longer be considered open.").

As discussed above, collateral estoppel under Washington law bars a plaintiff from relitigating an issue where: (1) the issue in the earlier and later actions is identical; (2) the earlier action ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party, or is in privity with a party, to the earlier action; and (4) application of collateral estoppel does not work an injustice on the party against whom the doctrine is to be applied.  Reninger, 134 Wash.2d at 449.

-14-

As the United States makes clear above, there can be no genuine dispute that elements (1) and (2) have been met regardless of the party against whom collateral estoppel is to be applied. Additionally, like the Rays, the co-plaintiffs bear the burden of showing that collateral estoppel would work an injustice against them to defeat the fourth element of collateral estoppel. Barr, 69 Wash. App. at 843 (the party asserting that "the application of collateral estoppel doctrine works an injustice . . . has the burden of proof"); see also Garcia v. Wilson, 63 Wash. App. 516, 522-23 (Wash. Ct. App. 1991) (person not a party against whom collateral estoppel is to be applied under virtual representation doctrine has burden of showing an injustice would result if estopped). The fourth element "focuses primarily on whether a prior adjudication offered a full and fair hearing." Barr, 69 Wash. App. at 843. The argument presented above on the fourth element of collateral estoppel with respect to the Rays applies equally to the co-plaintiffs. Because the Rays vigorously litigated whether the Hilchkanum deed conveyed fee simple title or an easement, and because there was a full and fair opportunity to litigate the issue in the prior proceeding where they were ably represented by the same counsel, and because all of the relevant evidence was discovered and presented by the parties (see Ex. 18 to United States' Mem. Supp. Mot. Summ. J. at 6), it would not be unjust to collaterally estop the co-plaintiffs.

Whether the co-plaintiffs in Ray v. United States, should be collaterally estopped, therefore, depends upon whether element three is met, specifically, that the co-plaintiffs are in privity with the Rays, or they fall within the exception to privity under the virtual representation doctrine.

**1. The Co-Plaintiffs Are Either in Privity with the Rays, or Were Virtually Represented by the Rays, with Respect to the Hilchkanum Deed, Satisfying the Third Requirement for Collateral Estoppel**

The conclusive effect of a judgment is binding on nonparties who are in privity, or have "substantial identity," with a party to the prior litigation.  See United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) (quoting Chicago, R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611 (1926)) (internal quotation marks omitted); see also Douthitt v. MacCulsky, 11 Wash. 601, 610 (1895) ("'privity' denotes mutual or successive relationship to the same rights of property," so those persons identified in interest with a party to the prior action are similarly bound by the prior proceedings).     Moreover, "[c]ourts are no longer bound by rigid definitions of parties or their privies for purposes of applying collateral estoppel or res judicata."  ITT Rayonier, 627 F.2d at 1003 (citing Jackson v. Hayakawa, 605 F.2d 1121, 1126 (9th Cir. 1979), cert. denied, 445 U.S. 952 (1980)).

As we explain below, all of the co-plaintiffs are in privity with the Rays under Washington law.  Moreover, even if they are not in privity, nonparties who also are not in privity with a party nonetheless may be collaterally estopped under the virtual representation doctrine.  Garcia v. Wilson,  63 Wash. App. 516, 520 (Wash. Ct. App. 1991) (dismissing passenger's personal injury claim against driver of other vehicle on basis of collateral estoppel).

**a.  The Co-plaintiffs Are in Privity with the Rays**

All of the co-plaintiffs in Ray are in privity with the Rays, because they all stand in the same shoes with the Hilchkanums.  The co-plaintiffs and the Rays, therefore, have a mutual, identical interest with respect to the title to property at issue, namely, the May 9, 1887 deed conveying the right of way to the railroad.

-16-

As successors in interest to the Hilchkanums, the Rays and the co-plaintiffs stand in the shoes of the Hilchkanums "in all particulars, so far as [their] relation to this land [is] concerned." De Roberts v. Stiles, 24 Wash. 611, 618 (1901) (holding that defendant, standing in the shoes of his predecessor in title, took his grantor's right to redeem property from mortgage sale, restoring the estate, but remaining subject to the lien of a second, unpaid mortgage). The Rays and co-plaintiffs, therefore, occupy the same shoes of the Hilchkanums. With respect to the title to the right of way, the Rays and co-plaintiffs have an identical interest in the same property rights derived from the Hilchkanums and, therefore, are in privity with each other.

