IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WARREN BERES, et al., | ) | **Nos. 03-785L, as Related to** |
| | ) | **SCHROEDER (No. 04-1456L), RAY** |
| Plaintiffs, | ) | **(No. 04-1457L), KLEIN (No. 04-1458L),** |
| v. | ) | **PETERSON (No. 04-1459L), SPENCER** |
| | ) | **(No. 04-1463L), NELSON (No. 04-** |
| THE UNITED STATES OF AMERICA, | ) | **1465L), MANNING (No. 04-1466L),** |
| | ) | **LANE (No. 04-1468L), and COLLINS** |
| Defendant. | ) | **(No. 04-1472L).** |
| | ) | |
| | ) | **Honorable Marian Blank Horn** |
| _____ | ) | |

## PLAINTIFFS' SUPPLEMENTAL BRIEF ON COLLATERAL ESTOPPEL

John M. Groen
GROEN STEPHENS & KLINGE LLP
11100 NE 8th Street, Suite 750
Bellevue, WA 98004
Telephone (425) 453-6206
Fax (425) 453-6224

Cecilia C. Fex
ACKERSON KAUFFMAN FEX, P.C.
1250 H Street N.W., Ste. 850
Washington, DC 20005
Telephone (202) 833-8833
Fax (202) 833-8831

*Attorneys for Plaintiffs*

Dated this 16th day of February, 2007

**Table of Contents**

INTRODUCTION ....................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.  UNDER WASHINGTON LAW, COLLATERAL ESTOPPEL SHOULD NOT BE
    APPLIED AGAINST KATHY AND JERRY RAY ........................................... 2

    A.  The United States Bears the Burden of Proof ......................................... 2

    B.  Substantive Injustice Will Occur ............................................................ 4

        1.  Washington Law Was Not Well Explained ..................................... 6

        2.  The Subsequent Exposition of the Law by the Washington Supreme Court
            in Kershaw Sunnyside Ranches Confirms That Applying Collateral
            Estoppel Against the Rays Would Work an Injustice ...................... 10

    C.  Procedural Injustice ............................................................................. 12

II. RAYS' CO-PLAINTIFFS ARE NOT BARRED BY COLLATERAL ESTOPPEL ....... 16

    A.  Privity to the Rays Is Not Established ................................................... 16

    B.  The Requirements for "Virtual Representation: Are Not Met ................ 21

CONCLUSION ......................................................................................................... 23

## Table of Authorities

**Cases**

*Barr v. Day*,
  69 Wash. App. 833 (Wash. Ct. App., 1993)........................................................2, 3

*Boeing v. Aeronautical Industrial Dist. Lodge*,
  91 F. Supp. 596 (W.D. Wash., 1950) ...................................................................21

*Bradley v. State*,
  73 Wash.2d 914 (1968) ...........................................................................................4

*Brown v. State*,
  130 Wash.2d 430 (1996) ...............................................................................*passim*

*Douthitt v. MacCulsky*,
  11 Wash 601 (1895) ...............................................................................................19

*Garcia v. Wilson*,
  63 Wash. App. 516 (Wash. Ct. App., 1991)........................................................3, 21

*Hanson Industries, Inc. v. County of Spokane*,
  114 Wash. App. 523 (2002) *review denied* 149 Wash.2d 1028 (2003) ..................7, 8, 9, 14

*Harris v. Ski Park Farms, Inc.*,
  62 Wash. App. 371 (1991)......................................................................................14

*Heriot v. Lewis*,
  35 Wash. App. 496 (1983)......................................................................................14

*International Nutrition Company v. Horphag Research Ltd.*,
  220 F.3d 1325 (Fed. Cir., 2000) ....................................................................17, 18

*Kershaw Sunnyside Ranches v. Yakima Interurban Lines Association*,
  156 Wash.2d 253 (2006) ...............................................................................*passim*

*Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*,
  121 Wash. App. 714 (2004) ...............................................................................9, 10

*Lance v. Dennis*,
  546 U.S. 459 (2006) ...............................................................................................23

*Litchfield v. Crane*,
 123 U.S. 549 (1887) ................................................................................................ 18, 19

*McDaniels v. Carlson*,
 108 Wash.2d 299, 303 (1987) ........................................................................................ 3

*Morsbach v. Thurston County*,
 152 Wash. 562 (1929) .................................................................................................. 11

*Munoz v. County of Imperial*,
 667 F.2d 811, 816 (9th Cir., 1982) .............................................................................. 21

*Old Windmill Ranch v. Smotherman*,
 69 Wash.2d 383 (1966) ................................................................................................ 14

*PUD 1 v. Tombari Family Partnership*,
 117 Wash.2d 803 (1991) ................................................................................................ 3

*Ray v. King County*,
 120 Wash. App 564 (2004) ....................................................................................*passim*

*Reninger v. State Department of Corrections*,
 134 Wash.2d 427, 449 (1998) ...................................................................................... 16

*Roeder Co. v. Burlington Northern*,
 105 Wash.2d 567 (1986) .............................................................................................. 11

*Shoemaker v. City of Bremerton*,
 109 Wash.2d 504, 507 (1987) .................................................................................. 2, 16

*Swan v. O'Leary*,
 37 Wash.2d 533, 535 (1950) ........................................................................................ 11

