# In the United States Court of Federal Claims

### Nos.  03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L,  04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04-1471L, 04-1472L, 04-1473L, 04-1474L

### Filed: April 7, 2011

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| **WARREN BERES and VICKI** | * | |
| **BERES, et al.,** | * | |
| | * | |
| **Plaintiffs,** | * | **Fifth Amendment Taking; Rails** |
| **v.** | * | **to Trails; Fee versus Easement;** |
| | * | **Deed Interpretation** |
| **UNITED STATES,** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| * * * * * * * * * * * * * | * | |

     **John M. Groen**, Groen Stephens & Klinge LLP, Bellevue, Wash. and **Cecilia C. Fex**, Ackerson Kauffman Fex, P.C., Washington, D.C., for the plaintiffs.

     **Bruce K. Trauben**, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendant.   With him was **Ignacia S. Moreno**, Assistant Attorney General, Environment and Natural Resources Division.

### O P I N I O N

<u>HORN, J.</u>

     At issue are rights of way along the eastern shore of Lake Sammamish in King County, Washington.  The plaintiffs in these consolidated lawsuits allege that when the United States Department of Transportation, Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU), the federal government denied plaintiffs a reversionary interest in the right of way located on their properties, formerly occupied by a railroad, which constituted a taking under the Fifth Amendment to the United States Constitution.  Previously, this court issued an opinion in the consolidated cases, denying defendant's motion for summary judgment regarding the interpretation of the General Railroad Right of Way Act of 1875, 18 Stat. 482, 43 U.S.C. §§ 934 <u>et seq.</u> (repealed 1976), and the effect on plaintiffs Warren and Vicki Beres.  <u>See</u> <u>Beres v. United States</u>, 64 Fed. Cl. 403 (2005).  In addition, this court issued an Order in which it forwarded the

plaintiffs' request for certification on relevant questions of state law to the State of Washington Supreme Court.  See Schroeder v. United States, 66 Fed. Cl. 508 (2005).  Subsequently, this court issued an opinion in the consolidated cases, addressing issues of collateral estoppel regarding former plaintiffs Gerald L. and Kathryn B. Ray and a number of other plaintiffs in the consolidated cases.  See Beres, et al. v. United States, 92 Fed. Cl. 737 (2010).  The facts established in those decisions are incorporated into this opinion.  Certain relevant facts are repeated below, together with additional facts pertinent to this opinion.

## FINDINGS OF FACT

The railroad line in question was originally constructed by the Seattle, Lake Shore & Eastern Railway Company (SLS&E) from May 1887 through March 1888.  During May and June 1887, the SLS&E acquired land needed to construct the railroad along the eastern shore of Lake Sammamish by right of way deeds from plaintiffs' predecessors in title: grantors Louis[1] and Mary Tahalthkut for the Schroeder plaintiffs, Case No. 04-1456L; grantors Bill and Mary Hilchkanum for the Chamberlin plaintiffs, Case No. 04-1457L; grantors George and Elizabeth Davis for the Klein plaintiffs, Case No. 04-1458L; grantors Bill and Lucinda Sbedzuse[2] for the Peterson plaintiffs, Case No. 04-1459L, and the Lane plaintiff, Case No. 04-1468L (on the Sbedzuse deed); grantors Jim and Alice Yonderpump for the Spencer plaintiffs, Case No. 04-1463L; and grantor Alfred Palmberg for the Nelson plaintiffs, Case No. 04-1465L and the Collins plaintiffs, Case No. 04-1472L (on the Palmberg deed) (collectively, the SLS&E Deeds).  The deed in Manning, Case No. 04-1466L, was acquired by the Northern Pacific Railway Company (Northern Pacific), successor of the SLS&E, on June 3, 1904 by Quit Claim Deed (the 1904 Reeves Quit Claim Deed) from the Manning plaintiffs' predecessor in title, J.D. and Elizabeth Reeves.[3]

In pertinent part, the SLS&E Deeds are in the following format:

In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory we do

[1] The Tahalthkut source deed lists "Louis Tahalthkut" as a grantor, however the timber agreement, discussed below, lists "Louie Tahalthkut" as grantor.  The court will use the name on each document when quoting the documents directly, but will otherwise use Louis Tahalthkut.

[2] The Joint Stipulation of Issues and Facts states the spelling of the last name for Bill and Lucinda as "Sbedzuse."  The joint stipulation for additional transcribed documents states the last name for Bill as "Sbedzue."  Although the name is not clear on the copies of the original documents, this opinion will use Sbedzuse.

[3] Originally the consolidated cases also included claims by Douglas Edlund, Frederick and Karen Horvath, and Robert and Denise Rundle, which were dismissed on May 14, 2007, and claims by Gerald and Kathryn Ray, which were dismissed on April 13, 2010.

hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands in said County, described as follows, to wit:

[specific description of lot and section]

Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said Railway Company, which location is described as follows, to wit:

[description of the metes and bounds]

And the said Seattle, Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To Have and to Hold said premises with the appurtenances unto the said party of the second part, and to its successors and assigns forever.

In Witness Whereof the parties of the first part have hereunto set their hands and seals this [__] day of [Month], A.D. 1887.

The source deeds in <u>Schroeder</u>, <u>Chamberlin</u>, <u>Klein</u>, <u>Peterson</u>, <u>Lane</u>, and <u>Spencer</u> follow this form. The deed at issue in <u>Nelson</u> and <u>Collins</u> also follows the same form, but contains the following additional sentence in the habendum clause: "All riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved."

The second type of deed in this opinion, the June 3, 1904 Reeves Quit Claim Deed, at issue in <u>Manning</u>, was conveyed to the Northern Pacific and states, in pertinent part:

This Indenture made this third day of June in the year of our Lord one Thousand nine hundred and four, Between J.D. Reeves and Elizabeth Jane Reeves, his wife, the parties of the first part and the Northern Pacific Railway Company, a corporation, the party of the second part, Witnesseth: That the said parties of the first part for and in consideration of the sum of One hundred and Fifty dollars of the United States to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged do by these presents, remise, release, and forever quit claim unto the said party of the second part and to its assigns all right, title and interest and estate of said first parties in and to all that certain lot, piece or parcel of land, situate lying and being in the County of King, State of Washington, and particularly bounded and described as follows, to wit:

The interest of said grantors in and to a tract of Land lying within lines drawn parallel with with [sic][4] the center of the main Line track and fifty feet from said center of the Seattle, Lake Shore & Eastern Railway, now the Northern Pacific Railway, through the Townsite of Inglewood, King County, State of Washington, and running from Ash Street to Willow Streets and through the following Blocks in said Townsite; [list of blocks] according to the plat of said Town of Inglewood as recorded in Volume three, of Plat Books, page 169 records of King County, Washington; the intention being to convey herein a right of way fifty feet on each side of said track through any lots or blocks conveyed to the Grantor J.D. Reeves by grant of date, November 13, 1903, from King County, Washington, said lots being as follows, [list of lots and blocks]

Together will [sic] all and singular the tenements, hereditaments and appurtenances thereunto, belonging, or in anywise appertaining, and the reversions, remainder and remainers [sic], rents, issues and profits thereof.

To have and to hold all and singular the said premises together with the appurtenances, unto said party of the second part and to its heirs and assigns forever.  In witness whereof, The said parties of the first part have hereunto set hands and seals the day and year first above written.

**Circumstances Surrounding Execution of the Deeds and Subsequent Conduct of the Parties.**

**The <u>Schroeder</u> Plaintiffs, No. 04-1456L (the Tahalthkut Deed)**

The plaintiffs in <u>Schroeder</u>[5] are successors in title to Louis and Mary Tahalthkut, who conveyed the right of way to the SLS&E by deed dated May 6, 1887.  The Tahalthkuts' property at the time included "Lot 4 and S.E. ¼ of S.W. ¼ Sec. [Section] 32 T. [Township] 25 N. [North] R. [Range] 6 E. [East]."  The railroad right of way runs across only Lot 4 of the Tahalthkuts' former property.

After the conveyance to the SLS&E, Louis Tahalthkut entered into an agreement with Daniel J. Reichert on June 22, 1889 to sell and convey to him all timber for logging that was on Louis Tahalthkut's property.  The agreement stated, in part, "all and singular

---

[4] This first "[sic]" is included in the copy of the deed provided to the court in the Joint Stipulation of Issues and Facts.

[5] The plaintiffs in <u>Schroeder</u> are Clifford F. and Kathryn L. Schroeder (husband and wife).

the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land situate lying and being in King County, Washington Territory and particularly described as follows…," and Daniel J. Reichert agreed to take and buy the same.   After Louis Tahalthkut died, Mary Tahalthkut conveyed the described property to T.N. Tallentire by Warranty Deed dated May 4, 1907.  The 1907 deed is silent regarding the right of way.  Ultimately, the parcel in Lot 4 was conveyed to plaintiffs Clifford F. and Kathryn L. Schroeder by Statutory Warranty Deed dated March 29, 1974, which also was silent on the right of way.

**The Chamberlin[6] Plaintiffs, No. 04-1457L (the Hilchkanum Deed)**

The plaintiffs in the Chamberlin[7] case are successors in title to Bill and Mary Hilchkanum, who conveyed the right of way to the SLS&E by deed dated May 9, 1887. This deed included "Lots one (1) two (2) and three (3) in section six (6) township 24 North of Range six (6) East."   The railroad right of way runs across all three of the lots.

On December 15, 1890, Bill and his then-wife Annie Hilchkanum[8] conveyed "[a]ll of lot two (2) in section six (6) township twenty-four (24) north of range six (6) east of Willamette Meridian containing twenty-one and eighty hundredths (21 80/100) acres," to Julia Curley without mention of the right of way.  On December 16, 1898, Bill Hilchkanum conveyed to Annie Hilchkanum, "Lot one (1) less three (3) acres of right of way of railroad and lot three (3) less three and 25/100 acres right of way of railroad, and all of lot five (5) in all section six (6) in township twenty four (24) N. [North] of range six (6) east…."   On March 15, 1904, Bill and his then-wife Louise Hilchkanum conveyed to Chris Nelson, the same lot, without mention of the right of way.   The conveyance to Chris Nelson was for "Lot Two (2) Section Six (6) Township twenty-four (24), North, Range six (6) east of the Willamette Meridian in the County of King, State of

---

[6] The consolidated case formerly was captioned Gerald and Kathryn Ray v. United States.  In the court's opinion issued April 12, 2010, the claims brought by Gerald and Kathryn Ray were dismissed, with prejudice.  See Beres, et al. v. United States, 92 Fed. Cl. 737.  The claims of the other plaintiffs in Case No. 04-1457L remain pending.

[7] The plaintiffs in Chamberlin are Martin and Carol Chamberlin (husband and wife), Craig and Tammy Owens (husband and wife), Jeffrey and Sandra Sheehan (husband and wife), Steven and Susan Roberts (husband and wife), Frederic and Linda Vicik (husband and wife), Steven and Karin Farrar (husband and wife), Hank and Eden Waggoner (husband and wife), Patrick and Chenoa Haluptzok (husband and wife), Lester and Barbara Peterson (husband and wife), Lauren Jenkins, J. Terry Pietromonaco, Gary Nelson, and Hans Apel and Pamela Burton (husband and wife).   J. Terry Pietromonaco is listed as both "J. Terry Pietromonaco" and "Terry Pietromonaco" in the complaint.

[8] Although listed as both "Annie" and "Anna" on different deeds, both deeds identify Annie or Anna as Bill Hilchkanum's wife.  This opinion will use "Annie" to identify this particular wife of Bill Hilchkanum.

Washington, containing twenty one acres more or less." Also on March 15, 1904, Louise Hilchkanum, conveyed by Quit Claim Deed to Chris Nelson, Lot 1 "less three (3) acres heretofore conveyed to the Seattle & International Railway Company for right of way purposes." This appears to be the same property in Lot 1 which Bill Hilchkanum conveyed to his former wife, Annie. On June 30, 1905, Bill Hilchkanum conveyed part of Lot 3 to John Hirder by warranty deed. Once again, this appears to be the same property previously conveyed to his former wife, Annie. The conveyance to John Hirder described the boundary of the property, in relevant part, as running "thence in a Northeasterly direction along the right of way of the Seattle Lake Shore & Eastern Railway…." On October 27, 1906, Bill and Louise Hilchkanum conveyed by Quit Claim Deed to King County, a sixty foot strip of land in Lot 3, and the right of way was indicated as, "Right of Way Monahan Road." On March 3, 1909, Bill Hilchkanum conveyed another portion of Lot 3 by Quit-Claim Deed to Chas Edeen, which described the conveyance as including "[a]ll of the land situated in lot three (3) of section six (6)...excepting the Northern Pacific Ry. right of way...." This appears to be the fourth conveyance by Bill Hilchkanum of Lot 3, previously deeded to his former wife Annie, then to John Hirder, and then to King County.

**The Klein Plaintiffs, No. 04-1458L (the Davis Deed)**

The plaintiffs in Klein[9] are successors in title to George and Elizabeth Davis, who conveyed the railroad right of way to the SLS&E by deed dated May 6, 1887. The Davis property included "Lot 1 and N.W. ¼ of the N.E. ¼ of Section 32, T. 25 N. R. 6 E." The railroad right of way runs over Lot 1 of the Davis' former property. On June 30, 1902, George Davis conveyed Lot 1 by Warranty Deed to the Lake Sammamish Shingle Company. That deed is silent as to the railroad right of way. On September 17, 1987, plaintiffs Henry D. and Judy D. Klein acquired their interest by statutory deed.

**The Peterson Plaintiffs, No. 04-1459L, and the Lane Plaintiff, No. 04-1468L (the Sbedzuse Deed)**

The plaintiffs in Peterson[10] and Lane[11] are successors in title to Bill and Lucinda Sbedzuse, who conveyed the right of way to the SLS&E by deed dated May 6, 1887. This property included "Lot 3 and N.E. ¼ of S.W. ¼ Section 32, T. 25 N., R. 6 E." The railway right of way ran through both Lot 3 and the N.E. ¼ of the S.W. ¼ of Section 32.

On June 22, 1889, Bill Sbedzuse entered into an agreement with Daniel J. Reichert, similar to the agreement Louis Tahalthkut had entered into with Daniel

---

[9] The plaintiffs in Klein are Henry D. and Judy D. Klein (husband and wife).

[10] The plaintiffs in Peterson are Clarence A. Peterson, George W. Raab, Donna Marie Raab Martinez, and J. Herb and Judith T. Gilbo (husband and wife). Judith Gilbo is listed as both "Judith D. Gilbo" and "Judith T. Gilbo" in the complaint.

[11] The plaintiff in Lane is Phyllis Lane.

Reichert, selling to him all timber rights suitable for logging on his property.  On August 5, 1905, Bill Sbedzuse conveyed his undivided two thirds interest in Lot 3 and the N.E. ¼ of Section 32 to G.R. Fisher by Warranty Deed.  That deed is silent with respect to the railroad right of way.

Plaintiff Phyllis Lane, with Robert Lane, who is not a listed plaintiff, acquired a portion of Lot 3, in Section 32, Township 25 North, Range 6 East, W.M., by Statutory Warranty Deed dated June 25, 1973.  The deed for two of the co-plaintiffs in Peterson, J. Herb and Judith D. Gilbo, also is in the record. According to the deed, the Gilbos acquired their interest in a parcel within Lot 3 of Section 32 by Statutory Warranty Deed dated November 4, 1982.  In addition, Peterson co-plaintiff George W. Raab's deed is included in the record.  The Statutory Warranty Deed indicated that the property was conveyed to George and Mildred M. Raab by Hilda and Francis Sprague on February 27, 1947.

## The Spencer Plaintiffs, No. 04-1463L (the Yonderpump Deed)

The plaintiffs in Spencer[12] are successors in title to Jim and Alice Yonderpump, who conveyed the right of way to the SLS&E by deed dated May 6, 1887.  The Yonderpumps' property included "Lot 2 and S.W. ¼ of N.E. ¼ of Section 32. T. 25 N. R. 6 E."  The railroad right of way runs over Lot 2.

Alice Zacuse, Jim Yonderpump's widow, and her husband at the time, Jim Zacuse, subsequently conveyed a portion of Lot 2 to George Clark and Tolle Anderson by Quit Claim Deed dated October 28, 1911. The deed described the property as: "North twenty acres of Lot Two (2) Section Thirty two (32) Township Twenty five (25) North of Range six (6) E. W. M." The deed did not mention the railroad right of way.  On January 27, 1919, Alice Zacuse conveyed by Quit Claim Deed the remaining portion of Lot 2 to W. Baron Cook, again without mentioning the right of way.

---

[12] The plaintiffs in Spencer are Raymond and Lael Spencer (husband and wife), James and Billie Cairns (husband and wife), Thomas and Angela Napier (husband and wife), William and Lynda Ott (husband and wife), William and Carolyn Daly (husband and wife), Douglas and Joyce McCallum (husband and wife), Evan and Beverly Helling (husband and wife), Reid and Susan Brockway (husband and wife), Phillip and Arlene Pielemeier (husband and wife), Jorge and Kristine Calderon (husband and wife), Robert Lester, John and Carolyn Rossi (husband and wife), Debra Grove, Douglas and Jill Hendel (husband and wife), the Welch Family LLC, the Estate of Mavis N. Welcome, Karen Gregory, and Diane Gregory.

**The Nelson Plaintiffs, No. 04-1465L and the Collins Plaintiffs, No. 04-1472L (the Palmberg Deed)**

The plaintiffs in Nelson[13] and Collins[14] are successors in title to Alfred Palmberg, who conveyed the right of way to the SLS&E by deed dated June 13, 1887.  At that time, Alfred Palmberg's property included "Lots 1, 2, 3 and 4 and S.E. ¼ of N.W. ¼ of Section 20 and Lot 2 in Section 19, Township 25 North, Range 6 East."  The right of way traverses the five lots, but not the S.E. ¼ of the N.W. ¼ of Section 20.  Alfred Palmberg's deed to the SLS&E expressly reserved "[a]ll riparian and water front rights on Lake Samamish [sic]…."   On February 1, 1893, Alfred Palmberg conveyed by Warranty Deed, a portion of Lot 2 to the Lake Sammamish Lumber and Shingle Company, described, in relevant part, as: "All of that part of lot two (2) of section nineteen (19) township twenty five (25) north range six (6) east W.M. which lies west of the right of way of the Seattle, Lake Shore & Eastern Railway…."  Alfred Palmberg also conveyed a portion of his land in Lots 2 and 3, in Section 20, to Alonzo Charles Stares by Warranty Deed dated March 30, 1893.  The property is described, in relevant part, as:

> Beginning at a point on the line between lots 2 and 3 in section 20 Tp. 25 N R. 6 E. W.M. 569 64/100 feet south of the NW corner of said lot 3 thence west in said lot 2 two hundred and twenty one and 58/100 (221 58/100) feet thence southwesterly along a line drawn at right angels [sic] to the center line of the Seattle Lake Shore and Eastern Railway Company fifteen and 3/10 feet to the easterly margin of the right of way of said Railway Company thence southeasterly along said right of way two hundred forty and 4/10 (240 4/10) feet thence east... Together with all riparian rights as reserved from the Seattle Lake Shore and Eastern Railway Company fronting upon appurtenant to the land hereinbefore described.

Robert and Mary Beth Nelson[15] ultimately obtained their title from successors in interest to Alfred Palmberg by Partial Warranty/Fulfillment deed dated May 31, 1977.

---

[13] The plaintiffs in Nelson are Robert G. and Beth Nelson (husband and wife), the Estate of William F. Hughes, Jill Barney, Beth Nelson, William Hughes, and Charles Hughes. Robert Nelson is listed as both "Robert G. Nelson" and Robert Nelson" in the complaint.

[14] The plaintiffs in Collins are D. Mike and Vanessa Collins (husband and wife), George and Judith Sutherland (husband and wife), Howard and Pam Freedman (husband and wife), and Donald and Jean Barrett (husband and wife).

[15] The court notes that the name on the Partial Warranty/Fulfillment Deed, "Mary Beth Nelson," was different than the name on the complaint, "Beth Nelson."

**The Manning Plaintiffs, No. 04-1466L (the Reeves Deed)**

The plaintiffs in Manning[16] are successors in title to J.D. and Elizabeth Reeves, who conveyed the right of way to the Northern Pacific on June 3, 1904.  By Quit Claim Deed, dated April 26, 1906, J.D. and Elizabeth Reeves conveyed to William J. Pickering their interest, "[e]xcepting and reserving, however, any part or parcel of the lands above described that may have been heretofore granted by the parties of the first part to the Northern Pacific Railway Company."

Plaintiff Joy Manning acquired her interest in Lots 20, 21 and 22 in Block 3, Inglewood and Lot 1 in Block 4, Inglewood, by Statutory Warranty Deed dated November 19, 1984, "[e]xcept the southerly 11 feet of said Lot 20, and Except any portion thereof lying within the Northern Pacific Railroad Company Right of Way," applying to the deeds of Lots 20, 21, 22 and Lot 1.

**Prior Litigation**

In 1997, Burlington Northern and Santa Fe Railway Company (Burlington Northern), a successor in interest to the SLS&E's and Northern Pacific's rights of way, concluded that continued operation of the pertinent line was not economically viable.  See Redmond-Issaquah R.R. Pres. Ass'n v. Surface Transp. Bd., 223 F.3d 1057, 1058 (9th Cir. 2000).  Therefore, in 1998, Burlington Northern sought an exemption from the STB to abandon a 12.45 mile line of railroad on the eastern shore of Lake Sammamish, a portion of which traverses the plaintiffs' properties.  See Burlington N. & Santa Fe Ry. Co. - Abandonment Exemption - in King Cnty., WA, STB Docket No. AB-6 (Sub. No. 380X), 1998 WL 638432 (S.T.B. Sept. 16, 1998).

On May 13, 1998, the STB granted Burlington Northern an exemption to abandon a 12.45 mile length of railroad between milepost 7.3, near Redmond, and milepost 19.75, at Issaquah, in King County, Washington.  See id.  On September 16, 1998, the STB authorized The Land Conservancy of Seattle and King County (TLC) to assume financial responsibility for the right of way pursuant to the National Trails System Act Amendments of 1983, Pub. L. No. 98-11, § 208, 97 Stat. 42, codified at 16 U.S.C. § 1247(d) (2006).  See Burlington N. & Santa Fe Ry. Co. - Abandonment Exemption - in King Cnty., WA, STB Docket No. AB-6 (Sub. No. 380X), 1998 WL 638432.  The STB also authorized the issuance of a NITU for the Burlington Northern right of way, permitting King County and TLC to establish a trail over the railroad right of way.  The STB's ruling authorized conversion of the railroad right of way into a recreational trail, pursuant to 16 U.S.C. § 1247(d).  King County, Washington subsequently reached an agreement with Burlington Northern for use of the rights of way for trail purposes.  Since the STB approved conversion of the railway to a trail, no

---

[16] The plaintiffs in Manning are Paul and Joy Manning (husband and wife) and the DeMeester Family Limited Partnership.

railway carriers have used the railroad, and the tracks have been removed from the right of way.

