## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| **WARREN BERES and VICKI BERES**, *et al.*, | ) ) ) |
| Plaintiffs, | ) Nos. 03-785L, 04-1456L, 04-1457L, 04- ) 1458L, 04-1459L, 04-1463L, 04-1465L, |
| v. | ) 04-1466L, 04-1467L, 04-1468L, 04-1469L, ) 04-1471L, 04-1472L, 04-1473L, 04-1474L |
| **UNITED STATES**, | ) ) The Honorable Marian Blank Horn |
| Defendant. | ) ) ) |

### PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR RESPONSE AND CROSS-MOTION FOR SUMMARY JUDGMENT

**Cecilia Fex**
ACKERSON KAUFFMAN FEX, PC
1701 K Street, NW, Suite 1050
Washington, DC 20006
Telephone: (202) 833-8833
Facsimile: (202) 833-8831
Email: fex@ackersonlaw.com

*Attorney of Record for the following consolidated Plaintiffs:*

*Brown, et al.;*
*Collins, et al.;*
*Estate of Pearl Welch, et al.;*
*Waverly Hills Club, et al.*

**John M. Groen**
GROEN STEPHENS & KLINGE LLP
11100 NE 8th Street, Suite 750
Bellevue, WA 98004
Telephone: (425) 453-6206
Facsimile: (425) 453-6224
Email: groen@gsklegal.pro

*Attorney of Record for the following consolidated Plaintiffs:*

*Beres, et al.; Ritzen, et al.;*
*Morel, et al.; Klein, et al.;*
*Chamberlin, et al.; Nelson, et al.;*
*Lane; Peterson, et al.; Schroeder, et al.;*
*Manning, et al.; and Spencer, et al.*

Dated: November 23, 2011

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I. *Lawson* definitively holds that upon a change in use, the original easement is effectively abandoned and reverts—this rule of law makes a railbanking defense immaterial to the question of liability. ................................................................................. 1

II. Because a taking turns on the scope of the easement, railbanking is simply immaterial to this analysis. ............................................................................................. 5

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**CASES**

*Chevy Chase Land Co. v. United States*,
  230 F.3d 1375, 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999) .................................................. 6

*Chevy Chase Land Co. v. United States*,
  733 A.2d 1055 (Md. 1999) ...................................................................................................... 6

*Good v. Skagit County*,
  17 P.3d 1216 (Wash. Ct. App. 2001) ...................................................................................... 3

*King County v. Squire Investment Co.*,
  801 P.2d 1022 (Wash. Ct. App. 1991) .................................................................................... 3

*Lawson v. State*,
  730 P.2d 1308 (Wash. 1986) ............................................................................................. 1, 2

*Preseault v. Interstate Commerce Commission*,
  494 U.S. 1 (1990) ................................................................................................................ 5, 7

*Preseault v. Interstate Commerce Commission*,
  853 F.3d 145 (2d Cir. 1988) .................................................................................................... 5

*Preseault v. United States*,
  100 F.3d 1525 (Fed. Cir. 1996) ............................................................................................... 6

*Toews v. United States*,
  376 F.3d 1371 (Fed. Cir. 2004) ............................................................................................... 7

**OTHER AUTHORITIES**

17 Washington Practice Series, Real Estate (2d ed. 2011) ........................................................... 3

The Court ordered the Defendant to supplement its briefing on the issue of its liability as follows:

> In the defendant's motion for partial summary judgment, the defendant argued that, with respect to the SLS&E Deeds and the 1904 Reeves Quit Claim Deed, the language of the deeds were sufficiently broad to encompass railbanking and interim trail use. Although the defendant addressed Federal Circuit precedent regarding railbanking, the defendant did not discuss any Washington precedent regarding railbanking. Therefore . . . the defendant shall file a submission addressing Washington precedent, if any, as related to railbanking, including *Lawson v. State*, 730 P.2d 1308 (Wash. 1986).

(Order, Oct. 25, 2011, Doc. 125.)

Defendant's supplemental brief contended the "United States is not aware of any substantive Washington precedent related to railbanking, including *Lawson v. State*." (Def.'s Supplemental Br. 1, Doc. 129). Plaintiffs acknowledge that *Lawson* did not directly address railbanking, but disagree that it establishes no precedent related to railbanking.

## I. *Lawson* definitively holds that upon a change in use, the original easement is effectively abandoned and reverts—this rule of law makes a railbanking defense immaterial to the question of liability.

