# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| WARREN BERES and VICKI BERES, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04-1471L, 04-1472L, 04-1473L, 04-1474L |
| v. | ) ) ) | |
| UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | The Honorable Marian Blank Horn |

**Plaintiffs' Brief in Support of Their Motion for an Order Affirming this Court Has Jurisdiction to Determine Whether the Land Taken by the United States Had Been Adversely Possessed by Certain Plaintiffs Prior to the Taking**

ACKERSON KAUFFMAN FEX, PC
Cecilia Fex
Ackerson Kauffman Fex, P.C.
1300 Pennsylvania Ave. NW, Suite 700
Washington, D. C. 20006
Phone: (202) 594-6825
Fax:    (202) 789-7349
e-mail: fex@ackersonlaw.com
*Attorney of Record for the following consolidated Plaintiffs:*
*Brown, et al.; Collins, et al.; Estate of Pearl Welch, et al.; Waverly Hills Club, et al.*

STEPHENS & KLINGE LLP
Richard M. Stephens
Stephens & Klinge LLP
11100 NE 8th Street, Suite 750B
Bellevue, WA 98004
Phone: (425) 453-6206
e-mail: stephens@sklegal.pro
*Attorney of Record for the following Consolidated Plaintiffs:*
*Beres, et al.; Ritzen, et al.; Morel, et al.; Klein, et al.; Chamberlin, et al.; Nelson, et al.; Lane; Peterson, et al.; Schroeder, et al.; Manning, et al.; and Spencer, et al.*

**March 17, 2017**

TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………..…………..ii

Introduction………………………………………………………………..…..………1

Background……………………………………………………………………..........1

ARGUMENT……………………………………………..………………………………..3

I.   Case law supports the finding that this Court has authority to determine
     whether a plaintiff has a cognizable property interest
     in the property alleged to have been taken by the United States
     in any Tucker Act case, regardless of the source of ownership …………….…..5

     A.   In disputes in which the issue of the Court's jurisdiction to decide
          whether the plaintiff was the owner of the property alleged to have been
          taken has been raised, the Court has found it has jurisdiction, and the
          reasoning in those cases applies equally
          here………………………………………..…………………………….…..6

     B.   This Court has repeatedly exercised jurisdiction over takings cases
          predicated on ownership by adverse possession in analogous contexts,
          including in rails-to-trails takings cases………………………………….…9

II.  Some Plaintiffs may be left without a remedy if this Court lacks jurisdiction
     to decide whether they owned the property via adverse possession……………13

CONCLUSION…………………………………………..……………………………..14

**Table of Authorities**

Cases

*Malone v. Bowdoin*,
   369 U.S. 643 (1962) .................................................................................................. 7
*Beres v. United States*,
   104 Fed. Cl. 408 (2012) ............................................................................................ 2
*Bourgeois v. United States*,
   545 F.2d 727 (Ct. Cl. 1976) ...................................................................................... 6
*Burgess v. United States*,
   109 Fed. Cl. 223 (2013) .......................................................................................... 10
*Camp Far West Irrigation District v. United States*,
   68 F. Supp. 908 (Ct. Cl. 1946) ................................................................................ 11
*Manning v. United States*,
   200 Ct. Cl. 739 (1972) .............................................................................................. 7
*Chevy Chase Land Co. v. United States*,
   37 Fed. Cl. 545 (1997) ...................................................................................... 12, 13
*CRV Enters., Inc. v. United States*,
   626 F.3d 1241 (Fed. Cir. 2010) ................................................................................ 4
*Causby v. United States*,
   328 U.S. 256 (1946) .................................................................................................. 7
*Geneva Rock Products v. United States*,
   107 Fed. Cl. 166 (2012) ............................................................................................ 9
*Gila Gin Co. v. United States*,
   231 Ct. Cl. 1001 (1982) ............................................................................................ 8
*Jan's Helicopter Service, Inc. v. FAA*,
   525 F.3d 1299 (Fed. Cir. 2008) ................................................................................ 3
*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) .................................................................................................. 4
*Mulchay v. United States*,
   229 Ct. Cl. 844 (1982) ............................................................................................ 13
*Mundy v. United States*,
   22 Cl. Ct. 33 (Cl. Ct. 1990) ...................................................................................... 9
*Oak Forest, Inc. v. United States*,
   23 Cl. Ct. 90 (1991) .................................................................................................. 8
*United States v. Gen. Motors Corp.*,
   323 U.S. 373 (1945) .................................................................................................. 4
*Vasko v. United States*,
   112 Fed. Cl. 204 (2013) .......................................................................................... 10
*Vasko v. United States*,
   581 Fed. App'x 894 (Fed. Cir. 2014) .................................................................... 10

