IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| WARREN BERES, et al., )<br>)<br>        Plaintiffs, )<br>    v. )<br>)<br>THE UNITED STATES OF AMERICA, )<br>)<br>        Defendant. )<br>)<br>)<br>_____) | **Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04-1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04-1471L, 04-1472L, 04-1473L, 04-1474L**<br><br>**Honorable Marian Blank Horn** |

**PLAINTIFFS' SUPPLEMENT TO DEFENDANT'S STATUS REPORT OF MAY 4, 207 (DOC. 213)**

Plaintiffs herein supplement the Government's Combined Status Report on the Status of Each Case and Ninth Bi-Weekly Status Report, filed May 4, 2017 (hereinafter "Combined Report"). (Doc. 213.)

*Beres v. United States*, **case no. 03-785L**

The Government contends the appraisal process should not consider developments subsequent to the taking and it "does not believe plaintiffs here have put forth a valid reason to revisit the appraisals, especially considering the number of years that have passed since the appraisal was conducted, reviewed and approved by the parties." (Doc. 213 at 2).

As a prefatory matter, the appraisal was presented to Mr. and Mrs. Beres on October 11, 2016—hardly "a number of years." In any case, in general, Plaintiffs agree that value should be determined at the time of the taking. But the circumstances that the Beres family is in are somewhat unique. The appraiser evaluated damage to improvements based in part upon conversations with an attorney for the County about its intentions with the trail and improvements. For most plaintiffs who did not have extensive improvements, there was no or

little reason to dispute this approach. However, Mr. and Mrs. Beres have substantial improvements which were given little value by the appraiser because of his assumption that the improvements could remain and were not taken. Mr. and Mrs. Beres are familiar with the County's positions regarding the trail in 1998, which appears inconsistent with the appraiser's assumption and consistent with the County's current position: namely, these improvements will not remain and the Beres family will lose substantial value in improvements not accounted for in the joint appraisal. Mr. and Mrs. Beres wish to pursue an investigation into whether the assumption about retaining their improvements is valid. This will likely include conducting a deposition of the County under RCFC 36(b) to flesh out whether the taking of the right of way included the taking of improvements.

***Brown v. United States*, case no. 04-1473L and *Morel v. United States*, case no. 04-1467L**

The Government explains that it withdrew from its settlement agreement with the Browns, stating that it was doing so because, "unknown to the United States at [the time the parties agreed to the settlement], the Browns are involved in a quiet title action concerning the property at issue. See *Neighbors v. King County* ("*Neighbors II*"), case no. 15-2-20483-1 (Washington Superior Court)." (Doc. 213 at 2.) To the extent the statement suggests the Browns are hiding the ball, the Plaintiffs note that the case was filed in 2015 and that former counsel for the Government was aware of the pending litigation and was still counsel of record in December of 2016 when the Browns agreed to the Government's amount for settlement.[1]

---

[1] The Government made a similar statement in its status report filed April 6, 2017 (*See* Doc. 206 at 2-3), referring to the litigation as "recently-discovered" with respect to the Brown, Kuraganti, Heston, McNabb, Morel, Guthrie, Schumacher, Steward, Conger, and Mueller Plaintiffs.

In addition to the Browns, this issue also applies to the Plaintiffs in the *Morel* case. There are four sets of Plaintiffs in the Morel case for whom the Government has withdrawn settlement offers even though they are not parties to the *Neighbors* litigation. Those Plaintiffs are Guthrie, Kuruganti, and Heston. The Government has withdrawn the offers because their successors are plaintiffs in the *Neighbors* case. These Plaintiffs are concerned because it appears that the Government intends to use their successor's litigation in 2017 to determine Plaintiffs' rights in 1998. Plaintiffs Guthrie, Kuruganti, and Heston are not participating in that case, and have no control or say in the outcome of that case. The ultimate result of the *Neighbors* litigation may actually be a settlement to accommodate the interests of the County and the existing property owners. These Plaintiffs' interests in 1998 should not depend upon what someone else is willing to live with in terms of the scope of a trail easement.

As to the remaining Plaintiffs in *Morel* who are also Plaintiffs in *Neighbors,* they are content to see how the *Neighbors* case unfolds before settling the present case. However, the Government's description of *Neighbors* is inaccurate. While the County filed a motion for summary judgment, after receiving the plaintiffs' opposition, the County withdrew its motion. It appears that the only motion for summary judgment pending in *Neighbors* is by two property owners who are not involved in this Court of Federal Claims case. Trial is set for December 11, 2017. The remaining Plaintiffs in the *Neighbors* case hope, but have no assurance, that the case will be resolved before then.

