## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **WARREN BERES and VICKI BERES,** *et al.*, | ) ) ) | |
| **Plaintiffs,** | ) ) | Nos. 03-785L, 04-1456L, 04-1457L, 04-1458L, 04-1459L, 04- |
| **v.** | ) ) | 1463L, 04-1465L, 04-1466L, 04-1467L, 04-1468L, 04-1469L, 04- |
| **UNITED STATES,** | ) ) | 1471L, 04-1472L, 04-1473L, 04-1474L |
| **Defendant.** | ) ) ) | The Honorable Marian Blank Horn |
| | ) | |

**Plaintiffs' Reply Brief in Support of Their Motion for an Order Affirming this Court Has Jurisdiction to Determine Whether the Land Taken by the United States Had Been Adversely Possessed by Certain Plaintiffs Prior to the Taking**

ACKERSON KAUFFMAN FEX, PC
Cecilia Fex
Ackerson Kauffman Fex, P.C.
1300 Pennsylvania Ave. NW, Suite 700
Washington, D. C. 20004
Phone: (202) 594-6825
Fax: (202) 789-7349
e-mail: fex@ackersonlaw.com
*Attorney of Record for the following consolidated Plaintiffs:*
*Brown, et al.; Collins, et al.;*
*Estate of Pearl Welch, et al.;*
*Waverly Hills Club, et al.*

STEPHENS & KLINGE LLP
Richard M. Stephens
Stephens & Klinge LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
Phone: (425) 453-6206
e-mail: stephens@sklegal.pro
*Attorney of Record for the following consolidated Plaintiffs:*
*Beres; Ritzen, et al.; Morel, et al.;*
*Klein; Chamberlin, et al.; Nelson, et al.; Lane; Peterson, et al.;*
*Schroeder; Manning, et al.; and Spencer, et al.*

**May 25, 2017**

TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES......................................................................ii

INTRODUCTION.....................................................................................1

ARGUMENT.............................................................................................1

I.      A pre-trial ruling on the Court's jurisdiction to determine
        property ownership would resolve a disputed point of law
        essential to the question of whether Plaintiffs have a cognizable
        property interest and as such would not be an advisory opinion...................1

II.     The United States' limited waiver of sovereign immunity does
        not bar this Court from determining whether Plaintiffs own
        property by means of adverse possession...................................................6

        A.  This Court's jurisprudence does not require an "undisputed"
            property interest..................................................................................8

        B.  The Court need not create an exception to Congress' limited
            waiver of sovereign immunity and the Government's arguments
            concerning Washington law are utterly
            meritless............................................................................................10

        C.  The jurisdiction of the Court to determine property ownership
            for purposes of a taking claim is well-established in the cases
            cited by Plaintiffs..............................................................................12

CONCLUSION.........................................................................................15

TABLE OF AUTHORITIES

Cases

*American Renovation and Const. Co. v. United States.,*
   65 Fed. Cl. 254 (2005) ............................................................................................ 7
*Anderson v. United States,*
   344 F.3d 1343 (Fed. Cir. 2003) .............................................................................. 2
*Bourgeois v. United States,*
   545 F.2d 727 (Ct. Cl. 1976) ......................................................................... 8, 9, 12
*Cavin v. United States,*
   956 F.2d 1131 (Fed. Cir. 1992) ........................................................................ 8, 9
*Chevy Chase Land Co. of Montgomery County v. United States,*
   37 Fed. Cl. 545 (1997) ......................................................................................... 9, 12
*Disandro v. Makahuena Corp.,*
   588 F. Supp. 889 (D. Haw. 1984) ........................................................................ 4, 6
*El Cerrito, Inc. v. Ryndak,*
   60 Wash. 2d 847 (1962) .................................................................................... 11, 12
*Gila Gin Co. v. United States,*
   231 Cl. Ct. 1001 (1982) ..................................................................................... 9, 12
*Gorman v. City of Woodinville,*
   175 Wash. 2d 68 (2012) ........................................................................................ 12
*Kingman Reef Atoll Development LLC v. United States,*
   116 Fed. Cl. 708 (2014) .................................................................................... 8, 10
*Land v. Dollar,*
   330 U.S. 731 (1947) ............................................................................................... 3
*Lewis v. Continental Bank Corp.,*
   494 U.S. 472 (1990) ............................................................................................... 3
*Mundy v. United States,*
   22 Cl. Ct. 33 (1990) .............................................................................................. 15
*Nickell v. Southview Homeowners Ass'n,*
   167 Wash. App. 42 (2012) .................................................................................... 11
*Oak Forest, Inc. v. United States,*
   23 Cl. Ct. 90 (1991) ............................................................................... 9, 12, 13, 14
*Petersen v. Schafer,*
   42 Wash. App. 281 (1985) .................................................................................... 11
*San Juan County, Utah v. United States,*
   503 F.3d 1163 (10th Cir. 2007) ............................................................................. 8