> [T]he term 'privity' denotes **mutual** or successive **relationship to the same rights of property**. The ground, therefore, upon which persons standing in this relation to the litigating party are bound by the proceedings to which he was a party, is that **they are identified with him in interest**; and, wherever this identity is found to exist, all are alike concluded.

Douthitt, 11 Wash. at 609-10 (1895) (quoting Greenleaf, 1 Law of Evidence § 522-23) (internal quotation marks omitted) (emphasis added); see also International Nutrition Co. v. Horphag Research Ltd., 220 F.3d 1325, 1329 (Fed. Cir. 2000) (citing Litchfield v. Crane, 123 U.S. 549, 551 (1887), which quotes Greenleaf, 1 Law of Evidence § 523); Isensee v. Austin, 15 Wash. 352, 357-58 (1896) (applying res judicata against a nonparty to the prior action where they were substantially the same parties in interest); Watkins v. Siler Logging Co., 9 Wash.2d 703, 721-22 (1941) ("One asserting or defending a right by virtue of another's title to property is bound by a judicial determination on the merits, which is binding upon that other. . . ."); ITT Rayonier, Inc., 627 F.2d at 1002-03 (holding that the Washington Department of Ecology and the U.S. EPA were in privity for estoppel purposes where their interests were identical).

Under Washington law, therefore, privity is not determined by the relationship among the

parties but, rather, by their relationship "to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title." United States v. Deaconess Medical Center Empire Health Service, 140 Wash.2d 104, 111 (2000) (defining privity for the trial court to determine on remand whether collateral estoppel applies). Here, the Rays' and their co-plaintiffs' rights to the right of way are all derived from the same title held by the Hilchkanums, and all are equally affected by the Hilchkanums' conveyance of the right of way to the SLS&E. As strictly construed, the Rays and the co-plaintiffs are in privity.

Moreover, privity has been found for collateral estoppel purposes between a plaintiff and nonparties where the same counsel who represented the plaintiff in the first action subsequently represented the nonparties in a second action arising from the same acts. Brown v. Rahman, 231 Cal. App.3d 1458, 1463 (Cal. Ct. App. 1991) (applying California law) (holding nonparties estopped from relitigating doctor's medical malpractice in a wrongful death suit based on the same acts giving rise to the decedent's prior personal injury suit). That the co-plaintiffs, here, are represented by the same counsel who represented the Rays in their quiet title action, therefore, should be a factor supporting privity.

Because the co-plaintiffs and the Rays all stand in the shoes of the Hilchkanums with respect to the deed at issue, they have an identity in interest to the subject matter of this litigation and are in privity. All of the co-plaintiffs, therefore, should be collaterally estopped from relitigating whether the May 9, 1887 Hilchkanum deed conveyed fee simple title to the railroad.

### b. At Least Fourteen Co-Plaintiffs Were Virtually Represented by the Rays in the Prior Litigation

Even if the co-plaintiffs are not in direct privity with the Rays, under Washington law, collateral estoppel may still be applied pursuant to the virtual representation doctrine. See Garcia

-18-

v. Wilson, 63 Wash. App. 516, 520 (Wash. Ct. App. 1991); see also World Wide Video of Washington, Inc. v. City of Spokane, 125 Wash. App. 289, 304-07 (Wash. Ct. App. 2005), review denied, 155 Wash.2d 1014 (Table) (applying collateral estoppel against a nonparty who was not in privity with a party under the "recognized exception to the privity requirement") (citing Garcia, 63 Wash. App. at 521-22 and Hackler v. Hackler, 37 Wash. App. 791, 795 (Wash. Ct. App.), review denied, 102 Wash.2d 1021 (1984) ).   The virtual representation doctrine "allows collateral estoppel to be used against a nonparty when the former adjudication involved a party with substantial identity of interests with the nonparty." Garcia, 63 Wash. App. at 520.  To ensure that a litigant is not unjustly deprived of his or her day in court, a number of factors have been developed, including: (1) whether the nonparty in some way participated in the former adjudication; (2) whether the issue was fully and fairly litigated in the former adjudication; (3) whether the same evidence and testimony will be presented as in the former adjudication; and (4) whether there was "some manipulation or tactical maneuvering, such as when the nonparty knowingly declined the opportunity to intervene but presents no valid reason for doing so." Id. at 521 (citing Cauefield v. Fidelity and Cas. Co. of New York, 378 F.2d 876, 877 (5th Cir.), cert. denied, 389 U.S. 1009 (1967); Hackler, 37 Wash. App. at 795; Bacon v. Gardner, 38 Wash.2d 299, 313 (1951)).  Only "a sufficient number of these factors" need to be "present to insure fair application of the virtual representation doctrine and to satisfy the fourth factor [to apply collateral estoppel], that injustice will not result from applying the doctrine." Garcia. 63 Wash. App. at 521.