*Thompson v. State Department of Licensing*,
 138 Wash.2d 783 (1999) ......................................................................................... 4, 5, 6

*United States v. ITT Rayonier, Inc.*,
 627 F.2d 996, 1003 (9th Cir., 1980) ............................................................................ 17

*Veach v. Culp*,
 92 Wash.2d 570 (1979) ................................................................................................ 11

*World Wide Video v. City of Spokane*,
 125 Wash. App. 289, 304-07 (2005) ............................................................................ 21

**Other Authorities**

14A Wash. Prac., Civil Procedure § 35.36 (2007) ....................................................................4

## INTRODUCTION

In 1887, homesteaders Hilchkanum, Sbedzue, Takhalthkut, Davis, Palmberg, and Yonderpump all conveyed by deed a right of way to the Seattle, Lake Shore and Eastern Railway Company. Those deeds are identical in form and language. Pending before this Court is the determination as to what interest (easement or fee) the grantors and grantee intended to be conveyed by these deeds.

Jerry and Kathy Ray are successors to Hilchkanum. They filed a quiet title action in state court against King County seeking to resolve their dispute with King County as to ownership of the right of way as it traversed through the Rays' back yard. No other person or entity was a party to that lawsuit.

The present lawsuit was filed in this Court on September 15, 2004. At that time, the Rays' state court action against King County had not yet reached final judgment. The case remained pending on appeal. The Washington state court appellate process was concluded on December 2, 2004.

Jerry and Kathy Ray lost their state court action against King County. As part of that case, the state court ruled that Hilchkanum's 1887 deed granted fee title to the railroad. The United States now argues that under collateral estoppel principles, the state court determination precludes the Ray's from seeking compensation in this court.

The United States does **not** contend that the state court decision in *Ray v. King County*, 120 Wash. App 564 (2004) has collateral estoppel effect regarding the deeds executed by Sbedzue, Takhalthkut, Davis, Palmberg, and Yonderpump.

1

**ARGUMENT**

**I.**

**UNDER WASHINGTON LAW, COLLATERAL ESTOPPEL
SHOULD NOT BE APPLIED AGAINST KATHY AND JERRY RAY**

The United States argues that this Court must apply Washington law on collateral estoppel/issue preclusion. The Plaintiffs agree. The preclusive effect of *Ray v. King County* must be determined under Washington state law.

The parties also agree as to the four basic elements necessary to be shown under Washington law in order to give collateral estoppel effect to a prior decision.

> The elements of collateral estoppel have been stated as follows: (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Shoemaker v. City of Bremerton*, 109 Wash.2d 504, 507 (1987).

With respect to Jerry and Kathy Ray, only the application of the fourth element is in dispute. The United States contends that applying collateral estoppel against the Rays will not work an injustice. The Rays refute that contention.

A.    The United States Bears the Burden of Proof

At page 15 of its supplemental brief, the United States cites *Barr v. Day*, 69 Wash. App. 833, 843 (Wash. Ct. App., 1993) for the proposition that the Rays have the burden of proof to show that application of collateral estoppel will work an injustice. The Plaintiffs acknowledge that such a statement can be found at jump page 843. But the United States

2

ignores the fact that the very same case, at jump page 841, places the burden on the party

asserting collateral estoppel.  In this case, that would be the United States.

> The party asserting application of the doctrine of collateral
> estoppel has the burden of establishing the four factors.

*Barr*, 69 Wash. App. at 841 (emphasis added).  Given the inconsistency within this opinion, it

must carry little precedential weight on this issue.

As alternative authority regarding the burden of proof, the United States cites *Garcia*

*v. Wilson*, 63 Wash. App. 516, 522-23 (Wash. Ct. App., 1991).  Again, Plaintiffs acknowledge

that footnote 19 at jump page 522 contains such a statement.  But there are two problems with

that footnote.  First, the authority cited in footnote 19 is *PUD 1 v. Tombari Family*

*Partnership*, 117 Wash.2d 803 (1991).  The *Tombari* decision is very short, less than 2 pages,

and it contains no holding or discussion whatsoever regarding the burden of proof on

collateral estoppel.  Second, in *Garcia v. Wilson*, the court expressly acknowledged that the

burden rests on the party asserting estoppel.

> The Wilsons, as the party asserting collateral estoppel, have the
> burden of establishing the presence of these factors.

*Garcia*, 63 Wash. App. at 518.  As with *Barr v. Day*, the inconsistent statements within this

intermediate appellate court decision renders it of minimal precedential value.

The better authority is from the Washington Supreme Court.  That authority

consistently holds that the burden of proof to establish the four elements of collateral estoppel

rests on the party asserting its application.  After identifying the four factors, the Court in

*McDaniels v. Carlson*, 108 Wash.2d 299, 303 (1987), unequivocally stated: "The burden of

3

proof is on the party asserting estoppel." *See also Bradley v. State*, 73 Wash.2d 914, 917 (1968).

Given the Supreme Court precedent, it is not a surprise that the Washington Practice Series likewise states the rule as follows:

> [T]he party asserting collateral estoppel bears the burden of persuading the court that application of the doctrine would not work an injustice.