In 2000, Gerald L. and Kathryn B. Ray filed an action against King County, Washington to quiet title to enforce their fee interest ownership in the right of way. See Ray v. King Cnty., No. 00-2-14946-8SEA, King Cnty. Super. Ct. (2001), aff'd, 86 P.3d 183 (Wash. Ct. App.), review denied, 101 P.3d 421 (Wash. 2004) (table). The issue before the Washington state courts was the nature of the interest conveyed by the Hilchkanum source deed to the SLS&E, or, specifically, whether the original source deed to the railroad conveyed a fee or an easement interest. On cross-motions for summary judgment, the King County Superior Court found that the Hilchkanum source deed conveyed a fee simple interest to the railroad and, therefore, concluded that, "title is quieted in King County in fee simple…." Id. As a result, the King County Superior Court dismissed the Rays' claims, with prejudice.

The Rays sought direct review of the King County Superior Court's decision in the State of Washington Supreme Court. As briefing neared completion, however, the State of Washington Supreme Court transferred the matter to the State of Washington Court of Appeals, Division 1. The State of Washington Court of Appeals affirmed the King County Superior Court's decision to quiet title in King County, holding that the Hilchkanum deed conveyed a fee interest in the right of way and not an easement. See Ray v. King Cnty., 86 P.3d 183, 198 (Wash. Ct. App. 2004). The Rays then sought to appeal the decision to the State of Washington Supreme Court, which denied the petition for review. See Ray v. King Cnty., 101 P.3d 421 (Wash. 2004) (table). Although the Rays also filed for relief in the United States Court of Federal Claims, as noted above, based on collateral estoppel, Gerald and Kathryn Ray's claims have been dismissed from the consolidated actions in this court. See Beres, et al. v. United States, 92 Fed. Cl. at 761.

In addition, plaintiffs Clifford F. and Kathryn L. Schroeder, Henry D. and Judy D. Klein, Frederic and Linda Vicik, and George W. Raab, also brought state court actions to quiet title regarding their respective properties. After the decision in Ray v. King County, and after an adverse decision from the United States Court of Appeals for the Ninth Circuit in King County v. Rasmussen, 299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003), on October 8, 2002, these plaintiffs voluntarily dismissed their quiet title actions "to preserve any potential claims for compensation in the United States Court of [sic] Claims." Following the dismissals from the Washington state courts, these and other plaintiffs filed suit in the United States Court of Federal Claims, alleging that the federal government's actions constituted a taking without compensation in violation of the Fifth Amendment to the United States Constitution.

In January 2005, the plaintiffs filed a motion in this court asking for certification to the State of Washington Supreme Court on questions of state law related to their cases. After review, this court agreed to forward the following questions to the State of Washington Supreme Court:

1. When the granting clause of a deed expressly conveys a "right-of-way" to a railroad, does Washington state law hold that the property interest conveyed to the railroad is an easement as distinguishable from a fee simple?

2. Under Washington state law, did the above-quoted language of the 1887 deeds convey fee simple absolute interest in the Seattle Railway Company, or, instead, did the deeds convey an easement?

Schroeder v. United States, 66 Fed. Cl. at 510.

Plaintiffs' certification request, as forwarded by this court to the State of Washington Supreme Court, indicated that this court, the parties and future litigants could benefit from additional guidance from the State of Washington Supreme Court. This court explained:

Although the Brown court set out seven possible factors for consideration by other courts, whether the plaintiffs' deeds convey an easement or a fee is not easily determined without prioritization within the factors, and guidance regarding the seventh factor, which includes "many other considerations suggested by the language of the particular deed." Even the lower Washington state courts seem to arrive at differing resolutions. At a minimum, a declaration by the Supreme Court of Washington on this matter would be welcome in order to best resolve the issue of whether the multiple plaintiffs in the cases before this court can continue with their Fifth Amendment taking claims.

Id. at 519 (quoting Brown v. State, 924 P.2d 908, 912 (Wash.), recons. denied, (Wash. 1996)).

The State of Washington Supreme Court, however, declined the request for certification with the following short statement:

The court is of the view that, in light of existing precedent such as Brown v. State, 130 Wn.2d 430, 924 P.2d 908 (1996) and Ray v. King County, 120 Wn. App. 564, 86 P.3d 183, review denied, 152 Wn.2d 1027 (2004), the questions posed by the federal court are not "question[s] of state law...which [have] not been clearly determined."

Order at 1-2 (Wash. Oct. 7, 2005) (quoting Washington Rules of Appellate Procedure (RAP) 16.16(a) (2006)) (omissions in original). Plaintiffs sought reconsideration of the order issued by the State of Washington Supreme Court denying review. The State of Washington Supreme Court, however, indicated that, because it had not granted review, its order was not subject to reconsideration, and the State of Washington Supreme Court closed the file without further action.

**DISCUSSION**

**Easement Versus Fee Interest**

The issue before the court is whether in these federal taking actions, the SLS&E Deeds and the 1904 Reeves Quit Claim Deed, described above, conveyed easements or fee simple interests to the Seattle, Lake Shore & Eastern Railway Company and the Northern Pacific Railway Company.[17]  Although the parties filed cross-motions for partial judgment, the plaintiffs also argue that the court must review disputed facts, and that, "[t]he litigants here obviously disagree as to the intent of the parties to the deeds." Defendant responded that it is proper for the court to make a determination regarding the intent of the source deed grantors, stating that Washington state courts have previously examined the intent of the parties to deeds conveying rights of way to railroads, albeit with differing results, using motion practice.  See, e.g., Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d 16 (Wash. 2006) (reviewing a trial court ruling on motion practice, and concluding that the intent of the parties was the grant of an easement); see also Brown v. State, 924 P.2d 908 (reviewing consolidated appeals from summary trial court judgments and determining that the intent of the parties was to convey fee interests).

Additionally, the defendant points out that Washington state courts, the United States District Court for the Western District of Washington, and the United States Court of Appeals for the Ninth Circuit already considered one of the SLS&E Deeds at issue in this case, the Hilchkanum deed,[18] and found that a fee interest was granted to the railroad by the source deed.  See King Cnty. v. Rasmussen, 143 F. Supp. 2d 1225 (W.D. Wash. 2001), aff'd, 299 F.3d 1077 (9th Cir. 2002), cert. denied, 538 U.S. 1057 (2003) and Ray v. King Cnty., No. 00-2-14946-8SEA, King Cnty. Super. Ct.  In Ray v. King County,[19] the plaintiffs filed an action to quiet title against King County in the King County Superior Court.  The King County Superior Court, in examining the Hilchkanum deed, observed that: "[a]ll of the documents pertinent to that claim have already been submitted to the court.  No one is alive to testify about these underlying facts.  There is no party to these deeds that can be called to court.  There is no party who is a neighbor of the people who made these deeds who can be called to court." Ray v. King Cnty.,

---

[17] At this time, the court does not reach a legal judgment as to the validity of the chain of title with respect to any of the plaintiffs' properties.

[18] The plaintiffs in the Chamberlin case are successors in title to Bill and Mary Hilchkanum.

[19] This court previously determined that Gerald and Kathryn Ray, who had filed a complaint as part of Case No. 04-1457L, were collaterally estopped from pursuing their claims in this court because the issues raised were identical in this court and in the previous state court case, both Ray plaintiffs were parties in the state court case, the case had been fully litigated and had resulted in a final judgment.  See Beres, et al. v. United States, 92 Fed. Cl. at 750-54.

No. 00-2-14946-8SEA, King Cnty. Super. Ct.   The King County Superior Court, therefore, concluded that this case is "ripe for summary judgment."   The State of Washington Court of Appeals, Division 1, subsequently affirmed "the summary judgment quieting title in King County."   Ray v. King Cnty., 86 P.3d at 197.

The United States Court of Appeals for the Ninth Circuit, in King County v. Rasmussen, considered the Hilchkanum deed on review of a summary judgment decision by the United States District Court for the Western District of Washington, which determined that the Hilchkanum deed conveyed a fee simple interest to the SLS&E.   The Ninth Circuit affirmed the District Court for the Western District of Washington's decision granting summary judgment in favor of King County, King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1232, based on the conclusion that there were "no genuine issues of fact that disparage King County's claim to a fee simple estate in the strip of land formerly used as a railroad right of way."   King Cnty. v. Rasmussen, 299 F.3d at 1090.   Likewise in this court, there is no live testimony to present on the issue of intent of the source deed grantors, however, numerous additional documents have been introduced in this court which were not before the Washington state courts in Ray v. King County or before the federal courts in King County v. Rasmussen.   All of the additional documents have been introduced for the court's review in the form of joint stipulations and as part of a Joint Appendix.   The court, therefore, agrees that partial summary judgment proceedings are appropriate at this time.

State of Washington law controls to determine the interest conveyed by the deeds at issue.   "The nature of the interest conveyed is determined according to the law of the state where the conveyance occurred."   Chevy Chase Land Co. of Montgomery Cnty. v. United States, 37 Fed. Cl. 545, 565 (1997), aff'd, 230 F.3d 1375 (Fed. Cir. 1999), reh'g and reh'g en banc denied (Fed. Cir.), cert. denied, 531 U.S. 957 (2000); see also Whispell Foreign Cars, Inc. v. United States, No. 09-315L, 2011 WL 380457, at *6 (Fed. Cl. Feb. 7, 2011) ("Whether an individual has a compensable private property interest is determined by state law.").   The court in Chevy Chase Land Co. of Montgomery County v. United States quoted the United States Supreme Court decision in Preseault v. Interstate Commerce Commission, 494 U.S. 1 (1990), for the proposition that, "'state law creates and defines the scope of the reversionary or other real property interests affected by the ICC's [Interstate Commerce Commission] action pursuant to Section 208 of the National Trails System Act Amendments of 1983, 16 U.S.C. §1247(d).'"   Chevy Chase Land Co. of Montgomery Cnty. v. United States, 37 Fed. Cl. at 565 (quoting Preseault v. ICC, 494 U.S. at 20 (O'Connor, J., concurring) (citing Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984))); see also Ruckelshaus v. Monsanto Co., 467 U.S. at 1001 ("[W]e are mindful of the basic axiom that "'[p]roperty interests...are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.""" (quoting Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 161 (1980) (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)))) (omission in original).   The United States Court of Appeals for the Federal Circuit, interpreting a taking claim for a railroad right of way, noted, "state law generally creates the property interest in a railroad right-of-way…."   Barclay v. United States, 443

F.3d 1368, 1374 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2006), cert. denied, 549 U.S. 1209 (2007) (citing Preseault v. ICC, 494 U.S. at 8, 16).  While Chevy Chase Land Co. of Montgomery County v. United States and Preseault v. Interstate Commerce Commission specifically addressed the law as applied in Rails to Trails cases, the United States Supreme Court has made similar pronouncements about state law governing how determinations are made regarding property conveyance.  For example, in Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co., 429 U.S. 363, 378 (1977), the United States Supreme Court stated that, "[u]nder our federal system, property ownership is not governed by a general federal law, but rather by the laws of the several States."  See also Davies Warehouse Co. v. Bowles, 321 U.S. 144, 155 (1944) ("The great body of law in this country which controls acquisition, transmission, and transfer of property, and defines the rights of its owners in relation to the state or to private parties, is found in the statutes and decisions of the state.").

**History of Railroad Rights of Way in the State of Washington Supreme Court**

The State of Washington Supreme Court has observed that, "many courts have considered whether a railroad deed conveys fee simple title or an easement," and indicated that "[t]he decisions are in considerable disarray and usually turn on a case-by-case examination of each deed."  Brown v. State, 924 P.2d at 911; see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 22; Swan v. O'Leary, 225 P.2d 199, 200 (Wash. 1950).  "The interpretation of such a deed to determine its effect is a mixed question of fact and law. It is a factual question to determine the intent of the parties."  Veach v. Culp, 599 P.2d 526, 527 (Wash. 1979).  According to the State of Washington Supreme Court in Brown v. State, "when construing a deed, the intent of the parties is of paramount importance and the court's duty to ascertain and enforce."  Brown v. State, 924 P.2d at 911 (footnote omitted).  Noting an earlier case, Roeder Co. v. Burlington Northern, Inc., 716 P.2d 855, 860 (Wash.), recons. denied (Wash. 1986), the Brown court wrote: "[r]ecognizing a railroad can hold rights of way in fee simple or as easements, we held the deed granted an easement based on the specifically declared purpose that the grant was a right of way for railroad purposes, and there was no persuasive evidence of intent to the contrary."  Brown v. State, 924 P.2d at 912 (footnote omitted).  The Brown court also indicated that the phrase "right of way" has "special significance."  Id.; see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 22; Veach v. Culp, 599 P.2d at 528, Swan v. O'Leary, 225 P.2d at 201; Morsbach v. Thurston Cnty., 278 P. 686, 690 (Wash. 1929).  The Brown court instructed:

These cases are consistent with the majority of cases that hold the use of the term "right of way" as a limitation or to specify the purpose of the grant generally creates only an easement.  See Harris v. Ski Park Farms, Inc., 120 Wash.2d 727, 738, 844 P.2d 1006, 1011-12, (Wash. 1993), cert. denied, 510 U.S. 1047 (1994).  Conversely, where there is no language in the deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, the deed will be

construed to convey fee simple title.  Swan v. O'Leary, 37 Wash.2d at 536, 225 P.2d at 200.

Brown v. State, 924 P.2d at 913 (other State of Washington Supreme Court citations omitted).

A sampling of significant cases in the State of Washington interpreting railroad conveyances to determine if a fee or an easement interest was intended includes an early review of the issue by the State of Washington Supreme Court in 1893 in Biles v. Tacoma, 32 P. 211 (Wash. 1893).  In Biles, the court considered a May 11, 1876 warranty deed from the Northern Pacific Railroad Company to the Tacoma, Olympia & Gray's Harbor Railroad Company, which stated, in part:

> Reserving and excepting therefrom, however, a strip of land extending through the same (or so much of such strip as may be within said described premises) of the width for [sic] hundred feet, - that is, two hundred feet on each side of the center line of the Northern Pacific Railroad, or any of its branches, - to be used for a right of way or other railroad purposes, in case the line of said railroad or any of its branches has been or shall be located on or over or within less than two hundred feet of said described premises.

Id. at 212.  In examining the strip of land "to be used for a right of way or other railroad purposes," the State of Washington Supreme Court considered the "technical legal distinction" between the words "reserve" and "except" and concluded that because both terms were used in the deed, it was necessary to examine "the nature of the right or thing excepted or reserved," id., and "the intention of the parties, as evidenced by the words of the deed, the object they had in view, and the circumstances under which the deed was executed."  Id.  The court determined that because at the time the deed was executed, the purchaser of the land had desired to purchase the whole of the land, no road had been built and the grantor had not identified or described a particular portion of the land conveyed, the intention of the deed was not to except a fee interest.  The Biles court concluded that, "the clause referred to simply reserved a right of way over - an easement in - the land conveyed, and that the ownership of the whole tract passed to the respondent by virtue of the deed."  Id. at 213.

The following year, 1894, the State of Washington Supreme Court again reviewed a railroad deed to determine if it conveyed an easement or a fee interest.  See Reichenbach v. Wash. Short Line Ry. Co., 38 P. 1126 (Wash. 1894).  In Reichenbach, the court examined a deed, executed on May 12, 1887, for a right of way to a railroad, and although the court did not recite the entire deed in the opinion, the court observed that the granting clause of the deed stated, in part, "grants, bargains, sells, and conveys unto the said party of the second part, and to his heirs and assigns, a right of way for said railroad, twelve feet in width, to be located, by him or them, through, over, across, and along said land."  Id. at 1126.  The court also quoted from the habendum clause, which stated: "To have and to hold the same to the said party of the second part, and to

his heirs and assigns, so long as the same shall be used for the operation of a railroad." Id.  The conveyance to the railroad was subject to a number of conditions, such as: the railroad was to be complete by January 1, 1888, the grantee was not to fence the right of way, and the grantee was not to prevent the grantors or their heirs from crossing the right of way.  See id.  The court noted that the habendum clause was expressly conditioned, "so long as the same shall be used for the operation of a railroad."  The court concluded that the conditions in the habendum clause "are inconsistent with the idea of an intention to grant a fee, and show the grant of an easement only for a particular purpose, and while it may be used for that purpose."  Id. at 1127.  Therefore, the court held the deed conveyed only an easement and not a fee interest.

Subsequently, in 1910, the State of Washington Supreme Court in Pacific Iron Works v. Bryant Lumber & Shingle Mill Co., 111 P. 578 (Wash. 1910), addressed whether a deed conveyed an easement or a fee interest.  In Pacific Iron Works, as in Reichenbach, the court did not quote extensively from the body of the source deed, but noted that, "[t]he right of way deed remised, released, and forever quitclaimed to the company a right of way 100 feet in width…."  Pacific Iron Works v. Bryant Lumber & Shingle Mill Co., 111 P. at 579.  The court quoted the habendum clause which stated, "'to have and to hold the said premises with the appurtenances unto the said party of the second part and to its successors and assigns forever, for railway purposes, but if it should cease to be used for a railway the said premises shall revert to said grantors, their heirs, executors, administrators or assigns.'"  Id.  In interpreting the deed, the Pacific Iron Works court noted that, "[t]he grant of a right of way to a railroad company is the grant of an easement merely and the fee of the soil remains in the grantor."  Id.  The court concluded that, "[w]hile some of the language contained in the deed might imply such a grant [of fee simple], when the instrument is construed as a whole and in the light of the purpose for which the grant was made, it is a grant of a right of way or easement and nothing more."  Id.  As in Reichenbach v. Washington Short Line Railway Co., the State of Washington Supreme Court in Pacific Iron Works again concluded that an easement, not a fee interest, was intended by the grantor.

Subsequently, in 1929, the State of Washington Supreme Court in Morsbach v. Thurston County, 278 P. 686, interpreted a railroad deed executed on November 12, 1872.  The deed stated, in part:

> Know all men by these presents that Edward Kratz, of Thurston county, Washington Territory, in consideration of two hundred dollars ($200.00) paid by the Northern Pacific Railroad Company and other good and valuable considerations, the receipt whereof is hereby acknowledged, do by these presents give, grant, bargain, sell and convey unto said Northern Pacific Company, or its assigns, the following described premises, viz.: The right of way for the construction of said company's railroad in and over the south half of the northeast quarter of section twenty-two and the west half of the northwest quarter of section twenty-three of township fifteen north of range two west, situate in Thurston county, Washington Territory….

> To have and to hold the general premises with the privileges and appurtenances thereto belonging to the Northern Pacific Railroad Company, its successors and assigns, to their use and behoof forever….

Id. at 687.

The Morsbach court noted that the defendant had conceded: "it is elementary that, in cases where the granting clause of a deed declares the purpose of a grant to be a right of way for a railroad, the deed passes an easement only, not a fee, though it be in usual form of a full warranty deed." Id. at 687 (citing 1 Thompson on Real Prop. § 421). The language in the granting clause, a "right of way for the construction of said company's railroad," without any specific width or length identified, was significant to the Morsbach court as evidence of only an easement having been conveyed. See Morsbach v. Thurston Cnty., 278 P. at 688. The court noted that:

> Had the instrument ended with the grant of the right of way across the legal subdivisions described and the adoption thereof by the grantee, as much [sic] be presumed, and the occupation of the granted premises, there could be no doubt that it was intended to convey simply the right of way and easement in the land itself. The doubt arises when we consider the second clause of the deed, comprising the habendum and the covenants.

Id. at 688.

Although the habendum clause used the phrase "forever," in quoting from Thompson on Real Property, the Morsbach court stated "'[w]here the intention to convey a fee does not appear, as in case of the conveyance of a 'right of way' for the railroad through certain lands, the company takes an easement only. The fact that the right conveyed is designated as a fee, or that the deed contains covenants of warranty, does not necessarily pass the fee.'" Morsbach v. Thurston Cnty., 278 P. at 690 (quoting 1 Thompson on Real Prop. § 420). Finally, the Morsbach court determined that the only way the conveyance could have passed a fee interest was if the entire legal description was for the right of way. The court concluded, however, "[s]ince, manifestly, that was not the intention of any of the parties, and the deed was for a right of way, we will construe the deed as the parties evidently intended as a grant of right of way only, title to which ceased when the railway company abandoned it as a right of way." Morsbach v. Thurston Cnty., 278 P. at 690. Therefore, the State of Washington Supreme Court, looking to the intention of the parties, found the conveyance to be an easement.

In 1950, in Swan v. O'Leary, the State of Washington Supreme Court examined a railroad right of way in a quit claim deed, executed on April 17, 1909, and determined that only an easement was conveyed. See Swan v. O'Leary, 225 P.2d at 201. The quit claim deed stated, in part:

This indenture witnesseth, That Minnie L. Swan, unmarried, party of the first part, for and in consideration of the sum of Six Hundred & Twenty-five Dollars in lawful money of the United States of America to her in hand paid by M. H. Draham the party of the second part, the receipt whereof is hereby acknowledged, has remised, released and forever quitclaimed, and by these presents do sell, convey, remise, release and forever quitclaim unto said party of the second part, and to his heirs and assigns, the following described premises, situate, lying and being in the County of Thurston, State of Washington,: for the purpose of a Railroad right-of-way to-wit:-a strip of land 50 feet in width…. Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

 To Have and to Hold All and singular the said premises together with the appurtenances, unto said party of the second part, and to his heirs and assigns forever.

 In witness whereof, The said party of the first part has hereunto set her hand and seal the 17th day of April A.D. 1909.

Id. at 199 (emphasis in original).

While examining whether the interest conveyed a fee simple or an easement interest, the Swan court noted that:

The parties have cited and analyzed many cases, and have referred us to the annotation in 132 A.L.R. 142.  The authorities are in hopeless conflict. They cannot be reconciled, because their authors approach the subject from different standpoints and give different weight and significance to the various factors entering into the various instruments of conveyance under consideration.  About the only common ground that can be found is that the intention of the parties to the conveyance is of paramount importance and must ultimately prevail in a given case.

Swan v. O'Leary, 225 P.2d at 200.  The court continued:

In attempting to arrive at the intention of the parties to similar conveyances, the courts have considered such factors as whether the consideration expressed was substantial or nominal; whether the deed conveyed a strip, piece, parcel or tract of land, and did not contain additional language, relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; whether the deed conveyed a strip of land and limited its use to a specific purpose; whether the deed conveyed a right of way over a tract of land, rather than a strip, piece or parcel thereof; whether the deed granted only the privilege of

constructing, operating, or maintaining a railroad over the land; whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

Id.

In an attempt to synthesize the conflicting authorities and the various factors earlier courts had considered to determine if a fee or an easement interest was conveyed, the Swan court indicated:

The courts have found no difficulty with those conveyances where a grantor, by appropriate words of conveyance, unqualifiedly conveyed a strip of land to a grantee by the usual form of conveyance; nor have they found any difficulty with those where a properly described right of way or easement over a designated tract of land was set forth in the instrument of conveyance. The difficulty arises when the instrument of conveyance is ambiguous, is in some way qualified, or appears to be a mixture of the two ideas.