The United States attempts to distinguish or limit *Lawson v. State*, 730 P.2d 1308 (Wash. 1986), on the grounds that "*Lawson* did not involve the same regulatory program at issue here." The attempt to distinguish is not persuasive.

Plaintiffs agree that at issue in *Lawson* was the constitutionality of a state rails-to-trails statute, however, that fact does not render the Washington Supreme Court's analysis any less applicable. Rather, it is significant the Court ruled the statute unconstitutional because it allowed for the uncompensated taking of property through a rails-to-trails conversion program. The Court could only reach that conclusion, and strike down the statute, by finding that the railroad held only an easement and that present conversion from operation of a railroad to a new use as a recreation trail would be a change in use that is outside the scope of the railroad easement. The

change in use then, where the new use is unauthorized, is the crux of the issue of the constitutionality of a rails-to-trails conversion. Therefore, the railbanking defense is utterly immaterial, because railbanking—a perpetually speculative future condition that may or may not result in restored railroad use—does not change the fact that there has been a present, unauthorized use, which *causes an automatic and immediate reversion* and gives rise to a cause of action grounded in constitutional principles. This is what the *Lawson* Court held:

> In addition to outright abandonment of a right of way, there may be a change in use of the right of way which is inconsistent with the purpose for which the right of way was granted. *Where the particular use of an easement for the purpose for which it was established ceases, the land is discharged of the burden of the easement* and right to possession reverts to the original land owner or to that landowner's successor in interest.
>
> . . . .
>
>     . . . At least one court has [held] . . . that abandonment does not occur upon a change from railroad use to hiking and biking use.
>
>     We disagree.
>
> . . . .
>
>     Applying common law principles, we hold that a change in use from "rails to trails" constitutes abandonment of an easement which was granted for railroad purposes only. At common law, therefore, the right of way would automatically revert to the reversionary interest holders.

*Lawson v. State*, 730 P.2d 1308, 1312-13 (Wash. 1986) (emphasis added). Clearly, under Washington State law, a change in use triggers the reversion. It is automatic, as a matter of law, and railbanking is immaterial under Washington law.[1]

---

[1] Professor Stoebuck, in the Washington Practice series, acknowledges the impact of *Lawson* as follows:

> While it is true that a railroad easement gives the railroad company very extensive rights, Washington tends to limit those rights strictly to the use of an operating railroad. *Lawson v. State* holds that an easement for railroad purposes was *not broad enough in scope* so that, when the railroad ceased to exist, the easement could be used as a public recreation trail. A state statute that attempted to allow the public to use the abandoned right-of-way as a

2

In footnote 2 of its supplemental brief, the Government contends that *King County v. Squire Investment Co.*, 801 P.2d 1022 (Wash. Ct. App. 1991), is inapposite because the deed at issue there had a habendum clause stating "so long as said land is used as a right-of-way by said railway Company." But the handwritten habendum clause was only relevant to whether the deed created an easement. The argument was made that the habendum clause "arguably suggests conveyance of a fee simple determinable." 801 P.2d at 1025. Despite the habendum clause, the Washington appellate court ruled that the granting clause "strongly suggests conveyance of an easement" and ultimately held that "an easement was conveyed." *Id*. In short, the presence of the habendum clause was relevant to the first issue of whether there was an easement.

Having found an easement, the *Squire Investment* decision then proceeds to address the scope of the easement. As we noted in our Reply, the granting clause in the deed at issue in *Squire Investment* contains the exact same language as the deeds at issue here. (Pls.' Reply 2-4.) And not only did the court hold the deed was an easement, it held the scope of the granting clause exceeded by the conversion from railroad use to a recreation trail. Accordingly, the appellate court, applying *Lawson*, recognized that a conversion from rail to trail use caused an automatic reversion under state law. 801 P.2d at 1024, 1028.

With respect to *Good v. Skagit County*, 17 P.3d 1216 (Wash. Ct. App. 2001), Plaintiffs agree that this case has no bearing on the present case. The *Good* case was an attempt to sue Skagit County for a taking as a result of the conversion to trail use pursuant to 16 U.S.C. § 1247(d). The appellate court correctly ruled that "[a]ny taking that may have occurred in this case, occurred by operation of an act of Congress not by subsequently authorized use by Skagit County." *Id*. at

---

> recreational trail was held void as an attempted eminent domain "taking" without compensation.