## Statutes

28 U.S.C. 1346 .................................................................................................................. 3, 7
28 U.S.C. 1491 ..................................................................................................................... 3
28 U.S.C. 2409a ................................................................................................................... 7
RCW 7.28.010 .................................................................................................................... 14
RCW 7.28.060 ..................................................................................................................... 3
RCW 7.28.070 ..................................................................................................................... 3
RCW 7.28.080 ..................................................................................................................... 3

**Introduction**

In deciding whether the United States is liable for a taking of private property, this Court routinely determines whether the plaintiff had a legally cognizable property interest at the time of the taking. This determination is typically made under applicable state law in varying contexts materially similar to the circumstances here. Nothing in the Court's Rules or jurisprudence, nor in Washington law on adverse possession, prevents the Court from determining not only the Government's liability for a taking but also whether a plaintiff in fact owned the property he claims he owned. This is true regardless of the means by which the plaintiff acquired the property, e.g., by deed, inheritance, or adverse possession. Therefore, Plaintiffs respectfully request that the Court affirm it has jurisdiction to decide whether any Plaintiffs in this case, or their predecessors in interest, acquired the subject property by adverse possession prior to the date of taking.[1]

**Background**

In 2012, this Court ruled the United States was liable for taking private property when converting a former railroad right of way into recreational trails.

---

[1] No Plaintiff is disavowing that their deed to the subject property conveyed half or the whole right of way. As has been explained, Plaintiffs believe that establishing ownership through title will require exponentially more time and resources than claiming title via adverse possession. This is because establishing record title for some will require a thorough investigation into evidence of the intent of the grantors at various points of time in history. For this reason, given the question of law presented here is in dispute, Plaintiffs seek this Court's affirmance that it has jurisdiction to decide whether a person has a compensable property interest acquired via adverse possession or related theories for purposes of resolving a takings case.

*Beres v. United States*, 104 Fed. Cl. 408 (2012) (ruling that the railroad parcels at issue, which had been conveyed to the railroad as easements, were limited to railroad purposes and that recreational trail use was outside of the scope of the railroad easements). With that ruling, one question remained to be resolved by either settlement or court decision in order for Plaintiffs to be paid: did the Plaintiffs own the property at issue on the date of taking? In lieu of litigating that question, the United States and the Plaintiffs decided to attempt to settle the case. Accordingly, since then and until relatively recently, the parties were steadily working toward that goal.

Recently, however, among other issues, the parties have found they are at an impasse on the question of ownership of the right-of-way parcels at issue for certain Plaintiffs. The United States alleges certain Plaintiffs cannot claim ownership of the right of way at issue based on its interpretation of deeds, while the Plaintiffs contend they can. The options for establishing ownership for these properties include, but are not limited to, (1) litigating whether the titles in Plaintiffs' possession include ownership of the right of way or, to the contrary, whether a predecessor in interest—or his heirs or assigns—retained ownership of the right of way, or (2) assuming, *arguendo*, that the Plaintiffs were not the owners by actual deed, whether they nevertheless own the property through adverse possession or related theories.[2] Both issues are in dispute. For reasons of expediency, Plaintiffs

---

[2] In addition to adverse possession, several Washington statutes provide for a determination of ownership acquired by similar means, for instance, where there is

submit the latter issue should be addressed now. Because the Defendant claims the Court has no jurisdiction to decide that issue, Plaintiffs seek an order from the Court declaring that it does.