***Collins v. United States*, case no. 04-1472L and *Nelson v. United States*, case no. 04-1465L**

This year, for the first time, the Government raised an additional basis for why some of the Plaintiffs in the *Collins* and *Nelson* actions, in its view, do not own the railroad right of way—namely because the Plaintiffs' deeds do not refer to ownership of the "uplands" that

would immediately abut the right of way. Plaintiffs responded to this posture soon after presented by the Government, noting that, among other things, they and their predecessors in interest have built homes on this land and otherwise occupied and paid taxes on the land for decades. But a common-sense perspective of the facts were insufficient for the Government and so Plaintiffs have completed an extensive research project on the historical documents pertaining to this area and provided those documents, along with a detailed analysis-memo, to the Government on May 8, 2017.

As explained to the Government in detail, and in more simplified terms here for the sake of summarizing the facts, the omission of reference to the "uplands" is due, in effect, to a scrivener's error as follows: The predecessors' title, reaching all the way back to Palmberg (who originally deeded the easement to the railroad company) shows clear reference to ownership of all lands including and adjoining the railroad right of way up until a partitioning proceeding initiated in 1945. Until then, the lands were owned jointly by the Palmberg heirs and were situated both to the east and west of the right of way (with the lake sitting to the far west). In the partitioning proceedings, the court divided the property among the family and heirs, such that one part, up to the eastern edge of the right of way, went to one family member, while the rest, using no metes and bounds, but merely referring to the entire parcel as "shorelands" went to a party who purchased at auction. Thus title to all lands west of the easterly boundary of the railroad right of way—notwithstanding the omitted mention of "uplands"—was quieted in the predecessors in interest to the Plaintiffs, who have been the subject of the shorelands/uplands objection raised by the Government.

Absent this interpretation of the conveyances, then the 1945 partition proceeding failed to partition all of the land by leaving the right of way and the uplands unaddressed—a result not contemplated by that court, nor the historical use and sale of the properties.

The Government did not have this research from the Plaintiffs until after the filing of its Combined Report and Plaintiffs provide that information herein to bring the Court current with these developments.

### *Ritzen v. United States*, case no. 04-1469L

In regard to the Sutter plaintiffs, the Government has its facts mixed up. The Sutter Plaintiffs are all heirs of Fritz and Helen Sutter as to one parcel of property. One of the Sutter Plaintiffs is now a Spencer by marriage, but unrelated to the other Spencer Plaintiffs. The statement in the Government's Status Report that "[t]here is a dispute as to whether the Spencers possess a property interest in the right of way" is true in regard to the other Spencers in case no. 04-1463L. It is not true in regard to the Sutter claim, which involves one parcel of property and one of the owners happens to have a Spencer last name.

### *Estate of Welch v. United States*, case no. 04-1471L

The Government reports that it has not received a response to its settlement offer, issued March 24, 2017 to the remaining Plaintiffs who are not in the first settlement group. That is incorrect—Plaintiffs rejected the Government's offer on April 10, 2017.

### Timing on Payment for the First Settlement Group

Plaintiffs understand the Government expects Treasury will not be paying Plaintiffs until the end of July. Plaintiffs hope there is some way to encourage Treasury to pay more quickly than over two months from now.

Respectfully submitted this 15th day of May, 2017.

| ACKERSON KAUFFMAN FEX, PC | STEPHENS & KLINGE LLP |
|---|---|
| *s/ Cecilia Fex* | *s/ Richard M. Stephens* |
| Ackerson Kauffman Fex, P.C. | Stephens & Klinge LLP |
| 1300 Pennsylvania Ave. NW, Suite 700 | 11100 NE 8th Street, Suite 750B |
| Washington, D. C. 20006 | Bellevue, WA 98004 |
| Phone: (202) 594-6825 | Phone: (425) 453-6206 |
| Fax:    (202) 789-7349 | e-mail: Stephens@sklegal.pro |
| e-mail: fex@ackersonlaw.com | *Attorney of Record for the following* |
| *Attorney of Record for the following* | *Consolidated Plaintiffs:* |
| *consolidated Plaintiffs:* | *Beres, et al.; Ritzen, et al.; Morel, et al.;* |
| *Brown, et al.; Collins, et al.;* | *Klein, et al.; Chamberlin, et al.; Nelson, et al.;* |
| *Estate of Pearl Welch, et al.;* | *Lane; Peterson, et al.; Schroeder, et al.;* |
| *Waverly Hills Club, et al.* | *Manning, et al.; and Spencer, et al.* |