*Schwartz v. United States*,
   16 Cl. Ct. 182 (1989) ................................................................................ 8
*Steel Co. v. Citizens for Better Environment*,
   523 U.S. 83 (1998) .................................................................................... 2
*United States v. King*,
   395 U.S. 1 (1969) ...................................................................................... 7
*United States v. Sherwood*,
   312 U.S. 584 (1941) ............................................................................. 7, 8
*Valley Forge Christian College v. Am. United for Separation of Church*
   *and State, Inc.*,
   454 U.S. 464 (1982) ................................................................................. 3
*Vasko v, United States*,
   112 Fed. Cl. 204 (2013) ......................................................................... 14
*Zevalkink v. Brown*,
   102 F.3d 1236 (Fed. Cir. 1996) ............................................................... 2

Statutes

28 U.S.C. § 1491 ............................................................................................ 6
28 U.S.C. § 171(a) (2012) .............................................................................. 2
RCW 4.16.020(1) ......................................................................................... 11

Rules

RCFC 19(a)(1) .............................................................................................. 14

## INTRODUCTION

Despite the Court's well-established authority to determine property ownership for purposes of resolving claims of uncompensated takings of property, the Government asserts that this Court lacks jurisdiction in this case. Before addressing the merits of the issue, however, the Government asserts that Plaintiffs' motion to the Court fails to meet Article III requirements, contending that resolution of this legal issue would be merely an advisory opinion. The argument is unavailing and is dispatched in Section I, below.

The Government's position on the merits of whether this Court has jurisdiction to decide the issue presented is based on erroneous premises: The Government asserts that it has not waived its immunity to be a defendant in a suit where (a) a third party cannot be joined in the suit, and (b) the asserted property interests have not been perfected or vested. The arguments misunderstand the scope of the Court's jurisdiction, misunderstand Washington law on the perfection of title via adverse possession, and misread the cases cited by Plaintiffs in their opening brief. Plaintiffs address these points in Section II.

## ARGUMENT

**I. A pre-trial ruling on the Court's jurisdiction to determine property ownership would resolve a disputed point of law essential to the question of whether Plaintiff have a cognizable property interest and as such would not be an advisory opinion.**

Brandishing Article III, the Government initially argues that Plaintiffs' motion does not present a justiciable "case or controversy." US Opp. at 3 (citations

omitted).[1]  As a preliminary matter, the "case or controversy" requirement applies to the case as a whole and not to every motion that might be asserted in a case. If it did, the Court could never grant stipulated motions.

In arguing that the Plaintiffs have failed to satisfy the Article III "case or controversy" requirement, the Government conflates Plaintiffs' motion (seeking an order affirming the Court's jurisdiction to decide whether the United States took property that Plaintiffs allege ownership of through adverse possession) with circumstances where there would be a non-justiciable case (*e.g.,* circumstances when a plaintiff has failed to allege a claim for which he has standing).[2] And in fact, each of the cases upon which the Government relies, US Opp. at 3-4, goes to the question of the courts' jurisdiction to hear and the plaintiffs' standing to bring the case itself; they do not raise the question of whether, in the course of an ongoing Article III case or controversy, the court may decide a question of law. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) (in a case alleging failure to

---

[1] The Court of Federal Claims as a court established under Article I of the United States Constitution, 28 U.S.C. § 171(a) (2012), is not bound by the "case or controversy" requirement of Article III, *Zevalkink v. Brown*, 102 F.3d 1236, 1243 (Fed. Cir. 1996). However, this Court traditionally has applied the "case or controversy" justiciability doctrines. *See id.; Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003).