In Garcia, the plaintiff was a passenger in a vehicle owned by Teodoro Macias when it collided with the Wilson's vehicle.  Id. at 517.  Macias sued Wilson for property damage to his

vehicle, alleging that Ms. Wilson negligently failed to yield the right of way at a stop sign.  Id.

Garcia was a witness in that suit.  Id.  The trial court entered judgment for defendants.  Id.

Subsequently, Garcia sued both Macias and Wilson, seeking compensation for injuries suffered

as a result of the accident.  Id. at 518.  In her complaint, Garcia alleged that Wilson failed to stop

at a stop sign and to yield the right of way.  Id.  The trial court granted Wilson's  motion for

summary judgment, finding that Garcia's claim was barred by both res judicata and collateral

estoppel.  Id.  The Washington Court of Appeals affirmed.

After identifying the four factors for applying collateral estoppel (discussed above), the

Court of Appeals found that the first two factors (identity of issue and judgment on the merits)

were satisfied.  Id. at 518-19.  With respect to the third factor (a party or privity with a party),

Garcia argued that she was not in privity with Macias and, therefore could not be collaterally

estopped.  Id. at 519-20.  Applying the virtual representation doctrine, the Garcia court analyzed

the factors identified above, and found a sufficient number of the factors "present to insure fair

application of the virtual representation doctrine and to satisfy the fourth [collateral estoppel]

factor, that injustice will not result from applying the doctrine."  Id. at 521.  The court first found

that Garcia was living with Macias at the time of his suit and was a witness in the first action,

"indicating that she was fully aware of the character and issues of the first suit."  Id.  Second,

Macias' "suit was fully and fairly litigated, resulting in a defense verdict . . . [and] the evidence

and witnesses that [Garcia] would present are the same as were presented in the first action."  Id.

Therefore, "nothing would be accomplished by allowing a second action."  Id.

Finally, because Garcia began seeing a doctor soon after Macias filed his complaint, she

must have been interested in the results of the trial, and could have intervened.  Id. at 522.  She

chose not to do so, apparently for tactical reasons, as she failed to show any prejudice that would have resulted had she intervened.  Id.  Because Garcia "failed to present any reasons why . . . application [of collateral estoppel] would be unfair," the Court of Appeals affirmed.  Id. at 522-23.

An analysis of the factors identified in Garcia to apply the virtual representation doctrine, here, leads to the conclusion that at least fourteen co-plaintiffs (see n.4, infra) should be collaterally estopped.  First, as discussed above with respect to the application of collateral estoppel against the Rays, that the Hilchkanum deed conveyed fee simple interest to the railroad was fully and fairly litigated in Ray v. King County, satisfying the second factor.  Second, fourteen co-plaintiffs directly participated in  Ray v. King County by filing an amicus brief supporting the Rays' petition for review by the Washington Supreme Court.[5]  See Ex. 26 to Def.'s Mem. Supp. Summ. J.  (Mem. Amici Curiae  Pet. Rev. & Mot. Lv. File Amici Curiae Mem.).  These fourteen plaintiffs, like the plaintiff in Garcia, therefore, "had full knowledge of the prior action."  Garcia, 63 Wash. App. at 520 (citing Bacon, 38 Wash.2d at 312-13).  Indeed, these co-plaintiffs plainly were aware of the importance of the issue relating to the Hilchkanum deed, and argued as much in their amicus brief, stating that the "Court of Appeals decision in Ray will affect all of the property owners along the east shore of Lake Sammamish whose title

---

[5] Those co-plaintiffs who filed as amici in the Supreme Court of Washington are: Martin and Carol Chamberlin; Craig and Tammy Owens; Frederic and Linda Vicik; Steven and Karin Farrar; Hank and Eden Waggoner; Lester and Barbara Peterson; Lauren Jenkins; and Terry Pietromonaco.  Cf. Ex. 26 to Def.'s Mem. Supp. Mot. Summ. J. with Compl. in Ray v. United States, CFC No. 04-1457L.