14A Wash. Prac., Civil Procedure § 35.36 (2007).

In short, the United States has the burden of persuading this Court that applying collateral estoppel against the Rays will not work an injustice.

B.     Substantive Injustice Will Occur

The United States contends that no injustice will result to the Rays because the prior state court adjudication provided for a full and fair hearing.  The United States points out that the Rays were able to submit briefs, exhibits, affidavits, provide oral argument and vigorously litigate the fee/easement issue.

The Rays disagree that they received procedural justice.  As will be discussed in detail in the next section, the Washington appellate court unilaterally created "facts" which were untrue.  Those false "facts" were then utilized in the court's analysis to support the ruling against the Rays.  Because these "facts" were stated for the first time on appeal by the reviewing court, the Rays had no opportunity for a full and fair hearing regarding those "facts."  However, that procedural irregularity will be discussed in the next section.

Unfortunately, completely absent from the United States' argument regarding injustice is any reference at all to *Thompson v. State Department of Licensing*, 138 Wash.2d 783

(1999).  *Thompson* is the most critical case dealing with the "injustice" factor of the collateral

estoppel issue.  As stated by the Court,

> The fourth part of the collateral estoppel analysis asks whether
> application of the doctrine would result in an injustice.  The
> injustice inquiry had its origin in *Henderson v. Bardahl Int'l
> Corp.*, where we said, "It is generally recognized that the
> doctrine of … collateral estoppel … is not to be applied so rigidly
> as to defeat the ends of justice, or to work an injustice."  *Accord
> Reninger v. Department of Corrections*, (testing for **injustice** a
> "**fundamental aspect**" of collateral estoppel doctrine).
>
> **The issue** in this case is what is meant by injustice.

*Thompson*, 138 Wash.2d at 794 (citations omitted) (emphasis added).

There is no debate regarding procedural injustice.  The *Thompson* decision affirmed

that the injustice prong is "rooted in procedural unfairness."  *Id*. at 795-96.  However, with

respect to **substantive injustice**, the Court explained that there was "dissonance in our cases

on the meaning of the injustice prong of the collateral estoppel doctrine."  *Id*. at 795.

The State argued that the injustice prong included substantive injustice, meaning that

if the prior court erred on the law, the subsequent court should not be bound by the prior

ruling.  *Id*.  The Washington Supreme Court rejected the State's attempt to establish a broad

rule for substantive injustice.  *Id*. (such ruling would "eviscerate the collateral estoppel

doctrine").  *Id*.  However, while the Court was not willing to recognize a broad rule of

substantive injustice, *Thompson* carefully retains substantive injustice in certain limited

circumstances.

> In summary, the injustice prong of the collateral estoppel
> doctrine calls from an examination primarily of procedural
> regularity.  This is **not** to rule out substantive analysis entirely, as
> when, for instance, there is an intervening change in the law, *or*

> *the law applicable at the time of the first hearing was not well explained and required subsequent exposition*.

*Id*. at 799 (italics and bold added).  Accordingly, Washington law holds that applying collateral estoppel can work an injustice where the prior adjudication was burdened by unclear and poorly explained precedent.

The Rays contend that at the time of the state court appeal, Washington law regarding the fee/easement issue was not well explained and required subsequent exposition.  That subsequent exposition came in the form of the Washington Supreme Court's decision in *Kershaw Sunnyside Ranches v. Yakima Interurban Lines Association*, 156 Wash.2d 253 (2006).

 1. <u>Washington Law Was Not Well Explained</u>

In its Order certifying the fee/easement question to the Washington Supreme Court, this Court recognized the problems in Washington law regarding interpretation of railroad right of way deeds.

> Despite the existence of some relevant, previously issued decisions, this court is of the opinion that it is necessary to ascertain the local law of the State of Washington … and the **local law has not been clearly determined**.

Order on Certification, June 23, 2005, at 3 (emphasis added).

In *Brown v. State*, 130 Wash.2d 430, 437 (1996), the Washington Supreme Court acknowledged there was "considerable disarray" in deed interpretation decisions.  To its credit, the Washington Supreme Court attempted in *Brown* to clarify state law on this subject.  The Court described seven factors that could be relied on to examine railroad right of way deeds, as well as an undefined "many other considerations."  *Id*. at 438.  Unfortunately, the

opinion in *Brown* created its own ambiguities which this Court recognized in its June 23,

2005 Order on Certification.  This Court wrote:

> The [*Brown*] court, however, did not discuss whether each factor
> would have to be considered in future lower court cases, or
> whether different weight should be accorded to different factors
> of the test.  Moreover, the court did not give examples of what it
> considered to be the relevant "many other considerations"
> included in factor seven.

Order on Certification at 6-7.

As a result, the *Brown* factors are replete with ambiguity because they involve

subjective determinations.  This is illustrated by the comparison of the majority and dissenting

opinions in *Ray v. King County*, 120 Wash. App. 564 (2004).  Although both opinions attempt

to apply the *Brown* factors, the respective judges reached completely the opposite results.  As

this Court observed:

> Although both opinions analyzed the *Brown* factors, due to the
> nature of those factors and the issues under consideration, a
> number of subjective, deductive and discretionary judgments
> were involved when applying the *Brown* guidelines to the
> Hilchkanum deed by both the majority and dissenting judges.