Id. The Swan court identified the deed before the court as an example of such a mixture, because the deed conveyed a strip of land fifty feet in width, but for the purpose of a railroad right of way. Id. at 201. After a review of previous State of Washington Supreme Court decisions, most notably Morsbach v. Thurston County, 278 P. 686, the Swan court determined, "it is clear that we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title." Swan v. O'Leary, 225 P.2d at 201. Applying that principle to the quit claim deed before it, the Swan court concluded the fifty foot in width right of way was for railroad purposes and, therefore, the deed conveyed an easement and not a fee simple interest. See id.

The court in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, discussed more fully below, highlighted the decision in Swan v. O'Leary, and noted that, "[i]n response to these conflicting authorities, in 1950 the Swan court attempted to lay down a bright-line rule governing railroad rights of way by interpreting the then seminal case Morsbach v. Thurston County…'that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 21 (quoting Swan v. O'Leary, 225 P.2d at 201) (footnote omitted).

In 1979, the State of Washington Supreme Court determined the nature of a 1901 quit claim deed in Veach v. Culp, 599 P.2d 526, finding that an easement and not a fee interest was conveyed to the railroad. The relevant portions of the quit claim deed stated:

(T)he [sic] said party of the first part, for and in consideration of the sum of Two Hundred and Twenty-five Dollars,...do by these presents remise, release and forever quit claim unto said party of the second part, and to its assigns, all that certain lot, piece, or parcel of land situate in Whatcom County...to-wit:

A right-of-way one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Eastern R.R. as now located through that portion of lot 6, Section 22, Township 37 North Range 4 East, lying east of Fir St. Blue Canyon and also Lot Seven (7) same Section excepting all rights for road purposes that may have heretofore been conveyed to Whatcom County and particularly reserving all littoral and riparian rights to the said Fred and Mattie A. Zobrist (the grantors).

Together with the tenements, hereditaments and appurtenances thereunto belonging or in anywise appurtaining, and the reversion and reversions, remainder and remainders, rents, issues and profits thereof.

To have and to hold, all and singular, said premises, together with the appurtenances unto the said party of the second part, and to its assigns forever.

Id. at 527 (omissions in original).  The Veach court indicated that, although the defendant had argued that the habendum clause and the granting clause demonstrate intent to create a fee, because the language in both clauses is absolute, the court should examine the deed as a whole.  See id.  The Veach court found that similar descriptions of rights of way have "been found to create an easement, not a fee simple estate."  Id.  In determining that the deed conveyed an easement, the court quoted the holding in Swan v. O'Leary, that, "'when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.'"  Veach v. Culp, 599 P.2d at 528 (quoting Swan v. O'Leary, 225 P.2d at 201).  The Veach court concluded that, "[g]iven the language of the deed explicitly describing the conveyance of a right-of-way and given the rule of Swan v. O'Leary, [225 P.2d 199] and Morsbach v. Thurston County, [278 P. 686], we conclude the deed conveyed an easement, not a fee title."  Veach v. Culp, 599 P.2d at 528.

In 1986, the State of Washington Supreme Court interpreted a 1914 statutory warranty deed from the Bellingham Bay Improvement Company to the Bellingham and Northern Railway Company, which conveyed a fifty-foot wide strip of land, to be an easement and not a fee interest.  See Roeder Co. v. Burlington N., Inc., 716 P.2d 855, 857 (Wash. 1986).  The court quoted in part from the granting clause of the deed, which stated that in exchange for ten dollars, the Bellingham Bay Improvement Company "'conveys and warrants unto Bellingham and Northern Railway Company...for all railroad and other right of way purposes, certain tracts and parcels of land situate in the

City of Bellingham...."" <u>Id.</u> at 857 (omissions in original).  The issue before the court was "[d]id the Improvement Company convey an easement or fee simple title to Bellingham Northern?" <u>Id.</u> at 858.  The <u>Roeder</u> court concluded that, "[s]ince the granting clause of the Improvement Company's deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement, not a fee." <u>Id.</u> at 859.  The court indicated that it had reached this result because the deed "stated in its granting clause that the Improvement Company conveyed to Bellingham Northern 'for all railroad and other right-of-way purposes,' a parcel of land 50 feet wide.  Under the rule enunciated in <u>Morsbach</u>, <u>Swan</u> and <u>Veach</u>, and absent persuasive evidence of intent to the contrary, it thus appears that the 50-foot strip was an easement." <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d at 859 (footnote omitted).  The <u>Roeder</u> court determined no such persuasive evidence existed, in part because the last paragraph of the deed reserved to the Bellingham Bay Improvement Company the right to use the land in designated ways, so long as those uses did not interfere with the railroad, and a similar provision in <u>Reichenbach v. Washington Short Line Railway Co.</u>, 38 P. 1126, was determined to convey only an easement.  <u>See</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d at 859.

In 1993, in <u>Harris v. Ski Parks Farms, Inc.</u>, 844 P.2d 1006 (Wash. 1993), <u>cert. denied</u>, 510 U.S. 1047 (1994), the State of Washington Supreme Court, in a quiet title action, examined an August 12, 1876 deed from the Northern Pacific Railroad Company to Samuel Wilkeson Jr., which stated, in part: "'[r]eserving and excepting, however, from the above described premises <u>a strip of land two hundred feet wide, extending through the same on the line of the railroad</u> of the said Northern Pacific Railroad Company or on the line of any of its branches, <u>to be used for a right of way</u>, or for other railroad purposes....'" <u>Id.</u> 1007 (emphasis in original).  The court indicated that, "[t]he deed...did not explicitly reserve a fee.  The right of way, thus, arguably could be considered as either a fee interest or simply an easement.  The deed description of the right of way ('a strip of land two hundred feet wide') and its purpose ('to be used for a right of way, or for other railroad purposes') would ordinarily create an easement only and not a fee simple interest." <u>Id.</u> at 1013 (footnote omitted).  The <u>Harris</u> court concluded that a fee interest in the property had been reserved and excepted.  <u>Id.</u> at 1015.

In 1996, in <u>Brown v. State</u>, 924 P.2d 908, the State of Washington Supreme Court again addressed the issue of fee versus easement in railroad conveyances.  Until <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association</u>, 126 P.3d 16, decided ten years later, the <u>Brown</u> case was the best available guidance on how to determine fee versus easement in railroad deeds in the State of Washington.  <u>See</u>, <u>e.g.</u>, <u>King Cnty. v. Rasmussen</u>, 299 F.3d at 1084; <u>King Cnty. v. Rasmussen</u>, 143 F. Supp. 2d at 1229 n.3; <u>Roeder Co. v. K & E Moving & Storage Co., Inc.</u>, 4 P.3d 839, 843 n.16 (Wash. Ct. App.), <u>recons. denied</u> (Wash. Ct. App. 2000), <u>review denied</u>, 16 P.3d 1264 (Wash. 2001) (table).  For example, the State of Washington Supreme Court's rejection of this court's request for certification, discussed above, which was issued before the <u>Kershaw</u> decision, stated: "[I]n light of existing precedent such as <u>Brown v. State</u>...the questions posed by the federal court are not 'question[s] of state law...which [have] not been clearly determined.'"  Order at 1-2 (quoting RAP 16.16(a)).  Not only was <u>Brown</u> a split decision, which generated a strong dissent, but historically, <u>Brown v. State</u> was a

departure from the majority of earlier State of Washington Supreme Court precedent. Moreover, in <u>Brown</u>, unlike in the majority of the railroad right of way cases previously examined by the State of Washington Supreme Court, the majority of the deeds were in the form of statutory warranty deeds.  <u>Compare</u>, <u>e.g.</u>, <u>Brown v. State</u>, 924 P.2d 908, <u>with</u> <u>Swan v. O'Leary</u>, 225 P.2d 199, <u>and</u> <u>Veach v. Culp</u>, 599 P.2d 526; <u>but</u> <u>see</u> <u>Roeder Co. v. Burlington N., Inc.</u>, 716 P.2d at 857.  In <u>Brown</u>, the State of Washington Supreme Court found that the language of the statutory warranty deeds at issue conveyed fee interests. <u>See</u> <u>Brown v. State</u>, 924 P.2d at 917.  The <u>Brown</u> decision has been cited as establishing precedent for a rebuttable presumption in favor of a fee interest when an interest in real property is conveyed by statutory warranty deed and the granting clause conveys strips of land.[20] <u>See</u>, <u>e.g.</u>, <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 22.

The <u>Brown</u> court, noting that most of the deeds it was reviewing were in the same format, quoted from one of the deeds, the Whitman County deed, as an example. The exemplary, statutory warranty form deed stated, in part:

> KNOW ALL MEN BY THESE PRESENTS, That Geo. D. Brown and Annie L. Brown his Wife of Spokane County, State of Washington, for and in consideration of Ten & 00/100 Dollars, to them in hand paid, the receipt whereof is hereby acknowledged, do ____ [sic] hereby convey and Warrant unto the CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY OF WASHINGTON, its successors and assigns, a strip of land, one hundred feet in width, extending over and across from the South side to the East side of the following described tract of land situated in the County of Whitman, State of Washington, and described as follows….
>
> HEREBY CONVEYING a strip, belt or piece of land fifty feet in width on each side of the center line of the Railway of said Company, as now located and established over and across said land….
>
> HEREBY GRANTING AND CONVEYING to said Company, its successors and assigns, a fee simple title to said strip of land, together with all rights, privileges and immunities that might be acquired by the exercise of the right of eminent domain.

<u>Id.</u> at 910-11 (omissions and capitalization in original).

Interpreting the deed language, the <u>Brown</u> court stated, "[i]n this case, where the original parties utilized the statutory warranty form deed and the granting clauses

---

[20] The court in <u>Roeder Co. v. K & E Moving & Storage Co., Inc.</u>, 4 P.3d at 843, equated the statutory warranty deed and the bargain and sale deed forms as creating a presumption in favor of a fee interest conveyance.  The <u>Roeder</u> court indicated, however, that the presumption of a fee interest does not apply when an interest is conveyed by a statutory quit claim deed.  <u>See</u> <u>id.</u>

convey definite strips of land, we must find that the grantors intended to convey fee simple title unless additional language in the deeds clearly and expressly limits or qualifies the interest conveyed." Id. at 912 (footnote and citations omitted); see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 22; Ray v. King Cnty., 86 P.3d at 188 ("Where such a statutory deed is used and the granting clause conveyed a definite strip of land, the court will conclude that the grantor intended to convey fee simple title unless additional language in the deed clearly and expressly showed otherwise."). The Brown court indicated that two prior State of Washington Supreme Court cases, Roeder Co. v. Burlington Northern, Inc., 716 P.2d at 860 and Veach v. Culp, 599 P.2d at 528, had interpreted statutory warranty deeds and found that a right of way conveyed an easement. See Brown v. State, 924 P.2d at 912.[21]  The Brown court, however, distinguished both cases, noting that in those cases, the "deed in statutory form grants easement where additional language in the deed expressly and clearly limits or qualifies the interest granted." Id.

The Brown decision is often cited for establishing factors to use when analyzing and differentiating between fee or easement interests in railroad source deeds.  The Brown court stated: "In determining whether the property owners have met their burden of showing that the original parties intended to adapt the statutory form to grant easements instead of fees simple, we have relied on the following factors…." Id.  From this language, however, it is evident that the Brown court was specific that it was creating criteria for how to interpret adaptations from statutory warranty form deeds. The Brown criteria were stated as:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the

---

[21] As described above, however, the deed at issue in Veach v. Culp, 599 P.2d 526 was a quit claim deed, and not in the form of a statutory warranty deed.  See Veach v. Culp, 599 P.2d at 527.  The form statutory warranty deed in Brown states, in part, "in hand paid, convey and warrant to," Brown v. State, 908 P.2d at 912 n.5 (citing Laws of 1886, § 3, p. 177-78), whereas the comparable language in Veach v. Culp states, "do by these presents remise, release and forever quit claim unto…."  Veach v. Culp, 599 P.2d at 527.

conveyance did or did not contain a habendum clause,[22] and many other considerations suggested by the language of the particular deed.

Id. (citing Swan v. O'Leary, 225 P.2d at 200).   Immediately following the list of seven factors, the court also included two additional evaluation factors, although not assigning numbers to these factors: "In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."  Brown v. State, 924 P.2d at 912.  Courts following Brown have utilized these seven plus two factors for evaluating deed language in order to determine whether source deeds convey a fee simple or easement interest.

The court in Brown stated it was relying on the earlier State of Washington Supreme Court decision of Swan v. O'Leary, which listed a number of factors courts in various jurisdictions, including the State of Washington, have used to determine the intentions of the parties when executing deeds.  Id. at 912, 915.  As noted above, however, the Swan court listed determinative factors after noting that, "[t]he authorities are in hopeless conflict.  They cannot be reconciled, because their authors approach the subject from different standpoints and give different weight and significance to the various factors entering into the various instruments of conveyance under consideration."  Swan v. O'Leary, 225 P.2d at 200.  The court in Brown, however, determined that, "[w]eighing the factors outlined in Swan, we conclude construing the deeds to convey fees simple more accurately reflects the intent of the parties, given the form of the deeds and the fact they convey 'fee simple title' to definite strips of land given without any limitation or qualification."  Brown v. State, 924 P.2d at 915.  In reaching this result, the Brown court concluded that, "[i]n the absence of language in the deeds expressly and clearly limiting the estate conveyed, the deeds fall squarely within the rule that where there is no language in a deed relating to the purpose of the grant or limiting the estate conveyed, and it conveys a definite strip of land, it will be construed to convey fee simple title."  Id.[23]

---

[22] Habendum clauses are defined as: "The part of an instrument, such as a deed or will, that defines the extent of the interest being granted and any conditions affecting the grant."  Black's Law Dictionary 778 (9th ed. 2009).

[23] In a dissenting opinion in Brown, Justice Sanders wrote:

The majority ignores the ultimate reason for this inquiry (was it the intention of the parties to convey a right to use the land for the purpose of operating a railroad, or was it, on the other hand, their intent to convey an absolute fee title) by ignoring the established rule of construction in such cases that the intention of the parties, insofar as the same can be determined from the face of the deed, must be gleaned from the entire instrument, not a particular word or phrase placed here or there, or the absence thereof.

The property owners in <u>Brown</u> had argued that references to a right of way, included in a number of deeds, indicated grants of easements.  While acknowledging that the State of Washington Supreme Court has "given special significance to the words 'right of way' in railroad deeds," <u>id.</u> at 912, the court in <u>Brown</u> noted that the Washington courts had found easements when the phrase right of way was used as a limitation or to describe the purpose of the conveyance, but conversely, in the absence of language relating to the purpose of grant or limiting the conveyance and the deed conveys a strip of land, a fee simple conveyance should be determined.  <u>Id.</u>   The court in <u>Brown</u> indicated that, "[t]he words 'right of way' can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway."  <u>Id.</u> at 914.  According to the <u>Brown</u> court, the rights of way in the deeds before the court only described strips of land being conveyed to a railroad, <u>id.</u>, and "[u]nlike <u>Swan</u>, <u>Veach</u>, and <u>Roeder</u>, where 'right of way' was used in the granting or habendum clauses to qualify or limit the interest granted, 'right of way' in the deeds at issue here appears in either the legal description of the property conveyed or in the proportion of the deeds describing Milwaukee's obligations with respect to the property." <u>Brown v. State</u>, 924 P.2d at 914.  The <u>Brown</u> court described one example of such a deed, "[t]he Eidal deed, for example, states: 'Said Railway Company…will permit a telephone wire and an electric light wire to cross its said right of way…. Before grading is begun Right of way fences shall be built.… Said Railway Company is to furnish such facilities for conducting water for irrigation and other purposes under its track and across its Right-of-Way as are reasonable and practicable….'" <u>Id.</u> (omissions in original).  The <u>Brown</u> court concluded that the phrase right of way used in the Eidal deed "merely describes a strip of land acquired for rail lines; it does not qualify or limit the interest expressly conveyed in the granting and habendum clauses." <u>Id.</u>

The <u>Brown</u> court also considered the amount of compensation paid in weighing whether an easement or fee interest was conveyed.[24]  Noting that most of the deeds indicate the consideration was ten dollars, the court stated, "whether the consideration actually paid in these cases represented the value of an easement or fee simple cannot be ascertained from the record." <u>Id.</u> (footnote omitted).

---

<u>Brown v. State</u>, 924 P.2d at 919-20 (Sanders, J., dissenting in part, concurring in part) (footnotes omitted).  Justice Sanders also noted that, "[i]n every case where this court has considered a deed conveying an interest in a narrow strip of land to a railroad company we have found only easements," <u>id.</u> at 920 n.4 (citations omitted), and that "all Washington cases construing deeds to railroad companies executed in the early 1900s have found easements, regardless of form." <u>Id.</u> at 920 (footnote omitted).

[24] In <u>Brown</u>, the court did not analyze its own fifth and seventh factors (whether a reverter clause or habendum clause was present) in the statutory warranty deeds under review.  <u>See generally</u> <u>Brown v. State</u>, 924 P.2d 908.

The <u>Brown</u> court also noted that, "most of the deeds are identical to the Whitman County deed set forth earlier in this opinion except as to the handwritten legal descriptions.  There are, however, several deeds that differ from the Whitman County deed.  We hold that these deeds convey fee simple title because, unlike <u>Swan</u>, <u>Veach</u>, and <u>Roeder</u>, they convey definite strips of land without any limitation or qualification." <u>Brown v. State</u>, 924 P.2d at 915.  Unlike the <u>Brown</u> court's more in-depth analysis of the Whitman County deed, the court did not go through the <u>Brown</u> factors for the remainder of the deeds, but only briefly discussed the other deed formats, namely, indentures, right of way deeds, and bargain and sale deeds, before concluding the remaining deeds also conveyed a fee interest and not an easement because no limitations or qualifications were included in the language of those deeds.  <u>See</u> id.  The <u>Brown</u> court stated, "[s]pecifically, several of the deeds are in the form of indentures.  Because they convey definite strips of land and nowhere specify that the purpose is for a right of way, we hold they conveyed fee simple title to Milwaukee." <u>Id.</u>  As to the Simpson Deed, the <u>Brown</u> court only stated, "[t]he deed is in statutory form and conveys a definite strip of land, but does not expressly convey fee title.  Because the purpose of the conveyance is not limited, we hold the deed conveyed fee simple title regardless of the caption." <u>Id.</u>  Similarly, the <u>Brown</u> court only briefly reviewed another form statutory warranty deed, stating, "[t]he Baker Loan & Investment Company deed does not expressly convey fee simple title but is in statutory form.  Because the conveyance is not limited, and the consideration is substantial ($1,310), we hold the deed conveys fee simple title." <u>Id.</u>

After the <u>Brown</u> decision, the State of Washington Court of Appeals, Division 3, in <u>Hanson Industries, Inc. v. County of Spokane</u>, 58 P.3d 910 (Wash. App. 2002), <u>review denied</u>, 78 P.3d 656 (Wash. 2003) (table), summarized Washington State law on the railroad source deed right of way issue:

> Washington decisions have consistently interpreted deeds granting a strip of land for a railroad right-of-way as conveying an easement, even in the face of traditional factors signifying a fee.  Thus, if the words "right-of-way" appear in the granting clause, the interest conveyed is an easement, even if the deed is in the statutory warranty form, uses the words "fee simple," contains covenants of warranty, a habendum clause conveying the land "forever," and other indicia of a fee simple.

<u>Id.</u> at 914 (citations and footnote omitted).  The <u>Hanson</u> court noted that, "[t]he deeds dissected by the <u>Brown</u> court were in the statutory warranty form, contained no reference to a 'right-of-way,' no recitation of the purpose of the grant, and expressly conveyed a 'fee simple' in the granting language.  The deeds were, therefore, subject to the strong presumption that the grantors' intent was to convey a fee interest.  The burden was, then, on the party asserting an easement to overcome this presumption." <u>Hanson Indus., Inc. v. Cnty. of Spokane</u>, 58 P.3d at 915 (citations omitted).

More recently, in 2006, the State of Washington Supreme Court in <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association</u>, 126 P.3d 16, again considered whether a railroad right of way conveyed an easement or a fee interest, and,

like the majority of previous State of Washington Supreme Court decisions, the court in Kershaw determined that an easement was conveyed to the railroad, id. at 25, even though the deed at issue in Kershaw, like the majority of the deeds in Brown v. State, was a statutory warranty deed.  The deed in Kershaw, entered into on October 5, 1905 between Edward A. and Ora A. Kershaw and the North Yakima & Valley Railway Co., stated, in relevant part:

> NOW THEREFORE, KNOW ALL MEN BY THESE PRESENTS, That we, the said E.A. Kershaw and Ora A. Kershaw...for and in consideration of the sum of [$1,000.00]…and other good and valuable considerations including the covenants of the [Railway]…do hereby give, grant, sell, confirm and convey to the said...NORTH YAKIMA & VALLEY RAILWAY COMPANY, a Corporation, its successors or assigns, a strip of land seventy five feet wide, in, along, over and through the hereinafter described land in Yakima County, Washington...to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same…..
>
> TO HAVE AND TO HOLD The said right of way, strip of land, easements, privileges and appurtenances to it, the said NORTH YAKIMA & VALLEY RAILWAY COMPANY, its successors or assigns, forever, Provided, it is understood and agreed that second party its successors or assigns, shall, at its or their own proper cost and expense, provide and maintain over and across said railroad and right of way four suitable and convenient crossings of sufficient width to permit the use thereof of wagons, hay rakes and other ordinary farm machinery, in passing to and from the portions of said premises separated by said railroad and right-of-way, with proper approaches and one of which shall be an open crossing, provided with proper cattle guards, and the others may be provided with convenient and suitable gates, which shall be provided and maintained by second party, its successors or assigns.... [A]lso, it is understood and agreed, that second party, its successors or assigns shall erect and maintain a good and lawful fence on each side of its right of way over and across said described premises...[and] provide suitable means and ways for conducting over and across its said right of way and under its said railroad, any and all water necessary for the proper irrigation of said premises....
>
> It is understood and agreed that the aforesaid covenants and agreements on the part of second party shall run with said granted right of way and be binding upon said company, and its successors and assigns, so long as a railway may be maintained by it or them, over and across said premises.

Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 18-19 (omissions, capitalization, and brackets in original).

The <u>Kershaw</u> court begin its analysis by examining many of the cases discussed above, including <u>Morsbach v. Thurston County</u>, 278 P. 686, <u>Swan v. O'Leary</u>, 225 P.2d 199, <u>Veach v. Culp</u>, 599 P.2d 526, <u>Roeder Co. v. Burlington Northern, Inc.</u>, 716 P.2d 855, and <u>Brown v. State</u>, 924 P.2d 908.   The <u>Kershaw</u> court noted that although the court in <u>Brown</u> found that statutory warranty deeds presumptively convey a fee interest, the court in <u>Brown</u> did so by "[a]ttempting to reconcile this presumption with the principle espoused in <u>Roeder</u>, <u>Swan</u>, and <u>Morsbach</u>,...where the deed uses the term '"right of way" as a <u>limitation or to specify the purpose of the grant</u>,' such a grant generally conveys only an easement."   <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, 126 P.3d at 22 (quoting <u>Brown v. State</u>, 924 P.2d at 913) (emphasis in original).   The State of Washington Supreme Court in <u>Kershaw</u>, which was decided ten years after the State of Washington Supreme Court's decision in <u>Brown v. State</u>, asserted that the <u>Brown</u> decision had not overturned the established precedent on railroad rights of way established in <u>Morsbach v. Thurston County</u>, 278 P. 686, <u>Swan v. O'Leary</u>, 225 P.2d 199, <u>Veach v. Culp</u>, 599 P.2d 526, and <u>Roeder Co. v. Burlington Northern, Inc.</u>, 716 P.2d 855, but "rather it distinguished them on the limited basis that none of the deeds at issue in <u>Brown</u> possessed language relating to the <u>purpose</u> of the grant or limiting the estate conveyed."   <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 22-23 (emphasis in original).   The <u>Kershaw</u> court continued: "<u>Brown</u> refined the principle relied on in <u>Morsbach</u>, <u>Swan</u>, <u>Veach</u>, and <u>Roeder</u> and suggests a more thorough examination of the deed is appropriate." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 23.