17 Wash. Prac., Real Estate § 2.9 (2d ed. 2011) (emphasis added).

3

1221. Accordingly, the proper defendant is the United States in a claim under the Tucker Act. Of course, that is why we are here.

As a last gasp, the United States half-heartedly suggests that the Court certify the issue to the Washington Supreme Court. Two responses. First, there is no basis for certification because the Washington Supreme Court in *Lawson* has already established Washington law with respect to the scope of railroad easements and the impact of a conversion from railroad use to trail use on the reversionary interest holder. The conversion creates a present and automatic triggering of the reversionary interest leaving no room for a liability defense under an immaterial railbanking analysis. Speculation about future re-establishment of a railroad operation does not alter that present triggering of the reversionary interest. The United States has not offered any persuasive reason why this precedent should not be followed.

Second, it is simply too late to now suggest certification. The matter is briefed and ready for decision. If the United States was serious about seeking certification, it should have brought this up six months ago when a briefing schedule was being established.

In summary, *Lawson* held that exceeding the scope of an original railroad easement effected an immediate abandonment of the original easement and a taking of private property in violation of the Washington State Constitution. Therefore, while *Lawson* did not directly address the Trails Act or railbanking, *Lawson* left no room for a railbanking defense or for the notion that preservation for, or speculation about, future railroad use of the "abandoned" corridor alters the fundamental constitutional analysis. *Lawson*'s holding with respect to the analysis of the state law on the scope of railroad easements and the triggering of the reversionary interest is directly applicable and should be followed.

## II. Because a taking turns on the scope of the easement, railbanking is simply immaterial to this analysis.

Under federal law, the scope of the original easement is the beginning and the end of the analysis and the railbanking purpose is immaterial to the government's liability if the conversion to trail use is unauthorized under application of state law. Plaintiffs briefed the issue of materiality of railbanking in the context of the 1875 Act and showed that both the Supreme Court and the Federal Circuit have established that railbanking a railroad corridor, while in the meantime dedicating it to a completely different use—a linear park—simply does not absolve the government of liability. (*See* Pls.' Resp. §III.4.) This analysis applies equally to easements created under state law regardless of whether there exists established precedent on the issue of railbanking under state law, and we believe it is useful to note the substantive and chronological treatment of this issue by the federal courts.[2]

The Second Circuit in *Preseault v. Interstate Commerce Commission*, 853 F.3d 145, 151 (2d Cir. 1988), advanced the same flawed logic as the United States does now: that trail use was of no consequence because the right of way was preserved for future railroad use. But Justice O'Connor in *Preseault I* explained in her concurring opinion that state law would define the interests the landowner possessed and that the Second Circuit's reasoning on point was flawed and overlooked fundamental federal takings jurisprudence. *Preseault v. ICC*, 494 U.S. 1, 20-23 (1990) (*see also* Pls.' Resp. 41). In other words, if the scope of the *original* railroad interest was limited, then *federal* takings law would dictate the remaining analysis.

---

[2] This discussion is also germane to the analysis of *Lawson* because it is evident when comparing the Federal Circuit's analysis with that of *Lawson* that the two courts are in material agreement concerning the immediate effect that a conversion to unauthorized use of an existing railroad easement has on the landowner's property interest.

In 1996, in *Preseault II,* specifically addressing the issue of railbanking, Judge Rader explained in his concurring opinion that where the new use was inconsistent with the original easement, a "vague notion" that the right of way might in the future be restored to railroad operations simply did not absolve the United States from its obligation to pay just compensation when it permitted a "present use" of the property that was "inconsistent with the easement":

> As such, little by little, through federal regulation and state legislation, the United States and Vermont have converted a right to use the Preseaults' land for a railroad into a right to hold the land in perpetuity. *The vague notion that the State may at some time in the future return the property to the use for which it was originally granted, does not override its present use of that property inconsistent with the easement.* That conversion demands compensation.

*Preseault v. United States*, 100 F.3d 1525, 1552 (Fed. Cir. 1996) (emphasis added); (Pls.' Resp. 43).