Plaintiffs are not seeking in this motion a ruling that any specific Plaintiff has in fact acquired title via adverse possession or any related theory.[3] If the Court decides it has jurisdiction, Plaintiffs will continue their efforts to settle with Defendant based on the facts of each specific case. Only if the parties reach another impasse do Plaintiffs foresee the need for the Court to determine ownership.

**Argument**

Under 28 U.S.C. § 1491(a)(1), this Court has exclusive jurisdiction over "[a]ny claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department" in excess of $10,000. *E.g.*, *Jan's Helicopter Service, Inc. v. FAA*, 525 F.3d 1299, 1304 (Fed. Cir. 2008); *see also* 28 U.S.C. § 1346(a)(2). In this case, Plaintiffs' claims arise under the Just Compensation Clause of the Fifth Amendment to the United States Constitution and each claim exceeds $10,000.

---

color of title and payment of taxes for seven years. *See* RCW 7.28.070; RCW 7.28.060; RCW 7.28.080.

[3] Plaintiffs do, however, submit that some adverse possession situations are crystal clear, such as the situation of Robert and Beth Nelson. The Defendant has identified an issue with their title, suggesting that they do not own the land on which their home was built over 30 years ago. While the Nelsons are still attempting to resolve the issue with their recorded title, if they are unable to do so, adverse possession would clearly apply. Plaintiffs do not expect the Court to rule on that question here, but just wish to note that in at least some instances, adverse possession should be undisputed.

3

To establish a taking, a plaintiff must have a legally cognizable property interest, such as the right of possession, use, or disposal of the property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982) (citing *United States v. Gen. Motors Corp.*, 323 U.S. 373 (1945)). Occasionally, the United States will challenge a plaintiff's claim of ownership in a takings case, and when it does, it is the Court's task to determine whether the plaintiff does or does not own the property alleged to have been taken by reviewing the facts presented by the parties and applying the applicable state law to those facts. *E.g.*, *CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1249 (Fed. Cir. 2010), *cert. denied,* 131 S. Ct. 2459 (2011).

Here, Defendant has not denied that the Court has jurisdiction to determine title disputes based on deeds and other documents, particularly when it comes to determining whether a Plaintiff or a third party owns the right of way. But Defendant does challenge the Court's jurisdiction to determine whether title was acquired via adverse possession, particularly, it seems to argue, where such a determination would entail deciding ownership as between a Plaintiff or an absent third party who has never claimed an interest in the right of way. Defendant's position is contradicted by this Court's jurisprudence and unsupported by the body of law concerning adverse possession, as well as the body of law concerning inverse condemnations.

Finally, as a preliminary matter, the Defendant has asserted that Plaintiffs who claim ownership via adverse possession would need to amend their complaint to

assert an adverse possession claim. Plaintiffs disagree. They are not asserting an adverse possession claim against the Defendant. They are asserting that they have title to the property for purposes of pursuing a takings claim against the United States. Adverse possession is merely the most expedient of several legal avenues by which Plaintiffs might establish a cognizable interest in the land taken by the Defendant. These Plaintiffs' reliance on the doctrine of adverse possession to establish an element of their claim against the Defendant does not trigger any special pleading requirement. The Court would have to use the same adversarial, truth-seeking tools to determine ownership via deed, inheritance, or partition. In short, the assertion of ownership in a complaint is sufficient to assert a cognizable property interest; the means by which ownership was acquired need not be detailed.