[2] The Government contends that "in each complaint, Plaintiffs asserted a property interest by deed." US Opp. at 1. This is false. In all complaints, Plaintiffs described the property taken, without claiming whether ownership was by deed, inheritance, divorce decree, partition or adverse possession. Nothing requires them to do so. Some complaints refer to the year in which property generally was purchased, but do not allege that the ownership of the right of way is by deed.  Hence, there is no need to amend complaints to allege that the Plaintiffs' title to property may have been acquired by adverse possession.

timely provide statutorily required environmental information, plaintiffs lacked standing because the relief sought would not be likely to remedy the injuries alleged); *Valley Forge Christian College v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464 (1982) (plaintiff group lacked standing to object to conveyance of government property to church organization on Establishment Clause grounds); *Lewis v. Continental Bank Corp.*, 494 U.S. 472 (1990) (plaintiff bank holding company's claims were rendered moot by subsequent legislative changes).

Here, there is a clear and ongoing case and controversy between all Plaintiffs and the Government, and the Government's argument with respect to the instant motion has done nothing to diminish the fact that this case meets the "triad of injury in fact [property taken], causation [by Government actions], and redressability [damages via Tucker Act]" that "constitutes the core of Article III's case-controversy requirement." *Steel Co.*, 523 U.S. at103-04. It is well-established that a court has jurisdiction to decide whether it has jurisdiction. *Land v. Dollar*, 330 U.S. 731, 739 (1947). Nothing suggests that decision must await trial.

To be sure, Plaintiffs have not yet provided individual details to prove adverse possession in this briefing, which the Government knows they can and will do given the information Plaintiffs have sent them thus far. That does not, however, affect this Court's jurisdiction. Before using the Court's time with detailed factual determination, Plaintiffs seek clarification of a point of law, given the Government insists this Court has no jurisdiction to adjudicate ownership predicated on adverse possession. Accordingly, the resolution of the issue presented may lead to the

parties settling all outstanding claims or, if negotiations fail, then trying them more efficiently.

Under these circumstances, Plaintiffs' instant motion is, in effect, akin to a request for partial summary judgment on a discrete question of law. The motion seeks to narrow the issues in dispute between the parties to help them arrive at a settlement and to determine the scope of a trial, if any.

> It is appropriate to decide a few limited issues by summary judgment, even if those issues are not entirely dispositive of any one claim. Summary judgment can thus serve to set the issues for trial. The fact that less than an entire claim is settled by the summary judgment ruling does not vitiate the court's jurisdiction to decide the issue. This court now has before it parties who maintain conflicting and antagonistic positions…. The outcome of the dispute will have an immediate impact on the proofs to be offered at trial in support of the elements of the statutory causes of action. This is a case or controversy within Article III's grant of jurisdiction.

*Disandro v. Makahuena Corp.*, 588 F. Supp. 889, 892 (D. Haw. 1984) (citations omitted). Here, the parties maintain conflicting and antagonistic positions as to the Court's jurisdiction to determine whether Plaintiffs own property via adverse possession.

While there is manifestly a "case or controversy" between the Plaintiffs and the Government, the Government may be implying that there is no "case or controversy" with it simply because a controversy, if any, might exist between Plaintiffs and some hypothetical parties whose names might be reflected as potential owners in title documents. But the Government's position in regard to this motion indicates that there really is a "case and controversy" between Plaintiffs and the Government on the authority of the Court to decide the ownership of property,

which the Government challenges. And the parties before the Court necessarily have a "controversy," not third parties who theoretically could, but have not, asserted any interests.[3]

As the Government notes, the

> Court's authority to render judicial orders extends only to the resolution of actual controversies. It does not permit the Court to render advisory opinion on "abstract disagreements" about the validity or invalidity of provisions of law.

US Opp. at 4 (citations omitted). Whether the Court has jurisdiction to decide property ownership in the adverse possession context is not, of course, an abstract disagreement. If a Defendant disputes this Court's jurisdiction to dispose of a step in resolving a Plaintiffs' claims, the Court must satisfy itself that it does, indeed, have jurisdiction to so decide.