-21-

derives from the Hilchkanum deed."[6]  Ex. 26 to Def.'s Mem. Supp. Summ. J. at 9.  Although they were fully aware of the Rays' litigation against King County, and knew the import of the issue to their own property interests, they "declined the opportunity to intervene."  <u>Garcia</u>, 63 Wash. App. at 521.  Instead, they chose to avoid litigating the interest conveyed by the Hilchkanum deed in Washington courts, in favor of this takings action.[7]

Here, nothing is accomplished by allowing the second action by the co-plaintiffs, because they substantially rely upon the same evidence as the Rays in their quiet title action.  In addition to their analysis of the language and form of the Hilchkanum deed itself, the Rays argued and presented, in their quiet title action, purportedly supporting evidence relating to: (1) which party drafted the Hilchkanum deed (<u>see</u> Ex. 16 to Def.'s Mem. Supp. Mot. Summ. J. at 2; <u>see also</u> Groen Decl., ¶¶ 4.f., 5.j.); (2) the contemporary meaning of the term "right of way" (Ex. 16 at 7-8; Groen Decl. ¶ 5.k.); (3) Thomas Burke's conveyance of an easement to the railroad (Ex. 16 at 9-12; Groen Decl., ¶ 5.h.); (4) Thomas Burke's tour with potential investors along the lake (Ex. 16 at 12-13; Groen Decl. ¶ 5.a. & 5.b.); and (5) Hilchkanum's homestead application (Ex. 16 at 16-19; Groen Decl. ¶ 5.d.).  In this action, in addition to their analysis of the language and form of the deeds, the Rays and their co-plaintiffs similarly argue and present the same evidence in support of their contentions relating to: (1) which party drafted the deeds at issue (Pls.' Mem.

---

[6] The amici also stated in their Motion for Leave, that they are "property owners along the shoreline of Lake Sammamish who are the neighbors of the Rays.  Their properties are affected by deeds by Bill and Mary Hilchkanum to the Seattle Lake Shore and Eastern Railway."  Ex. 26 to Def.'s Mem. Supp. Mot. Summ. J. (Mot. Lv. File Amici Curiae Mem.).

[7] At least two co-plaintiffs, Frederic and Linda Vicik, filed a quiet title action in King County, but chose to dismiss that action "in light of recent state and federal court decisions in other related lawsuits . . . and plaintiffs' desire to preserve any potential claims for compensation in the United States Court of Claims."

Supp. Part. J. ("Pls.' Mem.") at 12-13); (2) the contemporary meaning of the term "right of way" (Pls. Mem. at 24-28); (3) Burke's conveyance to the railroad (Pls.' Mem. at 29-30); and (4) Burke's tour with potential investors (Nov. 13, 2006 Tr. at 85-88). Here, Plaintiffs do not argue that Hilchkanum put his homestead application at risk if he conveyed fee simple title to the railroad, rather they make the identical argument with respect to Davis' homestead application. (Pls.' Mem. at 31-35). Additionally, Hilchkanum's subsequent conveyances were introduced in both actions. <u>See</u> Groen Decl., ¶ 5.k-p.

Moreover, the Rays introduced evidence in their action against King County that was not submitted here. <u>See</u> Groen Decl., ¶ 4. To the extent that the Rays and co-plaintiffs in this action submitted evidence here that was not introduced in the state court proceedings, it apparently was a tactical decision as the Plaintiffs produced the documents they rely upon in support of their arguments, showing that the same documents were available for their (or their experts') use in both actions. Accordingly, nothing is accomplished by allowing the second action by the co-plaintiffs, because they substantially rely upon the same evidence as the Rays in their quiet title action.

Because the co-plaintiffs participated in the prior action, the issue regarding the Hilchkanum deed was fully and fairly litigated in <u>Ray v. King County</u>, and the documentary evidence is substantially the same, a sufficient number of factors exist to apply the virtual representation doctrine to satisfy the third criterion to apply collateral estoppel. This criterion being met, along with the other criteria discussed above, those co-plaintiffs identified in note 5,

<u>supra</u>, should be collaterally estopped.[8/]

### C. The U.S. Supreme Court's Decision in <u>Lance v. Dennis</u> and the <u>Rooker</u>-<u>Feldman</u> Doctrine Do Not Apply, Here

The Court asked the parties to address whether the U.S. Supreme Court's decision in <u>Lance v. Dennis</u>, 126 S. Ct. 1198 (2006) has any bearing on the issue of collateral estoppel now before the Court. <u>See</u> Nov. 14, 2006 Tr. at 252–53. The Court also asked the parties to address whether the <u>Rooker</u>-<u>Feldman</u> doctrine, which is addressed in <u>Lance v. Dennis</u>, applies in this case. These issues are addressed, separately, below.