Order on Certification at 8.

The post-*Brown* difficulties are further illustrated by the conflicting decisions in *Ray v.*

*King County* and *Hanson Industries, Inc. v. County of Spokane*, 114 Wash. App. 523 (2002)

*review denied* 149 Wash.2d 1028 (2003).  Both decisions attempt to follow *Brown*, yet the

respective understanding of Washington law is hopelessly conflicting.

Division III of the Washington Court of Appeals concluded in *Hanson Industries* that

the subject deeds conveyed only an easement to the railroad, and not fee title.  After

reviewing Washington law, including *Brown v. State*, Division III stated its understanding of the law as follows:

> Washington decisions have consistently interpreted deeds granting a strip of land for a railroad right-of-way as conveying an easement, even in the face of traditional factors signifying a fee. Thus, **if the words "right-of-way" appear in the granting clause, the interest conveyed is an easement**, even if the deed is in the statutory warranty form, uses the words "fee simple," contains covenants of warranty, a habendum clause conveying the land "forever," and other indicia of fee simp le.  *Morsbach* is the principal Washington case for this general rule.

*Hanson Industries*, 114 Wash. App. at 528-29  (citations omitted) (emphasis added).

Under this view of Washington law, as stated by Division III, the Hilchkanum deed (and other homesteaders' deeds) undoubtedly conveyed only an easement.  To drive this point home, Division III explained:

> *Brown* holds that a statutory warranty deed purporting to convey fee simple will, nonetheless, be interpreted as **conveying an easement if the words "right-of-way" appear in the granting clause**.  *Brown*, 130 Wash.2d at 438, 924 P.2d 908.

*Hanson Industries*, 114 Wash. App. at 529 (emphasis added).  *See also* Order on Certification at 8 (discussing *Hanson Industries*).

In short, Division III understands *Brown* to mean that use of the term right of way in the granting clause is so significant that it will even overcome a statutory warranty deed that purports to convey fee simple title.  In contrast, Division I in *Ray v. King County* refused to find an easement even where the granting clause expressly conveyed a "right of way" and the deed was **not** in statutory warranty form.

The conflicting analysis of these deed attributes was recognized by this Court in the Order on Certification.

> Although the court did not quote the full language of the deeds at
> issue in <u>Hanson Industries</u>, many of the attributes of the deeds
> that it specifically discussed are also present in the deeds at issue
> in the above-captioned cases, including in the <u>Ray</u> case.

Order on certification at 10.

The inconsistent holdings in the post-*Brown* time frame is further illustrated by the Washington Court of Appeals decision in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n*, 121 Wash. App. 714, 725 (2004).  In the Order on Certification, this Court summarized as follows:

> The Court of Appeals of Washington, Division III, panel's
> decision in <u>Kershaw Sunnyside Ranches</u>, … also seems to
> conflict with the Court of Appeals of Washington, Division I, in
> the <u>Ray v. King County</u> case.  In <u>Kershaw</u>, the Court of Appeals
> of Washington, once again and **after** the <u>Brown</u> decision,
> recognized the inconsistent holdings of the many courts that have
> reviewed the fee versus easement issue.

Order on Certification at 10 (citations omitted) (bold added).

Your undersigned is here only attempting to provide a brief synopsis of the post-*Brown* problems in Washington law on railroad deed interpretation.  A much more detailed analysis is already part of the record in the Order on Certification.  That Order concludes as follows:

> After reviewing the numerous Washington state court opinions
> interpreting private deeds conveying railroad rights-of-way, this
> court believes that the lower courts in the State of Washington, as
> well as federal courts would benefit from further guidance from
> the Supreme Court of Washington.  Although the highest court in
> the state has identified a list of review criteria, deed interpretation
> regarding railroad rights-of-way has taken **two parallel tracks**.
> **On the one hand**, some Washington state courts adhere to the
> strict presumption that if the purpose of a deed is to grant a right-
> of-way to a railroad, and the deed uses the term 'right-of-way" in
> its granting clause, then the deed passes an easement only.  **On**

> **the other hand**, a Washington state court panel has chosen
> which of the seven factors identified in <u>Brown</u> to apply or has
> turned to reviewing "other considerations," also acknowledged in
> <u>Brown</u>, as an element to ascertain the intent of the parties.

Order on Certification at 12-13 (citations omitted) (emphasis added).

Stated succinctly,

> [T]he reasoning set forth to interpret the Hilchkanum deed [in
> <u>Ray v. King County</u>] is not consistent with the reasoning set forth
> in <u>Hanson Industries</u> …

Order on Certification at 13.

In short, the conflicting post-*Brown* decisions demonstrate that the law on fee versus
easement was not well explained.  Subsequent exposition was needed.  This conclusion is
underscored by this Court's decision to certify the fee/easement issue to the Washington
Supreme Court.