In turning to the deed before it, the State of Washington Supreme Court in <u>Kershaw</u> determined that, "[l]ike the cases finding an easement, and unlike the deeds in <u>Brown</u>, the word [sic] 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." <u>Id.</u>   The <u>Kershaw</u> court indicated:

> Here the deed appears to contain elements characteristic of both a fee and easement conveyance. In short, the deed is in statutory warranty form, which carries a presumption of conveying fee, but contains the words "right of way" in both the granting clause and the habendum clause, which we have stated presumptively evinces the parties' intent to convey only an easement.  We thus consider whether additional analysis of the deed language using the <u>Brown</u> factors, set forth above, sheds any light on the parties' intent.

<u>Id.</u>

The <u>Kershaw</u> court then turned to an application of the <u>Brown</u> factors to the source deed before it.  Considering the first four factors together, as "Strip of Land" versus "Right of Way," the court noted that, "[e]xamining the deed in light of the <u>Brown</u>/<u>Swan</u> factors 1 through 4 provides only slight insight." <u>Id.</u> (footnote omitted). The <u>Kershaw</u> court determined that the right of way language, which stated "'a strip of land seventy five feet wide, in, along, over and through' the Kershaw property…'to be

used by [the Railway] as a right of way for a railway forever…'" id. (emphasis in original), was "consistent with the Swan presumption, consideration of these first four factors favors the creation of an easement interest." Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23 (citing Swan v. O'Leary, 225 P.2d at 201 and Brown v. State, 924 P.2d at 908).

Considering the fifth Brown factor, whether the deed contained a reverter clause, the Kershaw court noted that, "the presence of a reverter clause is strong evidence an easement was intended." Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23. The Kershaw court concluded that because the "1905 deed does not contain a reverter clause, this factor is inapplicable in this instance and does not favor one interpretation over the other." Id. at 24. The Kershaw court also examined whether consideration was substantial or nominal, the sixth Brown factor, and noted that the $1,000.00 paid by the North Yakima & Valley Railway Company likely was a substantial sum at the time, and that the amount of consideration favored a fee, "although not conclusively so," because the record did not list the actual value of an easement or a fee. Id.

Applying the seventh Brown factor, whether there was a habendum clause in the deed, the Kershaw court observed that the habendum clause stated, in part: "'TO HAVE AND TO HOLD the said right of way, strip of land, easements, privileges and appurtenances to it, the said North Yakima & Valley Railway Company, its successors or assigns, forever.'" Id. The court in Kershaw indicated that the use of both the phrases "right of way" and "strip of land" could be construed as creating ambiguity, but concluded that the habendum clause under review favored conveyance of a fee interest. Id. The Kershaw court then looked to other language in the deed indicative of the parties' intent, as suggested by the Brown court, in the two additional evaluation factors which followed the first seven numbered factors. The Kershaw court noted that language indicating the railroad had acquired the strip of land in perpetuity was inconclusive, because the court was uncertain if the language referred to a fee interest or to an easement. Id. The court concluded, however, that the language in the granting clause, "that the perpetual right to construct, maintain and operate a railway or railways over and across the same," was "most indicative of an easement," because if the intention was a fee interest "there would have been no need to also grant any rights associated with the land." Id.

The Kershaw court acknowledged that, according to Brown v. State, the "use of a statutory warranty deed creates a presumption" that fee simple title is conveyed, but determined that State of Washington Supreme Court precedent, "which Brown does not overrule, and in fact incorporates, establish[es] that whether by quitclaim or warranty deed, language establishing that a conveyance is for right of way or [sic] railroad purposes presumptively conveys an easement and thus provides the 'additional language' which 'expressly limits or qualifies the interest conveyed.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24-25 (quoting Brown v. State, 924 P.2d at 912). The Kershaw court also stated that, "[w]hile the use of the term 'right of way' in the granting clause is not solely determinative of the estate

conveyed, it remains highly relevant, especially given the fact that it is used to define the purpose of the grant." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 25 (emphasis in original).   The <u>Kershaw</u> court found that, "[i]n examining the language of the deed, while there is some conflicting language, there is insufficient evidence to overcome the presumption that an easement was created." <u>Id.</u> The <u>Kershaw</u> court concluded, "[l]ike the cases finding an easement, and unlike the deeds in <u>Brown</u>, the word [sic] 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." <u>Id.</u> at 23.

As in <u>Brown</u>, there was a dissent filed in <u>Kershaw</u>.   In her dissent, Justice Madsen stated: "Although the majority claims that it merely 'builds' upon Justice Charles Johnson's comprehensive approach in <u>Brown v. State</u>, 130 Wash.2d 430, 924 P.2d 908 (1996), that is unfortunately not true.   Instead it tears down the framework constructed there.   <u>Brown's</u> analysis provides a framework for resolving the question whether a grant in a deed to a railway is of an easement or fee simple interest." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 29 (Madsen, J., dissenting).   (internal citation omitted).   Justice Madsen also took issue with the two presumptions the court in <u>Kershaw</u> identified, asserting:

> the majority then proposes the existence of two opposing presumptions, i.e., the presumption in <u>Brown</u> that a fee simple has been conveyed arising from use of a statutory warranty deed form and language conveying a strip of land, and a second presumption not included in <u>Brown</u>, i.e., that an easement has been conveyed arising from use of the words "right of way" in the granting and habendum clauses. Both presumptions cannot be applied in the same case in any coherent way, because if there is no other evidence of intent contrary to the presumption, the presumption dictates the result. This must be so because, in a case like this one, the first presumption would lead to the conclusion that a fee simple interest was conveyed, while the second presumption would lead to the conclusion that an easement interest was conveyed.

> The majority thus embraces conflicting presumptions and so returns the law to the state of disarray that preceded <u>Brown</u>.

<u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 30 (Madsen, J., dissenting).   Because the deed before the court in <u>Kershaw</u> was in the form of a statutory warranty deed, Justice Madsen concluded "[c]orrect application of the framework in <u>Brown</u>, beginning with the presumption that a fee simple interest was conveyed and then considering all the factors and circumstances that the court identified in <u>Brown</u> for deciding whether that presumption has been overcome, leads to the conclusion that the original parties to the 1905 deed intended that the deed convey a fee simple interest, not an easement." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 30 (Madsen, J., dissenting).

Briefly summarizing, the State of Washington Supreme Court has stated, "[t]he conveyance of a right of way to a railroad may be in fee simple or only an easement." Roeder Co. v. Burlington N., Inc., 716 P.2d at 859; see also Veach v. Culp, 599 P.2d at 527.  The majority of railroad right of way cases decided by the State of Washington Supreme Court, however, have indicated that the phrase "right of way" in railroad grants is indicative of conveying an easement and not a fee simple interest.  See, e.g., Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24-25 ("Our previous cases, which Brown does not overrule, and in fact incorporates, establishes that whether by quitclaim or warranty deed, language establishing that a conveyance is for right of way or [sic] railroad purposes presumptively conveys an easement and thus provides the 'additional language' which 'expressly limits or qualifies the interest conveyed.'" (quoting Brown v. State, 924 P.2d at 912)); Roeder Co. v. Burlington N., Inc., 716 P.2d at 859-60; Veach v. Culp, 599 P.2d at 528; Swan v. O'Leary, 225 P.2d at 201; Morsbach v. Thurston Cnty., 278 P. at 690; see also Brown v. State, 924 P.2d at 913 ("These cases [including Roeder Co. v. Burlington Northern, Inc., 716 P.2d 855, Veach v. Culp, 599 P.2d 526, Swan v. O'Leary, 225 P.2d 199, Morsbach v. Thurston County, 278 P. 686, Pacific Iron Works v. Bryant Lumber & Shingle Mill Co., 111 P. 578, and Reichenbach v. Washington Short Line Railway Co., 38 P. 1126] are consistent with the majority of cases that hold the use of the term 'right of way' as a limitation or to specify the purpose of the grant generally creates only an easement." (other citations omitted)).  The phrase "right of way" holds specific meaning to Washington courts interpreting railroad deeds.  See Brown v. State, 924 P.2d at 912 ("We have given special significance to the words 'right of way' in railroad deeds."); see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23 ("[T]he word [sic] 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest."); Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 914 ("A railroad right-of-way is a very substantial thing.  More than a mere right of passage and more than an ordinary easement.").

Under Washington law, "[t]he interpretation of a right of way deed is a mixed question of fact and law.  Determining the parties' intent is a factual question and the courts must look to the entire document in order to ascertain such intent." Roeder Co. v. Burlington N., Inc., 716 P.2d at 859 (citing Veach v. Culp, 599 P.2d at 527, and Morsbach v. Thurston Cnty., 278 P. at 689) (footnotes omitted).  Also, under Washington law, "when construing a deed, the intent of the parties is of paramount importance." Brown v. State, 924 P.2d at 911 (footnote omitted); see also Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 25; Roeder Co. v. K & E Moving & Storage Co., Inc., 4 P.3d at 841 (footnote omitted). "It is a factual question to determine the intent of the parties.  Then we must apply the rules of law to determine the legal consequences of that intent." Veach v. Culp, 599 P.2d at 527.  The court in Kershaw summarized the approach of the State of Washington courts regarding how to interpret railroad deeds: "Thus, this court's most recent exercise in interpreting railroad deeds has continued to place substantial significance on the use of right of way language but also emphasizing consideration of other relevant factors," Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 22, and found an easement interest. Id. at 26.

**Deeds to the Seattle, Lake Shore & Eastern Railway Company**

Plaintiffs argue regarding the SLS&E Deeds that, "the language of the granting clause specifically, and also the purpose of [sic] deed as a whole, show the term 'right of way' was used as a limitation on the interest conveyed." Plaintiffs, therefore, assert that the SLS&E Deeds conveyed only an easement interest to the SLS&E. The defendant responds that, "[a]pplying the factors in <u>Brown</u>, and considering the circumstances surrounding the execution of the deed and the subsequent acts of the parties...can lead to but one conclusion, specifically, that 'these factors indicate that Hilchkanum [and the other grantors] intended to convey a fee simple interest in the strip of land described.'" (quoting <u>Rasmussen v. King Cnty.</u>, 299 F.3d at 1087).

Aside from the inclusion of the names of the grantors, the dates the deeds were executed, the specific descriptions of the lots and sections, the specific descriptions of the metes and bounds of the individual properties, and minor grammatical and capitalization differences, the deeds in <u>Schroeder</u>, <u>Chamberlin</u>, <u>Klein</u>, <u>Peterson</u>, <u>Lane</u>, and <u>Spencer</u> all follow the same format, with no other differences between the deeds. The SLS&E Deeds state:

> In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands in said County, described as follows, to wit:

> [specific description of lot and section][25]

> Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said Railway Company, which location is described as follows, to wit:

> [description of the metes and bounds][26]

---

[25] For example, the Hilchkanum deed states: "Lots one (1) two (2) and three (3) in section (6) township 24 North of Range six (6) East."

[26] For example, the Hilchkanum source deed states:

> Commencing at a point 410 feet West from North East corner of Section six (6) township 24 N, R. 6 East and running thence on a one (1) degree curve to the left for 753 3/10 feet thence South 16 degrees and 34 min. West 774 2/10 feet thence with a 3 degree curve to the right for 700 feet thence with an 8 degree curve to the right for 260 4/10 feet thence South

And the said Seattle, Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To Have and to Hold said premises with the appurtenances unto the said party of the second part, and to its successors and assigns forever.

In Witness Whereof the parties of the first part have hereunto set their hands and seals this [__] day of [Month], A.D. 1887.

The source deed at issue in Nelson and Collins, the Palmberg deed, also follows the above format, but contains the following additional sentence after the habendum clause: "All riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved."  The Palmberg deed uses singular forms, such as "me," "I," "my," "party," and "his," as the deed was conveyed only by Alfred Palmberg, whereas the other SLS&E Source Deeds were conveyed by a husband and a wife, and use plural forms, such as "us," "we," "our," "parties" and "their."  The Palmberg deed states in part:

In consideration of the benefits and advantages to accrue to me from the location construction and operation of the Seattle Lake Shore and Eastern Railway in the County of King in Washington Territory I do hereby donate, grant and convey unto said Seattle Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through my lands in said County, described as follows, to wit:

[specific description of lot and section]

Such right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across my said lands by the Engineer of said Railway Company, which location is described as follows to wit:

[description of the metes and bounds]

And the said Seattle, Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance

---

58 degrees and 24 minutes West 259 6/10 feet thence with an 8° curve to the left for 564 4/10 feet thence South 13° 15' W 341 4/10 feet thence with a 6° curve to the right for 383 3/10 feet thence S 36° 15 W 150 feet to South boundary of lot 3 of said Sec. 6 which point is 1320 feet North and 2170 west from SE corner of said Sec. 6.

of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.

To have and to hold said premises with the appurtenances unto the said party of the second part, and to its successors and assigns forever. All riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved.

In Witness whereof the party of the first part has hereunto set his hands and seal this 13th day of June, A.D. 1887.

The plaintiffs state that, "[i]t is undisputed that identical wording is used in the [SLS&E Deeds] deeds at issue.  A side-by-side comparison of the deeds shows each deed contains the exact same granting clause.  Each deed follows the same format and includes identical provisions."  The defendant also indicates that, "the 1887 [SLS&E] deeds at issue all contain essentially the same language."  When granting plaintiffs' motion to certify questions to the State of Washington Supreme Court, this court also stated, "[t]he plaintiffs allege, and this court's independent review affirms, that the relevant portions of the right-of-way deeds for each of the plaintiffs contain identical language."  Schroeder v. United States, 66 Fed. Cl. at 509.  As the SLS&E Deeds are essentially the same except for the grantors' names, the date the deeds were executed, the property descriptions, and minor grammatical differences, the court will analyze the words of the SLS&E Deeds together.  The court also concludes that the use of the singular forms in the Palmberg deed instead of the plural forms as in the other SLS&E Deeds at issue does not require a separate analysis, as none of the relevant portions of the deed are affected by these differences.  The one exception is the second sentence of the habendum clause of the Palmberg deed, which is separately addressed below. When considering "the subsequent conduct of the parties," Brown v. State, 924 P.2d at 912, the court, however, will separately consider the subsequent conduct related to the particular source deed grantors.

To determine if the SLS&E Deeds conveyed easements or fee interests to the railroad, the court must first determine if any presumptions exist in favor of a fee interest, see Brown v. State, 924 P.2d at 912, or in favor of an easement, see Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 22.  The 1886 statutory warranty deed in effect at the time the deeds to the SLS&E were executed was in the following form:

"The grantor (here insert the name or names and place of residence,) for and in consideration of (here insert consideration,) in hand paid, convey and warrant to (here insert the grantee's name or names), the following described real estate (here insert description), situated in the county of _____, state of Washington.

Dated this ___ day of ___, 18 ___.

___ ___. (Seal)"

Brown v. State, 924 P.2d at 912 (quoting Laws of 1886, § 3, pp. 177-78 (codified at Rem. & Ball. Code § 8747)).[27]   The SLS&E Deeds at issue before this court do not follow the form of the 1886 statutory warranty deed enacted by the Washington territorial legislature and, therefore, the presumption of fee simple title found in Brown v. State, 924 P.2d at 912, does not apply.  The structure of the SLS&E Deeds is different from the structure of the 1886 statutory warranty deed.  Instead of first listing the grantor and then the phrase "for and in consideration," the SLS&E Deeds begin by stating: "In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory…."   Furthermore, unlike the 1886 statutory warranty deed, which used the phrase "in hand paid, convey and warrant to," regarding consideration, the SLS&E Deeds before this court use the phrase "hereby donate, grant and convey."   The exemplary deed referenced to in the Brown decision included the language, "for and in consideration of Ten & 00/100 Dollars, to them in hand paid, the receipt whereof is hereby acknowledged, do ____ [sic] hereby convey and Warrant unto," id. at 910, which is different from the granting language in the SLS&E Deeds.  Significantly, all the SLS&E Deeds under review include the phrase, "right of way," which was absent from the 1886 statutory warranty deed.  The SLS&E Deeds also differ from the majority of the deeds at issue in Brown, found to convey a fee interest, because the majority of the Brown deeds did not contain the phrase "right of way."  See Brown v. State, 924 P.2d at 910-11.

A State of Washington Court of Appeals and two federal courts reviewing the Hilchkanum deed, one of the SLS&E Deeds, agreed that the Hilchkanum deed was not in the form of a statutory warranty deed and that no presumption in favor of a fee applied.  In Ray v. King County, the State of Washington Court of Appeals determined:

> Comparison of the language of the deed, which states in relevant part that the Hilchkanum "hereby donate, grant and convey" their property, with the statute then in effect shows that their deed is not substantially in the form of either a statutory warranty deed or a bargain and sale deed. Consequently, no presumption arises that the deed conveyed fee simple title.

Ray v. King Cnty., 86 P.3d at 188 (footnotes omitted).  The United States District Court for the Western District of Washington stated that, "Washington courts presume that a deed in statutory form grants a fee simple.  Brown v. State, 924 P.2d at 912.  The Hilchkanum deed is not in statutory form, so the presumption does not apply, although clear evidence of conditions still is required."  King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1228 n.2.  Likewise, on appeal, the United States Court of Appeals for the Ninth

---

[27] The current form of the statutory warranty deed can be found at Wash. Rev. Code Ann. § 64.04.030 (2011).

Circuit in <u>King County v. Rasmussen</u>, 299 F.3d 1077, concluded, "[i]n this case, however, the Hilchkanum deed did not follow the statutory warranty form…. As a result, the Hilchkanum deed does not give rise to the presumption that the deed conveyed a fee simple." <u>Id.</u> at 1085. In sum, because the SLS&E Deeds before this court are not in the form of the statutory warranty deed, the presumption that the SLS&E Deeds conveyed fee simple interests to the railroad does not apply.[28]

Subsequent to the <u>Brown v. State</u> decision, the State of Washington Supreme Court, in <u>Kershaw</u>, enunciated that, under Washington state law precedent in <u>Morsbach v. Thurston County</u>, 278 P. at 690, <u>Swan v. O'Leary</u>, 225 P.2d at 201, <u>Veach v. Culp</u>, 599 P.2d at 528, and <u>Roeder Co. v. Burlington Northern, Inc.</u>, 716 P.2d at 859, a presumption in favor of an easement exists when the phrase "'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, 126 P.3d at 23. The SLS&E Deeds twice contain the phrase, "right of way," words to which Washington state courts "have given special significance," especially in the granting clause, even in <u>Brown v. State</u>, 924 P.2d at 912 ("We have given special significance to the words 'right of way' in railroad deeds."), and also in <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association</u>, 126 P.3d at 22. <u>See</u> <u>also</u> <u>Swan v. O'Leary</u>, 225 P.2d at 201. The beginning of the granting clauses in the SLS&E Deeds at issue identify the purpose for the conveyance to the SLS&E. The 100-foot right of way was established for the purpose of the location, construction and operation of the Seattle, Lake Shore and Eastern Railway. The SLS&E Deeds granting clauses read, in part, "[i]n Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a <u>right of way</u> one hundred (100) feet in width through our lands in said County…." (emphasis added).

As noted by the court in <u>Brown</u>: "The words 'right of way' can have two purposes: (1) to qualify or limit the interest granted in a deed to the right to pass over a tract of land (an easement), or (2) to describe the strip of land being conveyed to a railroad for the purpose of constructing a railway." <u>Brown v. State</u>, 924 P.2d at 914. According to the <u>Brown</u> court, the deeds before that court appeared in either the legal description of the property or in portions of the deeds describing the railroad's "obligations with respect to the property." <u>Id.</u> For example, unlike the language of the SLS&E Deeds, and the rights of way in <u>Swan</u>, <u>Veach</u>, and <u>Roeder</u>, in which the phrase "'right of way'

---

[28] Because the SLS&E Deeds are not in the statutory warranty deed form, and, therefore, the presumption in favor of a fee does not apply, the tension between the two presumptions discussed in <u>Kershaw</u>, particularly in the dissent, one in favor of a fee and one in favor of an easement, does not arise with respect to the SLS&E Deeds.

was used in the granting and habendum clauses[29] to qualify or limit the interest granted," Brown v. State, 924 P.2d at 914, the Brown court offered examples from deeds before it which conveyed rights of way, and did not create an easement: "Said Railway Company…will permit a telephone wire and an electric light wire to cross its said right of way…. Before grading is begun Right of way fences shall be built.… Said Railway Company is to furnish such facilities for conducting water for irrigation and other purposes under its track and across its Right-of-Way as are reasonable and practicable…." Id. (omissions in original).   All the above examples created specific obligations on the part of the grantee, not related to the nature of the interest conveyed.

Second, in the SLS&E Deeds, the phrase "right of way" appears not only in the granting clause, "a right of way one hundred (100) feet in width through our lands," but also again, "[s]uch right of way strip to be fifty (50) feet in width on each side of the center line of the railway track as located across our said lands by the Engineer of said Railway Company…."  In the second description, indicating that the conveyance is for a "right of way strip," the term "strip" is not used as an independent term, rather it provides a physical description of the "right of way," which runs "through" and "across our said [the grantors'] lands."  This language creates the presumption that the SLS&E Deeds granted an easement interest only to the SLS&E. See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23.

The defendant argues that the use of the term "strip" indicates conveyance of a fee interest, citing to the Washington State Court of Appeals decision in Ray v. King County, which determined, "where there is no language relating to the purpose of the grant or limiting the estate conveyed, and the deed conveys a strip of land, courts will construe the deed to convey fee simple title."  Ray v. King Cnty., 86 P.3d at 189 (citing Brown v. State, 924 P.2d at 913) (footnote omitted).  In the SLS&E Deeds, however, the language of the granting clause establishes the purpose of the grant, to receive the benefits from the construction, operation, and maintenance of a railroad, for which purpose the right of way use was conveyed to the SLS&E.  The court in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association quoted the earlier State of Washington Supreme Court decision in Swan v. O'Leary, "'[i]t is clear we adopted the rule that when the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.'" Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 21 (quoting Swan v. O'Leary, 225 P.2d at 201).

Moreover, as described above, in Veach v. Culp, 599 P.2d 526, the State of Washington Supreme Court found an easement, rather than a fee interest, interpreting a 1901 quit claim deed with language similar to the right of way in the granting clause of the SLS&E Deeds.  The granting clause of the deed in Veach v. Culp stated, in part:

---

[29] It is not apparent whether the phrase "right of way" was used in the habendum clauses in Swan, Veach or Roeder.  See generally Swan v. O'Leary, 225 P.2d 199, Veach v. Culp, 599 P.2d 526, and Roeder Co. v. Burlington N., Inc., 716 P.2d 855.