Then, in 1999, the Federal Circuit accepted Maryland's highest court's main holding in *Chevy Chase Land Co. v. United States*, that the scope of easement in that case included recreational trail use. *Chevy Chase Land Co. v. United States*, 230 F.3d 1375, 1999 WL 1289099, at *2-3 (Fed. Cir. Dec. 17, 1999) (unpublished table decision); *see also Chevy Chase Land Co. v. United States*, 733 A.2d 1055 (Md. 1999). But, notably, the Federal Circuit specifically stated it was *not* adopting the alternative holding by that court. *Chevy Chase*, 1999 WL 1289099, at *3. In that alternative holding, and over the objection of one judge, the court held that even if the scope were limited to railroad purposes, railbanking would effectively be a railroad purpose in that, the majority reasoned, by railbanking the right of way, the purpose of the original easement was ongoing because the railroad could not abandon the line pursuant to federal law. *Chevy Chase*, 733 A.2d at 1080-81. The Federal Circuit noted it was withholding judgment on the Maryland court's alternative holding for a later time. *Chevy Chase*, 1999 WL 1289099, at *3.

Finally, in 2004 in *Toews*, without consulting state law on point because it did not need to under federal takings doctrine, the Court addressed the railbanking issue squarely. It held that railbanking and speculation about potential future railroad use does not "change the analysis" nor "provide a basis for denying protection to existing property rights under the Constitution," if the new use is inconsistent with the original easement:

> As a result of the imposition of the recreational trail and linear park, *the easement for railroad purposes was converted into a new and different easement*. The references in the ICC's and the City of Clovis's various documents to *railbanking . . . do not change the analysis*. There is a reality test in takings law. It is clear from the record that for the foreseeable future these lands will be used for the recreational trail project. Whether there ever will be a light rail system or other railroad service over these paved routes in Clovis is a matter of speculation about the distant future, based on uncertain economic and social change, and a change in government policy by managers not yet known or perhaps even born. Such speculation does not provide a basis for denying protection to existing property rights under the Constitution.

*Toews v. United States*, 376 F.3d 1371, 1381 (Fed. Cir. 2004) (emphases added); (*see* Pls.' Resp. 43).

The Court's analysis and holding is consistent with Justice O'Connor's admonishment that when a right of way is railbanked and put to recreational trail use, the property owner's rights to his property are not merely deferred or delayed but are defeated. *Preseault I*, 494 U.S. at 22 ("The Commission's actions may delay property owners' enjoyment of their reversionary interests, but that delay burdens and defeats the property interest rather than suspends or defers the vesting of those property rights."). Under constitutional principles, then, railbanking is immaterial to the question of the government's liability.

The analysis and holding in *Lawson* dovetails and is consistent with Federal Circuit law: where the new use is unauthorized under the easement there has been a taking of private property interests. As such, preservation of a corridor for speculative, future railroad use is simply beside the point.

Respectfully submitted this 23rd day of November, 2011.

| | |
|---|---|
| **ACKERSON KAUFFMAN FEX, PC** | **GROEN STEPHENS & KLINGE LLP** |
| /s/ Cecilia Fex | /s/ John M. Groen |
| Cecilia Fex | John M. Groen |
| 1701 K Street, NW, Suite 1050 | 11100 NE 8th Street, Suite 750 |
| Washington, DC 20006 | Bellevue, WA 98004 |
| Telephone: (202) 833-8833 | Telephone: (425) 453-6206 |
| Facsimile: (202) 833-8831 | Facsimile: (425) 453-6224 |
| Email: fex@ackersonlaw.com | Email: groen@gsklegal.pro |
| *Attorney of Record for the following consolidated Plaintiffs:* | *Attorney of Record for the following consolidated Plaintiffs:* |
| *Brown, et al.;* | *Beres, et al.; Ritzen, et al.;* |
| *Collins, et al.;* | *Morel, et al.; Klein, et al.;* |
| *Estate of Pearl Welch, et al.;* | *Chamberlin, et al.; Nelson, et al.;* |
| *Waverly Hills Club, et al.* | *Lane; Peterson, et al.; Schroeder, et al.; Manning, et al.; and Spencer, et al.* |

# CERTIFICATE OF SERVICE

The undersigned attorney states that on November 23, 2011, a true and accurate copy of the foregoing document was served upon the following parties by electronic service by way of the Court ECF Filing System.

Bruce K. Trauben
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street, NW, Rm. 3126
Washington, D.C. 20004
Telephone: (202) 305-0238
Facsimile: (202) 305-0506
Email: bruce.trauben@usdoj.gov

Andrea Carol Ferster
Rails-to-Trails Conservancy
1100 17th Street, NW, 10th Floor
Washington, DC 20036
Telephone: (202) 974-5142
Email: aferster@railstotrails.org

/s/ Cecilia Fex
Cecilia Fex