I. **Case law supports the finding that this Court has authority to determine whether a plaintiff has a cognizable property interest in the property alleged to have been taken by the United States in any Tucker Act case, regardless of the source of ownership.**

Plaintiffs' research on the question of the Court's authority to decide questions of property ownership in the context of takings cases yielded a variety of cases that support Plaintiffs' position and none that don't. In analogous contexts, the Court has explained it has jurisdiction to resolve various ownership disputes. And in other cases, where there has been no dispute concerning its authority to do so, this Court has examined state law to determine if the plaintiff before it (as opposed to some third party not participating in the case) owned the subject properties by means of deeds, inheritances, other means, *or by adverse possession*; and, in instances not dealing directly with the question of ownership, the Court has indicated it would

5

turn to the question after dispensing with other issues first. Below is a sampling of these cases.

**A. In disputes in which the issue of the Court's jurisdiction to decide whether the plaintiff was the owner of the property alleged to have been taken has been raised, the Court has found it has jurisdiction, and the reasoning in those cases applies equally here.**

In *Bourgeois v. United States*, 545 F.2d 727 (Ct. Cl. 1976), the plaintiff brought a takings claim against the Government involving its 1971 appropriation of an island in a lake. The facts of the case dated back to the 19th century. *Id.* at 728. In 1846, a government survey had omitted the island. *Id.* The Government then used that flawed survey to grant patents in 1866 to different shoreline properties along the lake. *Id.* As a result, any mention of the island was omitted from the patents issued for those properties. *Id.* In 1939, the plaintiff and her husband acquired one of the shoreline lots that had been patented in 1866. *Id.* In 1958, the island was surveyed for the first time. *Id.* Then, in 1971, the Government "posted" the island, and the plaintiff initiated the lawsuit to "vindicate her asserted rights to the island." *Id.* at 729.

As it does again here, the Government in *Bourgeois* raised the defense that the Court of Claims had no jurisdiction over the matter. Arguing that the matter was actually a quiet title action against the Government, the Government argued that, under the Quiet Title Act, the matter could only be heard in a district court, not by the Court of Claims. *Id.* at 729 n.1. The Court addressed and rejected the Government's argument, holding that the Court was not denied jurisdiction just because there was a title issue in the takings case:

> [O]ne assertion by defendant—that this suit is really one to quiet title and therefore within the exclusive jurisdiction of the district courts under 28 U.S.C. 2409a and 1346(f)—must be addressed, as it strikes at the power of this court to hear the action.
>
> 28 U.S.C. 2409a (enacted in 1972) states that it does not affect actions which could be brought under 28 U.S.C. 1346 or 28 U.S.C. 1491. *Cf. Manning v. United States*, 200 Ct. Cl. 739 (1972). Under 28 U.S.C. 1491, the Court of Claims has long had jurisdiction over Fifth Amendment taking cases. *Causby v. United States*, 328 U.S. 256, 267, 66 S. Ct. 1062, 90 L. Ed. 1206 (1946).
>
> This court is *not denied jurisdiction now, simply because there is a quiet title issue involved in determining entitlement to just compensation* vel non. As the Supreme Court stated in *Malone v. Bowdoin*, the Court of Claims is an appropriate forum where plaintiff can try title *by seeking just compensation for the taking of land by the United States*, 369 U.S. 643, 647 n. 8, 82 S. Ct. 980, 8 L.Ed.2d 168 (1962). (Note that *Malone* preceded the enactment of 28 U.S.C. 2409a by ten years.) *Carlson & Carlson v. United States*, 208 Ct.Cl. 1022, 1023 (1976), establishes the vitality of *Malone* in a post-1972 setting.
>
> If plaintiff had brought suit to be restored possession of her land, perhaps the issue would be different and 28 U.S.C. 2409a might require this suit be brought in the district court. *But this is not a suit for possession. It is a just compensation action and thereby within the historical jurisdiction of the court. To hold otherwise would allow defendant in its answer to determine the situs of an action by alleging governmental ownership.* This we decline to do.

*Bourgeois,* 545 F.2d at 729 n.1 (paragraph breaks and emphases added).