The Government also complains that Plaintiffs' motion is an effort to obtain an order they can "use" in settlement negotiations (Doc. 205 at 4), as if there was something nefarious about seeking clarification from the Court—before which the case has been for more than a decade—on a fundamental point that could substantially change the parties' relative bargaining positions in settlement talks. Clarifying a pure point of law which is in dispute and which would bar or permit a

---

[3] At the risk of belaboring the point, in Plaintiffs' view, if forced to litigate whether they own the right of way by deed, they would prevail—which explains why no third party along the entire right of way in which Plaintiffs claim ownership has ever come forward and filed suit, demanding compensation from the Government, or complained that Plaintiffs used their lands. For this reason, Plaintiffs refer to these "third parties" as "theoretical." Still, if the Government were correct that the deeds did not convey the right of way to the Plaintiffs, then Plaintiffs believe they will prove ownership through adverse possession of the right of way in a more efficient and less expensive manner.

plaintiff to go to trial on the merits is a valid exercise of the Court's powers and is a routine practice in pre-trial proceedings.

Finally, the Government asserts that the Plaintiffs' request for a ruling is unworkable, US Opp. at 4, seemingly on the basis no full factual record exists. Before the Plaintiffs go to develop the factual record on that issue for trial (or negotiations), Plaintiffs should be entitled to know if, as a matter of law, that effort would be futile and a waste of the parties' and the Court's time. *E.g.*, *Disandro*, 588 F. Supp. at 892.

In sum, there is a case or controversy as to whether the Court has jurisdiction to determine property ownership via adverse possession. A determination of this issue will advance the case—either through settlement or to resolve a disputed point of law prior to trial on the merits.

## II. The United States' limited waiver of sovereign immunity does not bar this Court from determining whether Plaintiffs own property by means of adverse possession.

The Government argues that the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491 does not extend to cases predicated on property interests that have not been perfected against third parties. US Opp. at 5. As addressed below, the argument fails to come to grips with established precedent that, if the question of title is in dispute, the Court of Federal Claims is the appropriate forum to determine whether the plaintiff held a property interest when a plaintiff is seeking just compensation for the taking of private property by the Federal Government. And the argument also misapprehends Washington State law

where the notion of "perfecting" title against third parties is a misnomer.  No action is required in Washington State to "perfect" title under adverse possession; once the requisite elements of adverse possession are met in Washington State (as in most states), title *is* perfected and the land belongs to the adverse possessor.

In any case, as discussed below, the Government's arguments are contrary to the well-established recognition of this Court's jurisdiction to address any issues necessary to resolve cases properly before it:

> Although this Court ordinarily lacks declaratory judgment jurisdiction, the Court may exercise equitable powers when that exercise is incidental to the Court's general jurisdiction to award money judgments.

*American Renovation and Const. Co. v. United States,* 65 Fed. Cl. 254, 260 (2005)[4] (*citing United States v. King*, 395 U.S. 1, 5 (1969); other, numerous citations omitted).

As a preliminary point to its waiver argument, the Government's cites *United States v. Sherwood*, 312 U.S. 584, 588 (1941) for the notion that "*if* maintenance against private parties is a prerequisite to prosecution of the suit against the United States," the takings claim must be dismissed. US Opp. at 5 (emphasis

---

[4] The Court in *American Renovation* recognized the Court could "exercise ancillary jurisdiction to determine the rights" between the Plaintiff and a third party who intervened, "but it cannot enforce the legal rights of [the Intervenor] specifically against Plaintiff, as such a determination falls outside of the jurisdiction conferred under the Tucker Act." 65 Fed.Cl. at 262. Here, there is no Intervenor, no actual third party claiming ownership—only hypothetical claimants conjured up by the Government.

Likewise, the Court has jurisdiction to determine whether Plaintiffs (rather than someone else) possess property interests for purposes of determining the Government's obligation to Plaintiffs, even though it does not have jurisdiction to enforce legal rights between private parties.

added). As a government contract case, *Sherwood* has no applicability to a takings case nor to determining property ownership. Even if an analogy could be drawn, here there is no requirement that there first be a quite title suit brought elsewhere (to satisfy the "if" contingency) and so the analogy would fail at the outset.[5]

### A. This Court's jurisprudence does not require an "undisputed" property interest.

The Government contends that any plaintiff bringing a claim for an uncompensated taking must have an "undisputed" property interest. US Opp. at 7 (quoting *Cavin v. United States*, 956 F.2d 1131, 1134 (Fed. Cir. 1992) and citing *Kingman Reef Atoll Development LLC v. United States,* 116 Fed. Cl. 708, 760 (2014)). The Government's creative reading of these decisions leads to the absurd conclusion that it could bring about the dismissal of claims whenever the Government chose to dispute property ownership. *Cf., Bourgeois v. United States,* 545 F.2d 727, 729 n.1 (Ct. Cl. 1976) ("this s not a suit for possession. It is a just compensation action and thereby within the historical jurisdiction of the court. *To*