### 1. <u>Lance v. Dennis</u> Does Not Apply

The U.S. Supreme Court's decision in <u>Lance v. Dennis</u>, 126 S. Ct. 1198 (2006) does not apply to the issues now before this Court. In <u>Lance</u>, the Supreme Court held that the <u>Rooker</u>-<u>Feldman</u> doctrine[9/] does not apply against non-parties to a prior state court judgment, regardless of privity principles in preclusion doctrines. <u>Lance</u>, 126 S. Ct. at 1202-03. "The <u>Rooker</u>-<u>Feldman</u> doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" <u>Id.</u> at 1199 (<u>quoting</u> <u>Exxon Mobil Corp. v. Saudi Basic Industries Corp.</u>, 544 U.S. 280, 284 (2005)).

---

[8/] Other co-plaintiffs also may have participated in, or were fully aware of, the Rays' suit, as the Rays acknowledged that they were "directly supported by numerous neighbors" in their suit against the County. <u>See</u> Ex. 20 to Def.'s Mem. Supp. Summ. J. at 14. These and similar facts may be appropriate subject matter for limited discovery, as additional co-plaintiffs appropriately may fall within the operation of the virtual representation doctrine.

[9/] The doctrine's name is derived from two cases, namely, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983). <u>See</u> <u>Lance</u>, 126 S. Ct. at 1200-01.

Lance involved a federal suit brought by Colorado citizens who were challenging legislative redistricting in Colorado.  Id. at 1199.  The federal district court held that it lacked jurisdiction under the Rooker-Feldman doctrine because of a prior state-court action in which the Colorado General Assembly brought similar claims, and lost.  Id. (citing People ex rel. Salazar v. Davidson, 79 P.3d 1221, 1231 (Colo. 2003) (en banc), cert. denied, 541 U.S. 1093 (2004)).  The district court held that the Rooker-Feldman doctrine applied because the citizen-plaintiffs, although not parties, were in privity with the Colorado General Assembly.[10]

The Supreme Court reversed, finding that the "District Court erroneously conflated preclusion law with Rooker-Feldman."  Lance, 126 S. Ct. at 1202.  The "Rooker-Feldman [doctrine] is not simply preclusion by another name," and "applies only in 'limited circumstances,' where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court."  Id. (quoting Exxon Mobil, 544 U.S. at 291) (citation omitted).  The Supreme Court held in Lance that the "Rooker-Feldman doctrine does not bar actions by non-parties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."  Id.

Lance v. Dennis, therefore, merely held that the Rooker-Feldman doctrine may be applied only against parties who lost in state court.  As the Supreme Court made clear, that doctrine is entirely separate from preclusion principles.  Accordingly, Lance v. Dennis provides no guidance regarding the collateral estoppel issues now before this Court.

---

[10] Additional criteria applied by the district court, which are not pertinent here, include whether the claim raised in the federal suit was actually raised or inextricably intertwined with the state-court judgment, and whether the federal claim paralleled the state-court claim.  Lance, 126 S. Ct. at 1200 (quoting Lance v. Davidson, 379 F.Supp.2d 1117, 1124 (D. Colo. 2005)).

## 2. The Rooker-Feldman Doctrine Does Not Apply in this Case

As noted above, the Rooker-Feldman doctrine "applies only in 'limited circumstances,'" where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." Lance, 126 S.Ct. at 1202 (quoting Exxon Mobil, 544 U.S. at 291) (citation omitted). The doctrine is grounded upon the Supreme Court's exclusive federal appellate jurisdiction over state-court judgments, under 28 U.S.C. § 1257. Exxon Mobil, 544 U.S. at 283. Under Rooker-Feldman, a lower federal court does not have subject matter jurisdiction over claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [lower federal] court proceedings commenced and inviting [lower federal] court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. In other words, the "doctrine forbids claims that 'seek [ ] redress for an injury caused by the state-court decision itself' because they 'ask [ ] the federal district court to conduct an appellate review of the state-court decision.'" Adkins v. Rumsfeld, 464 F.3d 456, 464 (4th Cir. 2006) (quoting Davani v. Va. Dep't of Transp., 434 F.3d 712, 719 (4th Cir. 2006)) (modifications as in original).