    2.    The Subsequent Exposition of the Law by the Washington Supreme Court in
Kershaw Sunnyside Ranches Confirms That Applying Collateral Estoppel
<u>Against the Rays Would Work an Injustice</u>

When this Court issued its Order on Certification, it was unknown that *Kershaw
Sunnyside Ranches* was already pending before the Washington Supreme Court.  The certified
record was transferred to the Washington Supreme Court on approximately August 31, 2005.
The Washington Supreme Court declined to accept the certified question on approximately
October 7, 2005.  Although the Supreme Court could not state that an opinion addressing this
area of the law was already decided and going through the final editing and cite-checking
steps before publication, that is exactly what was occurring.  On January 12, 2006, the Court
released its decision in *Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines
Association*, 156 Wash.2d 253 (January 12, 2006).

The *Kershaw* decision sheds considerable light on the application of the *Brown* factors.  *See generally Kershaw*, 156 Wash.2d at 267-70.  However, in applying the *Brown* factors, the Court affirmed prior Washington cases recognizing that when the granting clause conveys a "right of way" for a railroad, the deed  passes an easement only.  *Id*. at 263, citing *Swan v. O'Leary*, 37 Wash.2d 533, 535 (1950); *Morsbach v. Thurston County*, 152 Wash. 562 (1929); *Roeder Co. v. Burlington Northern*, 105 Wash.2d 567 (1986); *Veach v. Culp*, 92 Wash.2d 570, 572-74 (1979) ('the use of the term 'right -of-way' in the granting clause **trumped** other considerations and reflected intent to create an easement only") (emphasis added).

> Turning to the deed at issue here, according to *Morsbach*, *Swan*, *Veach* and *Roeder*, the language in the granting clause purporting to convey a "strip of land seventy five feet wide, in, along, over and through the hereinafter described land …as  a **right of way** for a railway forever," **presumptively** operates to convey an **easement** only.  *Brown* did not purport to overrule these cases. …Like the cases finding an easement, and unlike the deeds in *Brown*, the word "right of way" is used  to establish the purpose of the grant and thus **presumptively** conveys an easement interest.

*Kershaw*, 156 Wash.2d at 265-66 (emphasis added).

While the *Kershaw* opinion retains the *Brown* factors, it also is clear that in those cases where the granting clause expressly conveys a "right of way," the presumption will be that only an easement interest is conveyed.

> [O]ur previous cases, which *Brown* does not overrule, and in fact incorporates, establish that whether by quitclaim or warranty deed, language establishing that a conveyance is for **right of way** or railroad purposes **presumptively** conveys an easement and thus provides the "additional language" which "expressly limits or qualifies the interest conveyed."

*Kershaw*, 156 Wash.2d at 270.

By establishing this presumption within the context of the *Brown* factors, the *Kershaw* Court has defined the weight to be given such language.  Such deed language presumptively conveys only an easement.  Of course, the law set forth in *Kershaw* cannot be squared with the Court of Appeals' decision in *Ray v. King County*.  The *Ray* court weighed other factors much more heavily and applied no presumption of easement based on the granting clause express language conveying a "right of way."

Footnote 11 in *Kershaw* distinguishes *Ray v. King County*.  However, the distinction is a false one.  The *Kershaw* Court was under the incorrect assumption that the term "right of way" was used in the Hilchkanum deed "**only** to the extent that it stated it was conveying a 'right of way strip."  *Kershaw*, 156 Wash.2d at 270 n.11 (emphasis added).  Of course, this basis for distinction does not withstand scrutiny.  While the term "right of way strip" is found in the second clause of the Hilchkanum deed (describing the location), the granting clause expressly uses the term "right of way" to identify the interest being conveyed to the rai lroad.  Accordingly, when correctly read, the Hilchkanum granting clause is squarely within the *Swan* line of authority that is affirmed by *Kershaw*.

C.      Procedural Injustice

As mentioned above, the Rays also contend that they have incurred procedural injustice.  In the prior adjudication, the case was before the Court of Appeals on summary judgment.  Nevertheless, to the amazement of your undersigned, the appellate court made statements in its decision that amount to findings of fact.  Specifically, the appellate court

concluded that the Hilchkanum deed was written by a person named B.J. Tallman.  The Court stated:

> [E]xamination of the deed shows that it is entirely handwritten, apparently by the same person.  Both the language of the main part of the deed, as well as the acknowledgment, is in the handwriting of the notary who acknowledged the signatures of the Hilchkanums, B.J. Tallman.  Nothing in the record indicates he was the agent of the Railway.

*Ray*, 120 Wash. App. at 586.

No party in the appeal had ever suggested that the deed was in the handwriting of B.J. Tallman, or that he was the person who drafted the Hilchkanum deed.  The Court of Appeals came up with that notion all by itself.

This Court has already heard substantial evidence regarding the drafting and recording of these deeds in 1887.  The United States has not taken issue with the evidence showing that the Hilchkanum deed, and all the other identical deeds were drafted by the railroad.  Moreover, the handwritten versions are simply handwritten copies used by the County recording office.  They are handwritten because modern copy equipment was not available.

Most important, the Rays had submitted evidence that the Hilchkanum deed was the product of the railroad company.

> The Rays also submitted an affidavit from an expert who opined that "given the use of pre-printed deeds, and given Hilchkanum's illiteracy, there appears no doubt that Hilchkanum did not draft the deed; but rather, it was the product of the railroad company."

*Ray v. King County*, 120 Wash. App. at 595 (Baker, J., dissenting).  In concluding that the deed was written by B.J. Tallman, the majority completely ignored that evidence.