> (T)he [sic] said party of the first part, for and in consideration of the sum of Two Hundred and Twenty-five Dollars,…do by these presents remise, release and forever quit claim unto said party of the second party, and to its assigns, all that certain lot, piece, or parcel of land situate in Whatcom County…to wit: A right-of-way one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Eastern R.R.

Id. at 527 (omissions in original).  The Veach court noted that the parties "describe what was being conveyed: a right-of-way 100 feet wide, being 50 feet on each side of the center line of the railroad.  Language like this has been found to create an easement, not a fee simple estate."  Id.  In Swan v. O'Leary, the grantor conveyed a right of way to the railroad "for the purpose of a Railroad right-of-way to-wit:-a strip of land 50 feet in width…."  Swan v. O'Leary, 225 P.2d 199 (emphasis in original).  Despite the use of the phrase "strip of land," the State of Washington Supreme Court determined that only an easement was conveyed.  Id. at 201 ("[W]hen the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad the deed passes an easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey a fee title.").  Likewise, in Roeder Co. v. Burlington Northern, Inc., 716 P.2d 855, the State of Washington Supreme Court concluded that the grantor had conveyed an easement, rather than a fee interest, when the granting clause for the statutory warranty deed stated: "'conveys and warrants unto Bellingham and Northern Railway Company…for all railroad and other right of way purposes, certain tracts and parcels of land situate in the City of Bellingham.…'" Id. at 857 (omissions in original).  The Roeder court concluded that, "based on the language of the deed, the Improvement Company conveyed an easement only, and not a fee simple interest.…"  Id. at 860.

After review of the SLS&E Deeds and the precedent in the State of Washington Supreme Court, the court concludes that a presumption in favor of an easement is created by the language of the SLS&E Deeds.  Therefore, in accordance with the guidance in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, 126 P.3d 16, and Swan v. O'Leary, 225 P.2d 199, the court reviews SLS&E Deeds utilizing the presumption in favor of an easement.  Because the presumption in favor of an easement is rebuttable, the court must further examine the intent of the source deeds by, "performing a deed-by-deed inquiry into the interests conveyed based on (1) the particular language of the deed, (2) the form of the deed, and (3) the surrounding circumstances and subsequent conduct of the parties."  Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 22; see also Brown v. State, 924 P.2d at 911.  Under Washington law, the intentions of the parties are "paramount."  See Brown v. State, 924 P.2d at 911.

In Brown v. State, although established to evaluate whether the grantors of source deeds who used the statutory warranty form intended to grant easements instead of fees simple, the court offered multiple (seven plus two) factors by which to analyze, and based on the evidence before the court, judge the intent of the grantors of source deeds to the railroads.  See id. at 912.  In Kershaw, the most recent State of

Washington Supreme Court case to apply the Brown factors in order to evaluate a deed, the court wrote: "Here the deed appears to contain elements characteristic of both a fee and easement conveyance.  In short, the deed is in statutory warranty form, which carries a presumption of conveying fee, but contains the words 'right of way' in both the granting clause and the habendum clause, which we have stated presumptively evinces the parties' intent to convey only an easement."  Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association, 126 P.3d at 23 (citations omitted).[30]  Lower Washington state courts subsequent to Brown also have applied the evaluative factors identified in Brown to determine the intent of the parties, even when the deed at issue was not in form of a statutory warranty deed and, therefore, the presumption of a fee interest was not operative.[31]  For example, in 2002, the State of Washington Court of Appeals, Division 3, in Hanson Industries, Inc. v. County of Spokane, 58 P.3d 910, examined most of the Brown factors, even though the court specifically found that, "[t]he Hanson Industries grantors did not use statutory-form warranty or bargain and sale deeds." Id. at 915 (examining among other factors, the reverter clause, the amount of consideration, the habendum clause and the subsequent conduct of the parties) (emphasis in original).  In 2000, another State of Washington Court of Appeals, Division 1 case applied the Brown factors, Roeder Co. v. K & E Moving & Storage Co., Inc., 4 P.3d 839, and the State of Washington Court of Appeals concluded that because the deed before the court "follows the statutory bargain and sale deed form," "the rules and

---

[30] Following Kershaw, the State of Washington Court of Appeals considered whether, in a statutory warranty deed, a presumption in favor of a fee simple interest could be overcome in Washington State Grange v. Brandt, 148 P.3d 1069, 1073 (Wash. Ct. App. 2006), review denied, 171 P.3d 1054 (Wash. 2007).  Washington State Grange, however, did not involve a conveyance to a railroad, and, therefore, the State of Washington Court of Appeals did not apply the Brown factors.  Instead, the court looked to a reverter clause in that statutory warranty deed, which stated the interest "reverts back...in event it is no longer used for Grange purposes." Id. at 1073 (omissions in original).  The court concluded that "[t]his limiting language overcomes the presumption that a fee simple absolute interest was conveyed by the statutory warranty deed." Id.

[31] As noted above, previously, this court requested further guidance from the State of Washington Supreme Court regarding the application of the factors identified in Brown v. State, given the "subjective, deductive and discretionary judgments" involved in applying the Brown guidelines.  See Schroeder v. United States, 66 Fed. Cl. at 513. The State of Washington Supreme Court, however, rejected the court's certification request in a short response, stating, "[t]his court is of the view that, in light of existing precedent such as Brown v. State, 130 Wn.2d 430, 924 P.2d 908 (1996) and Ray v. King County, 120 Wn. App. 564, 86 P.3d 183, review denied, 152 Wn.2d 1027 (2004), the questions posed by the federal court are not 'question[s] of state law…which [have] not been clearly determined.'"  Order at 1-2 (quoting RAP 16.16(a)) (omission in original).  This court notes, however, that only one year later, in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association, 126 P.3d 16, the same State of Washington Supreme Court arrived at a different result, utilizing the Brown factors, but by starting with a different presumption, in favor of an easement.

analysis in <u>Brown</u> supply the correct analytical framework," <u>id.</u> at 843, and "[l]ike a deed that follows the statutory warranty deed form, a bargain and sale deed based on the statutory form automatically conveys a fee simple estate." <u>Id.</u> at 841.

The United States District Court for the Western District of Washington, the United States Court of Appeals for the Ninth Circuit, and the State of Washington Court of Appeals also undertook their review of the Hilchkanum deed, one of the SLS&E Deeds also before this court, pursuant to the <u>Brown</u> factors, although the Hilchkanum deed at issue was determined by each of those courts not to be in the form of a statutory warranty deed, and concluded the conveyance was that of a fee interest. <u>See King Cnty. v. Rasmussen</u>, 299 F.3d at 1085; <u>King Cnty. v. Rasmussen</u>, 143 F. Supp. 2d at 1228 n.2; <u>Ray v. King Cnty.</u>, 86 P.3d at 188.   These courts did so despite specific language in <u>Brown</u> that the evaluative factors it defined were to be used to determine "whether the property owners have met their burden of showing that the original parties intended to adapt the <u>statutory form</u> to grant easements instead of fees simple." <u>Brown v. State</u>, 924 P.2d at 912 (emphasis added).

The State of Washington Supreme Court historically has reached the conclusion that when the phrase "right of way" is present in a railroad conveyance, an easement was intended. According to cases examined by the court in <u>Hanson Industries, Inc. v. County of Spokane</u>:

> Washington decisions have consistently interpreted deeds granting a strip of land for a railroad right-of-way as conveying an easement, even in the face of traditional factors signifying a fee. Thus, if the words "right-of-way" appear in the granting clause, the interest conveyed is an easement, even if the deed is in the statutory warranty form, uses the words "fee simple," contains covenants of warranty, a habendum clause conveying the land "forever," and other indicia of a fee simple. <u>Reichenbach v. Wash. Short Line Ry.</u>, 10 Wash. 357, 358, 38 P. 1126 (1894); <u>Morsbach</u>, 152 Wash. at 564-65, 278 P. 686; <u>Swan</u>, 37 Wash.2d at 534, 225 P.2d 199; <u>Veach</u>, 92 Wash.2d at 573-74, 599 P.2d 526; <u>Zobrist v. Culp</u>, 95 Wash.2d 556, 627 P.2d 1308 (1981) (citing cases from other jurisdictions); <u>Roeder</u>, 105 Wash.2d 567, 716 P.2d 855; <u>Lawson</u>, 107 Wash.2d 444, 730 P.2d 1308; <u>see also Harris</u>, 120 Wash.2d 727, 844 P.2d 1006; <u>Squire Inv.</u>, 59 Wash. App. 888, 801 P.2d 1022.

> <u>Morsbach</u> is the principal Washington case for this general rule.   After reviewing cases from other jurisdictions, <u>Morsbach</u> adopts the majority view that, unless a different intent is unambiguously specified, the grant of a right-of-way to a railroad conveys an easement. This is so even in the face of contrary language in a habendum clause, and warranting covenants. <u>Morsbach</u>, 152 Wash. at 574-75, 278 P. 686.

<u>Hanson Indus., Inc. v. Cnty. of Spokane</u>, 58 P.3d at 914-15 (footnotes omitted).

Because "the intent of the parties is of paramount importance," <u>Brown v. State</u>, 924 P.2d at 911, the seven plus two factors identified by the court in <u>Brown v. State</u> provide a useful approach, and as directed in the certification denial, the best available guidance from the State of Washington Supreme Court, to analyze the original grantor's intent of the source deeds at issue, despite the fact the SLS&E Deeds are not in the statutory warranty form.  As stated above, the seven plus two <u>Brown</u> factors are:

> (1) whether the deed conveyed a strip of land, and did not contain additional language relating to the use or purpose to which the land was to be put, or in other ways limiting the estate conveyed; (2) whether the deed conveyed a strip of land and limited its use to a specific purpose; (3) whether the deed conveyed a right of way over a tract of land, rather than a strip thereof; (4) whether the deed granted only the privilege of constructing, operating, or maintaining a railroad over the land; (5) whether the deed contained a clause providing that if the railroad ceased to operate, the land conveyed would revert to the grantor; (6) whether the consideration expressed was substantial or nominal; and (7) whether the conveyance did or did not contain a habendum clause, and many other considerations suggested by the language of the particular deed.

<u>Brown v. State</u>, 924 P.2d at 912 (citing <u>Swan v. O'Leary</u>, 225 P.2d at 200).  The additional two factors identified in <u>Brown</u>, albeit without assignment of numbers, are: "In addition to the language of the deed, we will also look at the circumstances surrounding the deed's execution and the subsequent conduct of the parties."  <u>Brown v. State</u>, 924 P.2d at 912.

As noted above, the State of Washington Supreme Court in <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association</u>, labeled the examination of the first four <u>Brown</u> factors "'Strip of Land' v. 'Right of Way,'" <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 23, and considered them together.  Using the <u>Kershaw</u> approach to analyze the SLS&E Deeds, the first use of the phrase "right of way" in the SLS&E Deeds is without the term "strip" and the phrase "strip of land" is never used in the SLS&E Deeds.  The first sentence of the granting clauses of the SLS&E Deeds state: "we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a <u>right of way</u> one hundred (100) feet in width.…" (emphasis added).  Only in the third paragraph of the SLS&E Deeds does the word "strip" appear: "[s]uch <u>right of way strip</u> to be fifty (50) feet in width on each side of the center line of the railroad track.…" (emphasis added).  Thus in the SLS&E Deeds, both the phrase, "right of way" and, then, the word "strip" are used, in that order, but the term "strip" is not used independently.  Rather, the word "strip" only modifies the phrase "right of way," by adding a physical description, thereby suggesting that the granting clause uses the dominant phrase "right of way" to convey an easement.  A plain reading of this language suggests the phrase "right of way" is used to define an easement. <u>See</u> <u>Racine v. United States</u>, 858 F.2d 506, 508 (9th Cir. 1988) ("The government's interpretation of the easement was 'not supported by the plain language of the deed' and was 'plainly erroneous.'"); <u>Sunnyside Valley Irr. Dist. v. Dickie</u>, 73 P.3d 369, 372 (Wash. 2003) ("If

the plain language [of a deed] is unambiguous, extrinsic evidence will not be considered.").

Moreover, courts in the State of Washington have not found that the mere use of the word "strip" is dispositive to demonstrate intent to convey a fee.  In a number of cases, the State of Washington Supreme Court has found railroad rights of way conveyed an easement even though the deed referred to the right of way as a strip.  See Swan v. O'Leary, 225 P.2d at 199, 201 ("a strip of land 50 feet in width…."); see also Biles v. Tacoma, 32 P. at 212 ("a strip of land…two hundred feet on each side of the center line of the Northern Pacific Railroad….").  Likewise, in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association, 126 P.3d 16, the statutory warranty deed conveyed "a strip of land seventy five feet wide," however, the State of Washington Supreme Court found only an easement was conveyed.  Id. at 18, 26.

The SLS&E Deeds also use the phrase "right of way" as a limitation of the grant to the SLS&E.  The deed in Kershaw conveyed "a strip of land seventy five feet wide…to be used by [the Railway] as a right of way for a railway forever, together with the perpetual right to construct, maintain and operate a railway or railways over and across the same."  Id. at 18 (brackets in original).  The SLS&E Deeds state the purpose of the conveyance as: "In Consideration of the benefits and advantages to accrue to us from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory we do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through our lands…."

The defendant argues, however, that the SLS&E Deeds contain "no language limiting the grant to the privilege of constructing, operating, or maintaining a railroad over the land."  As quoted immediately above, however, the granting clauses of the SLS&E Deeds specifically refer to the railroad purpose for granting the right of way, "[i]n Consideration of the benefits and advantages to accrue to us from the location, construction and operation" of the railroad to the benefit of the source deed grantors.  There is no indication that the signatories to the respective SLS&E Source Deeds intended to give up their fee interests in the right of way to any subsequent landowners other than a railroad, even though in comparison to the deed in Kershaw, the SLS&E source deed grantors did not use words "perpetual right" when referring to constructing, maintaining and operating a railroad.  See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24.  Despite the conclusions in the pre-Kershaw decisions issued earlier by the Washington state courts in Ray v. King County and the federal courts in King County v. Rasmussen, based on the record before this court, the absence of a more specific indication that the SLS&E source deed grantors intended all rights in the right of way to cease is further support for a finding of an easement interest only.  In fact, in the language of the SLS&E Deeds, the consideration for the right of way was specifically related to benefits the grantors of the source deeds expected to have "accrue" to them from the railroad the construction and operation of the railroad.  Moreover, as discussed below, no monetary consideration is listed in the SLS&E Deeds, therefore, the construction and operation of the railroad was the consideration

offered to the source deed grantors.  An analysis of the first four factors identified by the <u>Brown</u> court to determine the grantor's intent favors the finding of an easement conveyed to the railroad by the SLS&E Deeds.

At oral argument in the consolidated cases before this court, the defendant also cited to footnote eleven in <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association</u>, 126 P.3d 16, to support its position that a fee interest and not an easement was conveyed by the SLS&E Deeds, even though in the <u>Kershaw</u> case the court concluded that an easement, and not a fee, was conveyed.  <u>Id.</u> at 25 n.11.  In the brief, footnote comment, the State of Washington Supreme Court in <u>Kershaw</u> mentioned the decision in <u>Ray v. King County</u>, 86 P.3d 183, and contrasted the language of the Hilchkanum deed before the court in <u>Ray v. King County</u>, with the language of the deed before the State of Washington Supreme Court in <u>Kershaw</u>.  <u>See</u> <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 25 n.11.  The footnote states in its entirety:

> Level 3 asserts a recent Division One case, <u>Ray v. King County</u>, 120 Wn. App. 564, 86 P.3d 183, <u>review</u> <u>denied</u>, 152 Wash.2d 1027, 101 P.3d 421 (2004), which applied the <u>Brown</u> factors to a railroad deed and found a fee simple conveyance, is analogous here and we should apply the same analysis.  However, while the <u>Ray</u> deed did include the phrase "right of way" it did so only to the extent that it stated it was conveying a "right of way strip."  <u>Id.</u> at 572, 86 P.3d 183.  The <u>Ray</u> court thus found no presumption in favor of an easement and applied the <u>Brown</u> factors to reach its conclusion that a fee interest was transferred.  Here, the deed specifically established the <u>purpose</u> of the grant when it stated the land was "to be used by [the Railway] as a right of way for a railway."  This creates a presumption in favor of an easement which was not present in <u>Ray</u>.

<u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 25 n.11 (emphasis added in original, internal citation omitted).  Of note, the court in <u>Kershaw</u> stated that, "while the <u>Ray</u> deed did include the phrase 'right of way' it did so only to the extent that it stated it was conveying a 'right of way strip.'"  <u>Id.</u>  Although the third paragraph of the Hilchkanum source deed described the "right of way strip to be fifty (50) feet in width on each side of the center line of the railway track," the <u>Kershaw</u> footnote did not address the right of way reference in the granting clause of the Hilchkanum deed.  In the Hilchkanum granting clause, the deed referred to the phrase "right of way," without mention of a limitation by use of the word "strip," as follows, "a right of way one hundred (100) feet in width through our lands in said County described as follows…."  Furthermore, the use of the phrase "right of way" in the granting clause in the Hilchkanum source deed, and in the SLS&E Deeds generally, established the purpose of the right of way: for the "location, construction and operation of the Seattle, Lake Shore and Eastern Railway…."  As the <u>Kershaw</u> court did not consider both references to the phrase "right of way" in the Hilchkanum source deed when drawing a distinction between the Hilchkanum source deed and the deed under review in

Kershaw, or that the right of way defined the purpose of the Hilchkanum conveyance to the SLS&E, the footnote in Kershaw is not persuasive.

Moreover, the Kershaw footnote is dictum, as the interpretation of the Hilchkanum source deed was not before the court, was included in a footnote as a passing remark, and was not essential to the court's determination that the deed at issue before the court in Kershaw conveyed an easement.  See State ex rel. Lemon v. Langlie, 273 P.2d 464, 468 (Wash. 1954).  The State of Washington Supreme Court has described dictum as follows:

> "The word [dictum] is generally used as an abbreviated form of obiter dictum, 'a remark by the way;'  that is, an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion."

Id. (quoting Black's Law Dictionary 541 (4th ed. 1951); see also Amalgamated Transit Union Local 587 v. State, 11 P.3d 762, 809 n.4 (Wash. 2000) (Sanders, J., dissenting) ("The word 'dicta' means observations or remarks made in pronouncing an opinion concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination."), opinion corrected, 27 P.3d 608 (Wash. 2001); Woodall v. Avalon Care Ctr.-Federal Way, LLC, 231 P.3d 1252, 1261 n.7 (Wash. App. 2010) (citing Pedersen v. Klinkert, 352 P.2d 1025, 1028 (Wash.) ("[D]icta is language not necessary to the decision in a particular case."), reh'g denied (Wash. 1960)).

The fifth Brown factor asks whether there was a reverter clause in the original source deed.  In support of its argument that fee interests were created in the source deeds, the defendant argues that the existence of a reverter clause would indicate that an easement was intended and, therefore, because the SLS&E Deeds do not contain a reverter clause, the opposite conclusion should be reached.  Defendant cites to Ray v. King County, which states "[p]resumably the existence of such a clause suggests an easement was intended."   Ray v. King Cnty., 86 P.3d at 190.  Plaintiffs argue in response that a "railroad right-of-way deed need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment," citing Hanson Industries, Inc. v. County of Spokane, 58 P.3d at 916.   Although the State of Washington Supreme Court has indicated "the presence of a reverter clause is strong evidence an easement was intended," Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23, the State of Washington Supreme Court in Kershaw, when analyzing a deed which did not contain a reverter clause concluded: "[t]hus, this factor is inapplicable in this instance and does not favor one interpretation over the other."   Id. at 24.  The SLS&E Deeds also do not contain a reverter clause, and following the Kershaw guidance, this court, likewise, concludes that the absence of a

reverter clause does not favor one interpretation over the other in the fee versus easement inquiry.

The sixth <u>Brown</u> factor inquires into whether the consideration was substantial or nominal.  The consideration referred to in the SLS&E Deeds was not listed in monetary terms, rather the consideration was identified as "the benefits and advantages to accrue to us [the grantors] from the location, construction and operation of the Seattle Lake Shore and Eastern Railway…." There is no indication in the SLS&E Deeds or the record before the court that monetary compensation was part of the SLS&E conveyances.  The plaintiffs argue that the United States has offered no refutation of the evidence in the Joint Appendix from a local, contemporary newspaper, the May 10, 1887 edition of the Seattle Daily Post-Intelligencer.  Among other real estate transactions, the newspaper lists the deeds from the Hilchkanums, the Tahalthkuts, the Yonderpumps, as well as from Mr. and Mrs. Davis to the Seattle, Lake Shore & Eastern Railway Company, with no monetary consideration indicated, although other deeds referred to in the same newspaper have monetary amounts shown.

Plaintiffs also cite to the case of <u>Mouat v. Seattle, Lake Shore & Eastern Railway Co.</u>, 47 P. 233 (Wash. 1896), in which the court examined an 1888 warranty deed listing consideration paid by the SLS&E in the amount of $1900.00.  <u>Id.</u> at 234.  The plaintiffs argue that since the <u>Mouat</u> deed specifically included the amount of monetary compensation in the warranty deed paid by the SLS&E to the grantor, the absence of any compensation in the SLS&E Deeds at issue before the court indicates that only an easement was intended in the conveyances of the SLS&E Deeds before the court.  The defendant cites to <u>Ray v. King County</u>, which indicated that the Hilchkanum deed's description of the consideration as the benefits accruing as a result of the railroad from the location, construction and operation of the railroad, provided "no information on whether the consideration is substantial or nominal.  Thus, this factor is neutral."  <u>Ray v. King Cnty.</u>, 86 P.3d at 190.  The court notes that in <u>Hanson Industries, Inc. v. County of Spokane</u>, the State of Washington Court of Appeals, Division 3, stated, "[h]ere, the monetary consideration was nominal. The primary consideration was the promise to build the railroad. This is another factor militating in favor of the grant of an easement." <u>Hanson Indus., Inc. v. Cnty. of Spokane</u>, 58 P.3d at 917.  In considering the sixth <u>Brown</u> factor, the words of the granting clauses, the absence of any mention of monetary compensation in the SLS&E Deeds, combined with the newspaper evidence in the Joint Appendix, favors a finding that the SLS&E Deeds conveyed easements.