While the Quiet Title Act is not, of course, relied on by Defendant now, the *Bourgeois* analysis is equally applicable here. This case, too, is "a just compensation action and thereby within the historical jurisdiction of the court." *Id.* This is because the Supreme Court has determined "the Court of Claims *is an appropriate forum where plaintiff can try title* by seeking just compensation for the taking of land by the United States." *Id.* (emphasis added). Thus any dispute over whether the plaintiff was the owner or not at the time of taking should not usurp the Court's

authority to decide the question of ownership in the context of the takings claim. "To hold otherwise would allow defendant in its answer to determine the situs of an[y takings] action by alleging [third-party] ownership" of the property alleged to have been taken. *Id.*

In similar contexts to *Bourgeois*, the Court has reached the same conclusion. For example, in *Oak Forest, Inc. v. United States*, 23 Cl. Ct. 90 (1991), the Court refused to dismiss the case for lack of jurisdiction where there were multiple plaintiffs and multiple defendants claiming ownership of land in a takings case. Although the Court decided to suspend the case because of a pending district court case brought against the United States under the Quiet Title Act, which does not grant jurisdiction to the CFC, the Court expressly held "that the mere fact that title must be determined as part of this proceeding does not oust the court of jurisdiction …." *Id.* at 96.[4] The Court restated the Government's argument as essentially concluding "that a Tucker Act remedy no longer exists when title is in dispute." *Id.* at 95. And, in rejecting the argument that it was without jurisdiction to determine the ownership issues, the Court reasoned that "Constitutional protections are not so easily undercut." *Id.*

Similarly, in *Gila Gin Co. v. United States*, 231 Ct. Cl. 1001 (1982), the Court denied the Government's motion to dismiss for lack of jurisdiction and held the Court had jurisdiction to determine ownership interests in takings cases despite that there were other cases pending in other courts to determine the scope of flood

---

[4] As discussed *infra* at 16, many Plaintiffs have no corresponding right to quiet title under Washington law because they do not have present title in the land.

easements that had been bought by plaintiff's neighbors in relation to the same dam in question in this case.[5]

All of these cases demonstrate that this Court and its predecessor have recognized that jurisdiction exists to determine whether a plaintiffs owns a property interest for purpose of deciding a claim of uncompensated taking regardless of the basis on which the title is claimed.

**B.   This Court has repeatedly exercised jurisdiction over takings cases predicated on ownership by adverse possession in analogous contexts, including in rails-to-trails takings cases.**

The Defendant's position in this case is strange because it is at odds with its position—or perhaps more accurately, its non-position—in past cases. The United

---

[5] Other cases, where the question of jurisdiction was not in dispute, add additional support to the conclusion that, simply, the Court's authority to make ownership determinations in a takings case is settled and typically not disputed. For example, in *Geneva Rock Products v. United States*, 107 Fed. Cl. 166 (2012), a rails-to-trails case, the Court found the Government liable for a taking of specific right-of-way parcels despite there being a dispute over the ownership of some of the parcels. After noting that the Government had challenged one of the claimant's ownership of one of the parcels, and after stating that the person alleged by the Government to be the owner was not a member of the plaintiff class, the Court held the Government had taken the parcel in question while reserving the question of who owned the parcel for trial. As such, neither the United States nor the Court believed the Court lacked jurisdiction to resolve the ownership question despite the United States' allegation that a non-party owned that property. *See id.* at 173-76. And in *Mundy v. United States*, 22 Cl. Ct. 33 (Cl. Ct. 1990), in a case involving the claim that the United States took easement rights over a river, the Court analyzed, but reserved summary judgment on, the factual question of whether the river at the point it crossed the plaintiffs' alleged rights was navigable (and therefore incapable of having easement rights prescribed over it) or non-navigable (and therefore capable of having easement rights prescribed over it) without questioning its jurisdiction to do so, despite the potential other "landowner," the Commonwealth of Virginia, not being a party to the lawsuit.

States has been a regular party to takings cases in which ownership by adverse possession has been alleged by the plaintiff and disputed by the United States without the parties or the Court questioning the Court's jurisdiction to resolve the conflict.