---

[5] While the facts in *Sherwood* are somewhat confusing, it appears that a state court judge authorized a judgment creditor to begin a new proceeding under the Tucker Act against the United States for breach of its contract with the judgment debtor. In essence, the state court ruled that the Tucker Act would give jurisdiction over a private party's claim against another private party just because the latter had a contract with the federal government. *Id.* The Court in *Sherwood* simply held that the determination of the merits of the original case—a dispute between two private parties—was beyond the jurisdiction conferred by the Tucker Act. *See San Juan County, Utah v. United States*, 503 F.3d 1163 (10th Cir. 2007).

The Government also relies on *Schwartz v. United States*, 16 Cl. Ct. 182, 186 (1989), but that case merely recognizes that the Court has no jurisdiction over a contractual dispute with parties other than the United States. For the same reason *Sherwood* does not apply, *Schwartz* has no application to the issue presented to the Court here.

*hold otherwise would allow defendant in its answer to determine the situs of an action … This we decline to do*") (emphasis added).

The Government's proposed ruling is contrary to well-established precedent that a landowner need not seek quite title against purported third-party owners for property the landowner claims has been taken by the United States. *E.g., id.*("This court is not denied jurisdiction now, simply because there is a quiet title issue involved in determining entitlement to just compensation vel non."); *Chevy Chase Land Co. of Montgomery County v. United States* 37 Fed. Cl. 545, 564 (1997) ("This Court has jurisdiction to determine title to real property as a preliminary matter when addressing a taking claim."); *Gila Gin Co. v. United States*, 231 Cl. Ct. 1001, 1003 (1982) ("*Yaist* and *Bourgeois* unequivocally hold that if a suit involving a dispute over title seeks just compensation for the government's taking (as distinguished from return of the property), this court has jurisdiction."); *Oak Forest, Inc. v. United States*, 23 Cl. Ct. 90, 94-95 (1991) (discussing jurisdiction of the Court to decide title as a prerequisite to the takings claim and stating, "Like any other part of the plaintiff's case, this element [legally cognizable interest] can be challenged. When ownership has been disputed, the court *must* first determine that the plaintiff has a legally cognizable interest.") (emphasis added).

The Government selectively reads too much into the reference in *Cavin* to having "undisputed ownership" at the time of the taking. *Cavin,* 956 F.2d 1134. After all, in the immediately preceding paragraph, the Court in *Cavin* states that it "must determine the ownership." *Id.* The reference to "undisputed" plainly did not mean

that the Court lacked jurisdiction if a dispute existed; it simply meant that the Court could (as it did) resolve any dispute about ownership before proceeding with the merits of the claim.

*Kingman Reef Atoll* is similarly inapplicable. The Court understandably concluded that private use of public land does not transform the land into private ownership. 116 Fed. Cl. at 760. There can be no adverse possession against federally owned land. Here, Plaintiffs are not alleging that they acquired any federally-owned land.

The Government concludes this section with the argument that an adverse possession claim is not a vested right. As addressed below, Washington law recognizes the vesting and perfecting of ownership via adverse possession when the elements of adverse possession have been met, regardless of when, or if, any court confirms the property ownership.

## B. The Court need not create an exception to Congress' limited waiver of sovereign immunity and the Government's arguments concerning Washington law are utterly meritless.

Plaintiffs are not asking for an exception to the waiver of sovereign immunity. This case clearly falls within the waiver in the Tucker Act and the arguments raised by the Government to support this part of its argument, purportedly predicated on Washington law, bears no resemblance to that law.

In defiance of clear Washington law to the contrary, the Government invites the Court to create new law, suggesting that "any adverse possession claims that accrued by the date of the take in 1998 would have been past the statute of

10

limitations by 2008 at the latest. *See* RCW 4.16.020(1) (ten year statute of limitations for adverse possession claims)." US Opp. at 8 n. 3.

The law of Washington is quite clear that the ten years referred to in RCW 4.16.020(1) is not a statute of limitations for someone asserting adverse possession; it is, of course, the period for which someone defending against adverse possession must bring a claim against any adverse possessor before losing title to property.