Accordingly, the Supreme Court limits application of the Rooker-Feldman doctrine to those circumstances found in the cases from which it derives its name. See Exxon Mobil, 544 U.S. at 284, 291-92; see also note 9, supra. In Rooker, the parties that lost in state court brought an action in federal court alleging that the adverse state-court judgment violated the United States Constitution, and asked the federal court to declare it "null and void." Rooker, 263 U.S. at 414-15. The Supreme Court noted that, if the state-court decision were wrongly decided, "that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding." Id. at 415. The Rooker Court observed that only the United

States Supreme Court had appellate authority "to reverse or modify" a state-court judgment.  Id. at 416. Federal district courts, on the other hand, only have original jurisdiction.  Id.  The Rooker Court, therefore, affirmed dismissal of the action for lack of jurisdiction.  Id. at 415.

In Feldman, two applicants for the District of Columbia bar, Hickey and Feldman, petitioned the District of Columbia Court of Appeals to waive the court's requirement that bar applicants must have graduated from a law school accredited by the American Bar Association, which neither applicant had done.  Feldman, 460 U.S. at 464-73.   After their petition was denied, the applicants filed an action in U.S. District Court for the District of Columbia.  Id.  The Supreme Court granted certiorari after the district court and the U.S. Court of Appeals for the D.C. Circuit disagreed on the question of whether the federal suit could be maintained.  Id. at 474-75.   After noting that the district court lacked jurisdiction to review a final judicial decision of the D.C. high court, the Feldman Court addressed the question of whether the D.C. Court of Appeals' decision was judicial or legislative in nature.  Id. at 476.   The Supreme Court held that the D.C. Court of Appeals acted judicially when applying the accreditation rule and, therefore, the district court lacked subject matter jurisdiction "to the extent that Hickey and Feldman sought review . . . of the District of Columbia Court of Appeals' denial of their petitions for waiver."  Id. at 482.   The Supreme Court found, however, that the District of Columbia Court of Appeals acted legislatively when it promulgated the bar admission rules and, therefore, 28 U.S.C. § 1257 did not bar the district court from addressing the constitutionality of the accreditation rule itself. Feldman, 460 U.S. at 486.   Therefore, Hickey's and Feldman's constitutional challenges of the accreditation rule could be maintained, because those claims "do not require review of a judicial decision in a particular case."  Id. at 487.

In both <u>Rooker</u> and <u>Feldman</u> the losing parties in state court brought a federal court action seeking direct review of the state court's decision.  Here, neither the Rays nor their co-plaintiffs allege that they suffered any injury resulting from <u>Ray v. King County</u>, and they do not seek to directly overturn that decision, although they collaterally attack it.  This Court, therefore, is not divested of its jurisdiction under the <u>Rooker</u>-<u>Feldman</u> doctrine.

As discussed above, under the Full Faith and Credit Act, 28 U.S.C. § 1738, this Court must "give the same preclusive effect to [the] state-court judgment as another court of that State would give." <u>Exxon Mobil</u>, 544 U.S. at 293 (<u>quoting</u> <u>Parsons Steel, Inc. v. First Alabama Bank</u>, 474 U.S. 518, 523 (1986)) (internal quotation marks omitted).  Thus, while "there is jurisdiction[,] . . . state law determines whether the defendant prevails under principles of preclusion." <u>Id.</u> (<u>quoting</u> <u>GASH Assocs. v. Rosemont</u>, 995 F.2d 726, 728 (7th Cir. 1993)) (internal quotation marks omitted).

## IV.    CONCLUSION

Under the full faith and credit statute, 28 U.S.C. § 1738, the Court must give full effect to <u>Ray v. King County</u>, as determined by Washington preclusion law.  Under Washington law, the Rays should be collaterally estopped from relitigating whether the Hilchkanum deed conveyed fee simple title to the railroad.  Additionally, all of the Rays' co-plaintiffs should be collaterally estopped because they are in privity with the Rays.  Alternatively, should the Court find that no

privity exists, fourteen co-plaintiffs, identified in note 5, <u>supra</u>, were virtually represented by the

Rays, and should be collaterally estopped on that basis.

Respectfully submitted,

Sue Ellen Wooldridge
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

/s/ Bruce K. Trauben

_____
Bruce K. Trauben
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, D.C.  20004-0663
Tel.: (202) 305-0238
Fax: (202) 305-0267
Attorney for Defendant

Of Counsel:

Kelle S. Acock
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington D.C. 20004-0663

Dated: January 19, 2007