13

The appellate court's factual finding that B.J. Tallman drafted the Hilc hkanum deed, rather than the railroad, was a finding material to the legal analysis. This factual finding allowed the majority to apply against the Rays the Washington law recognizing that ambiguities in a deed are construed against the party who drafted the deed. *Harris v. Ski Park Farms, Inc.*, 62 Wash. App. 371 (1991); *see Ray*, 120 Wash. App. at 595 (Baker, J. dissenting); *see also Hanson Industries*, 114 Wash. App. at 531 (ambiguity resolved against railroad who drafted the deed). Rather than applying this law against the railroad, the *Ray* majority concluded that it would "construe the deed against the Hilchkanums." *Ray*, 120 Wash. App. at 587.

It is axiomatic that an appellate court is not to engage in fact-finding. *Old Windmill Ranch v. Smotherman*, 69 Wash.2d 383, 390 (1966) ("We cannot make findings of fact"); *Heriot v. Lewis*, 35 Wash. App. 496, 501 (1983) ("We, of course, are not a factfinding body"). Such procedural irregularity is even more egregious when such facts are not only absent from the record, but are patently false.

Under these circumstances, the Rays had no opportunity for full and fair litigation regarding whether B.J. Tallman actually drafted the Hilchkanum deed. That "fact" was never asserted until it appeared for the first time in the appellate decision. But by then, it was too late to submit evidence. Of course, this is why it is axiomatic that an appellate court is not a fact-finding body.

The Rays, along with the other plaintiffs, have submitted substantial evidence to this Court showing that B.J. Tallman worked regularly for the Burke & Haller law firm that represented the railroad on the deed acquisitions. The plaintiffs have argued that this evidence supports the inference that Tallman did not represent Hilchkanum, but he represented the railroad

company.  Moreover, the plaintiffs have submitted more evidence and argument showing that the deeds were the product of the railroad company.  The plaintiffs have asked this Court to render a finding of fact on this issue.

Under these circumstances, the appellate court engaged in procedural irregularity that undermined the fairness of the litigation.  That injustice will only be compounded by now precluding the Rays from seeking compensation in this Court for the taking of their property.

The United States was not a party to the prior adjudication.  Accordingly, the policy of applying collateral estoppel to prevent a defendant from being subjected to multiple lawsuits by the Rays is not applicable.  Nor is the policy to conserve judicial resources applicable.  Excluding the Rays from this litigation will not diminish the work this Court is doing in resolving the fee/easement issue for all the other numerous plaintiffs that remain before this Court.  That work will be done whether the Rays are in this case or not.

If this Court renders factual findings that Palmberg, Sbedzue, Davis, Takhalthkut, Yonderpump and the Seattle Lake Shore and Eastern Railway Company intended the deeds to convey a mere easement, the successor plaintiffs will be able to proceed with their claims for compensation.  There really can be no doubt that the same intent should apply to the Hilchkanum deed since it uses the same language, drafted by the same railroad, for the same rail line.  Accordingly, if collateral estoppel is applied against the Rays, and they are dismissed, the effect of the Washington Court of Appeals' decisions will be legalized theft.  Fortunately, Washington law provides that collateral estoppel should not be applied in a circumstance such as this.

In conclusion, Washington law recognizes that where procedural injustice occurs, collateral estoppel will not be applied.  Similarly, collateral estoppel will not be applied when the

applicable law was not well explained and subsequent exposition was needed.  Both of these grounds are present in this case.  The United States has not met its burden of showing that collateral estoppel will not work an injustice against the Rays.

## II.

### RAYS' CO-PLAINTIFFS ARE NOT BARRED BY COLLATERAL ESTOPPEL

The United States argues that other plaintiffs who are successors to Hilchkanum, but who were **not parties** in *Ray v. King County*, should also be subjected to collateral estoppel on the fee/easement issue.  To support its contention, the United States misanalyzes the applicable law regarding privity.

A.      Privity to the Rays Is Not Established

The third element that must be established to apply collateral estoppel is:

> (3) the party against whom the plea is asserted must have been a party to or in privity **with a party** to the prior adjudication.

*Shoemaker*, 109 Wash.2d at 507 (emphasis added); *see also Reninger v. State Department of Corrections*, 134 Wash.2d 427, 449 (1998).  For purposes here, the key is that the nonparty must be shown to be in privity "with a party."  In this case, the United States would have to show that the neighbors are in privity with Jerry and Kathy Ray.

Rather than showing that the neighbors are in privity with the Rays, the United States relies on the position that the neighbors are in privity with Hilchkanum.  Certainly, the neighbors are successors to Hilchkanum.  However, Hilchkanum was **not a party** to the Ray's lawsuit.

The case law cited by the United States actually supports the position of the plaintiffs.  For example, the Government cites *United States v. ITT Rayonier, Inc.*, 627 F.2d 996, 1003

16

(9th Cir., 1980) for the proposition that privity requires a "substantial identity" between

parties.  But this case does not help the Government's cause.

> The doctrine of privity extends the conclusive effect of a
> judgment to nonparties who are in privity **with parties** to an
> earlier action.