The seventh <u>Brown</u> factor has two parts and inquires first whether the conveyance contains a habendum clause and also allows inquiry into the "many other considerations suggested by the language of the particular deed."  <u>Brown v. State</u>, 924 P.2d at 912.  The defendant argues that the habendum clause in the SLS&E Deeds contains "no limiting language," and alleges "[t]his habendum clause plainly 'does not limit the extent of the interest conveyed in the granting clause.'"  (quoting <u>Ray v. King Cnty.</u>, 86 P.3d at 190).  The plaintiffs argue that the habendum factor "has proven to be of little utility in deed analysis" and states that "[i]n numerous cases, the presence of a standard habendum clause has not altered the conclusion that the granting clause

conveyed an easement."   In <u>Kershaw</u>, the court found that language in the habendum clause it was reviewing, which included both the words "strip of land," albeit without much explanation, and "easements" ("right of way, strip of land, easements, privileges and appurtenances to it"), favored a fee conveyance, although the <u>Kershaw</u> court concluded the case by finding the source deed before the court conveyed an easement. <u>See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association</u>, 126 P.3d at 24.   In <u>Hanson Industries, Inc. v. County of Spokane</u>, 58 P.3d at 910, the State of Washington Court of Appeals, Division 3, indicated "in railroad right-of-way deeds, the habendum language is not dispositive."   <u>Id.</u>   In fact, other than listing as a factor for review whether the deed included a habendum clause, the <u>Brown</u> court did not specifically analyze the habendum clauses at issue in the deeds before it.   <u>See generally</u> <u>Brown v. State</u>, 924 P.2d 908.

The SLS&E Deeds all contain habendum clause language which reads: "To Have and to Hold the said premises with the appurtenances unto the said party of the second part [the SLS&E] and to its successors and assigns forever."   The Palmberg source deed, the deed at issue in <u>Nelson</u> and <u>Collins</u>, includes the same habendum clause: "To have and to hold the said premises with the appurtenances unto the said party of the second part and to its successors and assigns forever," but continues: "All riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved." In <u>Swan v. O'Leary</u>, 225 P.2d 199, the source deed contained a habendum clause which stated: "To Have and to Hold All and singular the said premises together with the appurtenances, unto said party of the second part, and to his heirs and assigns forever." <u>Id.</u>   Likewise, in <u>Veach v. Culp</u>, 599 P.2d 526, the source deed included the following habendum clause: "To have and to hold, all and singular, said premises, together with the appurtenances unto the said party of the second part, and to its assigns forever." <u>Id.</u> at 527.   Although not incorporating identical habendum clause language to the SLS&E Deeds, in another railroad deed reviewed by the State of Washington Supreme Court, the court in <u>Morsbach v. Thurston County</u> also concluded that the parties intended to convey only an easement.   <u>See Morsbach v. Thurston Cnty.</u>, 278 P. at 690. The relevant language in the habendum clause in <u>Morsbach v. Thurston County</u> stated, in part: "To have and to hold the general premises with the privileges and appurtenances thereto belonging to the Northern Pacific Railroad Company, its successors and assigns, to their use and behoof forever."   <u>Id.</u> at 687.   All these deeds analyzed by the State of Washington Supreme Court contained habendum clauses substantially similar to the SLS&E Deeds, and in each case an easement, not fee title was found.   Regarding the Palmberg deed specifically, the second sentence of the habendum clause in the Palmberg deed, "[a]ll riparian and water front rights on Lake Samamish [sic] are hereby expressly reserved," is even more indicative of an easement than in the other SLS&E Deeds. Unlike the other SLS&E Deeds, which the defendant argues, contain "no limiting language," the Palmberg deed does limit the interest that the SLS&E acquired in the right of way, and reserved to the grantor the riparian and water front rights on Lake Sammamish.   Given the acknowledged limited value of a habendum clause to determine the intent of the parties to a railroad right of way, this court also assigns limited weight to the habendum clauses in the SLS&E Deeds and the Palmberg source deed.   To the extent, however, that any weight is given, based on

Morsbach v. Thurston County, this factor favors finding an easement in the SLS&E Deeds and even more so regarding the Palmberg deed.

In addition to the seven enumerated Brown factors, the Brown court further indicated two additional factors should be reviewed, "the circumstances surrounding the deed's execution and the subsequent conduct of the parties." Brown v. State, 924 P.2d at 912. The defendant argues that the language of the deeds of the current plaintiffs evidences an intention to convey a fee interest. As a preface to listing the Brown factors, the court wrote: "In determining whether the property owners have met their burden of showing that the original parties intended to adapt the statutory form to grant easements instead of fees simple…." Id. (emphasis added). Therefore, this court interprets the "circumstances surrounding the deed's execution and the subsequent conduct of the parties" all designed to assist in understanding the intent of the original source grantors,[32] and not the intent of subsequent conveyors of the property.

The court in Brown v. State, although briefly examining the historical context of the conveyances before it, did not examine the conduct of any subsequent owner. See Brown v. State, 924 P.2d at 915. Initially, this court notes that at least two courts reviewing the Hilchkanum deed, previously, have indicated that the failure of a specific reference to a right of way in a subsequent deed "is not probative of the grantors' intent." Ray v. King Cnty., 86 P.3d at 191; see also King Cnty. v. Rasmussen, 299 F.3d at 1088 ("But the total failure to except the land subject to the right of way in the lot 2 deed is not significantly probative of whether or not the parties intended to convey a fee simple estate."). Logically, the absence of any mention of a right of way in a subsequence conveyance could be interpreted as suggesting that the property interest earlier conveyed to the SLS&E was a fee interest. No mention of a right of way in a subsequent conveyance, however, also can be read as indicating that the original landowners believed that by granting a right of way only an easement was conveyed to the railroad in the source deed and that the original owner and subsequent owners retained property rights in fee, with the freedom to convey the whole acreage, with no exceptions, despite the right of way grant. Given these contradictory possibilities, this court generally attributes some, but limited weight, in the fee versus easement analysis to the absence of a specific reference to the right of way in a subsequent conveyance.

As to "the circumstances surrounding the deed's execution and the subsequent conduct of the parties," Brown v. State, 924 P.2d at 912, the record before this court appears to be more extensive than before previous courts, including the Washington state courts in Ray v. King County, No. 00-2-14946-8SEA, King County Super. Ct. and Ray v. King County, 86 P.3d 183, and the federal courts, King County v. Rasmussen, 143 F. Supp. 2d 1225 and King County v. Rasmussen, 299 F.3d 1077, which courts

---

[32] In Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, the court examined a 1960 subsequent conveyance, but the subsequent conveyance was from one of the original grantors, Ora A. Kershaw, which, therefore, could inform the grantor's intent. See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 19, 25 n.12.

also reviewed the Hilchkanum source deed.  The parties have cited to documents in the record before this court which were not before any of those courts.

**The <u>Schroeder</u> Plaintiffs, No. 04-1456L (the Tahalthkut Deed)**

The plaintiffs in <u>Schroeder</u> are successors in interest to Louis and Mary Tahalthkut, who conveyed a right of way to the SLS&E on May 6, 1887.  On May 4, 1907, Mary Tahalthkut subsequently conveyed the land to T.N. Tallentire by Warranty Deed.  The warranty deed does not mention the right of way to the SLS&E.  The deed between Mary Tahalthkut and T.N. Tallentire, therefore, does not provide evidence regarding the intent of the parties.

The plaintiffs also identify a subsequent agreement between Louis Tahalthkut and Daniel J. Reichert, executed on June 22, 1889, as evidence of the source grantor's intent to convey an easement.  In this subsequent conveyance, Louis Tahalthkut agreed to sell Daniel Reichert all timber that was on his property for logging.   The timber agreement states, in part:

> These articles of agreement made entered into and executed at the city of Seattle, King County, Washington Territory on this 22nd day of June, A.D. 1889, by and between Louie Tahalthkut of King County aforesaid party of the first part, and Daniel J. Reichert of the city of Tacoma, Pierce County in said Territory party of the second part, Witnesseth: 1st That the said party of the first part for and in consideration of the covenants promises and agreements on the part of the said party of the second part hereinafter contained, covenants promises and agrees to sell and convey and by these presents does sell and convey and confirm unto the said party of the second part his heirs and assigns, and said party of the second part covenants promises and agrees to buy and take all and singular the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land situate lying and being in King County, Washington Territory and particularly described as follows, to wit: Lot 4 and SE ¼ of SW ¼ of SEC. 32 in Township 25 N of Range 6 E containing 75 acres for the sum of $250.00 gold coin of the United States of America to be paid at the date of the execution of these presents and the said party of the second part in consideration of the premises, covenants promises and agrees to pay to the said party of the first part the said sum of $250.00 gold coin at the time aforesaid.

Plaintiffs assert that there was "no exclusion for timber growing in the 100-foot wide right of way" and that when Daniel Reichert agreed "to buy and take all and singular the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land," these words demonstrate that it was understood that "Tahalthkut still owned the fee title to that land and therefore could rightfully sell the timber."  If Louis Tahalthkut's intent was to convey the 100-foot wide right of way in fee simple to the SLS&E, the subsequent agreement with Daniel Reichert

should have reflected that Louis Tahalthkut no longer owned the 100-foot wide right of way. Defendant, however, argues that the absence of any reference to a right of way "'is not probative of the grantors' intent.'" (quoting Ray v. King Cnty., 86 P.3d at 191). In this instance, however, the Tahalthkut grant of timber rights to the entire property, only two years after the conveyance to the SLS&E, provides some support to the plaintiffs' argument that the grantors believed they still owned the property in fee simple, subject to a right of way easement.

**The Chamberlin Plaintiffs, No. 04-1457L (the Hilchkanum Deed)**

The plaintiffs in Chamberlin are successors in title to Bill and Mary Hilchkanum, who conveyed the right of way to the SLS&E on May 9, 1887. In subsequent conveyances, the Hilchkanums described the right of way in terms of acres of land, and referenced the right of way without further description, and in some instances, without mentioning the phrase "right of way" at all. On December 15, 1890, Bill and his then-wife Annie Hilchkanum conveyed all of Lot 2, described as "lot two (2) in section six (6) township twenty-four (24) north of range six (6) east of Willamette Meridian containing twenty-one and eighty hundredths (21 80/100) acres," to Julia Curley without mention of the right of way. On December 16, 1898, Bill Hilchkanum conveyed to his then-wife, Annie Hilchkanum, "Lot one (1) less three (3) acres of right of way of railroad and lot three (3) less three and 25/100 acres right of way of railroad, and all of lot five (5) all in section six (6) in township twenty-four (24) N. of range six (6) east…." On March 15, 1904, Bill and his then-wife Louise Hilchkanum conveyed to Chris Nelson, without mention of the right of way, the identical property conveyed to Julia Curley. The conveyance to Chris Nelson was for "Lot Two (2) Section Six (6) Township twenty-four (24), North, Range six (6) east of the Willamette Meridian in the County of King, State of Washington, containing twenty one acres more or less." Also on March 15, 1904, Louise Hilchkanum conveyed by quit claim deed to Chris Nelson, Lot 1 "less three (3) acres heretofore conveyed to the Seattle & International Railway Company for right of way purposes." On June 30, 1905, Bill Hilchkanum conveyed part of Lot 3 to John Hirder. That deed describes the boundary of the property, in part, as "thence in a Northeasterly direction along the right of way of the Seattle Lake Shore and Eastern Railway…." On October 27, 1906, Bill and Louise Hilchkanum conveyed by Quit Claim Deed to King County, a sixty foot strip of land in Lot 3, and the right of way was indicated as, "Right of Way Monahan Road." On March 3, 1909, Bill Hilchkanum conveyed another portion of Lot 3 to Chas Edeen by quit claim deed, which described the conveyance as including "[a]ll of the land situated in lot three (3) of section six (6)...excepting the Northern Pacific Ry. right of way...." The plaintiffs argue that because "Hilchkanum consistently utilizes the term 'right of way' in his subsequent conveyances," that this demonstrates his intent was "consistent with the grant of an easement."

Although most of the subsequent conveyances of the Hilchkanum deed property in the record before this court included the phrase "right of foreway," two of the seven conveyances did not mention the phrase. The Hilchkanums appear to have used different ways of describing the attributes of their property in subsequent conveyances,

sometimes using just the phrase "right of way" and other times describing the geographic boundaries without using the phrase "right of way."   Moreover, the Hilchkanums conveyed their interests in the same property to multiple individuals.   The record before the court indicates that the same portion of Lot 1 was conveyed twice, once from Bill Hilchkanum to his wife Annie on December 16, 1898, and once from Louise Hilchkanum to Chris Nelson, on March 15, 1904.   Additionally, Bill Hilchkanum appears to have conveyed his interest in portions of Lot 3 four times, first on December 16, 1898 to his wife Annie, then to John Hirder on June 30, 1905, then to King County on October 27, 1906, and finally, on March 3, 1909, to Chas Edeen.   Conveying the same property to multiple individuals using different language adds confusion.   The mention in 1898 of the right of way in the conveyance by Bill Hilchkanum to Annie Hilchkanum and also in the 1904 conveyance by Louise Hilchkanum to Chris Nelson, not far removed in time from the source deed conveyance to the SLS&E in 1887, however, is somewhat persuasive of an intent on the part of the source deed grantors to convey only an easement interest.

### The <u>Klein</u> Plaintiffs, No. 04-1458L (the Davis Deed)

The plaintiffs in <u>Klein</u> are successors in title to George and Elizabeth Davis, who conveyed the right of way to the SLS&E by deed dated May 9, 1887.   On June 30, 1902, George Davis conveyed Lot 1 by Warranty Deed to the Lake Sammamish Shingle Company.   That deed is silent as to the railroad right of way and, therefore, that subsequent conveyance is not considered helpful to understanding the intent of George Davis.   <u>See</u> <u>Ray v. King Cnty.</u>, 86 P.3d at 191.

### The <u>Peterson</u> Plaintiffs, No. 04-1459L and the <u>Lane</u> Plaintiff, No. 04-1468L (the Sbedzuse Deed)

The plaintiffs in <u>Peterson</u> and <u>Lane</u> are successors in title to Bill and Lucinda Sbedzuse, who conveyed the right of way to the SLS&E on May 6, 1887.   On August 5, 1905, Bill Sbedzuse conveyed, by warranty deed, his undivided two-thirds interest in Lot 3 and the N.E. ¼ of Section 32 to G.R. Fisher.    The August 5, 1905 deed is silent with respect to the railroad right of way, and, therefore, not helpful to explain the grantor's intent.

On June 22, 1889, Bill Sbedzuse entered into the same kind of timber agreement with Daniel J. Reichert as had his neighbor, Louis Tahalthkut, selling to Daniel Reichert all timber suitable for logging that was on Bill Sbedzuse's property.   The agreement reads, in part: "to buy and take all and singular the timber suitable for logging and piling purposes now standing growing and being on those certain pieces or parcels of land situate lying and being in King County, Washington Territory and particularly described as follows...."[33]   Plaintiffs argue this demonstrates that "Sbedzue [sic] must have believed that he still owned the fee title to the land," and the grant to the SLS&E only

---

[33] The agreement is virtually identical to the agreement entered into between Daniel Reichert and Louis Tahalthkut.

conveyed an easement.  Plaintiffs assert that there was "no exclusion for timber growing in the 100-foot wide right of way" and that "this subsequent conduct is consistent with an understanding that Tahalthkut still owned the fee title to that land and, therefore, could rightfully sell the timber."   Like the agreement between Daniel Reichert and Louis Tahalthkut for the sale of timber rights, the agreement between Bill Sbedzuse and Daniel Reichert, only two years after the source deed was executed, appears to demonstrate an easement was intended by the source deed grantor, and that Louis Tahalthkut continued to believe that he held a continued fee interest in the land.  The fact that Louis Tahalthkut and Bill Sbedzuse entered into very similar agreements, on the same day, for timber rights with Daniel Reichert, only two years after each grantor had executed their source deeds to the SLS&E, and that neither conveyance excluded the right of way both had granted in their conveyance to the SLS&E, supports the conclusion that easements and not fee interests were conveyed to the railroad.

**The <u>Spencer</u> Plaintiffs, No. 04-1463L (the Yonderpump Deed)**

The plaintiffs in <u>Spencer</u> are successors in title to Jim and Alice Yonderpump who conveyed the right of way to the SLS&E on May 6, 1887.  Alice Zacuse, Jim Yonderpump's widow, and her husband at the time, Jim Zacuse, conveyed a portion of Lot 2 to George Clark and Tolle Anderson by Quit Claim Deed dated October 28, 1911, without mention of the railroad right of way.  On January 27, 1919, Alice Zacuse conveyed by Quit Claim Deed the remaining portion of Lot 2 to W. Baron Cook, again without mentioning the right of way.  Neither of these subsequent conveyances, therefore, is helpful to explain the grantors' intent.

**The <u>Nelson</u> Plaintiffs, No. 04-1465L and the <u>Collins</u> Plaintiffs, No. 04-1472L (the Palmberg Deed)**

The plaintiffs in <u>Nelson</u> and <u>Collins</u> are successors in title to Alfred Palmberg, who conveyed the right of way to the SLS&E on June 13, 1887.  On February 1, 1893, Alfred Palmberg conveyed by Warranty Deed, a portion of Lot 2 to the Lake Sammamish Lumber and Shingle Company, described, in relevant part, as: "All of that part of lot two (2) of section nineteen (19) township twenty five (25) north range six (6) east W.M. which lies west of the right of way of the Seattle, Lake Shore & Eastern Railway…."  The conveyance between Alfred Palmberg and Lake Sammamish Lumber and Shingle Company specifically mentions the "right of way" to the SLS&E, only as part of the description of the property, and provides relatively little illumination as to the source grantor's intent.

Alfred Palmberg also conveyed a portion of his land in Lots 2 and 3, in Section 20, to Alonzo Charles Stares by Warranty Deed dated March 30, 1893.  The property is described, in relevant part, as:

> Beginning at a point on the line between lots 2 and 3 in section 20 Tp. 25 N R. 6 E. W.M. 569 64/100 feet south of the NW corner of said lot 3 thence west in said lot 2 two hundred and twenty one and 58/100 (221

58/100) feet thence southwesterly along a line drawn at right angels [sic] to the center line of the Seattle Lake Shore and Eastern Railway Company fifteen and 3/10 feet to the easterly margin of the right of way of said Railway Company thence southeasterly along said right of way two hundred forty and 4/10 (240 4/10) feet thence east... Together with all riparian rights as reserved from the Seattle Lake Shore and Eastern Railway Company fronting upon appurtenant to the land hereinbefore described.

The conveyance between Alfred Palmberg and Alonzo Charles Stares likewise specifically mentions the "right of way" to the SLS&E, but as part of the description of the property, and provides relatively little illumination as to the source grantor's intent.

Plaintiffs also request the court to examine a number of additional "circumstances surrounding the deed's execution," as suggested in Brown v. State, 924 P.2d at 912. Plaintiffs argue some of these circumstances support a finding that easements and not fee interests were conveyed to the SLS&E. The first consideration plaintiffs raise is the railroad's decision not to use the statutory warranty form deed. Plaintiffs argue that the lawyer who represented the railroad on the SLS&E acquisitions, Thomas Burke, "was familiar with real estate transactions," and would have been aware of the 1886 legislative enactment which provided that deeds patterned after state statute warranty deed were "deemed to convey fee simple title and carry certain warranties." See Brown v. State, 924 P.2d at 912 n.5 (citing Laws of 1886, § 3, pp. 177-78). The plaintiffs assert that if the intent of the railroad was to acquire the land in fee simple, Thomas Burke, the SLS&E's lawyer, would have used the statutory warranty form deed. Plaintiffs argue that "the deliberate choice not to use a warranty deed is strong evidence that Thomas Burke, as representative for the railroad, did not intend to acquire fee simple title for the railroad." According to the plaintiffs, "[t]he decision to deviate from that form of deed is additional evidence that the railroad did not intend to secure fee simple title."

The plaintiffs further assert that the railroad drafted the deeds and that any ambiguities, therefore, should be construed against the railroad. The court in Hanson Industries, Inc. v. County of Spokane, 58 P.3d at 916, stated that "the grantor also generally drafts the deed," and the court recognized that an ambiguous deed is construed against the drafter. See id. (citing Rouse v. Glascam Builders, Inc., 677 P.2d 125, 130 (Wash. 1984) and Guy Stickney, Inc. v. Underwood, 410 P.2d 7, 9 (Wash. 1966)). The Hanson court, however, found that the railroad had drafted the deeds at issue in the case before it, stating, "the three deeds at issue here are virtually indistinguishable and were clearly prepared by the railroad, not by the grantors. The wording is identical, except for the details of monetary consideration and property descriptions. The three deeds all contain, for instance, the malapropism 'revision and revisions' instead of 'reversion and reversions.'" Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 916. The Hanson court concluded: "The landowner no doubt relied on the expertise of the railroad." Id.

The SLS&E Deeds also are remarkably similar.  Notably, source deed grantors, Louis and Mary Tahalthkut, Bill and Lucinda Sbedzuse, George and Elizabeth Davis, and Jim and Alice Yonderpump, all executed their source deeds to the SLS&E on the same day, May 6, 1887, using the same notary and in the presence of the same witnesses.  The Joint Appendix also includes copies of what appears to be a preprinted form, with blanks filled in with the grantor's name, a description of the property, the date of execution and signature information.  Each of the SLS&E Deeds mirror the pre-printed form, with open blanks filled in for grantors' names, property descriptions, and signatures.   The pre-printed form states: "In Consideration of the benefits and advantages to accrue to [ ] from the location, construction and operation of the Seattle, Lake Shore and Eastern Railway in the County of King in Washington Territory [ ] do hereby donate, grant and convey unto said Seattle, Lake Shore and Eastern Railway Company a right of way one hundred (100) feet in width through [ ] lands in said County, described as follows…."   Additional deeds, not at issue in this consolidated action, but also included in the Joint Appendix, likewise follow the same format as the SLS&E Deeds and the pre-printed form, further demonstrating the likelihood that representatives of the SLS&E drafted the SLS&E Deeds at issue in this case.  As the dissent in Ray v. King County noted, in considering one of the SLS&E Deeds, the Hilchkanum deed, "[t]he Rays also submitted an affidavit from an expert who opined that 'given the use of pre-printed deeds, and given Hilchkanum's illiteracy, there appears no doubt that Hilchkanum did not draft the deed; but rather, it was the product of the railroad company.'" Ray v. King Cnty., 86 P.3d at 198 (Baker, J., dissenting).

It further appears from the record that both Bill and Mary Hilchkanum made their "marks" on the deed as opposed to signing the conveyance.  Similarly, Louis and Mary Tahalthkut, Bill and Lucinda Sbedzuse, George and Elizabeth Davis, and Jim and Alice Yonderpump made their marks in the form of an "x" on the deed.  The presence of a mark instead of a signature suggests that these source deed grantors likely were not literate, further lending support to the conclusion that the railroad drafted the SLS&E Source Deeds.  Although no signature appears on the version of the Palmberg deed in the record, there is no mark, implying that he may have signed his original source deed. The Palmberg source deed, however, is only slightly different from the other SLS&E Deeds in format, which suggests his deed too was drafted by the railroad.