Recently, in *Vasko v. United States*, 581 Fed. App'x 894, 896 (Fed. Cir. 2014), the plaintiff alleged that she had acquired title to property through adverse possession and that an eviction from that property was a taking of her fee interest under the Fifth Amendment. As a predicate to her taking claim, this Court, and the Federal Circuit in affirming this Court's decision, first determined whether she had adversely possessed the property prior to the eviction, and both concluded she had failed to satisfy the elements of adverse possession under Georgia law. *See id.* at 898. Neither Court expressed any concern over its jurisdiction to consider whether the plaintiff had acquired the property adversely under state law prior to the alleged taking. Notably, while ruling on the merits of the takings claim predicated on the adverse possession of the property at issue, this Court did conclude that it had no jurisdiction over tort and due process claims. *Vasko v. United States*, 112 Fed. Cl. 204, 224 (2013) *aff'd*, 581 F. App'x 894 (Fed. Cir. 2014). Thus, while the jurisdiction of the court was clearly at issue in *Vasko* on other grounds, its jurisdiction to review the merits of the plaintiff's adverse possession argument was not.

Also recently, in *Burgess v. United States*, 109 Fed. Cl. 223, 236-37 (2013), a rails-to-trails takings case, the Court described ownership issues related to an

alleyway between parcels and a railroad and determined that deciding whether the alley had been properly dedicated to the city government or instead had been retained by the property owners was an issue that must await trial, not an issue depriving the Court of jurisdiction. In a footnote, the Court analyzed the possibility that the property owners regained the alleyway from the city via adverse possession and determined they did not properly raise the argument in briefing and probably would not have succeeded on it anyway. *Id.* at 237 n.21. But the court addressed the issue head-on; there was no question that it had jurisdiction to do so:

> The relevant maps show a sixteen-foot wide alley between these parcels and the Railroad Line; the parties agree that "the original plat tendered the alley in fee simple to the town of Dumont, Iowa." That the alley was tendered to Dumont does not mean, however, that it necessarily became public land.
>
> Rather, under Iowa law, dedication for public use requires not only that there be an intent to dedicate and a dedication, but acceptance by the public or a party to whom the dedication is made. And the parties, for various reasons, disagree as to whether Dumont ever accepted the alley so as to effectuate the dedication.
>
> In the court's view, there are genuine issues of material fact as to this issue which preclude the court from resolving this issue as a matter of law. Accordingly, this issue must await trial.

*Id.* (citations omitted and paragraph breaks added).

In fact, the lack of dispute over the Court's jurisdiction to dispose of ownership questions predicated on adverse possession reaches back decades. In *Camp Far West Irrigation District v. United States*, 68 F. Supp. 908 (Ct. Cl. 1946), the plaintiff alleged a taking of easement rights to annual damming of a river which it claimed it

had acquired via prescription.[6] There was no dispute over whether the Court had jurisdiction to determine whether there had been a taking of property rights that had been acquired through prescriptive rights, nor did the Court *sua sponte* question its jurisdiction. Instead, the Court applied California state law for adverse possession and prescriptive rights to conclude that the "Plaintiff acquired a prescriptive right" *Id.* at 912. It went on to rule that the plaintiff, however, had failed to establish that, under the facts before it, the Government had taken its prescriptive rights. *Id.* at 913-14.

Lastly, *Burgess* is not the only rails-to-trails takings case in which the Court has disposed of the question of ownership by adverse possession. Two decades past, in *Chevy Chase Land Co. v. United States*, 37 Fed. Cl. 545 (1997), *aff'd sub nom,* 230 F.3d 1375 (2000), the Court analyzed the intervenor-plaintiff country club's claim that it had adversely possessed land from a railroad, which was not a party to the case. The United States and Montgomery County, as defendants, and Chevy Chase Land Co., as the original plaintiff, all opposed the country club's claim of ownership via adverse possession. Examining Maryland law on point, the Court determined the club had not adversely possessed the property. *Id.* at 589-593. The Court made that determination while expressly noting that it could not decide claims between two private parties, thereby tacitly observing the distinction between resolving claims between two private parties—not at issue there (nor here)—versus resolving

---

[6] Like adverse possession of fee title, prescriptive easement rights are obtained by operation of law when certain use conditions are satisfied over a certain period of time subject to state law.

the relief sought against the United States—as was the case in *Chevy Chase*, and as is the case here. *See id.* at 588.