> The 10–year statute of limitations does not require the owner by adverse possession to have held the property in an adverse manner continuously up to the time he seeks to quiet title by lawsuit.... Instead, he may bring his action any time after he has held possession adversely for ten years.

*Nickell v. Southview Homeowners Ass'n,* 167 Wash. App. 42, 51 (2012) (citing *El Cerrito, Inc. v. Ryndak*, 60 Wash. 2d 847, 855 (1962)). This is consistent with Washington law that there is no statute of limitations applicable to the determination of property ownership. *Petersen v. Schafer*, 42 Wash. App. 281 (1985).

More importantly, however, and to the notion that title has not been "perfected" by Plaintiffs, *e.g.*, US Opp. at 7, ubiquitous Washington law recognizes that title to property vests in the adverse possessor once all requirements have been met, regardless of when or if a court recognizes the ownership:

> When real property has been held by adverse possession for ten years, such possession ripens into an original title. Title so acquired by the adverse possessor cannot be divested by acts other than those required where title was acquired by deed. … The person so acquiring this title can convey it to another party without having had title quieted in him prior to the conveyance. Once a person has title (which was acquired by him or his predecessor by adverse possession), the ten-year statute of limitations does not require that the property be continuously held

in an adverse manner up to the time his title is quieted in a lawsuit.
He may bring his action at any time after possession has been held
adversely for ten years.

*El Cerrito, Inc. v. Ryndak*, 60 Wash. 2d at 855 (citations omitted);

Title vests automatically in the adverse possessor if all the elements
are fulfilled throughout the statutory period.

*Gorman v. City of Woodinville,* 175 Wash. 2d 68, 72 (2012) (citing *El Cerrito,*

60 Wash. 2d at 855) (emphasis added).

The Government's premise that any title in Plaintiffs via adverse

possession is not vested or perfected is completely contrary to readily-

available Washington law. Plaintiffs contend that they acquired title via

adverse possession prior to the taking date in September of 1998. No court

ruling at that time was necessary to "perfect" title.

**C. The jurisdiction of the Court to determine property ownership
for purposes of a taking claim is well-established in the cases
cited by Plaintiffs.**

The Government asserts that the cases cited by Plaintiffs "do not address

jurisdictional issues," US Opp. at 9, when, in fact, in most of them the Court in one

fashion or another expressly notes the Court has jurisdiction to determine disputed

ownership of land in a takings case. *See, e.g.*, *infra* at 9-10 (listing with explanation,

*Bourgeois v. United States*, 545 F.2d 727, 729 n.1 (Ct. Cl. 1976); *Chevy Chase Land*

*Co. of Montgomery County v. United States* 37 Fed. Cl. 545, 564 (1997); *Gila Gin Co.*

*v. United States*, 231 Cl. Ct. 1001, 1003 (1982); *Oak Forest, Inc. v. United States*, 23

Cl. Ct. 90, 94 (1990).) Here, the Government has challenged certain Plaintiffs'

claims of ownership. Therefore, according to *Oak Forest*, this Court's role includes

12

determining whether Plaintiffs' claims of ownership are valid. *See id*. at 94-95 ("When ownership has been disputed, the court *must* first determine that the plaintiff has a legally cognizable interest.") (emphasis added).

Rather than accept that the question before the Court is its jurisdiction to decide such issues, the Government instead seems to take issue with the "adverse" part of "adverse possession." The Government insists that because, in its view, there must be a party out there with a claim to the same land Plaintiffs assert ownership on via adverse possession, this Court should not decide whether those Plaintiffs acquired said land by adverse possession absent a third party. But as Plaintiffs' cases show, this Court has unequivocally held that the Court of Federal Claims *will* determine whether a plaintiff has a legally cognizable interest when title is in dispute. And it should go without saying that there necessarily must be someone else in whom title is allegedly vested in order for title to be in dispute.[6]

The Government argues that some of the cases cited in Plaintiffs' opening memorandum involve a direct dispute between landowners and the United States over the interpretation of deeds and title documents. US Opp. at 9. As Plaintiffs noted in their opening memorandum, no cases directly on point were available. But Plaintiffs' cases stand for the general principle that the need to make a title determination does not oust this Court of its jurisdiction over a takings case. The

---

[6] The Government's opposition to this motion is inconsistent with its implied position that the Court does have jurisdiction to resolve disputes tied to the "*Roeder* issue," where there, too, an absent third party would own the right of way under the Government's interpretation of the deeds at issue.