*Id*. (emphasis added).  The court explained that privity extends to those "whose interests are

represented by one **with authority** to do so."  *Id*. (emphasis added).  The United States

provides no evidence or argument to show that the Rays had "authority" to represent the

interests of other property owners who were not in that lawsuit.  Indeed, no such authority

existed.

Likewise, with respect to the "virtual representative" argument, *ITT Rayonier* states:

> This contemplates an express or implied **legal relationship** by
> which parties to the first suit are accountable to non-parties who
> file a subsequent suit with identical issues.

*Id*. (emphasis added).  The Rays have no legal relationship or accountability to the other

property owners who happen to be successors from the Hilchkanum deed.

Other federal cases cited by the United States further support the plaintiffs.

*International Nutrition Company v. Horphag Research Ltd.*, 220 F.3d 1325 (Fed. Cir., 2000)

states:

> One situation in which parties have frequently been held to be in
> privity is when they hold successive interests in the **same**
> **property**.

*Id*. (emphasis added).  The United States uses this language to argue that as successors to the

same Hilchkanum parcel, all the neighbors are in privity to each other.  That is an incorrect

interpretation of this language.

17

The original Hilchkanum parcel no longer exists.  It has been divided into numerous separate parcels that are owned by numerous different people.  In order to establish privity, it must be shown that the **same parcel** was transferred between the Rays and whoever is claimed to be in privity with the Rays.  So, for example, if the Rays sold their parcel to a subsequent owner, the new owner would be in privity with the Rays.  This distinction is made clear in *International Nutrition*.

> [W]hen one party is a successor in interest to another with respect to a particular parcel, the parties are in privity only with respect to an adjudication of rights in the property that was transferred; they are not in privity for other purposes, such as an adjudication of rights in other property that was never transferred between the two.

*Id.*, 220 F.3d at 1329.  Here, the United States has not shown any transfers of property between the Rays and any of their neighbors.

The United States also cites *Litchfield v. Crane*, 123 U.S. 549 (1887).  Again, that case supports the plaintiffs.  Mrs. Litchfield was an owner of land that was described in an action to recover taxes paid by a homestead company.  While a description of Mrs. Litchfield's property was included, along with numerous other parcels and property owners, Mrs. Litchfield was not named as a defendant in the prior adjudication.

The Court rejected the homestead company's attempt to apply collateral estoppel.  Although lengthy, the quote is worthwhile.

> The defense of prior adjudication is disposed of by the fact that Mrs. Litchfield was not a party to the suit in which adjudication relied on was had.  At the time of the commencement of the suit, she was the owner of her lands, and they were described in the bill, but neither she nor any one who represented her title was named as a defendant.  … If [the decision] had b een adverse to her interest, no decree could have been entered against her

> personally, either for the lands or for the taxes.  Her lands were
> entirely separate and distinct from those of the actual parties.  A
> decree in favor or against them and their title was, in no legal
> sense, a decree in favor or against her.  She was indirectly
> interested in the result, but not directly.  As the questions
> affecting her own title and her own liability were similar to those
> involved in the suit, **the decision could be used as a judicial
> precedent** in a proceeding against her, but not as a judgment
> binding on her and conclusive as to her rights.

*Litchfield*, 123 U.S. at 550 (emphasis added).  The same situation is present here.  The

neighbors within the Hilchkanum area are certainly interested in *Ray v. King County*.  But

their properties are separate from Jerry and Kathy Ray's parcel.  Accordingly, while the

decision in *Ray v. King County* can be used as judicial precedent against them, the decision is

not binding on their distinct claims for compensation regarding their separate property

ownerships.

Turning to Washington law, the United States cites *Douthitt v. MacCulsky*, 11 Wash

601, 610 (1895).  That case involved several foreclosure suits based on liens for materials

furnished for construction of a building.  The husband was the named defendant in all of the

suits, and in several suits the wife was also named as a defendant based on community

property laws.  The Court stated:

> It is also a most obvious principle of justice that no man ought to
> be bound by proceedings to which he was a stranger. … Under
> the term 'parties," in this connection, the law includes all  who
> are directly interested in the subject-matter, **and** had a **right to
> make defense** or to **control the proceedings** and to appeal from
> the judgment.

*Id*. (emphasis added).  While the wife was held to be in privity to the husband, there is no

contention by the United States that the neighbors here had a similar right to control the Rays'

lawsuit.  This case does not establish privity between the Rays and the property owners.

The Washington Supreme Court addressed "privity" in *United States v. Deaconess Medical Center*, 140 Wash.2d 104 (2000).

> Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts.   Privity within the meaning of the doctrine of res judicata is privity as it exists in relation to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title.  It denotes mutual or successive relationship to the same right or property.

*Id*. at 111.  Of course, the subject matter of *Ray v. King County* was the ownership of Jerry and Kathy Ray's particular parcel.  As explained above, privity with the Rays can be shown only by a transfer between the Rays and a successive owner of their property.  The next sentence in *Deaconess Medical Center* makes this point very clear.

> The binding effect of the adjudication flows from the fact that when the successor acquires an interest in the right it is then affected by the adjudication in the hands of the former owner.

*Id*.