The plaintiffs further argue that "the term 'right of way' was commonly understood in Seattle in 1887 to mean an easement."  Plaintiffs cite to a number of newspaper articles, included in the Joint Appendix before this court, which use the term "right of way."  The articles do not define the term "right of way," which plaintiffs argue demonstrates that the phrase was commonly used and understood in 1887.  Plaintiffs also cite to Washington Ordinance No. 806, passed January 27, 1887, by which the City of Seattle granted the SLS&E a 30-foot right of way within the 120-foot width of Railroad Avenue.   The Ordinance stated, in part: "An ordinance granting to the Seattle, Lake Shore and Eastern Railway Company, its successors and assigns, the right and authority to locate, lay down, construct, maintain and operate a Railway, consisting of one or more tracks in, along, upon, and over certain public streets and alleys of the City of Seattle."  The Ordinance also provided: "That there be, and hereby is, granted to the

Seattle, Lake Shore and Eastern Railway Company, its successors and assigns, the right and authority over a strip of land thirty (30) feet wide in, upon, along and over the streets and alleys…", and that other railroads "shall have the right to common use of said tracks over said right of way for the running of its trains…."  The plaintiffs argue that the language in Washington Ordinance No. 806 "indicate[s] that the City was granting to the railroad a right to pass through the public street," which could only be an easement and not a fee interest.  The plaintiffs argue that the City of Seattle could only have acquired an easement and, therefore, could not have conveyed a fee interest, citing to the State of Washington Supreme Court case of <u>Ranier Avenue Corp. v. Seattle</u>, in which the court stated that: "'Since <u>Burmeister v. Howard</u>, 1 Wash. T. 207 (1867), this court has not departed from the rule established in that case, that the fee in a public street or highway remains in the owner of the abutting land, and the public acquires only the right of passage, with powers and privileges necessarily implied in the grant of the easement.'" <u>Ranier Ave. Corp. v. Seattle</u>, 494 P.2d 996, 998 (Wash.) (quoting <u>Finch v. Matthews</u>, 443 P.2d 833, 838 (Wash. 1968)), <u>cert. denied</u>, 409 U.S. 983 (1972).  As the City of Seattle only could have acquired an easement, the plaintiffs argue the use of the phrase "right of way" in Washington Ordinance No. 806 must have been used to indicate only an easement was granted to the SLS&E.

The plaintiffs also cite to the definition of the term "right of way" from the first edition of <u>Black's Law Dictionary</u>, published in 1891, four years after the SLS&E Deeds were executed.  <u>Black's Law Dictionary</u> defines "right of way" as: "The right of passage or of a way is a servitude imposed by law or by convention, and by virtue of which one has a right to pass on foot, or horseback, or in a vehicle, to drive beasts of burden or carts, through the estate of another." <u>Black's Law Dictionary</u> 1046 (1st ed. 1891). <u>Black's Law Dictionary</u> also stated: "'Right of way,' in its strict meaning, is the right of passage over another man's ground; and in its legal and generally accepted meaning, in reference to a railway, it is a mere easement in the lands of others, obtained by lawful condemnation to public use or by purchase.  It would be using the term in an usual sense, by applying it to absolute purchase of the fee simple of lands to be used for a railway or any other kind of way." <u>Id.</u> Therefore, the plaintiffs argue, "[i]t would have been a very unusual thing in Seattle in 1887 to use the term right of way and intend to refer to fee simple title."

The plaintiffs further assert that when the Davis conveyance transferred a right of way, George Davis "had not yet received a patent to his homestead claim."  Therefore, according to the plaintiffs, "any attempt to convey fee title to the yet unpatented homestead claim would have worked a forfeiture of Davis's entire homestead claim." Plaintiffs argue this demonstrates that George and Elizabeth Davis had the intent to convey only an easement. According to plaintiffs, prior to 1873, homesteaders were prohibited from alienating any part of their claim prior to receiving a patent.  <u>See</u> <u>Anderson v. Carkins</u>, 135 U.S. 483, 489 (1890) ("[T]he policy of the act of Congress granting homesteads on the public lands, as disclosed by its requirement of affidavit and other provisions, is adverse to the right of a party availing himself of it to convey, or agree to convey, the land, before he receives the patent therefor…." (citing <u>Dawson v. Merrille</u>, 2 Neb. 119 (1872))).  Quoting from the United States Supreme Court decision

in <u>Minidoka & Southwestern Railroad Co. v. United States</u>, 235 U.S. 211, 216 (1914), the plaintiffs argue, "'settlers without patent were not in a position to make deeds to rights of way….'" The Supreme Court explained such settlers were not in a position to convey a fee, "not only because they had no title, but also because they were prohibited from alienating such land before final proofs." <u>Id.</u> As indicated by the United States Supreme Court, in 1873, Congress passed a statute that allowed a homesteader to convey "'part of his claim for church, school, and cemetery purposes and for right of way for railroads.'" <u>Id.</u> (quoting Rev. Stat. § 2288, U.S. Comp. Stat. 1901, p. 1385, codified at 43 U.S.C. § 174 (repealed 1976)). Plaintiffs argue, with some validity, that since George and Elizabeth Davis were only permitted to convey an easement, and not a fee interest to the SLS&E, and because the Davis source deed used the same language as the other SLS&E Source Deeds from the Hilchkanums, Tahalthkuts, Sbedzuses, Yonderpumps, and Alfred Palmberg, the phrase "right of way" and the language of the source deeds should be understood to have conveyed only an easement and not fee title to the SLS&E.

Finally, plaintiffs cite to an 1899 Department of the Interior (DOI) Public Lands Agency Decision, <u>South Perry Townsite v. Reed</u>, 28 Pub. Lands Dec. 561 (1899), to demonstrate that when the source deeds were executed a right of way was considered an easement and not a fee interest under the same Revised Statute § 2288. In <u>South Perry Townsite v. Reed</u>, the DOI considered whether the words "'for the right of way of railroads,' as used in section 2288 of the Revised Statutes, are not limited to the width of the track and cars, but include 'such space as is necessary for side tracks, stock yards, or other purpose incident to the proper business of a railroad as a common carrier.'" <u>Id.</u> at 562. The DOI concluded that the deed "provides for the reversion of the land to Reed should the railroad cease to use it for the purpose for which the purchase was made." <u>Id.</u> Although the statute and the facts are different from those before this court, the DOI decision was offered by the plaintiffs as another indication of how contemporaries near the time the source deeds were executed understood the phrase right of way to indicate an easement and not a fee. Weighing the additional considerations, evidence of which is contained in the record before this court, produces further support that the source deed grantors intended to grant only easement interests.

Just as the plaintiffs offer additional considerations to demonstrate only an easement was conveyed by the grantors of the source deeds, the defendant offers a number of considerations it contends demonstrates an intent by the source deed grantors to convey fee interests. The defendant argues that "[t]he railroad spurred significant growth and industry in the area, including logging and mining operations…. So that the railroad would definitely locate its line across their property, the landowners reasonably would convey their fee simple interest." The defendant contends that "the people living along the eastern shore of Lake Sammamish enthusiastically welcomed the railroad." The defendant also argues that the cost of the construction to build the railroad indicates the railroad would have sought a fee and not an easement, interest form the grantors. The defendant cites to a July 3, 1887 newspaper report, included in the Joint Appendix, that in 1887 the SLS&E "will spend" over $125,000.00 on the

railroad lines "with the prospect" of spending more in 1888.   Although there is no evidence in the record about the amount the SLS&E actually spent, the defendant contends, because "the railroad spent considerable sums of money to construct the railroad," logically the railroad "would want the long-term security of owning the right of way in fee simple title."   It is speculation, however, to conclude that fee title was required by the railroad based on projected railroad construction costs or that landowners would be willing to grant a fee interest because the construction of the railroad would be of benefit to them.   Moreover, regardless of whether the railroad companies incurred costs to construct their railroad lines, the State of Washington Supreme Court often has found that only an easement, not a fee interest was conveyed to the railroad when the term right of way was used in the source deed.   See, e.g., Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 25; Roeder Co. v. Burlington N., Inc., 716 P.2d at 859; Veach v. Culp, 599 P.2d at 528; Swan v. O'Leary, 225 P.2d at 201.

The defendant relies heavily on decisions issued by the United States District Court for the Western District of Washington and the United States Court of Appeals for the Ninth Circuit in King County v. Rasmussen, 143 F. Supp. 2d 1225, King County v. Rasmussen, 299 F.3d 1077, as well as the State of Washington Court of Appeals, Division 1 in Ray v. King County, 86 P.3d 183, which found that the Hilchkanum deed, one of the SLS&E Deeds also at issue before this court, conveyed a fee interest and not an easement to the SLS&E.   Although these decisions are of analytical interest, none of these decisions are precedential for this court.   The decision in Ray v. King County is a State of Washington lower court decision.   See Bunch v. King Cnty. Dep't of Youth Servs., 116 P.3d 381, 390 (Wash.), recons. denied (Wash. 2005); see also Ang v. Martin, 114 P.3d 637, 643 (Wash. 2005) (Sanders, J., dissenting); Seeley v. State, 940 P.2d 605, 632 (Wash. 1997) (Sanders, J., dissenting) ("[A]n inferior Court of Appeals case [is] not binding on the Supreme Court [of Washington].").   Similarly, decisions issued by the United States District Court for the Western District of Washington and the United States Court of Appeals for the Ninth Circuit, although potentially persuasive, are not binding on the State of Washington Supreme Court or this court.   See State v. Everybodytalksabout, 166 P.3d 693, 697 (Wash.), amended (Wash. 2007).   This court is bound by the decisions of the United States Supreme Court and the United States Court of Appeals for the Federal Circuit.   See Strickland v. United States, 423 F.3d 1335, 1338 n.3 (Fed. Cir.) ("[T]he Court of Federal Claims is required to follow Federal Circuit precedent."), reh'g en banc denied (Fed. Cir. 2005).   This court, however, respects and reviews carefully the guidance offered by other federal courts.   See Bank of Guam v. United States, 578 F.3d 1318, 1326 n.4 (Fed. Cir. 2009) ("[T]he decisions of other regional circuits are persuasive authority and instructive."); see also Confederated Tribes and Bands of the Yakama Nation v. United States, 89 Fed. Cl. 589, 609 n.31 (2009); Hutchens v. United States, 89 Fed. Cl. 553, 563 n.12 (2009); CNG Transmission Mgmt. VEBA v. United States, 84 Fed. Cl. 327, 336-37 (2008) ("[T]his court looks to the regional circuit courts of appeal for persuasive authority."), aff'd, 588 F.3d 1376 (Fed. Cir. 2009), reh'g en banc denied (Fed. Cir. 2010).

As described above, all parties and the court agree that for the deed analysis Washington state law controls.   See Barclay v. United States, 443 F.3d at 1374. Therefore this court particularly looks to the State of Washington Supreme Court decision in Brown v. State, 924 P.2d 908, and the more recent decision in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, 126 P.3d 16, regarding interpretation of a source deed grantor's intent in a railroad conveyance.   It is noteworthy that these two State of Washington Supreme Court cases describe two separate presumptions, one in favor of a finding of a fee and one in favor of a finding of an easement.   Kershaw, which chronologically follows Brown, however, tried to balance earlier precedent by suggesting that Brown did not alter, but only "refined" previous precedent in Morsbach v. Thurston County, 278 P. 686, Swan v. O'Leary, 225 P.2d 199, Veach v. Culp, 599 P.2d 526, and Roeder v. Burlington Northern, Inc., 716 P.2d 855, and resulted in a finding of an easement.   See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 25.   Important to the Kershaw analysis was the fact that the quoted portions of the exemplary statutory warranty deed in Brown did not include the phrase "right of way," or establish the purpose of the grant.   Id. at 23. Furthermore, the Brown decision was a split decision, with five judges concurring with the majority decision, one judge concurring and dissenting and another judge concurring and writing a dissenting opinion.   The dissenting opinion concluded that railroad deeds are an exception to the general rule that a statutory warranty deed or quit claim form deed passes full fee title, and indicated that the intent of the parties is paramount.   The dissent stated that, "[w]here the deed language sends mixed signals, we follow the easement track, not the fee."   See Brown v. State, 924 P.2d at 919 (Sanders, J., dissenting in part, concurring in part) (citing 17 William B. Stoebuck, Washington Practice, Real Estate: Property Law § 7.9, at 464 (1995)).

In 2006, the State of Washington Supreme Court decided Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association, but unlike in Brown v. State, decided in 1996, the Kershaw court found that an easement, not a fee interest was conveyed, despite the use of a statutory warranty form deed.   See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n, 126 P.3d at 25.   The court in Kershaw established a separate presumption, building on the State of Washington Supreme Court precedent in Swan v. O'Leary, and stated, "[l]ike the cases finding an easement, and unlike the deeds in Brown, the word [sic] 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest." I Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23.   In Kershaw, the source deed contained elements characteristic of both a fee and an easement conveyance.   Id.   After careful analysis, applying the seven plus two Brown factors to evaluate the fee versus easement issue, the Kershaw court concluded that an easement, and not a fee interest, was intended by the grantors in the conveyance to the railroad.   Id. at 26.

Analysis of the Ray v. King County and the King County v. Rasmussen cases, and their analytical impact on this consolidated action, must be undertaken in the context of the State of Washington Supreme Court decisions in Brown v. State and Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Association.   Certain

important differences between Ray v. King County and King County v. Rasmussen and the SLS&E Deeds currently before this court are apparent.  The Ray v. King County and King County v. Rasmussen cases were brought as quiet title actions, not as taking claims, as are the consolidated cases before this court.  See generally Ray v. King Cnty., 86 P.3d 183; King Cnty. v. Rasmussen, 299 F.3d 1077; King Cnty. v. Rasmussen, 143 F. Supp. 2d 1225.  None of the plaintiffs before this court, as successors in interest, were before the court in Ray v. King County or King County v. Rasmussen.[34]  More significantly, all the decisions in Ray v. King County and King County v. Rasmussen were decided prior to the State of Washington Supreme Court's decision in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association.  Indeed, the Ninth Circuit specifically noted that "[t]he Washington Supreme Court provided its most recent guidance on this issue [easement versus fee interest] in Brown."  King Cnty. v. Rasmussen, 299 F.3d at 1084.  The decision in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, while not rejecting the holding or the evaluation factor guidance offered in Brown, added a new, significant analytical approach to the precedent in the State of Washington, that a presumption of an easement exists when the phrase "right of way" is used to define the purpose of the grant.   The court in Kershaw acknowledged that, "[w]hile the use of the term 'right of way' in the granting clause is not solely determinative of the estate conveyed, it remains highly relevant, especially given that fact that it is used to define the purpose of the grant."  Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 25 (emphasis in original).   Although the courts in King County v. Rasmussen and Ray v. King County noted that the phrase "right of way" was contained in the Hilchkanum deed, without the guidance of the decision in Kershaw, the presumption in favor of an easement when the phrase "right of way" is used in the deed, Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23, those courts did not fully consider the importance of the phrase "right of way" in the Hilchkanum deed.

The District Court for the Western District of Washington, the United States Court of Appeals for the Ninth Circuit and the State of Washington Court of Appeals all rejected the Brown presumption in favor of a fee interest since the Hilchkanum deed was not in the statutory warranty form, but could not apply the as yet announced State of Washington Supreme Court's presumption in Kershaw in favor of an easement.  See King Cnty. v. Rasmussen, 299 F.3d 1077; King Cnty. v. Rasmussen, 143 F. Supp. 2d 1225; Ray v. King County, 86 P.3d 183.  For example, utilizing the Brown factors, the Ninth Circuit concluded, "[w]e agree with the district court that these factors indicate that Hilchkanum intended to convey a fee simple interest in the strip of land described."  Id. at 1088.  Without considering the Kershaw presumption in favor of an easement, when the phrase "right of way" was in the deed, these courts could conclude more easily that a fee interest was conveyed if the analysis of the Brown factors even slightly favored such a finding.  By contrast, post-Kershaw, given the presence of the phrase "right of way" in the SLS&E Deeds, this court is compelled to review the case from the

---

[34] As noted above, Gerald and Kathryn Ray had originally filed as part of this consolidated lawsuit, but their case was dismissed.  See Beres, et al. v. United States, 92 Fed. Cl. 737.

perspective of a presumption, albeit rebuttable, in favor of an easement interest.  As a result, when analyzing the SLS&E Deeds pursuant to the Brown seven plus two factors, this court is faced with a higher burden before finding a fee interest.  Therefore, because the phrase "right of way" defined the purpose of the SLS&E Deeds, the Kershaw presumption in favor of an easement, applies, and must be overcome in order for the court to find that a fee interest was conveyed.  Despite the defendant's reliance on the outcome in Ray v. King County and King County v. Rasmussen, the conclusions in those cases are by no means dispositive.

Moreover, the record in this case contains exhibits which were not before the courts in Ray v. King County and King County v. Rasmussen.  The record in this court contains six virtually indistinguishable, SLS&E Deeds and additional relevant exhibits.[35] The records in Ray v. King County and King County v. Rasmussen included only the Hilchkanum deed and limited additional information.  Moreover, the railroad's decision to follow what appears to be a pre-printed form, which was not in the form of statutory warranty deed, for all the SLS&E Deeds, and the apparent illiterate state of the majority of the source deed grantors, supports plaintiffs' argument that the form deeds were drafted by the railroad.  Therefore, any ambiguity in the language of the deeds should be construed against the railroad.   See Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 916.

In contrast, in Ray v. King County, the State of Washington Court of Appeals indicated that the Hilchkanums, not the railroad, drafted the deed, which appears from the record before this court to be both implausible and incorrect.  See Ray v. King Cnty., 86 P.3d at 194 ("Rather, to the extent we were to engage in applying a rule of construction to any perceived ambiguities in the language of the Hilchkanum deed, we would construe the deed against the Hilchkanums, the grantors.").[36]  The court in Ray v. King County, in dismissing the plaintiffs' argument that the court should construe ambiguities in the Hilchkanum deed against the railroad, stated: "Both the language of the main part of the deed, as well as the acknowledgment,[37] is in the handwriting of the notary who acknowledged the signatures of the Hilchkanums, B.J. Tallman. Nothing in the record before us indicates that he was the agent of the Railway. Absent such proof,

---

[35] In addition to the six virtually indistinguishable SLS&E Deeds, as discussed above, the record contains four additional right of way deeds in the Joint Appendix, distinct from the SLS&E Deeds, which also conveyed a right of way to the SLS&E in May and June of 1887.  All four of the additional deeds follow the same format as the SLS&E Deeds and appear to be based on the same pre-printed form.

[36] The court in Ray v. King County reached its decision despite noting: "While we are mindful of the undisputed evidence that the Hilchkanums could neither read nor write…."  Ray v. King Cnty., 86 P.3d at 194.

[37] The court in Ray v. King County presumably was referring to the "in the presence of B.J. Tallman," Ray v. King Cnty., 86 P.3d at 186, when referring to "the acknowledgment."  See id. at 194.

we fail to see why we should construe ambiguities in the May 1887 deed against the Railway." Ray v. King Cnty., 86 P.3d at 193.   Unlike the record before the State of Washington Court of Appeals in Ray, there is evidence in the record before this court in the Joint Appendix and the Joint Stipulations which demonstrates that B.J. Tallman was the notary for the source deeds of Louis and Mary Tahalthkut, Bill and Mary Hilchkanum, George and Elizabeth Davis, Bill and Lucinda Sbedzuse, and Jim and Alice Yonderpump, and at least four additional right of way deeds, all conveyed to the SLS&E in May and June of 1887, suggesting he was acting on behalf of the railroad.

Both the District Court for the Western District of Washington and the Ninth Circuit also identified more limited subsequent conveyances by the Hilchkanums than in the record before this court.[38]   Of the two subsequent conveyances mentioned by the District Court for the Western District of Washington, both mentioned the right of way. See King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1226.   Of the three subsequent conveyances referenced in the Ninth Circuit opinion, two of the three refer to the right of way, only the conveyance of Lot 2 did not.[39]    The two federal court decisions, however, did not specifically address all the other subsequent conveyances by the Hilchkanums, addressed earlier in this opinion, including, it appears, the Hilchkanums' December 15, 1890, conveyance to Julia Curley; Bill Hilchkanum's December 16, 1898, conveyance to his then-wife, Annie Hilchkanum; one of the March 15, 1904 conveyances to Chris Nelson; Bill Hilchkanum's June 30, 1905, conveyance to John Hirder; the October 27, 1906, conveyance by Bill and Louise Hilchkanum to King County; and Bill Hilchkanum's March 3, 1909, conveyance to Chas Edeen.[40]

Nonetheless, the Ninth Circuit in King County v. Rasmussen, 299 F.3d at 1080, asserted that, "[b]y excepting the right of way in terms of acres of land, the conveyances betray an understanding that the Railway owned the strip of land and did not merely have a right to enter the strip."   Id. at 1087.   The Ninth Circuit relied on the strip of land terminology in the subsequent conveyances, and that some of the subsequent

---

[38] After mentioning the Hilchkanums' subsequent conveyances, the District Court for the Western District of Washington also stated that, "[l]ater conveyances of the property included language 'excepting' the Railway right of way from the legal descriptions," King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1226, but the District Court for the Western District of Washington did not mention specifically any of the later conveyances in the court's analysis.

[39] Included in the list of these subsequent conveyances is one not in the record before this court, but which also refers to a right of way: "Mary Hilchkanum later conveyed lots 1 and 3 of the homestead property to her husband by quitclaim deed.   The conveyance is for 'less three (3) acres right of way of Rail Road.'"   King Cnty. v. Rasmussen, 299 F.3d at 1080.

[40] Both the District Court for the Western District of Washington and the Ninth Circuit do not always specifically identify which subsequent conveyance they are referring to, making it challenging to determine which subsequent conveyances each court addressed.

conveyances did not mention the phrase right of way, indicating that "had they [the Hilchkanums] used other language in conveying lot 2 that recognized the Railway's right of way as only an easement, then a factual finding reconciling the contradictory positions might be necessary." Id.  Similarly, the District Court for the Western District of Washington, which considered subsequent conveyances, and each of which referred to the right of way, stated: "When parties execute later deeds, they also carve out exceptions for the right of way - as the Hilchkanums did. This is a strong indication that the parties viewed the grant to the Railway to be a fee simple." King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1230. Without the benefit of the language in the additional subsequent conveyances made by the Hilchkanums and the other source deed grantors, which are in the record before this court, the District Court for the Western District of Washington and the Ninth Circuit were unaware of the "right of way" language included in many of the subsequent conveyances.

Like the District Court for the Western District of Washington and the Ninth Circuit, the Washington state courts in Ray v. King County identified fewer subsequent conveyances by the Hilchkanums than are in the record before this court.  Although the State of Washington Court of Appeals in Ray discussed more of the Hilchkanums' subsequent conveyances than either the District Court for the Western District of Washington or the Ninth Circuit, the State of Washington Court of Appeals did not address all of the Hilchkanums' subsequent conveyances in the record before this court. The State of Washington Court of Appeals did not mention one of the March 15, 1904, conveyances to Chris Nelson, the October 27, 1906, conveyance by Bill and Louise Hilchkanum to King County, or the March 3, 1909, conveyance from Bill Hilchkanum to Chas Edeen. Also, like the District Court for the Western District of Washington and the Ninth Circuit, the Washington state courts in Ray did not consider the subsequent conveyances made by the other source deed grantors, which are in the record before this court.