These cases further illustrate that, in the context of presiding over a taking case, this Court has jurisdiction to determine issues of property ownership under state law, including ownership predicated on adverse possession, regardless of the presence or absence of an alleged third-party landowner.

II. **Some Plaintiffs may be left without a remedy if this Court lacks jurisdiction to decide whether they owned the property via adverse possession.**

Having timely filed an action in this Court, Plaintiffs should have the opportunity to prove they had property interests that were, in fact, taken. *See generally, Mulchay v. United States*, 229 Ct. Cl. 844, 846 (1982) (plaintiffs who timely filed should not be left without a remedy). But some Plaintiffs in this case will be left without a remedy if they are foreclosed from establishing ownership through adverse possession in this Court. Although asked by the Court during a recent Status Conference, the Defendant has not articulated any method by which Plaintiffs' ownership of property can be determined other than by this Court. The obvious alternative forum would be a quiet title case in Washington state court. However, anyone (and there are several Plaintiffs who are in this category) who has sold the property subsequent to the date of the taking, would not be able to assert a quiet title action in a Washington court.

Washington's quiet title statute is clear:

> Any person having a valid *subsisting* interest in real property, *and a right to the possession thereof,* may recover the same by action in the

13

> superior court of the proper county, to be brought against the tenant in possession; if there is no such tenant, then against the person claiming the title or some interest therein, and may have judgment in such action quieting or removing a cloud from plaintiff's title.

RCW 7.28.010 (emphasis added).

The initial requirement of Washington's quiet title act is that the claimant have a "valid subsisting interest in real property." Many Plaintiffs, like the Nelsons described *supra* at note 3, have sold their property after the taking date and no longer have a "subsisting interest" in the real property. Accordingly, they have no right under Washington law to ask a state court to quiet title to property they no longer own.

If this Court cannot determine whether Plaintiffs had property interests that were taken, then if these Plaintiffs were in fact bona fide owners on the date of taking, they would be deprived of their right to receive just compensation for the taking of their property in violation of the Fifth Amendment to the Constitution.

## Conclusion

Based on the foregoing, Plaintiffs respectfully request that the Court rule that this Court has jurisdiction to determine that Plaintiffs have acquired title to property via adverse possession under Washington law and that Plaintiffs need not amend their complaints to do so.

Respectfully submitted this 17th day of March, 2017.

| ACKERSON KAUFFMAN FEX, PC | STEPHENS & KLINGE LLP |
|---|---|
| s/ | s/ |
| Cecilia Fex | Richard M. Stephens |
| Ackerson Kauffman Fex, P.C. | Stephens & Klinge LLP |
| 1300 Pennsylvania Ave. NW, Suite 700 | 11100 NE 8th Street, Suite 750B |
| Washington, D. C. 20006 | Bellevue, WA 98004 |
| Phone: (202) 594-6825 | Phone: (425) 453-6206 |
| Fax: (202) 789-7349 | e-mail: stephens@sklegal.pro |
| e-mail: fex@ackersonlaw.com | *Attorney of Record for the following* |
| *Attorney of Record for the following* | *Consolidated Plaintiffs:* |
| *consolidated Plaintiffs:* | *Beres, et al.; Ritzen, et al.; Morel, et al.;* |
| *Brown, et al.; Collins, et al.;* | *Klein, et al.; Chamberlin, et al.; Nelson, et al.;* |
| *Estate of Pearl Welch, et al.;* | *Lane; Peterson, et al.; Schroeder, et al.;* |
| *Waverly Hills Club, et al.* | *Manning, et al.; and Spencer, et al.* |