Government also criticizes Plaintiffs for failing to cite precedent that allows the Court to decide an adverse possession claim in the context of an absent third party. US Opp. at 9-10.[7] Although there may not be a case on all fours, the cases cited by Plaintiffs show the Court will exercise jurisdiction over takings claims despite the complicated necessity of first resolving the question of who owns the land as between private parties.[8] Furthermore, the Government's criticism relies on its misuse of both the *Vasko* and *Mundy* cases.

The Government argues as if the adverse possession claims in *Vasko v, United States*, 112 Fed. Cl. 204 (2013), *aff'd*, 581 F. App'x 894 (Fed. Cir. 2014), were being alleged against Government property. However, the plaintiff alleged she had adversely possessed the property from a private landowner *before* the Government obtained the property through foreclosure, hence her taking claim. 112 Fed. Cl. at 221. Additionally, the liberal construction to pleadings and arguments afforded to a *pro se* plaintiff, US Opp. at 11, does not extend to jurisdiction; if a Court lacks jurisdiction to determine an adverse possession claim against an absent, third-party former owner, it would have said so rather than applying the adverse possession laws of Georgia to the facts of the case.

---

[7] Although the Government does not argue that the theoretical non-plaintiff claimants to property ownership are indispensable parties under RCFC 19(a)(1), they clearly are not.  Their absence does not preclude complete relief among existing parties and no non-plaintiff has claimed any interest at all.  *Id.* at (A) and (B).

[8] While criticizing Plaintiffs for allegedly failing to provide an example, the Government provides no examples of this Court holding it was without jurisdiction to determine whether a takings claimant owned the property in question.

The Government also misunderstands what was at stake in *Mundy v. United States*, 22 Cl. Ct. 33 (1990). In that case, the legitimacy of the easement across the riverbed claimed by the landowners depended on whether the river was navigable. If the river was considered navigable, the riverbed would be the property of the Commonwealth of Virginia; if non-navigable, the riverbed would belong to the riparian owners, therefore making the easement originally granted by a former riparian-owner railroad to the plaintiffs' predecessor in interest a valid grant. *Id.* at 34-35. There was no outcome in which the United States owned the riverbed other than the one alleged by the plaintiffs, *i.e.,* the United States took it from the riparian owners. Nevertheless, the Government mischaracterizes the question of ownership presented in *Mundy* as being between Virginia and the United States. US Opp. at 10. Thus, Plaintiffs' argument stands: *Mundy* offers an example in which this Court deemed it had jurisdiction to resolve a factual and legal question that would lead to a determination of whether the Plaintiffs owned land alleged to have been subsequently taken.

In sum, this Court has historically decided ownership questions when ancillary to a claim that property was taken by the Government. There is no reason the Court cannot decide whether Plaintiffs have acquired property interests by adverse possession.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request the Court rule that this Court has jurisdiction to determine that Plaintiffs have acquired title to property

via adverse possession under Washington law and that Plaintiffs need not amend

their complaints to do so.

    Respectfully submitted this 25th day of May, 2017.

ACKERSON KAUFFMAN FEX, PC      STEPHENS & KLINGE LLP

s/                              s/
Cecilia Fex                    Richard M. Stephens
Ackerson Kauffman Fex, P.C.      Stephens & Klinge LLP
1300 Pennsylvania Ave. NW, Suite 700  10900 NE 8th Street, Suite 1325
Washington, D. C. 20004         Bellevue, WA 98004
Phone: (202) 594-6825           Phone: (425) 453-6206
Fax: (202) 789-7349             e-mail: stephens@sklegal.pro
e-mail: fex@ackersonlaw.com      *Attorney of Record for the following*
*Attorney of Record for the following*  *Consolidated Plaintiffs:*
*consolidated Plaintiffs:*        *Beres; Ritzen, et al.; Morel, et al.;*
*Brown, et al.; Collins, et al.;*     *Klein.; Chamberlin, et al.; Nelson, et al.;*
*Estate of Pearl Welch, et al.;*     *Lane; Peterson, et al.; Schroeder,;*
*Waverly Hills Club, et al.*       *Manning, et al.; and Spencer, et al.*