In short, while the Rays' neighbors are interested in the same question regarding fee/easement, they were not parties to the Rays' quiet title action.  Nor are they in privity with the Rays.  There has been no transfer of property between the Rays and any of these other plaintiffs.  No other grounds for establishing privity has been shown.  While the neighbors are successors from Hilchkanum, he was not a party to any lawsuit.  Privity between the Rays and their neighbors does not exist.

20

B.      <u>The Requirements for "Virtual Representation" Are Not Met</u>

While Washington recognizes the virtual representation doctrine, "such preclusion must be applied cautiously in order to ensure that the nonparty is not unjustly deprived of her day in court." *Garcia v. Wilson*, 63 Wash. App. 516, 520 (1991).

> The **primary** factor to be considered is whether the nonparty in some way participated in the former adjudication, for instance as a witness.

*Id*. at 521 (emphasis added).

The only participation the United States asserts is that some of the plaintiffs joined an amicus brief urging the Washington Supreme Court to grant review of the Court of Appeals' decision in *Ray v. King County*.  But the filing of an amicus brief has never been a sufficient basis to apply collateral estoppel.

> [P]laintiffs are not privies as if bound by the state proceeding, because they did not control the state court proceeding. … Munoz entered as amicus curiae before the California Supreme Court, but the filing of an amicus brief has never been enough to bind a non-party to the result of a proceeding.

*Munoz c. County of Imperial*, 667 F.2d 811, 816 (9th Cir., 1982).  *See also Boeing v. Aeronautical Industrial Dist. Lodge*, 91 F. Supp. 596, 602 (W.D. Wash., 1950).

The present case is factually distinct from *Garcia v. Wilson*.  In that case, the nonparty was a witness in the trial and was a passenger in the car involved in the traffic accident. There is no similar showing of participation by the nonparties to *Ray v. King County*.

Similarly, in *World Wide Video v. City of Spokane*, 125 Wash. App. 289, 304-07 (2005), an adult video company brought a challenge to restrictions imposed by the City of Spokane.  The nonparty was the owner of certain buildings being leased to the adult video

company.  Although not a party to the case, the nonparty was subject to collateral estoppel under the virtual representation doctrine because he was directly involved in the lawsuit and participated as a witness on behalf of his tenants.  The nonparty could also have intervened in the case to protect his interest in the leases.  Of course, there are no similar allegations by the United States showing participation by the Rays' neighbors in *Ray v. King County*.  No neighbors testified, provided affidavits, or in any way controlled the litigation.  In short, without meeting the requirement of participation, the virtual representation doctrine cannot be applied against the nonparties.

The United States suggests that in the case at bar, the plaintiffs rely on substantially the same evidence that was used in *Ray v. King County*.  That is simply not true.  While a few items of evidence are the same, much more evidence has been developed and presented in the case at bar.  At page 22 of Defendant's Supplemental Brief, the United States identifies only a handful of documents that are common to both cases.  In contrast, the Joint Appendix contains 149 exhibits.  These exhibits include numerous newspaper articles, deeds, information regarding Judge Burke, B.J. Tallman, "Railroad Avenue," and numerous other documents all utilized to demonstrate the intent of the parties in 1887.  No similar showing was made in *Ray v. King County*.

If the Court schedules oral argument on the collateral estoppel issue, your undersigned can demonstrate in detail the substantial evidentiary difference between these two cases.  Such a presentation is best made orally with "hands on" use of the Joint Appendix books.

In short, the facts do not give rise to collateral estoppel against the neighbors.  The Rays were not the virtual representatives of anyone.  They pursued their own case for their

22

own reasons.  Nonparties who did not participate and are not in privity cannot be bound by the decision in *Ray v. King County*.

## CONCLUSION

The plaintiffs agree with the United States that *Lance v. Dennis*, 546 U.S. 459 (2006) and the *Rooker-Feldman* doctrine do not preclude this Court's exercise of jurisdiction in this case.  If anything, *Lance v. Dennis* indicates a reluctance to bar plaintiffs from proceeding in federal courts.

For the foregoing reasons, the plaintiffs respectfully urge that neither the Rays, or other plaintiffs within the Hilchkanum area, should be precluded from pursuing their claims on the basis of collateral estoppel.


RESPECTFULLY SUBMITTED this 16th day of February, 2007.


By: _____*s/ John M. Groen*_____            By: _____*s/ Cecilia C. Fex*_____
    John M. Groen                                      Cecilia C. Fex
    Attorneys for Plaintiffs                           Attorneys for Plaintiffs

    GROEN STEPHENS & KLINGE LLP              ACKERSON KAUFFMAN FEX, P.C.
    11100 NE 8th Street, Suite 750                  1250 H Street N.W., Suite 850
    Bellevue, WA 98004                                Washington, DC 20005
    Telephone (425) 453-6206                         Telephone (202) 833-8833
    Fax (425) 453-6224                                 Fax (202) 833-8831

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Bruce K. Trauben
Bruce.Trauben@usdoj.gov

Cecilia Fex
fex@ackersonlaw.com

Dated:  February 16, 2007.

By:       s/ *John M. Groen*
          John M. Groen
          Attorneys for Plaintiffs

          GROEN STEPHENS & KLINGE LLP
          11100 NE 8th Street, Suite 750
          Bellevue, WA 98004
          Telephone (425) 453-6206
          Fax (425) 453-6224
          groen@GSKlegal.pro

2