The defendant also argues that, based on the analysis by State of Washington Court of Appeals in Ray v. King County, the language of the paragraph which reads: "[a]nd the Seattle, Lake Shore and Eastern Railway Company shall have the right to go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road," is indicative of a fee interest.  The defendant states, "the Ray v. King County court found it significant that the Hilchkanum deed contains an easement permitting the railroad to 'go upon the land adjacent to said line for a distance of two hundred (200) feet on each side thereof and cut down all trees dangerous to the operation of said road.'" (quoting Ray v. King Cnty., 86 P.3d at 191). The defendant continues, quoting the decision in Ray v. King County, "'[t]he lack of any limitation in the use of the strip starkly contrasts with the more limited right to cut trees only on the property adjacent to the strip….'" (quoting Ray v. King Cnty., 86 P.3d at 191); see also King Cnty. v. Rasmussen, 299 F.3d at 1087; King Cnty. v. Rasmussen, 143 F. Supp. 2d at 1229.  The defendant argues, "[a]ccordingly, based on the language of the deeds, this Court should also find that the grantors of the deeds at issue intended to convey a fee simple interest to the Railroad."

The dissenting opinion in Ray v. King County, however, noted that in 1887 railroads were prohibited from appropriating rights of way wider than 200 feet.  Id. at 201 (Baker, J., dissenting) (citing Code of 1881, § 2456).  Section 2456 of the Code of 1881 (now codified at Wash. Rev. Code Ann. § 81.36.010 (2011)) states:

> Such corporation may appropriate so much of said land as may be necessary for the line of such road or canal, or the site of such bridge, not exceeding two hundred feet in width, besides a sufficient quantity thereof for toll-houses, work-shops, materials for construction, a right of way over adjacent lands to enable such corporation to construct and repair its road, canal, or bridge, and to make proper drains; and in the case of a railroad, to appropriate sufficient quantity of such lands, in addition to that before specified in this section, for the necessary side tracks, depots, and water stations….

See Ray v. King Cnty., 86 P.3d at 201 (Baker, J., dissenting).

The dissent in Ray also indicated that, "[t]he railroad's right to cut trees extended outside of the right of way area allowed by the territorial code because the easement allowing the railroad the right to cut trees was distinct from its right of way. This secondary access grant was not exclusive, as the right of way was, and terminated if the railroad use terminated, whereas the railroad right of way was exclusive and akin to a street right of way."  Id.  This court agrees that the language on which the defendant relies in the SLS&E Deeds does not support the position that the grantors intended to convey a fee interest to the railroad.

Although defendant offered a number of arguments to demonstrate that this court should find the SLS&E Deeds conveyed fee interests, none of the arguments are compelling enough to overcome the Kershaw presumption in favor of an easement, triggered by the phrase "right of way" used in the SLS&E Source Deeds.  After analysis of the seven plus two Brown factors, this court concludes that the language of the source deeds was intended to convey easements to the SLS&E.  Because of the additional information in the record, and because this court concludes that the railroad, and not the source deed grantors, drew up the deeds, executed, for the most part, by illiterate landowners, any ambiguity in the SLS&E Deeds must be interpreted in the grantors' favor.  Combined with the Kershaw presumption in favor of an easement interest when the phrase "right of way" is used, the contemporaneous understanding of the phrase "right of way" at the time the source deeds were executed, reinforced by a contemporaneous legal dictionary, contemporaneous news media, and the close in time DOI decision, this court concludes that the SLS&E Deeds conveyed easements only to the railroad.  The plaintiffs in Schroeder, Chamberlin, Klein, Peterson, Spencer, Lane, Nelson, and Collins may pursue their causes of action for a Fifth Amendment taking.

**The 1904 Reeves Quit Claim Deed**

With respect to the plaintiffs Paul and Joy Manning and the DeMeester Family Limited Partnership, Case No. 04-1466L, the court must determine whether the 1904 Reeves Quit Claim Deed, executed by grantors J.D. and Elizabeth Reeves, conveyed an easement or a fee simple interest to the Northern Pacific Railway Company, the successor of the Seattle, Lake Shore & Eastern Railway Company.  The 1904 Reeves Quit Claim Deed states in part:

This Indenture made this third day of June in the year of our Lord one Thousand nine hundred and four, Between J.D. Reeves and Elizabeth Jane Reeves, his wife, the parties of the first part and the Northern Pacific Railway Company, a corporation, the party of the second part, Witnesseth: That the said parties of the first part for and in consideration of the sum of One hundred and Fifty dollars of the United States to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged do by these presents, remise, and release, and forever quit claim unto the said party of the second part and to its assigns all right, title and interest and estate of said first parties in and to all that certain lot, piece or parcel of land, situate lying and being in the County of King, State of Washington, and particularly bounded and described as follows, to wit:

The interest of said grantors in and to a tract of Land lying within lines drawn parallel with with [sic][41] the center of the main Line track and fifty feet from said center of the Seattle, Lake Shore & Eastern Railway, now the Northern Pacific Railway, through the Townsite of Inglewood, King County, State of Washington, and running from Ash Street to Willow Streets and through the following Blocks in said Townsite; [list of blocks] according to the plat of said Town of Inglewood as recorded in Volume three, of Plat Books, page 169 records of King County, Washington; the intention being to convey herein a right of way fifty feet on each side of said track through any lots or blocks conveyed to the Grantor J.D. Reeves by grant of date, November 13, 1903, from King County, Washington, said lots being as follows, [list of lots and blocks]

Together will [sic] all and singular the tenements, hereditaments and appurtenances thereunto, belonging, or in anywise appertaining, and the reversions, remainder and remainers [sic], rents, issues and profits thereof.

To have and to hold all and singular the said premises together with the appurtenances, unto said party of the second part and to its heirs and

---

[41] This first "[sic]" is included in the Joint Stipulation of Issues and Facts copy of the deed provided to the court.

assigns forever.  In witness whereof, The said parties of the first part have
hereunto set hands and seals the day and year first above written.

The 1904 Reeves Quit Claim Deed before this court is not in the form of a
statutory warranty deed.  The form statutory warranty deed states in part, "'[t]he grantor
(here insert the name or names and place of residence,) for and in consideration of
(here insert consideration), in hand paid, convey and warrant to (here insert the
grantee's name or names), the following described real estate (here insert
description)….'"  Brown v. State, 924 P.2d at 912 (quoting Laws of 1886, § 3, pp. 177-
78).  By contrast, the 1904 Reeves Quit Claim Deed states, in part, "the receipt whereof
is hereby acknowledged do by these presents, remise, and release, and forever quit
claim unto the said party of the second part and to its assigns all right, title and interest
and estate…."  Therefore, the Brown presumption in favor of a fee interest, Brown v.
State, 924 P.2d at 912, operative when the conveyance adopts the statutory warranty
form deed, does not apply.

The defendant, however, argues that the 1904 Reeves Quit Claim Deed is
"substantially in the form of a statutory quit claim deed," and that "the use of the
statutory form for a quit claim deed creates a presumption that the land was conveyed
by Reeves to the Railroad in fee."  In support, the defendant cites Ray v. King County
for the proposition, "[w]here such a statutory deed is used and the granting clause
conveyed a definite strip of land, the court will conclude the grantor intended to convey
fee simple title unless additional language in the deed clearly and expressly shows
otherwise." Ray v. King Cnty., 86 P.3d at 188.  The statutory deed referred to in Ray v.
King County, however, was a statutory warranty deed, not a statutory quit claim deed.
The preceding sentence in Ray v. King County states, "[i]n Brown, the court emphasized
the grantors' use of the statutory warranty form of deed," which created the
presumption.  Id.  Moreover, Washington state courts have indicated that a statutory
quit claim deed does not create a presumption that a fee interest was created.  See
Roeder Co. v. K & E Moving & Storage Co., Inc., 4 P.3d at 843 ("Unlike deeds that
follow the warranty or bargain and sale deed form, a quitclaim deed does not create a
presumption that a fee simple estate was transferred absent express words to the
contrary.  Rather, a quitclaim deed merely conveys 'all the then existing legal and
equitable rights of the grantor.'" (quoting Revised Code of Washington § 64.04.050
[statutory quit claim deed])).  Therefore, the use of a statutory form of a quit claim deed
does not give rise to a presumption of a fee interest.

In addition, there are significant differences between the 1904 Reeves Quit Claim
Deed and the form statutory quit claim deed in effect at the time the 1904 Reeves Quit
Claim Deed was executed. The statute governing the form statutory quit claim deed at
the time the Reeves conveyance was executed states:

Quitclaim deeds may be in substance in the following form:

The grantor (here insert the name or names and place of residence), for
and in consideration of (here insert consideration) conveys and quitclaims

to (here insert grantee's name or names) all interest in the following described real estate (here insert description), situated in the county of ……, state of Washington.

Dated this …. Day of ……, 18…

Laws of 1886, p. 178 § 5 (codified at Rem. & Ball. Code § 8749).[42]   Among the numerous differences between the 1904 Reeves Quit Claim Deed and the form statutory quit claim deed, for example, is language in the statutory quit claim deed, which states: "conveys and quitclaims," whereas the 1904 Reeves Quit Claim Deed specifically states, "do by these presents, remise, and release, and forever quit claim…."   Also, the manner in which consideration is identified is different.   Moreover, the 1904 Reeves Quit Claim Deed contains a habendum clause, which is not present in the statutory quit claim deed.   Significantly, there is no mention of a right of way in the statutory quit claim deed, whereas the 1904 Reeves Quit Claim Deed states "the intention being to convey herein a right of way…."

Even if the 1904 Reeves Quit Claim Deed was in the form of a statutory quit claim deed there is no operative presumption that a statutory quit claim deed conveys a fee interest.   See Roeder Co. v. K & E Moving & Storage Co., Inc., 4 P.3d at 843.   To the contrary, using the guidance in Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Association, 126 P.3d at 23, use of the phrase "right of way" in the 1904 Reeves Quit Claim Deed more properly creates a presumption in favor of an easement in a railroad deed when the term "right of way" establishes the purpose of the grant. See id. ("Like the cases finding an easement, and unlike the deeds in Brown, the word [sic] 'right of way' is used to establish the purpose of the grant and thus presumptively conveys an easement interest.").   The 1904 Reeves Quit Claim Deed contains the phrase "right of way" in the granting clause, and specifically states, "the intention being to convey herein a right of way fifty feet on each side of said track through any lots or blocks conveyed to the Grantor J.D. Reeves by grant…."   As the court in Kershaw concluded, "while the use of the term 'right of way' in the granting clause is not solely determinative of the estate conveyed, it remains highly relevant, especially given the fact that it is used to define the purpose of the grant."   Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 25 (emphasis in original).   After review of the 1904 Reeves Quit Claim Deed and the precedent in the State of Washington Supreme Court, this court concludes that a presumption in favor of an easement was created by the conveyance of the 1904 Reeves Quit Claim Deed.

The language in the 1904 Reeves Quit Claim Deed also compares favorably to other quit claim deeds, which, after review, the State of Washington Supreme Court found conveyed easements and not fee interests.   See Veach v. Culp, 599 P.2d at 528; see also Swan v. O'Leary, 225 P.2d at 201.   The language of the conveyance of the 1904 Reeves Quit Claim Deed is similar to the language in Veach v. Culp.   In Veach v.

---

[42] The current version of the statutory quit claim deed is found at Wash. Rev. Code Ann. § 64.04.050 (2011).

Culp, the quit claim deed stated, in part: "(T)he [sic] said party of the first part, for and in consideration of the sum of Two Hundred and Twenty-five Dollars,...do by these presents remise, release and forever quit claim unto said party of the second part, and to its assigns, all that certain lot, piece, or parcel of land situate in Whatcom County." Veach v. Culp, 599 P.2d at 527 (omission in original).   The 1904 Reeves Quit Claim Deed similarly states: "That the said parties of the first part for and in consideration of the sum of One hundred and Fifty dollars of the United States to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged do by these presents, remise, and release, and forever quit claim unto the said party of the second part and to its assigns all right, title and interest and estate of said first parties in and to all that certain lot, piece or parcel of land, situate lying and being in the County of King, State of Washington."

The right of way language in the 1904 Reeves Quit Claim Deed is similar to the language of the granting clause in the quit claim deed reviewed in Veach v. Culp.  See Veach v. Culp, 599 P.2d at 527.  The granting clause in Veach v. Culp stated: "A right-of-way one hundred feet wide, being fifty feet on each side of the center line of the B.B. & Eastern R.R." Veach v. Culp, 599 P.2d at 527.  The comparative language in the 1904 Reeves Quit Claim Deed stated, "a right of way fifty feet on each side of said track," with the reference to "said track" being "fifty feet from said center of the Seattle, Lake Shore & Eastern Railway, now the Northern Pacific Railway…."  The State of Washington Supreme Court found the quit claim deed in Veach v. Culp conveyed only an easement, and not a fee interest.  See Veach v. Culp, 599 P.2d at 528.  In fact, the language in the 1904 Reeves Quit Claim Deed is even more direct about the purpose of the right of way than in the quit claim deed in Veach v. Culp.  The 1904 Reeves Quit Claim Deed states "the intention being to convey herein a right of way fifty feet on each side of said track…."

The language in the 1904 Reeves Quit Claim Deed also is similar to the language of the deed in Swan v. O'Leary, 225 P.2d 199, in which the quit claim deed stated, "for the purpose of a Railroad right-of-way to-wit:-a strip of land 50 feet in width…." Id. at 199 (emphasis in original).  Both the quit claim deed in Swan v. O'Leary and the 1904 Reeves Quit Claim Deed signaled the grantor's clear objective to convey a right of way.  As in Veach v. Culp, the State of Washington Supreme Court in Swan v. O'Leary determined that the quit claim deed conveyed an easement, not a fee interest. See id. at 201.

As discussed above, the State of Washington Supreme Court stated that, as in both Veach v. Culp and Swan v. O'Leary, a presumption of an easement is triggered when the phrase "right of way" is used in a source grant to establish the purpose of that grant.  See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 23; see also Brown v. State, 924 P.2d at 914 ("These cases are consistent with the majority of cases that hold the use of the term 'right of way' as a limitation or to specify the purpose of the grant generally creates only an easement.").  The plain language of the 1904 Reeves Quit Claim Deed states "the intention being to convey herein a right of way fifty feet on each side of the said track." See Racine v. United States, 858 F.2d at

508 ("The government's interpretation of the easement was 'not supported by the plain language of the deed' and was 'plainly erroneous.'"); <u>Sunnyside Valley Irr. Dist. v. Dickie</u>, 73 P.3d at 372 ("If the plain language [of a deed] is unambiguous, extrinsic evidence will not be considered."). As demonstrated throughout the case law of railroad deed interpretation in the State of Washington, the "intention of the parties to the conveyance is of paramount importance and must ultimately prevail in a given case." <u>Swan v. O'Leary</u>, 225 P.2d at 200; <u>see</u> <u>also</u> <u>Brown v. State</u>, 924 P.2d at 911. This principle was reaffirmed in <u>Kershaw</u>, in which the court emphasized, "[w]hen construing deeds, our principal aim is to effect and enforce the intent of the parties," <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 21, and "this court's consistent focus has been to enforce the 'intent of the parties' which we have deemed 'of paramount importance.'" <u>Id.</u> at 21 n.5 (quoting <u>Brown v. State</u>, 924 P.2d at 911). The plaintiffs assert, therefore, that: "[s]ince the deed expressly states the intent, there is no need for the analysis to go further. The Court should make a finding that the parties intended to convey a right of way and, applying the law in <u>Kershaw Sunnyside Ranches</u>, thereby conclude that an easement was conveyed."

The court in <u>Kershaw</u> indicated, however, that "a more thorough examination of the deed is appropriate," <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 23, and noted "<u>Brown's</u> instruction that reviewing courts perform a thorough examination of railroad deeds based on <u>Brown's</u> enumerated factors," <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 25, in order to "consider whether additional analysis of the deed language using the <u>Brown</u> factors...sheds any light on the parties' intent." <u>Id.</u> at 23. The defendant argues, "an analysis of the <u>Brown</u> factors and subsequent conduct of the parties leads to the same conclusion – that the Reeves conveyed the fee simple title in the right of way to the Railroad."

The <u>Kershaw</u> court described the first four <u>Brown</u> factors as a comparison of a "'Strip of Land' v. 'Right of Way.'" <u>See</u> <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 23. The first four factors inquire whether the deed conveyed a strip of land, and whether the deed contains additional language relating to the use or purpose or in other ways limits the estate conveyed. <u>See</u> <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n</u>, 126 P.3d at 22-23. Notably, the 1904 Reeves Quit Claim Deed does not use the phrase "strip of land," but specifically uses the phrase a "right of way." The 1904 Reeves Quit Claim Deed states, "the intention being to convey herein a right of way fifty feet on each side of said track through any lots or blocks conveyed to the grantor...." The 1904 Reeves Quit Claim Deed also is distinct from other railroad deeds such as the quit claim deed in <u>Swan v. O'Leary</u>, 225 P.2d 199, which uses both the terms, "right of way," and "a strip of land...." <u>Id.</u>; <u>see</u> <u>also</u> <u>Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Lines Ass'n</u>, 126 P.3d at 18; <u>Biles v. Tacoma</u>, 32 P. at 212. In sum, analysis of the first four <u>Brown</u> factors favors a finding that an easement was intended by the 1904 Reeves Quit Claim Deed grantors.

The fifth Brown factor asks whether the deed contains a reverter clause.  There is no reverter clause in the 1904 Reeves Quit Claim Deed.  Hanson Industries, Inc. v. County of Spokane, indicates that, "[a] railroad right-of-way deed need not, however, contain a reverter clause to effect an automatic reversion to the grantor upon abandonment."  Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 916.  In its analysis of the Brown factors, the State of Washington Supreme Court in Kershaw noted that the deed before that court did not contain a reverter clause and, therefore, found this factor to be inapplicable to the court's analysis of the parties' intent.  See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24 ("Thus, this factor is inapplicable in this instance and does not favor one interpretation over the other."). Given the clarity of the right of way language stated as the grantors' intention, the absence of a reverter clause is not significant as applied to the 1904 Reeves Quit Claim Deed.

The sixth Brown factor inquires whether the consideration expressed was substantial or nominal.  The consideration paid by the Northern Pacific to the Reeves grantors for the right of way in 1904 was "the sum of One hundred and Fifty dollars…." The defendant notes that the grantors had purchased 215 lots seven months earlier for $71.50.  The State of Washington Supreme Court in Veach v. Culp examined a quit claim deed for which the consideration paid for a railroad right of way was $225.00. See Veach v. Culp, 599 P.2d at 527.  The quit claim deed in Veach v. Culp was executed in 1901, just three years before the Reeves conveyance, and the Veach court concluded that an easement, not a fee interest was transferred.  See id.  In Swan v. O'Leary, the consideration paid for a right of way in a quit claim deed, executed in 1909, just five years after the Reeves conveyance, was $625.00, and the State of Washington Supreme Court determined the quit claim deed conveyed only an easement.  See Swan v. O'Leary, 225 P.2d at 201.  In Kershaw, the consideration paid for the right of way in 1905, one year later than the execution of the 1904 Reeves Quit Claim Deed, was $1,000.00, which the court found to be substantial.  See Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24.  In Brown v. State, most of the transactions occurred between 1906 and 1910, and consideration in the amount of $1,310.00, listed for one of the source deeds at issue, was considered substantial.  See Brown v. State, 924 P.2d at 915.  The consideration of $150.00 paid by the railroad to the Reeves grantors, therefore, was less than the consideration paid in the quit claim deeds in Veach v. Culp or Swan v. O'Leary and significantly less than the consideration paid in the warranty deeds before the Kershaw and Brown courts.  Moreover, despite the defendant's argument regarding the purchase price for the 215 lots, neither party cites to the relative value of an easement as compared to a fee interest in King County, Washington in 1904.   Taken in the context of the other State of Washington Supreme Court cases, the $150.00 paid in consideration, although not dispositive, favors a finding of an easement interest regarding the 1904 Reeves Quit Claim Deed.

The seventh Brown factor asks whether the conveyance contained a habendum clause.  The 1904 Reeves Quit Claim Deed habendum clause states, "[t]o have and to hold all and singular the said premises together with the appurtenances, unto said party of the second part and to its heirs and assigns forever."  The assigning of the premises

"forever" can indicate a fee simple interest, see Kershaw Sunnyside Ranches, Inc. v. Yakima Interurban Ass'n, 126 P.3d at 24, however, as the State of Washington Court of Appeals indicated, "[t]he inclusion of a habendum clause does not defeat the intent to convey an easement." Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 916. The State of Washington Supreme Court in Swan v. O'Leary and Veach v. Culp analyzed two quit claim deeds, and despite the presence of habendum clauses in both quit claim deeds, found only an easement was conveyed. In Swan v. O'Leary, 225 P.2d 199, the quit claim deed's habendum clause stated: "To Have and to Hold All and singular the said premises together with the appurtenances, unto said party of the second part, and to his heirs and assigns forever." Id. In Veach v. Culp, 599 P.2d 526, the quit claim deed had the following habendum clause: "To have and to hold, all and singular, said premises, together with the appurtenances unto the said party of the second part, and to its assigns forever." Id. at 527. As both quit claim deeds were found to convey easements, "the habendum language is not dispositive." See Hanson Indus., Inc. v. Cnty. of Spokane, 58 P.3d at 916.

In addition to the seven above factors, the court in Brown also indicated the need to examine the other circumstances surrounding the deed's execution and the subsequent conduct of the parties to determine intent. See Brown v. State, 924 P.2d at 912. On April 26, 1906, J.D. and Elizabeth Reeves conveyed to William Pickering by a quit claim deed, which transferred their interest, excepting any lands conveyed to Northern Pacific. The quit claim deed stated, in part: "Excepting and reserving, however, any part or parcel of the lands above described that may have been heretofore granted by the parties of the first part to the Northern Pacific Railway Company." The defendant argues this language demonstrates that the Reeves grantors "believed that they no longer held in fee the right of way previously conveyed to the Railroad." As discussed above, in the analysis of the subsequent conveyances of the SLS&E Deeds, not specifically excepting a "right of way" in and of itself provides little insight to the source deed grantors' intent.

Although the State of Washington Supreme Court in Brown v. State indicated courts may look to "many other considerations suggested by the language of the particular deed," Brown v. State, 924 P.2d at 912, neither party has raised any additional considerations regarding the 1904 Reeves Quit Claim Deed, nor is there additional, relevant material in the record. As noted repeatedly throughout the opinion, the intention of the parties to the deed is "of paramount importance." Brown v. State, 924 P.2d at 911. J.D. and Elizabeth Reeves expressly indicated their intention to convey a "right of way" interest to the railroad. There is no contrary indication in the source deed or the record before the court that the source deed grantors intended to convey a fee interest. The Kershaw presumption that an easement was intended has not been overcome based on the record before this court and the court's analysis of the Brown factors. The court, therefore, concludes that the grantors of the 1904 Reeves Quit Claim Deed intended to convey only an easement to the railroad. The Manning plaintiffs, therefore, retain causes of action for a Fifth Amendment taking.

**CONCLUSION**

For the reasons discussed above, the court finds that the grantors of the SLS&E Deeds conveyed easements, and not fee interests to the railroad.   Similarly, the grantors of the 1904 Reeves Quit Claim Deed conveyed an easement, and not a fee interest to the railroad.  Therefore, the court **DENIES** the defendant's motion for partial judgment and **GRANTS** the plaintiffs' motion for partial judgment.   The plaintiffs in Schroeder, Chamberlin, Klein, Peterson, Spencer, Lane, Nelson, Collins, and Manning may proceed with their causes of action for a Fifth Amendment taking.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**